UNITED STATES DISTRICT COURT  NO SUMMONS ISSUED      ORIGINAL
EASTERN DISTRICT OF NEW YORK

ANTHONY BELFIORE, on behalf of himself and
all others similarly situated,                    **CV 14-4090**

                    Plaintiff,        No.

            -against-                             **NOTICE OF REMOVAL**

THE PROCTER & GAMBLE COMPANY,                     Removed from the Supreme Court of
                                                  the State of New York, County of
                    Defendant.                    Nassau, Index No. 602364/2014 E

---

TO:   **THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
      EASTERN DISTRICT OF NEW YORK**

      Defendant The Procter & Gamble Company ("P&G") hereby notices removal of
this civil action from the Supreme Court of the State of New York, County of Nassau, to the
United States District Court for the Eastern District of New York. This Court has jurisdiction
under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

      In further support of this Notice of Removal, P&G states as follows:

I.    **PROCEDURAL HISTORY**

      1.    On May 23, 2014, plaintiff Anthony Belfiore filed this action in the Supreme
Court of the State of New York, County of Nassau. A true and correct copy of the Class Action
Complaint ("CAC") is attached hereto as **Exhibit A**.

      2.    Service of the CAC and summons on P&G was made on June 2, 2014,
pursuant to P&G's agreement to accept service on that date. Declaration of Andrew Schau ¶ 4 &
Ex. 1.[1] A true and correct copy of the summons is attached hereto as **Exhibit B**.

---

[1]    Plaintiff had caused the CAC and a summons to be delivered to an employee of a P&G
subsidiary, P&G Prestige, who is not a managing or general agent, director, cashier or assistant
cashier, or any other agent authorized by appointment or law to accept service of process on
(continued...)

3.     Exhibits A and B constitute all of the process, pleadings, and orders served on P&G in this case, and are attached hereto pursuant to 28 U.S.C. § 1446(a).

4.     The CAC concerns P&G's sale and marketing of Charmin Freshmates flushable wipes ("Freshmates"). Ex. A, ¶ 1. Plaintiff asserts that P&G's marketing and advertisement of Freshmates as "flushable" is deceptive and misleading, as the wipes allegedly "do not disintegrate upon flushing, they do not break down sufficiently to pass through pipes, and they cause serious problems for property owners and municipalities." *Id.* Plaintiff asserts that P&G's conduct has injured consumers, who "would not have purchased Freshmates nor paid a premium over ordinary, personal wipes ... had they known that Freshmates do not pass through pipes and that they cause problems for internal plumbing, sewer and septic systems." *Id.* ¶ 2. On behalf of a putative class of consumers who purchased Freshmates in New York State "within the applicable statute of limitations," plaintiff asserts a claim under New York's General Business Law Section 349. *Id.* ¶¶ 54, 66-69. Plaintiff seeks a variety of remedies, including damages and injunctive relief. *See id.* at p. 21-22.

## II.   **PARTIES**

5.     Named plaintiff Anthony Belfiore is a citizen of the State of New York and a resident of Nassau County. *Id.* ¶ 4.

6.     Defendant P&G is a corporation incorporated under the laws of Ohio. Schau Decl. ¶ 2.[2] It has its principal place of business in Cincinnati, Ohio. Ex. A, ¶ 5.

## III.   **TIMELINESS OF REMOVAL**

7.     Service of the CAC and summons on P&G was made on June 2, 2014. Schau Decl. ¶ 4 & Ex. 1.

---

behalf of P&G. Schau Decl. ¶ 3. P&G subsequently agreed to accept service as of June 2, 2014, and the parties stipulated to this as the date of service. *Id.* ¶ 4.

[2]     The CAC incorrectly asserts that P&G is incorporated under the laws of Delaware. Ex. A, ¶ 5.

8. This notice of removal is therefore timely pursuant to 28 U.S.C. § 1446(b) and Rule 6(a) of the Federal Rules of Civil Procedure. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (time for removal runs from formal service of process).

## IV.   BASIS FOR REMOVAL JURISDICTION

9. The claim asserted by plaintiff gives rise to jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  P&G also invokes all other grounds for removal that exist under applicable law.

10. This Court has jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d), because this case is (1) a proposed class action within the meaning of CAFA, in which (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (3) the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100," and (4) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B).

### A.   CAFA's "class action" requirement is satisfied.

11. CAFA defines a "class action" to include "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).  This case qualifies as a class action removable under Section 1332(d)(1)(B).  Plaintiff's CAC, which is styled as a "Class Action Complaint," states that he "brings this suit as a class action on behalf of himself and on behalf of others similarly situated." Ex. A, ¶ 54.  Plaintiff asserts that the proposed class satisfies the "prerequisites to a class action" established in Civil Practice Law and Rules Section 901. *Id.* ¶ 55; *see* N.Y. C.P.L.R. § 901.

12. Specifically, plaintiff seeks to represent "all persons and entities residing in the State of New York who, at any time within the applicable statute of limitations … purchased Charmin Freshmates flushable wipes." Ex. A, ¶ 54.

**B.      CAFA's minimal diversity requirement is satisfied.**

13.   CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  This requirement is satisfied here because (a) plaintiff is a citizen of New York and seeks to represent a class of New York consumers, and (b) P&G is not a citizen of New York.  P&G is not incorporated in New York and does not have its main office or principal place of business there. *See* Schau Decl. ¶ 2; Ex. A, ¶ 5.  Because P&G is diverse from the New York consumers whom plaintiff seeks to represent, CAFA's minimal diversity requirement is satisfied.

**C.      CAFA's amount-in-controversy requirement is satisfied.**

14.   CAFA jurisdiction requires that "the matter in controversy [must] exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).  "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy" meets the $5,000,000 threshold. *Id.* § 1332(d)(6).

15.   Plaintiff seeks damages for each class member "in the amount of the cost of the supposedly flushable wipes" they purchased during the class period. Ex. A, ¶ 53; *see also id.* ¶ 69 ("… Plaintiff Belfiore and the other members of the Class have suffered injury and have been damaged in the amount of the purchase price of Freshmates…").  The class period in this matter is based on the statute of limitations applicable to plaintiff's single cause of action under N.Y. Gen. Bus. Law § 349, which is three years. *See id.* ¶ 54; *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) ("Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual.").

16.   P&G has conducted an analysis of major retailers' sales of Freshmates to consumers in New York State. *See generally* Declaration of Kevin Luttenegger In Support of P&G's Notice of Removal.  That analysis shows that certain major retailers in New York State made sales of Freshmates in excess of $5 million to consumers during the past three years. *See id.* ¶ 7.  This total does not include additional sales of Freshmates by other retailers across the State. *See id.* ¶ 8.

4

17.   If the putative class is awarded the damages sought in the CAC, the analysis described above demonstrates that the amount awarded would be in excess of $5 million.

18.   In addition to the purchase price of Freshmates, plaintiff seeks damages "in the amount of [class members'] out of pocket expenses incurred to fix the problems caused by the wipes." Ex. A, ¶ 69.  Any such damages are not included in the calculation described above.

19.   Nor does that calculation include attorneys' fees, which the CAC also seeks, *see id.* at p. 21, and which are also part of the amount in controversy for jurisdictional purposes. *See, e.g., Servedio v. State Farm Ins. Co.*, 814 F. Supp. 2d 214, 217 (E.D.N.Y. 2011).

20.   For the reasons set forth above, the relief sought in the CAC places more than $5,000,000 in controversy, exclusive of interest and costs.  Thus, CAFA's amount-in-controversy requirement is satisfied.

**D.   CAFA's numerosity requirement is satisfied.**

21.   This is not an action in which the "number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B).  Plaintiff brings this action on behalf of all consumers who purchased Freshmates in New York over the past three years. Ex. A, ¶ 54.  Plaintiff alleges that the class "consist [sic] of thousands of members." *Id.* ¶ 56.  As such, the size of the putative class in this case exceeds the numerosity requirements imposed by 28 U.S.C. § 1332(d)(5)(B).

**E.   All of CAFA's requirements are satisfied.**

22.   None of the exclusions to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(4) apply here, as P&G is not a citizen of New York.

23.   For the foregoing reasons, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), and this action is removable pursuant to 28 U.S.C. §§ 1441, 1453.

24.   The recitation of the allegations and requests for relief above is not a concession that plaintiff's allegations or legal theories have merit.  P&G reserves the right to

assert all applicable defenses in this matter and denies that plaintiff is in fact entitled to any relief.

## V.   REMOVAL TO THE EASTERN DISTRICT OF NEW YORK IS PROPER

25.   Removal to the Eastern District of New York is proper because it is the district within which the state action is pending. *See* 28 U.S.C. § 1446(a).

## VI.   NOTICE TO STATE COURT AND PLAINTIFF

26.   Counsel for P&G certify that, pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be filed with the Clerk of the Supreme Court of the State of New York, County of Nassau, and served upon counsel for plaintiff promptly.

WHEREFORE, the case now pending in the Supreme Court of the State of New York, County of Nassau, Index No. 602364/2014 E, is hereby removed to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1441, 1453.

DATED:  July 1, 2014                    By:   _____
                                              Andrew D. Schau (AS 5815)
                                              COVINGTON & BURLING LLP
                                              620 Eighth Avenue
                                              New York, New York 10018-1405
                                              Telephone: 212-841-1000
                                              Facsimile: 212-841-1010
                                              Email: aschau@cov.com

                                              *Attorney for Defendant*
                                              *The Procter & Gamble Company*

6

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>      vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>              Defendant. | Index No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Anthony Belfiore (hereinafter, "Plaintiff") brings this Class Action Complaint against defendant, The Procter & Gamble Company ("P&G" or "Defendant"), individually and on behalf of the proposed class, as defined herein. Plaintiff alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge:

## NATURE OF THE ACTION

1.     P&G manufactures bath tissues and wipes under the "Charmin" label, including Charmin Freshmates flushable wipes ("Freshmates"). As touted by P&G, Freshmates are "flushable, premoistened wet wipes." P&G deceptively markets Freshmates as being able to be flushed without causing harm to plumbing and sewage systems. The front of the Freshmates package boasts, in bold print, that Freshmates are "Flushable Wipes," "Septic Safe," and "Flushable," and the back states that the product is "Safe for sewer and septic systems." In stark contrast to Defendant's representations, Plaintiff paid for Freshmates flushable wipes, but received what are essentially non-flushable wipes. As media reports, independent tests,

#179042.12

consumer complaints, and Plaintiff's personal experience demonstrate, Freshmates do not disintegrate upon flushing, they do not break down sufficiently to pass through pipes, and they cause serious problems for property owners and municipalities.

2.      Contrary to what Defendant misleads consumers to believe, Freshmates do not (and cannot), both, clean effectively and dispose like toilet tissue. Plaintiff and consumers would not have purchased Freshmates nor paid a premium over ordinary, personal wipes (which are not represented as flushable) had they known that Freshmates do not pass through pipes and that they cause problems for internal plumbing, sewer and septic systems.

3.      Indicative of both the purported "flushable" value to consumers, and the benefit to P&G, both Amazon.com and Walmart can, and do, charge more than double per sheet of Freshmates versus non-flushable wipes.

## PARTIES

4.      Plaintiff Anthony Belfiore ("Belfiore") is a citizen of the State of New York and a resident of Nassau County. Mr. Belfiore purchased Freshmates in or around February, 2014 at his local Waldbaum's in Great Neck, New York. He purchased Freshmates after having viewed the package and the price.

5.      Defendant P&G is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G is engaged in the business of manufacturing, marketing and distributing health care and branded consumer products under various brand names including Charmin, Vicks, Pampers, Tide, Always, Whisper, Pantene, Bounty, Dawn, Gain, Pringles, Olay, Iams and Downy.

- 2 -

#179042.12

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Defendant pursuant to C.P.L.R. § 301 because it regularly transacts business within the State of New York.

7.     Venue is proper pursuant to C.P.L.R. § 503 because a substantial portion of the transactions and wrongs complained of herein occurred in this County, Defendant has received substantial benefit by doing business in this County, and Plaintiff resides in this County.

## FACTUAL ALLEGATIONS

### Defendant's Safety and Flushability Claims About Freshmates

8.     P&G directs and controls all significant aspects of the sale of its Charmin products, including the manufacturing, marketing, packaging, distribution, and pricing.  P&G sells its Charmin products at retail stores and on consumer retail websites.

9.     Freshmates are sold in 40-count, 80-count, and 120-count packages.  The front of each package states that they are "flushable wipes" and the back reads "Septic Safe" and "Flushable."  The back further states that the wipes are "Safe for sewer and septic systems."

10.     The only "warning" provided by P&G as to the flushing of Freshmates is that on the back of each package Defendant advises: "for best results, flush only one or two wipes at a time."

11.     This is a true and correct representation of the front panel of Freshmates:

- 3 -

#179042.12



12.     This is a true and correct representation of the back panel of Freshmates:



13.     The Charmin website provides links to various retail websites where customers

#179042.12

can purchase Freshmates.[1]

14.     A screenshot of a Freshmates 40-count package on Walmart's website indicates

the retail price is $2.47.[2] The "Item Description" states:

> Charmin Freshmates Adult Flushable Wipes can be used for a
> more thorough clean than can be accomplished by most dry tissues
> alone. These flushable moist wipes can be easily disposed of by
> flushing. Charmin Freshmates Wipes are safe for your sewer and
> septic systems. Charmin Freshmates Wipes come in a convenient
> one-ups designer tub, and every tub contains 40 adult flushable
> wipes. These wipes have received the Good Housekeeping Seal of
> Approval.[3]

15.     According to *The Washington Post*, the "pre-moistened" wipes market is a $4

billion-a-year industry that is expected to grow 6% annually over the next five years.[4] Wipes

marketed as "flushable" account for approximately 14% of this industry.[5]

**The Truth About Flushable Wipes**

16.     An expose in *New York Magazine* revealed that supposedly "flushable" wipes

cause serious problems for consumers because they do not break down.[6]

17.     Despite P&G's representations of Freshmates as "flushable" and "safe for your

sewer and septic systems," Plaintiff and other consumers have suffered plumbing issues, such as

clogged toilets, clogged pipes and flooded basements, as a result of flushing these purportedly

"flushable" wipes.

18.     There are no legal requirements that a product must meet in order to claim that it

is "flushable." The Association of the Nonwoven Fabrics Industry, a trade group that represents

---

[1] http://www.charmin.com/buy-toilet-paper-rolls.aspx
[2] http://www.walmart.com/ip/Charmin-Freshmates-Adult-Flushable-Wipes-40-count/14284567?sourceid=N/A&veh=cse&srccode=cii_19483251&cpncode=26-39070105
[3] *Id.*
[4] http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html
[5] *Id.*
[6] http://nymag.com/news/intelligencer/flushable-wipes-2013-10/

#179042.12

manufacturers of nonwoven fabrics, has released a "Code of Practice" for wipes manufacturers that is completely voluntary.[7]

19.    Their Code of Practice consists of seven core tests that a product should pass before being marketed as "flushable."[8]  It is unclear whether wipes manufacturers, such as P&G, attempt to comply with these tests, and utility officials believe that the tests themselves may be inadequate:

> ....one of the manufacturers' key tests for wipes marketed as "flushable" does not simulate conditions in real-life sewer systems. The "slosh box" test requires that at least one-quarter of a wipe agitated in water be broken into pieces small enough to pass through a small sieve within three hours. However, utility officials say wipes can reach a pump within a couple of minutes.[9]

20.    Consumer groups, sanitation officials, and local media have repeatedly questioned whether flushable wipes are truly flushable and have conducted independent tests which have determined that flushable wipes, such as Freshmates, are not actually flushable and, contrary to their "safe" advertisement, pose a danger to sewer and septic systems.

21.    Consumer Reports conducted disintegration tests to determine whether flushable wipes are safe to flush.[10]  They selected wipes from Charmin, Cottonelle, Scott and Equate, each of which are marketed as "flushable" and "sewer and septic safe."  In the first test, toilet paper and the four wipes were separately placed in a beaker filled with swirling water, which acted as a simulated toilet.  The toilet paper broke down quickly but the flushable wipes did not break down at all after ten minutes in the swirling water.

22.    In another test, the four wipes were placed in a stand mixer filled with water and

---

[7] http://www.inda.org/issues-advocacy/flushability/
[8] http://www.inda.org/wp-content/uploads/2013/06/GD3-and-Code-of-Practice_Executive-Summary_June-2013-FINAL.pdf
[9] http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html
[10] https://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wet-wipes/index.htm

- 6 -

pushed to the slowest speed (which still provided more churning that a waste pipe provides). Again, the flushable wipes did not break apart after ten minutes in the swirling water.

23.    In the last test, Consumer Reports let the intact wipes sit in water overnight. After soaking overnight, the Cottonelle and Scott flushable wipes disintegrated but the Charmin and Equate flushable wipes remained in one piece.

24.    Consumer Reports concluded that consumers "may not want to flush 'flushable' wipes."[11]

25.    The Orange County Sanitation District conducted its testing to "evaluate the dispersibility of products that claim to be 'flushable.'"[12] According to a staff report dated May 30, 2012, wet wipes advertised as "flushable" and "safe for sewer and septic systems" were a "cause of back-ups within the sewer system leading to sewer overflows, clogs, and disruption within the treatment plant." To test whether these products will disperse in water, sanitation district personnel placed one sheet of a moist flushable wipe and four sheets of toilet paper in a beaker filled with swirling water. The toilet paper began to rapidly disperse after 20 seconds, but the flushable wipe tested in the experiment did not break down after 24 hours in the beaker.

26.    Vancouver, Washington sewer officials tracked flushable wipes as they flowed through their sewer system and determined:

> [That] wipes labeled as flushable are a big part of the problem that has caused [the] city to spend more than $1 million in the past five years replacing three large sewage pumps and eight smaller ones that were routinely clogging.
>
> To prove their point, they dyed several kinds of wipes and sent them through the sewer for a mile to see how they would break up. They didn't.
>
> Those labeled flushable, engineer Frank Dick said, had "a little rip

---

[11] *Id.*
[12] http://www.nacwa.org/images/stories/public/2012-08-06ocsddfw.pdf

#179042.12

and tears but still they were intact."[13]

27.    CBS 2 in Chicago, Illinois "tried an unscientific test, soaking five different brands

of flushable wipes in water":

> They were "Up & Up Moist Tissue Wipes," "Up & Up Toddler,"
> "Kandoo Wipes," "Charmin Freshmates" and "Cottonelle Fresh
> Care."
>
> After 24 hours, the Cottonelle brand broke down when touched.
> But even a week later, the four others did not.[14]

28.    The inherent problem with "flushable" wipes such as Freshmates is that they are

designed to be strong enough to hold together after being "pre-moistened" and supposed to

disintegrate in water once flushed.  The *New York Magazine* expose highlights this contradiction:

> The basic problem, however, is that toilet paper is specifically
> engineered to come apart in water. It is inherently fragile. A wet
> wipe, by contrast, is supposed to be tough enough to hold up under
> a constant soaking in its water and propylene glycol lotion, and
> under the mechanical pressure of scrubbing. It is [] very, very
> strong, pound for pound, like spiderweb. (The technical term for
> the most common material is spunlace.)  In short, the very thing
> that makes a wet wipe good at its job makes it a problem once it's
> discarded.[15]

29.    As noted in *The Washington Post*:

> "Just because you can flush it doesn't mean you should," said I.J.
> Hudson, a spokesman for the Washington Suburban Sanitary
> Commission . . .
>
> *        *        *
>
> Officials with DC Water, the District's water and sewer agency,
> say that more than 500 man-hours have been devoted over the past
> 12 months to removing stuck wipes and repairing broken
> equipment. Anne Arundel County officials blame wipes on a 35
> percent jump in broken pumps and clogged sewer lines over
> several years.

---

[13] http://bigstory.ap.org/article/popular-bathroom-wipes-blamed-sewer-clogs
[14] http://chicago.cbslocal.com/2013/11/08/convenient-wipe-products-can-wreak-havoc-on-plumbing-sewers/
[15] http://nymag.com/news/intelligencer/flushable-wipes-2013-10/

#179042.12

Wipes also contribute to blockages that cause sewage to overflow into streams and back up into basements.[16]

30.     According to an *Associated Press* article:

The National Association of Clean Water Agencies, which represents 300 wastewater agencies, says it has been hearing complaints about wipes from sewer systems big and small for about the past four years.

That roughly coincides with the ramped-up marketing of the "flushable cleansing cloth" as a cleaner, fresher option than dry toilet paper alone.[17]

31.     As chronicled by the *USA Today*:

The products appeal to consumers in part because of manufacturers' claims that they can be conveniently flushed down the toilet. But their cloth-like material doesn't break down . . .[18]

32.     *The Cincinnati Business Courier* reported that "although many products like baby wipes and wet wipes are labeled as flushable, they don't break apart or dissolve when they enter the sewer system" and that they "also clog pipes at houses, apartment complexes and offices."[19]

33.     CBS 3 in Philadelphia, Pennsylvania reported that flushable wipes that don't dissolve are "causing major plumbing problems for homeowners all across the country" and can result in a "bill for hundreds of dollars and a big mess."[20]

34.     ABC 7 in Rockville, Maryland reported that national manufacturers are using "blatant false advertising" by marketing their wipes as "safe," "disposable," and "flushable,"[21] and suggested that manufacturers are using these marketing tactics because "market research has shown American consumers are more likely to purchase wipes that are [advertised as] bio-

---

[16] http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html
[17] http://bigstory.ap.org/article/popular-bathroom-wipes-blamed-sewer-clogs
[18] http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/
[19] http://www.bizjournals.com/cincinnati/news/2013/09/16/pg-kroger-wipes-make-clean-up-easy.html?page=all
[20] http://philadelphia.cbslocal.com/2013/10/02/3-on-your-side-warning-about-wipes/
[21] http://www.wjla.com/articles/2014/03/wipes-wreak-havoc-on-montgomery-co-sewer-lines-100999.html

#179042.12

degradable for cleanliness reasons."

35.    *The Peoria Journal Star* in Peoria, Illinois likewise reported that flushable wipes

were clogging pumps and causing costly repairs:

> "If you look at these disposable wipes – some say disposable, some
> say flushable – if you notice, they're thicker. They're woven
> tighter, and they're already wet and not falling apart,"
> [Germantown Hills Public Works Director Rich] Brecklin said.
>
> \*       \*       \*
>
> "Some of them do say 'flushable' – they're not flushable. They're
> not flushable in a gravity system; they're not flushable in a septic
> system; and they are especially not flushable in ejection pumps or
> grinder pump systems."
>
> \*       \*       \*
>
> "If these pumps fail and the people don't recognize that their alarm
> is going on in their house and they continue to use water, it can
> back up in their home," Brecklin said.[22]

36.    The Frederick County Health Department in Maryland "encourages people to put

all wipes, even those labeled 'flushable,' in the trash."[23] An article in *The Frederick News Post*

included interviews with a number of local plumbers regarding the problems caused by flushable

wipes:

> "We have found that when we get a call for toilet stoppages, that
> when we talk to the customer we find out that they do use these
> wipes that say flushable, and they get stuck in the toilets," he said,
> adding later, "I would be very cautious of anything that says
> 'flushable.'"

37.    The *Mount Shasta Herald* in Mount Shasta, California reported that a recent

"sanitary sewer overflow" was "caused by a blockage from wet wipes [that were] marketed as

---

[22] http://www.pjstar.com/article/20140130/NEWS/140139881/10924/NEWS
[23] http://www.fredericknewspost.com/news/economy_and_business/business_topics/consumer/county-don-t-flush-what-says-flushable/article_ba4388b3-e1ba-531b-8970-05a2d6cb7a7b.html

- 10 -

#179042.12

'flushable.'"[24]   As per Mount Shasta Public Works Director Rod Bryan: "these items do not dissolve, as advertised, and instead end up clogging the sewer system."

38.     The *First Coast News* in Jacksonville, Florida reported that flushable wipes caused sewage overflows at the home of an 88-year-old woman and forced the woman's son to spend hundreds of dollars and call a plumber several times to snake the plumbing.[25] The article included an interview with a local plumber, Frank Freece, who stated that in 2014 alone, he had "dealt with 'flushable' wipes stoppages in two to three dozen homes." Freece also stated that flushable wipes are "worse than paper towels or feminine products" because they are "marked 'flushable,' people think they can just go right on down."

39.     Fox 43 in Harrisburg, Pennsylvania reported that flushable wipes "are being blamed nationwide for clogged toilets and backed up sewer systems."[26] According to Andrew Jantzer, General Manager at the York City Wastewater Treatment Plant, "the issues with flushable wipes and other products that aren't toilet paper, are that they don't break down" and will clog homeowners' plumbing systems.

40.     ABC 7 in Denver, Colorado reported on how local plumbers are profiting from flushable wipes:

> Master plumber Greg Crippen with Applewood Plumbing, Heating & Electric said clearing out so-called "flushable wipes" has been making him big money lately.
>
> "I'm thinking of sending a thank you note to people making [flushable wipes]," he said with a laugh. "I'd say a couple of times a week, I find them clogging a line. They don't break down the way toilet paper does. They cling to anything that's going down the drain.[27]

---

[24] http://www.mtshastanews.com/article/20140224/NEWS/140229829
[25] http://www.firstcoastnews.com/story/news/local/consumer/on-your-side/2014/02/17/flushable-wipes-costly-repairs/5559801/
[26] http://fox43.com/2013/11/07/flushable-wipes-blamed-for-clogged-pipes/
[27] http://www.thedenverchannel.com/web/kmgh/news/local-news/aurora-water-warns-people-not-to-flush-flushable-

#179042.12

41.     Fox 10 in Phoenix, Arizona reported that Linda Stanfield, owner of Benjamin Franklin Plumbers, stated that "one in ten clogs in a toilet [that she] gets have to do with flushable wipes." [28]

42.     Municipal officials have similarly noted the dangers posed by so-called "flushable" wipes:

a.      Robert A. Villee, executive director of the Plainfield Area Regional Sewerage Authority in New Jersey, called a lot of "flushable"-labeled wipes "faux-flushables" and stated that flushable wipes "don't disperse."[29]

b.      Michael Scahill, spokesperson of the Central Contra Costa Sanitary District in California, said that 30 percent of the sanitary district's sewage overflows [in 2012] were caused by so-called flushable wipes.[30]

c.      Bob Elston, Public Works Director in Sleepy Eye, Minnesota, credited the growing problem of clogged pumps to "an increase in the use of so-called 'flushable wipes.'" Mr. Elston also warned that "if these [flushable wipes] get caught in your pipes, which are quite a bit smaller than the city sewer pipes, it can cause a clog and you can get sewer backed up into your basement."[31]

d.      John Carman, Public Utilities Director in Raleigh, North Carolina, stated that "there is this notion that somehow [flushable wipes] [a]re safe to flush down the toilet" but "flushable wipes don't always disintegrate."[32]

e.      Richard Cummings, the overseer of Hillsborough County, Florida's sewer

---

wipes
[28] http://www.myfoxphoenix.com/story/23520533/2013/09/24/cleaning-wipes-problem
[29] http://articles.chicagotribune.com/2013-10-08/news/ct-tl-1010-s-tinley-park-flushables-20131009_1_baby-wipes-flushable-toilet-paper
[30] Id.
[31] http://www.sleepyeyenews.com/article/20131010/NEWS/131009617/1001/NEWS
[32] http://www.newsobserver.com/2013/01/28/2639855/raleigh-says-paper-towels-and.html

- 12 -

collection, called flushable wipes "insidious" and stated that "taxpayers are paying for emergency maintenance to keep sewers from overflowing into streets and houses" due to clogs caused by flushable wipes.[33]

      f.     Kathy Forzley, manager at the Oakland County Health Division in Michigan, stated that "even though they are labeled as 'flushable,' these wipes may go down the toilet, but they are not breaking down sufficiently and are harmful to your septic system."[34]

## Problems with Freshmates

      43.     On or about February 2014, Mr. Belfiore purchased Freshmates in Great Neck, New York.

      44.     He flushed the product in his Great Neck, New York residence. At no time did he flush more than 1 or 2 at a time.

      45.     After using and flushing the Freshmates, he experienced plumbing issues, including clogging in his home plumbing and a sewer back-up. He had to call a plumber who "found pipe [from toilet to house trap] clogged with wipes" and "found pipe [from house trap to street] also clogged with wipes." The plumber removed Freshmates from the pipes. The plumber charged Mr. Belfiore $526.83.

      46.     The Charmin website, itself, includes customer complaints about Freshmates:[35]

> I do love this product. But the claim that they are flushable is not accu[r]ate. Learn from my experience, I just had to have MAJOR work on my sewer and it had a lot of wipes that had caused the very $$ problem. So DO NOT flush these wipes!
>
>    *       *       *
>
> We've used these wipes for about a year for our special needs daughter and they have been wonderful. However, we have

---

[33] http://www.tampabay.com/news/humaninterest/flushable-bathroom-wipes-get-blame-for-sewer-clogs/2144911
[34] http://westbloomfield.patch.com/groups/politics-and-elections/p/5-things-to-think-about-before-you-flush
[35] http://www.charmin.com/freshmates-flushable-wipes.aspx#/freshmates-flushable-wipes-reviews.aspx

- 13 -

#179042.12

recently had plumbing difficulties that have stemmed from using these wipes. We tested ourselves with one wipe in a glass of water. After 4 days the wipe had not dissolved or broken down at all. It was still firm and not easily torn. I must recommend against using these wipes as they are advertised to be flushable, and that is not the case for repeated useage.

\*     \*     \*

Flushable wipes are responsible for a sewer backup in my home. They don't break down. They might be flushable but cause backups. Roto Rooter cost me $450!!!

\*     \*     \*

Be careful - they WILL clog your toilet

\*     \*     \*

I really like these, great for the kids and adults, however they did clog our toilet causing a flood in our basement of sewage. Roto Rooter came and fixed and could point to these being the cause. They said they have this issue a lot with these (not brand specific). As my mom always says do not flush ANYTHING down the toilet except TP.

\*     \*     \*

I purchased this product 6 weeks ago and have probably flushed a total of 4 wipes in 6 weeks. Not all at the same time. I just had to have the drain company out to unstop the commode that the wipes were flushed in. Cost me $160.00. They said that this is what plugged it up and recommended only to flush toilet [paper] from now on.

\*     \*     \*

After purchasing and using Charmin Fresh mates. I find that they are not 100% flushable. Not only did I need to call a Plum[b]er to unclog[] my toilet. I had to call him back a second time. Costing me $200.00. Thanks Charmin!!

\*     \*     \*

I do not recommend these it cost me 85.00 to have my toilet unclogged sheets do not dissolve right away gathered together and

- 14 -

#179042.12

would not [g]o down will not buy again maybe there is a thinner one

\*        \*        \*

I purchased Charmin Freshmates about a week ago, today when I had to call a professional plumber to snake the pipes (freshmates FLUSHIBLES wipes are the reason). I'm sending my bill to Charmin. And I do not recommend flushing the wipes unless you have a plunger handy or a plumber waiting outside your door!!!

\*        \*        \*

I liked Fresh Mates a lot. Until they clogged my sewage drain and I got a $295 bill from my plumber (I never flushed more than one at a time).
Not flushable. Otherwise a good wipe.

47.      Despite the foregoing, and in response to a customer complaint that Freshmates

"cause serious problem[s] in the sewer systems unless the[y] are put in the garbage,"[36] P&G

maintained:

> The Freshmates are safe to flush. We do recommend that you flush only one or two at a time. For more than 70 years, Charmin has been a reliable bath tissue, trusted in millions of Americans' homes. Extensive tests show that when Charmin is used as intended in a properly functioning plumbing system, it shouldn't cause plumbing problems.

48.      Similar Freshmates customer complaints appear on Walmart's website where

customers can comment on their Freshmates purchases:[37]

> They do not breakdown like toilet paper....Just cost me $170.00 to get them out of my drain
>
> \*        \*        \*
>
> ....I used them as directed – ONE per flush. They completely blocked our main drain line which cost more than $300 to repair. The plumber just left...He saw no other problem. No sediment,

---

[36] *Id.*
[37] http://www.walmart.com/ip/Charmin-Freshmates-Adult-Flushable-Wipes-40-count/14284567?page=seeAllReviews

- 15 -

#179042.12

roots, or settling in our very new house....

\*     \*     \*

I did love these. They were great when using toilet paper just wasn't enough. I had ran out of these and really needed to get more. That was a few months ago. A few weekends ago, the sewer backed up in the basement of my apartment, on a weekend. The plumber came and cleaned out a ball of wipes that had not passed th[r]ough the sewer system....

\*     \*     \*

Charmin Freshmates do not live up to the promise. Non-paper wipes ARE NOT FLUSHABLE. Yes, when you flush them they will disappear. Unfortunately, they probably wont leave your pipes by themselves. Sooner or later your drain pipes will clog and you'll be calling the plumber to clean out your pipes.

I just had the plumber out to my bed and breakfast for the 2nd time in 2013 (2.5 months) to clear our drain pipes. Sure enough, it was "flushable" wipes. It cost me $262.15 to clear them out. I BEG our guests not to use them. We post polite requests over every toilet explaining that they are not flushable. What a nightmare. Have you ever had sewage backing up through your shower? Give these wipes a try for a while and you may get to experience it yourself.

49.     Freshmates customer complaints also appear on Amazon's website:[38]

These wipes are great for their intended purpose and they fit in my dispenser fine as refills BUT DO NOT FLUSH THEM! My plumber told me (as he was taking my $500.00 check) that his drain unclogging business had increased dramatically since people started flushing these wipes. I never flushed more than one at a time but he says that's not even safe.

\*     \*     \*

Been using these for a few months, especially for a child with otherwise unreliable hygiene habits. They certainly work well at clean up, but the comforting statement that they are septic safe is a flat out lie. We just had our septic system pumped (and thank God we do it yearly, rather than wait until it is needed), and the guy bawled us out for using them. He says that they ball up and will

---

[38] http://www.amazon.com/Charmin-Freshmates-Flushable-Wipes-Refills/dp/B003WJ9GPQ/ref=cm_cr_pr_product_top

#179042.12

gradually ruin the system. And note that he didn't need to *tell* him we had been using them (though I don't really want to know how he found them...).

\*       \*       \*

I like the wipes but we can't ever use them again. Our house and septic system is only 5 yrs old. We just had to have someone pump it because of these wipes. I am not joking. I was shocked. He showed us what was in there and you can tell they do not break down! We had to pay $200 to have him pump it out. They guy told us that he doesn't know of any wipes that break down. Even if they say they do it is false. It is sad that they put that on the packaging. I was very upset that we had to pay because of wipes that say they are flush-able and break down. We have a very large septic system and the guy that pumped this out could not believe it was already having to be pumped. We have only been using these wipes for 6 months! So be careful if you have to use these. I will miss my wipes! :(

\*       \*       \*

Just paid a septic company $370 to get these "flushable" wipes out of my septic system. They are NOT dissolvable!!! A little research reveals that many people have had sewer issues because of the claim you can flush them. THEY ARE NOT FLUSHABLE!!! I saw first hand.[39]

50.    These problems are, or should be, known to Defendant.  Yet, P&G continues to

market and sell Freshmates as "flushable" wipes that are "safe" for septic and sewer systems, and

does so at a higher cost than Defendant's non-flushable wipes.  For example, an 80-count

package of Freshmates costs $0.05 per sheet, whereas P&G's "non-flushable" wipes such as

Pampers Baby Fresh and Luvs Ultra Clean Wipes cost $0.02 and $0.03 per sheet, respectively.

Thus, Plaintiff and members of the Class paid approximately twice as much for Freshmates

flushable wipes.  P&G has ignored customer complaints and media reports, thereby causing an

ascertainable loss and injury to Plaintiff and members of the Class while providing itself with

---

[39] http://www.amazon.com/Charmin-Freshmates-Flushable-Wipes-Count/dp/B002KHNL7A/ref=cm_cr_pr_product_top

#179042.12

additional and unjust financial gain.

51. Wipes labeled by P&G as "flushable" cost more than twice as much (on a per sheet basis) as similar products without representations regarding their flushability.

52. Plaintiff and members of the Class would not have purchased P&G's flushable wipes at the prices they did or at all, absent P&G's false and misleading misrepresentations as to the "flushability."

53. Plaintiff and members of the Class suffered damages as a result of P&G's deception, in the amount of the cost of the supposedly flushable wipes and/or the difference in price between the supposedly flushable wipes and non-flushable wipes, as well as their out of pocket expenses incurred to fix the problems caused by their "non-flushability."

## CLASS ALLEGATIONS

54. Plaintiff Belfiore brings this suit as a class action on behalf of himself and on behalf of others similarly situated. The proposed "Class" consists of:

> All persons and entities residing in the State of New York who, at any time within the applicable statute of limitations (the "Class Period"), purchased Charmin Freshmates flushable wipes (the "Class").

55. The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of C.P.L.R. § 901, *et. seq*.

56. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff at this time and can be determined by appropriate discovery, it is reasonably estimated that the Class consist of thousands of members.

57. Plaintiff, like the other purchasers of Freshmates, has been subjected to P&G's deceptive and misleading course of conduct. Plaintiff is a member of the Class and his claims

- 18 -

#179042.12

are typical of the claims of the members of the Class.  The harm suffered by Plaintiff is similar to

that suffered by all other Class members and was caused by the same misconduct by P&G.

58.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

Plaintiff has no interests antagonistic to, nor in conflict with, the Class.  Plaintiff has retained

competent counsel who are experienced in consumer and commercial class action litigation and

who will prosecute this action vigorously.

59.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.  Because the monetary damages suffered by individual Class

members are relatively small, the expense and burden of individual litigation make it impossible

for individual Class members to seek redress for the wrongful conduct asserted herein.  If Class

treatment of these claims is not available, P&G will likely continue its wrongful conduct, will

unjustly retain improperly obtained revenues, or will otherwise escape liability for its

wrongdoing as asserted herein.

60.     Common questions of law and fact exist as to all members of the Class, which

predominate over any questions that may affect individual Class members.  Among the questions

of law and fact common to the Class are the following:

a.      whether P&G misrepresents the effect of flushing Freshmates wipes;

b.      whether P&G misleads consumers into believing that Freshmates wipes may be

flushed without adverse effects on plumbing and sewer systems;

c.      whether Freshmates wipes disintegrate or break down sufficiently so as to not

cause clogs in pipes;

d.      whether P&G's marketing of its Freshmates product as flushable is deceptive;

e.      whether P&G's pricing of its Freshmates product at a premium to its non-

#179042.12

flushable wipes is deceptive;

      f.      whether P&G's marketing and pricing of its Freshmates product causes reasonable consumers to pay more for Freshmates as opposed to non-flushable wipes;

      g.      whether P&G violates New York General Business Law §349;

      h.      whether Plaintiff and members of the Class have sustained damages and, if so, what is the proper measure of damages.

      61.      Information concerning Freshmates sales is available from P&G's books and records.

      62.      Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

      63.      The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, and establish incompatible standards of conduct for P&G.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

      64.      P&G has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

      65.      Given that P&G's conduct is ongoing, monetary damages are insufficient and there is no complete and adequate remedy at law.

**CLAIM FOR RELIEF**

**Violation of New York General Business Law §349**
**By Plaintiff Belfiore on behalf of the Class**

      66.      Plaintiff Belfiore realleges and incorporates by reference each allegation in the above paragraphs as if fully set forth herein.

- 20 -

#179042.12

67.    New York General Business Law ("NYGBL") §349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

68.    P&G's representations of its Freshmates product are consumer oriented.    As alleged fully above, P&G engaged in deceptive acts and practices within the meaning of NYGBL §349, by representing and marketing their Freshmates flushable wipes as capable of being flushed without adverse effect on home plumbing systems.    The misrepresentations that Freshmates are "flushable" and "safe for sewer and septic systems" were material to consumers in their purchase of Freshmates.

69.    P&G has violated NYGBL §349 and, as a consequence of P&G's conduct, Plaintiff Belfiore and the other members of the Class have suffered injury and have been damaged in the amount of the purchase price of Freshmates or, alternatively, the difference paid between Freshmates and non-flushable wipes (about 50% more), and in the amount of their out of pocket expenses incurred to fix the problems caused by the wipes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the Class, requests the following relief:

(a)    An order determining that this action is properly brought as a class action and certifying Plaintiff as representative of the Class and his counsel as Class counsel;

(b)    A permanent injunction against P&G, restraining, preventing and enjoining P&G from representing Freshmates as flushable;

(c)    Actual damages;

(d)    An award of attorneys' fees;

- 21 -

#179042.12

(e)     An award of the costs of suit reasonably incurred by Plaintiff and his counsel;

(f)     An  award of interest, including prejudgment interest, at the legal rate, and;

(g)     Such other and further relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Dated: May 23, 2014

WOLF POPPER LLP

By:___ /s/ Lester L. Levy _____

LESTER L. LEVY
MICHELE F. RAPHAEL
ROY HERRERA JR.
845 Third Avenue, 12th Floor
New York, New York 10022
Tel: (212) 759-4600
Fax: (212) 486-2093
llevy@wolfpopper.com
mraphael@wolfpopper.com

Counsel for Plaintiff and the Proposed Class

- 22 -

#179042.12

Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of themselves and all others similarly situated, | INDEX NO. _____ |
| Plaintiff, <br> v. | Plaintiff designates Nassau County as the Place of Trial |
| THE PROCTER & GAMBLE COMPANY, | **SUMMONS** |
| Defendant, | |

TO THE ABOVE NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the plaintiff's attorneys within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
      May 23, 2014

                            WOLF POPPER LLP

By:    /s/ Lester L. Levy
           Lester L. Levy
           Michele F. Raphael
           Roy Herrera, Jr.

           845 Third Avenue
           New York, New York 10022
           Telephone: (212) 759-4600
           Facsimile: (212) 486-2093

           11 Grace Avenue, Suite 400
           Great Neck, NY 10021
           Telephone: (516) 726-7723
           Facsimile: (212) 486-2093

TO:

The Procter & Gamble Company
1 Procter & Gamble Plaza
Cincinnati, Ohio, 45201