**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ANTHONY BELFIORE, on behalf of himself and all
others similarly situated,

Plaintiff,

-*against*-

THE PROCTER & GAMBLE COMPANY,

Defendant.

14 Civ. 4090 (JBW)(RML)

**REDACTED**

**DEFENDANT'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

Andrew D. Schau (AS 5815)
Claire Catalano Dean (CD 4114)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Emily Johnson Henn*
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
(650) 632-4700

Sonya D. Winner*
Cortlin H. Lannin*
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94102
(415) 591-6000

* *Admitted pro hac vice*

Attorneys for Defendant
*The Procter & Gamble Company*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 4

    A.    MR. BELFIORE'S HOME PLUMBING PROBLEM .......................................... 4

    B.    USE OF WIPES IN THE BELFIORE HOME ................................................. 5

    C.    THE CAUSES OF MR. BELFIORE'S PLUMBING PROBLEM........................ 6

    D.    CONSUMER EXPERIENCES WITH CHARMIN FRESHMATES ................... 7

    E.    MR. BELFIORE'S COMPLAINT ................................................................. 8

ARGUMENT ......................................................................................................... 10

I.    MR. BELFIORE CANNOT SATISFY THE REQUIREMENTS OF RULE 23(A). .................................................................................................. 11

    A.    MR. BELFIORE IS NOT TYPICAL OF THE CLASS HE SEEKS TO REPRESENT. ................................................................................. 11

        1.    MR. BELFIORE IS NOT TYPICAL OF THE LARGE MAJORITY OF HIS PROPOSED CLASS WHO HAVE HAD NO DIFFICULTY IN FLUSHING FRESHMATES......... 12

        2.    MR. BELFIORE COULD NOT SATISFY THE TYPICALITY REQUIREMENT EVEN FOR A SMALLER CLASS OF PURCHASERS WHO DID HAVE GENUINE DIFFICULTY IN FLUSHING FRESHMATES................................................. 15

    B.    COMMONALITY CANNOT BE ESTABLISHED FOR THE PROPOSED CLASS........................................................................... 18

    C.    MR. BELFIORE IS NOT AN ADEQUATE CLASS REPRESENTATIVE. ....................................................................... 21

II.    THE PROPOSED CLASS IS NOT ASCERTAINABLE. ............................... 23

III.    MR. BELFIORE CANNOT SATISFY THE REQUIREMENTS OF RULE 23(B)........ 28

    A.    COMMON ISSUES DO NOT PREDOMINATE. ............................... 28

    1.     INDIVIDUALIZED ISSUES WILL PREDOMINATE ON THE
QUESTION OF WHETHER CLASS MEMBERS WERE
DECEIVED.................................................................................... 29

    2.     FOR THOSE CLASS MEMBERS WHO EXPERIENCED
PLUMBING PROBLEMS, INDIVIDUALIZED ISSUES AS TO
THE CAUSES OF THOSE PROBLEMS WILL PREDOMINATE........ 32

    3.     PLAINTIFF CANNOT PROVE THROUGH COMMON
EVIDENCE THAT ALL CLASS MEMBERS PAID AN
UNWARRANTED PRICE PREMIUM. ................................................ 34

CONCLUSION................................................................................................... 36

## SUPPORTING DECLARATIONS (FILED SEPARATELY)

Declaration of Mary Bush

Declaration of Claire Catalano Dean

Declaration of Jay Gooch

Declaration of Terence O'Shea

Declaration of Marlene Otero

Declaration of Scott Richards

Declaration of Darius Sabaliunas, Ph.D.

Declaration of Carol A. Scott, Ph.D.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................35

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..............................................................................................28

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .............................................................24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ....................................................................................11

*Bentley v. Verizon Bus. Global, LLC*,
  2010 WL 1223575 (S.D.N.Y. Mar. 31, 2010) ......................................................17

*Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*,
  2010 WL 5980151 (E.D.N.Y. Nov. 9, 2010) ........................................................31

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ........................................................36

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .......................................................................10, 11, 21

*Cabral v. Supple, LLC*,
  2013 U.S. Dist. LEXIS 184170 (C.D. Cal. Feb. 14, 2013) ...................................13

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) .......................................................................24, 25, 27

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
  269 F.R.D. 221 (S.D.N.Y. 2010) ..........................................................................24

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ...............................................................................10, 28, 34

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..............................................................................................24

*Feinstein v. Firestone Tire and Rubber Co.*,
　535 F. Supp. 595 (S.D.N.Y. 1982)..............................................................33

*Felix v. Northstar Location Servs., LLC*,
　290 F.R.D. 397 (W.D.N.Y. 2013)..............................................................23

*Fine v. ConAgra Foods, Inc.*,
　2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)...........................................32

*Fleischman v. Albany Med. Ctr.*,
　2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ..............................................34

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
　903 F.2d 176 (2d Cir. 1990)........................................................................21

*Goodman v. Genworth Fin. Wealth Mgmt., Inc.*,
　300 F.R.D. 90 (E.D.N.Y. 2014)............................................................10, 28

*Hallet v. Li & Fung, Ltd.*,
　1997 WL 621111 (S.D.N.Y. Oct. 6, 1997) ................................................18

*Havnes v. Planet Automall, Inc.*,
　276 F.R.D. 65 (E.D.N.Y. 2011) ................................................................30

*In re Agent Orange Prod. Liab. Litig.*,
　818 F.2d 145 (2d Cir. 1987)........................................................................15

*In re Bridgestone/Firestone, Inc.*,
　288 F.3d 1012 (7th Cir. 2002) ....................................................................33

*In re Clorox Consumer Litig.*,
　301 F.R.D. 436 (N.D. Cal. 2014)...........................................................25, 27

*In re Fosamax Prods. Liab. Litig.*,
　248 F.R.D. 389 (S.D.N.Y. 2008) ...........................................................15, 16

*In re Initial Pub. Offerings Sec. Litig.*,
　471 F.3d 24 (2d Cir. 2006)...................................................................10, 23

*In re Literary Works in Elec. Databases Copyright Litig.*,
　654 F.3d 242 (2d Cir. 2011)........................................................................23

*In re McNeil Consumer Healthcare*,
　877 F. Supp. 2d 354 (E.D. Pa. 2012) ........................................................14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
　209 F.R.D. 323 (S.D.N.Y. 2002) ...............................................................15

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ........................................................26

*In re Telectronics Pacing Sys., Inc.*,
  168 F.R.D. 203 (S.D. Ohio 1996) ........................................................23

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ........................................................23

*Jones v. Allercare, Inc.*,
  203 F.R.D. 290 (N.D. Ohio 2001) ........................................................16

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................................................27

*Karhu v. Vital Pharm., Inc.*,
  2014 WL 815253 (S.D. Fla. Mar. 3, 2014) ........................................................24, 27

*Kline v. Wolf*,
  702 F.2d 400 (2d Cir. 1983) ........................................................16

*Koenig v. Benson*,
  117 F.R.D. 330 (E.D.N.Y. 1987) ........................................................17

*Krim v. pcOrder.com, Inc.*,
  210 F.R.D. 581 (W.D. Tex. 2002) ........................................................23

*Levitt v. J.P. Morgan Sec., Inc.*,
  710 F.3d 454 (2d Cir. 2013) ........................................................10

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ........................................................24, 25, 26

*Martin v. Home Depot U.S.A., Inc.*,
  225 F.R.D. 198 (W.D. Tex. 2004) ........................................................20

*McClain v. S.C. Nat'l Bank*,
  105 F.3d 898 (4th Cir. 1997) ........................................................17

*McLaughlin v. Am. Tobacco Co.*,
  552 F.3d 215 (2d Cir. 2008) ........................................................27, 29, 30, 34

*Moheb v. Nutramax Labs. Inc.*,
  2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ........................................................13, 31

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ........................................................28

*Morrisey v. Nextel Partners, Inc.*,
  72 A.D.3d 209 (3d Dep't 2010) ...............................................................30

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ....................................................................10

*Newman v. RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ...............................................29, 32, 34

*Oakley v. Verizon Commc'ns Inc.*,
  2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) .............................................19

*Orlander v. Staples, Inc.*,
  2014 WL 2933152 (S.D.N.Y. June 30, 2014) .........................................13

*Oscar v. BMW of N. Am., LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011) .......................................................15, 32

*Oscar v. BMW of North America, LLC*,
  2012 WL 2359964 (S.D.N.Y. June 19, 2012) .........................................35

*Oshana v. Coca-Cola Bottling Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005), *aff'd*, 472 F.3d 506 (7th Cir. 2006) ....................................32

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
  200 F.R.D. 521 (D. Md. 2001).................................................................17

*Pagan v. Abbott Labs., Inc.*,
  287 F.R.D. 139 (E.D.N.Y. 2012) ..................................................... passim

*Pelman v. McDonald's Corp.*
  272 F.R.D. 82 (S.D.N.Y. 2010) .........................................................31, 33

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014)........................................................24, 25

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)....................................................................22

*Sanneman v. Chrysler Corp.*,
  191 F.R.D. 441 (E.D. Pa. 2000)...............................................................33

*Schrank v. Citibannk (S.D.), N.A. (In re Currency Conversion Fee Antitrust Litig.)*,
  230 F.R.D. 303 (S.D.N.Y. 2004) .............................................................35

*Sethavanish v. ZonePerfect Nutrition Co.*,
  2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ......................................24, 27

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................10

*Sokoloff v. Town Sports Int'l, Inc.*,
    778 N.Y.S.2d 9 (1st Dep't 2004) ...................................................................13

*Solomon v. Bell Atl. Corp.*,
    777 N.Y.S.2d 50 (1st Dep't 2004) ...................................................19, 20, 34

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ..........................................10, 11, 22, 23

*Spagnola v. The Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ..............................................................................13

*Stewart v. Beam Global Spirits & Wine, Inc.*,
    2014 WL 2920806 (D.N.J. June 27, 2014) ...................................................24, 25

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24 (2000) ......................................................................................28

*Teamsters Local 445 Freight Div. v. Bombardier*,
    546 F.3d 196 (2d Cir. 2008) ..........................................................................10

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ...................................................................28, 29

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..............................................................................18, 19, 28

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...........................................26, 27, 33

*Wethington v. Purdue Pharma LP*,
    218 F.R.D. 577 (S.D. Ohio 2003) ...................................................................20

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................................................26, 27

**Statutes**

N.Y. Gen. Business L. § 349 ................................................................................ passim

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................10, 11, 23

Fed. R. Civ. P. 23(a) .............................................................................. passim

Fed R. Civ. P. 23(b) ................................................................................ passim

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................24

The Procter & Gamble Company ("P&G") respectfully submits this Memorandum of Law in Support of its Motion to Deny Class Certification.

## INTRODUCTION

In March 2014, Plaintiff Anthony Belfiore discovered that the toilet in his basement was backed up.  He claims the backup was the result of a clog in his pipes caused by using Charmin Freshmates Flushable Wipes.  Because he believes that his use of Freshmates resulted in a clog, he alleges that the product is not truly "flushable," and should not be labeled as such.  Although Mr. Belfiore himself did not incur any out-of-pocket expenses relating to the clog, he thinks P&G should pay any expenses incurred by Freshmates purchasers who experienced plumbing problems while using the product.

Mr. Belfiore's main concern appears to be limited to purchasers who, like him, experienced a plumbing problem while using Freshmates.  The class proposed by his counsel, however, is not so limited.  The Complaint seeks certification of a broader class consisting of *all purchasers* in the State of New York, including those who did not experience plumbing problems.

Certification of this proposed "all purchaser" class should be denied for numerous reasons.  Foremost among them is the fact that the vast majority of Freshmates purchasers are satisfied with the product and never experienced a plumbing problem while using it.  These purchasers suffered no injury whatsoever and, accordingly, cannot be part of any class, no matter how the class is defined.  But even the small number of purchasers who did experience plumbing problems while using Freshmates cannot be certified as a class because, for them, the question of whether Freshmates actually *caused* their plumbing problem will, in every case, raise individualized fact issues that cannot be resolved based on common proof.  These case-specific

1

causation issues would overwhelm any common issues that might possibly be relevant to the class as a whole.

Mr. Belfiore's clog in March 2014 presents a case in point.  That clog was not the first plumbing problem he experienced in his home.  His toilets and pipes have backed up in the past as a result of clogs that had nothing to do with Freshmates.  These recurring problems are not surprising.  An inspection of the pipes leading from Mr. Belfiore's home to the sewer line revealed that they were filled with invasive tree roots, rust scaling, and misaligned gaps where flushed materials could easily catch and build up into clogs.  Consequently, Mr. Belfiore's pipes are unusually susceptible to clogging.

The purchasers of Freshmates addressed in plaintiff's class Complaint thus fall broadly into two distinct groups, neither of which is remotely suitable for class certification.  The larger group – those purchasers who did not experience plumbing problems while using the product – suffered no injury.  The smaller group – those who did experience problems – present individualized causation questions that are incapable of resolution based on common proof.  In either case, class certification is inappropriate.

The remaining barriers to class certification are no less insurmountable.  Typicality is lacking because Mr. Belfiore is not typical of the proposed class.  He certainly is not typical of purchasers who did not experience a plumbing problem; and he is not even typical of those who did.  In fact, no purchaser who experienced a problem is typical because each such problem raises an individual causation issue.  Moreover, because not all purchasers of Freshmates share a common experience, commonality is also lacking.

For related reasons, Mr. Belfiore is not an adequate class representative.  Because the cause of his clog is disputed, his own case raises unique factual and legal issues that would

2

distract from his representation of the class.  His adequacy as a class representative is also undermined by the fact that he does not recall – and kept no record of – the price he paid for Freshmates; as a result, he is in poor position to pursue his counsel's "price premium" damages theory.

Mr. Belfiore's failure to keep a record of his purchase underscores another problem – the class is not ascertainable.  P&G does not sell Freshmates directly to consumers and there are no comprehensive records showing who purchased Freshmates at the retail stores where they are sold.  Like Mr. Belfiore, most purchasers are likely to lack objective proof – or even a concrete memory – of their purchases and the amounts they paid.  For all of these reasons, Mr. Belfiore cannot satisfy the requirements of Rule 23(a).

Nor can he satisfy the requirements of Rule 23(b).  Common issues do not predominate because purchasers of Freshmates who did not experience a plumbing problem were not harmed by their purchase, and those who did experience a problem will not be able to rely on common proof to show that Freshmates caused the problem.  Individualized issues will also predominate on the question of whether individual class members were deceived by the "flushability" claim. The claim was true for purchasers who did not experience a plumbing problem, so they were not deceived.  As for purchasers who did experience a plumbing problem, they could not have been deceived unless Freshmates actually caused their problem.  Similarly, whether the "flushability" claim is "material" to each class member's decision to purchase the product raises individualized issues, because a consumer may choose to purchase Freshmates for reasons having nothing to do with the "flushability" claim.  Materiality therefore cannot be demonstrated through common evidence.  The absence of common proof of materiality also defeats counsel's theory that all

3

purchasers, even those who did not experience plumbing problems, paid a "premium" price based on the flushability claim.

## FACTUAL BACKGROUND

### A.    Mr. Belfiore's Home Plumbing Problem

Anthony Belfiore is a resident of Great Neck, New York, who owns a 90-year-old house with a poorly-maintained sewer connection.  Sometime in March 2014, Mr. Belfiore found that the toilet in his basement had backed up.  He called Louis Sudberg, a long-time personal friend who is an unlicensed plumber.  Mr. Sudberg had on numerous past occasions performed – at no charge – various plumbing services at Mr. Belfiore's home, including dealing with toilet clogs.[1]

Mr. Sudberg attempted to clear Mr. Belfiore's downstairs toilet using a toilet plunger and auger but was not successful.  He then removed the basement toilet and ran an electric snake from the toilet to the house's main trap, and then from the trap to the sewer line.  When he retrieved the snake, he found a mixture of sludge, grease and "wipes" wrapped around the wire.  Dean Dec. Ex. B at 23-29.  The "wipes" were soiled and unidentifiable by brand or type; once removed, they were thrown away.  *Id.* Exs. A at 81-82; B at 30.  After the snaking process was complete, the backup was resolved.  *Id.* Ex. A at 82.  Mr. Sudberg did not run a camera down the pipes or otherwise examine their condition.  Nor did he or Mr. Belfiore take any photographs or make any other record of the removed material.  *Id.* Ex. B at 18, 35-36.

Consistent with his usual practice, Mr. Sudberg did not give Mr. Belfiore a bill that day for the work he did to resolve the clog.  Dean Dec. Ex. A at 83-84.  However, sometime thereafter he provided a bill for his services in the amount of $526.83.  Mr. Belfiore – who had

---

[1] *See* Dean Dec. Exs. A at 67-69; B at 18-19.  Mr. Belfiore's toilets became clogged and required "augering" approximately once a year.  *Id.* Ex. A at 67; E at No. 2.  Mr. Belfiore believes these clogs were caused by toilet paper.  *Id.* Ex. A at 69.

never had to pay his friend Mr. Sudberg for the frequent plumbing services the latter provides

him – has not paid this bill.  Nor has he been pressed to do so, although Mr. Sudberg has since

returned to Mr. Belfiore's house to perform other plumbing tasks.  *Id.* Exs. A at 85-86; B at 14.

As of the date of Mr. Belfiore's deposition in this case (December 18, 2014), Mr. Belfiore had

not sustained any out-of-pocket loss attributable to the March 2014 clog.  *Id.* Ex. A at 85-86.

      **B.**      **Use of Wipes in the Belfiore Home**

A few weeks before the March 2014 plumbing incident, Mr. Belfiore had purchased a

package of Charmin Freshmates Flushable Wipes at a local store.  It was a spur-of-moment

decision; he had not gone to the store intending to buy Freshmates and was not personally

familiar with the product.  Dean Dec. Ex. A at 27.  Mr. Belfiore does not know how much he

paid for the package.  He did not keep a receipt for the purchase.  Nor does he have the original

packaging or any other tangible evidence of exactly what he purchased (including the number of

wipes in the package), when he purchased it, or what he paid for it.  *Id.* at 31-32, 46.

After Mr. Belfiore bought Freshmates, he placed the package of wipes in the upstairs

bathroom of his house, where he and his wife used them periodically.  Dean Dec. Exs. A at 43-

44; C at 28.  After the March 2014 clog, they stopped using the product, throwing away the

package and the remainder of its contents.  *Id.* Ex. A at 45-46.

Mr. Belfiore and his wife both testified that they had not personally flushed other wipes

in their home.  Dean Dec. Exs. A at 51-52; C at 35-37.  However, they have several young

grandchildren, and their daughters visit their home with the grandchildren several times each

week.  Both of their daughters use baby wipes (which are not flushable) on these visits, and

while neither Mr. Belfiore nor his wife are aware of those baby wipes being flushed down the toilets in their home, neither could say for sure that no one had done so.[2]

### C.      The Causes of Mr. Belfiore's Plumbing Problem

In December 2014, after Mr. Belfiore filed his Complaint in this case, attributing his March 2014 clog to Charmin Freshmates, P&G retained a plumbing expert, Terence O'Shea, to inspect the pipes in Mr. Belfiore's home.  Mr. O'Shea, a master plumber with 33 years of experience, ran a video camera attached to a "push rod" through the same pipes (on either side of the trap and out to the sewer line) that Mr. Sudberg had snaked earlier.  O'Shea Dec. ¶¶ 7-9.[3] Mr. O'Shea found that these pipes – which appeared to date back to the original construction of the house in the 1920s – were in poor condition.  *Id.*  The inner surfaces were covered with protruding scales of coarse rust, and there were tree roots growing in several of the pipe joints. *Id.* ¶¶ 7-8.  Moreover, portions of the pipes were made of terra cotta sections that were no longer properly aligned, creating additional locations where material could easily snag.  *Id.* ¶ 8.  As Mr. O'Shea explains in his declaration, these problems, taken together, made Mr. Belfiore's system unusually susceptible to clogging.  *Id.* ¶¶ 11-12.

During the course of his inspection, Mr. O'Shea also observed two objects, including one wipe caught on the uneven surfaces and protrusions in the pipes.  O'Shea Dec. ¶¶ 9-10. Although the objects could not be definitely identified, the embossed pattern on the wipe makes clear that it is not a Freshmates wipe, and instead appears to be a non-flushable cleansing wipe.

---

[2] Dean Dec. Exs. A at 125; C at 29, 37.  Mr. Belfiore and his wife have also used other kinds of pre-moistened wipes in and around their home for non-personal uses, including cleaning up after their dog.  They both deny having flushed those wipes down the toilet.  *Id.* Exs. A at 40-43; C at 23-24.

[3] A recording was made of this examination, and images extracted from the recording are appended Mr. O'Shea's report.  The full recording has been made available to plaintiff.

Sabaliunas Dec. ¶¶ 9-11.  It is essentially impossible for the wipe in the video images taken in December to be a Charmin Freshmates wipe that the Belfiores flushed in February or March 2014, as any such item snagged in the pipe for nine or more months could not possibly have still been in the condition of the wipe seen in December.  *Id.* ¶ 12.

      **D.**     **Consumer Experiences with Charmin Freshmates**

Charmin Freshmates is a pre-moistened nonwoven paper product that is designed and sold for personal hygiene use in the bathroom.  It can, after use, be safely flushed down the toilet if used as directed.  It has been extensively tested for its "flushability" according to established industry standards and is labeled accordingly.  P&G does not manufacture or sell an equivalent "wipe" product that is not flushable.  Sabaliunas Dec. ¶¶ 7-8; Otero Dec. ¶¶ 2-3.

Mr. Belfiore is not the only person who has ever claimed a causal link between a home plumbing issue and Charmin Freshmates, but such complaints are extraordinarily rare.[4] According to data maintained by The Nielsen Company, tracked retailers in four major markets located at least partly in New York State sold approximately █████ units of the product between January 2011 and June 2014.  During that same time period P&G received only *fourteen* complaints from consumers in New York concerning the product's flushability – corresponding

---

[4] Plaintiff's Complaint includes extensive discussion of news reports concerning some municipal sewage treatment systems that have reported problems with "wipes" flushed by consumers.  Mr. Belfiore does not claim that his own municipal system has suffered any such impacts, much less that he has been personally injured by them.  Notably, moreover, these (hearsay) reports of impacts on municipal treatment systems from "wipes" do not purport to distinguish between flushable wipes like Freshmates that are specially designed for disposal through flushing and the many other wipes (including, most notably, baby wipes) that are not made to be flushable, are not labeled as such, but are nonetheless often flushed by consumers.  *See* Gooch Dec. ¶¶ 4-6.

to approximately ███ percent of total sales.  *See* Bush Dec. ¶ 5; Richards Dec. ¶ 5.

Complaints by purchasers elsewhere in the country are similarly rare.  Bush Dec. ¶ 5.[5]

P&G has received extensive positive feedback from customers about Charmin Freshmates, including many unsolicited testimonials.  Bush Dec. ¶ 6.  Notably, sales have remained steady over time and have even increased, *see* Richards Dec. ¶ 6, confirming that most customers have good experiences with the product and continue to buy and use it.

In short, a tiny handful of customers have claimed to have experienced problems with the flushability of Freshmates wipes.  But the overwhelming majority of buyers value the product, have experienced no such problems, and have come back to buy and use it repeatedly.

### E.  Mr. Belfiore's Complaint

Mr. Belfiore filed his Complaint in this action on May 23, 2014 asserting a single cause of action under New York General Business Law Section 349 ("Section 349").  The case was timely removed to this Court on July 1, 2014.  On December 12, 2014, the Court directed that P&G file this motion to deny class certification simultaneously with plaintiff's motion to certify a class.  Dkt. No. 40.[6]

Mr. Belfiore's Complaint offers only limited allegations bearing on class certification issues.  The Complaint alleges a class consisting of "All persons and entities residing in the State of New York who, at any time within the applicable [3-year] statutes of limitations (the "Class Period"), purchased Charmin Freshmates flushable wipes."  Complaint ¶ 51.  The Complaint

---

[5] It is physically possible for even a fully flushable wipe (or even toilet paper, for that matter) to create clogs if used in excessive volumes or if the customer's pipes are full of protuberances and obstructions, as Mr. Belfiore's were.  O'Shea Dec. ¶¶ 5, 7-8.  Mr. Belfiore himself had experienced clogged toilets repeatedly before he ever purchased Freshmates.  *See* p. 4 above. Clogs that customers attribute to Freshmates are extremely rare, however.

[6] *See also* Order, Mag. J. Levy, Jan. 13, 2015 (maintaining simultaneous briefing but extending schedule).

asserts two types of alleged injury to class members: (a) costs incurred as a result of clogged household pipes (such as the one experienced by Mr. Belfiore) and (b) an allegedly unjustified "premium" element of the price that class members paid for the product because it was advertised as "flushable." *Id.* ¶¶ 51-53.  This premium, the Complaint alleges, was improper because the product is not actually flushable.  *Id.* ¶ 53.  However, the Complaint does not (and cannot) allege that all – or even most – members of the proposed class experienced actual problems in flushing Freshmates wipes.

      With respect to Mr. Belfiore's own personal experience, the Complaint sets out the outlines of the March 2014 incident (albeit omitting some important details, such as the fact that Mr. Belfiore had not incurred any out-of-pocket costs associated with that incident).  Mr. Belfiore provided more information in his deposition.[7]  On the question of class certification, Mr. Belfiore was asked what he was seeking through his efforts to represent a class.  He responded that he was seeking recompense for other people who also experienced clogged pipes after purchasing Freshmates.  Dean Dec. Ex. A at 98-99.  He offered no complaint about the price he had paid; rather, his focus was solely on his belief that the product caused the need for expensive repairs to clogged pipes.[8]

---

[7] Mr. Belfiore's wife, Allison, was also deposed, but she disavows any knowledge of Mr. Belfiore's purchase of Freshmates or the alleged clog.  She was not home when the incident occurred.  Dean Dec. Ex. C at 41-43.

[8] Dean Dec. Ex. A at 98-99 ("Q.  Is there any other harm to other people that you are trying to get relief for, other than, other people who have also had plumbing problems?  A.  No.  I answered that question, didn't I?").  Obviously aware that the Complaint offers a different, and broader, theory of harm to a much larger class, plaintiff's counsel, on "cross-examination," encouraged Mr. Belfiore to amend this testimony.  Even leaving aside issues of admissibility, this effort did not materially alter the record.  *See Id.* at 124 ("Q.  [by plaintiff's counsel]  Do you have an understanding of whether, as part of the people you are representing in the class, you are representing people who purchased the flushable wipes who may have been charged more than for non-flushable wipes? [Objection from P&G's counsel] … THE WITNESS:  Can you read it back to me?  I got a little confused.  (Record read.)  A.  Yes.")  Indeed, in response to another (continued…)

**ARGUMENT**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks and citation omitted); *Goodman v. Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90, 100 (E.D.N.Y. 2014). A case cannot be certified as a class action unless it meets all the prerequisites of Rule 23(a) – commonly referred to as "numerosity," "commonality," "typicality," and "adequacy" – and fits at least one of the prongs of Rule 23(b). *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Brown v. Kelly*, 609 F.3d 467, 475-76 (2d Cir. 2010); *Teamsters Local 445 Freight Div. v. Bombardier*, 546 F.3d 196, 201-02 (2d Cir. 2008).

The party seeking class certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (same). Class certification must be denied if a plaintiff fails to meet his burden of satisfying each and every element of Rule 23. *Comcast*, 133 S. Ct. at 1432 (2013); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

The fact that this is a motion to *deny* class certification does not change the burden of proof here; that burden still rests with the plaintiff. *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010). Instead, P&G's burden in this motion is simply to make a prima facie showing – comparable to that made by a defendant in moving for summary judgment – that the plaintiff cannot satisfy one or more of the required elements under Rule 23. Because class certification

---

question from his counsel, Mr. Belfiore testified that he would buy Freshmates again if the product was altered to make it genuinely flushable. *Id.* at 122. He did *not* testify that he would buy it again if it simply cost less.

must be denied if even *one* required element of Rule 23 is lacking, P&G need not address each and every element here and, accordingly will not attempt to do so.[9]

## I.      MR. BELFIORE CANNOT SATISFY THE REQUIREMENTS OF RULE 23(A).

### A.      Mr. Belfiore is Not Typical of the Class He Seeks to Represent.

Rule 23(a)'s typicality requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown*, 609 F.3d at 475. "The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Spagnola*, 264 F.R.D. at 93 (internal quotation marks and citation omitted). If unique defenses are present, typicality is not satisfied and certification is inappropriate. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).

Mr. Belfiore's claim, as he personally sees it, is straightforward: He believes the Freshmates he bought were not flushable because they caused his clog, and he wishes to represent a class of other New York purchasers of Freshmates who suffered similar clogs. Dean Dec. Ex. A at 98. His counsel, however, have other ideas – they seek certification of a class consisting of *all* New York residents who bought Freshmates, the vast majority of whom have never suffered a plumbing problem from the product and for whom the product has never been anything but "flushable." Mr. Belfiore is plainly not typical of this larger class. Nor can he satisfy the Rule 23 typicality requirement for the much smaller group that he personally believes he is seeking to represent.

---

[9] P&G reserves the right to respond to all arguments made by plaintiff in support of his affirmative motion for class certification, which is to be filed simultaneously with this motion.

> 1.     **Mr. Belfiore Is Not Typical of the Large Majority of His Proposed Class Who Have Had No Difficulty in Flushing Freshmates.**

Plaintiff does not claim – and certainly cannot prove – that *all* New York purchasers of Freshmates (the proposed class) suffered problems with their plumbing attributable to Freshmates or were otherwise unable to flush the product.  Mr. Belfiore's alleged injury – the clog in his system and resulting need for plumbing work – is one that the vast majority of the proposed class has never suffered.  Mr. Belfiore's claim will do nothing to advance the non-existent claims of absent class members, and is therefore atypical.  *See Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (plaintiff claiming damages for medical expenses not typical because most class members did not incur such expenses).  Plaintiff's counsel have attempted to deal with this problem by arguing that *every* purchaser of Freshmates paid an unjustified "premium price" for a flushable product.[10]  The apparent theory is that the price of the product reflects the fact that it is advertised as "flushable," and since it is *not* flushable (they argue), that price is therefore too high.  This is, in essence, an argument that customers do not get the benefit of their bargain – they pay for a product with a valuable attribute (flushability) and what they receive does not have that attribute.

False advertising cases often rest on a theory that purchasers are led to overpay for a product through a misrepresentation that the product possesses qualities it does not actually have.  The problem with such a theory as applied in *this* case is that its premise – that the product is not actually flushable – is demonstrably incorrect for the overwhelming majority of class members.  A purchaser for whom the product or service works as advertised cannot have paid an unjustified

---

[10] *See* Dkt. No. 19 at 2 ("Every New York consumer who purchased Freshmates was damaged by virtue of having purchased the product at the price they paid (representing a premium over non flushable products.)").

price premium. *See Spagnola v. The Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (plaintiff's

receipt of adequate insurance coverage was fatal to his overpayment claim under § 349);

*Orlander v. Staples, Inc.*, 2014 WL 2933152, at *8-9 (S.D.N.Y. June 30, 2014) (no benefit of the

bargain injury because "plaintiff received the benefit of his bargain: the ability to have his

computer repaired or replaced if a problem arose"); *Sokoloff v. Town Sports Int'l, Inc.*, 778

N.Y.S.2d 9 (1st Dep't 2004) (dismissing plaintiff's § 349 claim where he received the benefits

set forth in his gym contract).[11]

In an ordinary false advertising case, a product has been advertised as having a

characteristic *that it demonstrably does not have for any class member*. A cooking oil, for

example, is either "100% Pure Olive Oil" or it is not. *See Ebin v. Kangadis Food Inc.*, 297

F.R.D. 561 (S.D.N.Y. 2014). The truth or falsity of the advertised claim does not depend on the

experience of each individual user – the oil is not 100% pure for some and only 50% pure for

others. If the oil contains only 50% olive oil, *all* purchasers of the product are injured because

*all* of them paid a premium for something they did not get. The situation here is different

because the advertised characteristic that plaintiff claims was absent for himself – flushability –

was fully present for most class members. They did not pay a "premium" for an attribute they

did not receive. Mr. Belfiore is therefore not typical of most class members.

*Pagan v. Abbott Laboratories, Inc.* is instructive on this point. *Pagan* involved a recall of

a powdered infant formula that was potentially contaminated with insect parts. Plaintiffs sued

under Section 349 based on the defendant's alleged failure to warn consumers of the dangers

---

[11] *Accord: Cabral v. Supple, LLC*, 2013 U.S. Dist. LEXIS 184170, at *5 (C.D. Cal. Feb. 14, 2013) ("[Defendant] is correct that a consumer protection suit will not lie where a plaintiff actually receives the benefit of the bargain.") (citation and quotation marks omitted); *Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (satisfied users who benefited from product have "no injury and no standing to sue.").

associated with consuming the product.  The named plaintiffs claimed two forms of damage:

(1) payment of a "premium price" for products they would not have purchased had they known

of the potential contamination, and (2) personal injuries sustained by their children as a result of

consuming contaminated formula.  287 F.R.D. at 142.  They sought to represent all New York

residents who purchased recalled products.  *Id.* at 143.

The district court denied class certification on several grounds, including plaintiffs'

failure to demonstrate typicality.  The court observed that only a small percentage of recalled

products were actually contaminated.  Consumers who purchased products that did not contain

insect parts were not injured because they received the benefit of their bargain.  Consequently,

the named plaintiffs failed to demonstrate that their claims were typical:

> Plaintiffs' underlying claim – "that SIMILAC products were
> adulterated with contaminants, including insect/beetle particles and
> larvae" – does not cover most of the potential class members.  In
> fact, based on the evidence available to the Court, almost all of the
> class members would have actually purchased non-contaminated
> Similac products.  As such, it appears that the majority of the
> putative class members received exactly what they paid to receive
> and, thus, cannot now claim injury.  *In re McNeil Consumer*
> *Healthcare*, 877 F. Supp. 2d 354, 270-74 (E.D. Pa. 2012).

> *            *            *

> The Plaintiffs have also not satisfied the typicality requirement of
> Rule 23(a)(3) for many of the [same] reasons that the commonality
> requirement has not been met. . . .  Specifically, the claims of the
> Plaintiffs do not sufficiently relate to those of the proposed class,
> as the majority of the class members would not have purchased
> Similac product that contained beetle parts.  Therefore, whereas
> the [named] Plaintiffs seek damages for medical costs and pain and
> suffering, most of the members of the class would not have
> incurred these kinds of expenses.

*Pagan*, 287 F.R.D. at 149-50.

Under the same analysis, plaintiff cannot demonstrate that Mr. Belfiore's claims are

typical of the proposed class in this case.

### 2. Mr. Belfiore Could Not Satisfy the Typicality Requirement Even for a Smaller Class of Purchasers Who Did Have Genuine Difficulty in Flushing Freshmates.

Even if the class definition were cut back dramatically to include only persons who allegedly experienced actual plumbing problems as a result of using Freshmates, Mr. Belfiore could not satisfy the Rule 23(a) requirement of typicality.[12]

*First*, claims that require detailed fact-specific determinations on issues such as causation are inherently unsuitable for class treatment; no individual's claim is "typical." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 399 (S.D.N.Y. 2008) (no typicality where medical causation issue raised "insurmountable" individualized questions); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (no typicality where alleged contamination of each plaintiff's soil arose "through a factually unique set of circumstances."); *see generally In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 165 (2d Cir. 1987) ("The relevant question, therefore, is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom.  That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (e.g. state of health, lifestyle) and the nature of their exposure to Agent Orange.").

Mr. Belfiore claims that his March 2014 clog was caused by the Freshmates wipes that he and his wife had flushed, but this will be a disputed issue that will require resolution by the trier of fact with due consideration of facts specific to Mr. Belfiore himself, including the extensive defects in his home's plumbing and the long history of clogs at the house even before he

---

[12] It is far from clear that he could satisfy the separate numerosity requirement under Rule 23(a) for such a limited group either.  To date, P&G has seen no evidence upon which plaintiff might seek to rely to make such a showing.  *See Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 506 (S.D.N.Y. 2011) (declining to certify subclass of New York tire purchasers on numerosity grounds where it was not yet clear how many purchasers actually experienced injury).

purchased Freshmates.  *See* O'Shea Dec. ¶¶ 7-8; Dean Dec. Ex. A at 67-68.  Indeed, Mr. Belfiore has admitted that the toilets in the house needed to be augered for clogs at least once a year (for reasons unrelated to Freshmates), and that his basement toilet has backed up in the past due to a problem with his pipes.  Dean Dec. Exs. A at 67, 72-73; E at Interrogatory No. 2.  He had not taken any steps to maintain the pipes during many years he had lived in the house, and was unaware of the tree roots that had grown into his pipes.  *Id.* Ex. A at 74.

There are also open factual questions about the extent to which the March 2014 clog might have resulted from people living in or visiting the house flushing *other* items, such as baby wipes, that were not designed to be flushable.  Mr. Belfiore and his wife both deny having flushed anything other than toilet paper, but their son also lives in the house, and their daughters and young grandchildren visit several times a week.  Dean Dec. Exs. A at 15-16; C at 16.  The fact that *someone* has flushed *something* down the toilet in the Mr. Belfiore house other than the Freshmates used in February and March 2014 is confirmed by the presence during Mr. O'Shea's examination of a wipe-like object that had an embossed pattern, along with a second object that resembles a tampon.  Sabaliunas Dec. ¶ 9-13; O'Shea Dec. ¶¶ 9-10.  Neither of these objects could possibly be a Freshmates disposed of nine months earlier.  Sabaliunas Dec. ¶¶ 11-13.

These individual fact issues concerning the cause of Mr. Belfiore's clog render his claim unsuited for class-wide resolution.  *See In re Fosamax*, 248 F.R.D. at 399-400; *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 300 (N.D. Ohio 2001) (no typicality where resolving whether defendant's product was the actual and proximate cause of each plaintiff's injury would require individualized inquiries).  At a minimum, the fact that items other than Freshmates were found in his pipes creates significant questions about Mr. Belfiore's credibility, a factor that also weighs heavily against any finding of typicality and adequacy of representation.  *Kline v. Wolf*, 702 F.2d

16

400, 403 (2d Cir. 1983) (where named plaintiff's "testimony on an issue critical" to the cause of

action is subject to attack, a district court may conclude that plaintiff lacks credibility and

therefore cannot adequately represent the class); *Koenig v. Benson*, 117 F.R.D. 330, 338

(E.D.N.Y. 1987) (finding named plaintiff atypical because of unique defense and inadequate

because of credibility issues and noting that "in the Second Circuit a proposed class

representative can be ruled inadequate under Rule 23(a)(4) if he is vulnerable to attacks on his

credibility concerning the key facts at issue in the case.").

*Second*, there is a serious question as to whether Mr. Belfiore has standing to pursue

damages relating to the March 2014 clog.  He claims damages in the amount of over $526 and

proffers a bill to prove it, but that bill was given to him after the fact (perhaps in support of this

lawsuit) by a personal friend who has never charged him on any other occasion for plumbing

services performed on Mr. Belfiore's behalf.  Mr. Belfiore admits that he has not paid the bill

and has not been pressed to do so.  Dean Dec. Ex. A at 85-86.  These facts do not support the

presence of recoverable "damages."  *See Bentley v. Verizon Bus. Global, LLC*, 2010 WL

1223575, at *5 (S.D.N.Y. Mar. 31, 2010) (named plaintiff could not seek "restitution for

amounts paid," because she "did not pay the charges" and was therefore atypical) (citing

*McClain v. S.C. Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997) (affirming denial of class

certification because named plaintiff did not pay disputed bill and instead sought only

consequential damages due to adverse credit report)); *Ostrof v. State Farm Mut. Auto. Ins. Co.*,

200 F.R.D. 521, 530 (D. Md. 2001) (finding named plaintiff atypical because he "would be

subject to the defense that he has in fact not been required to pay the amount denied him by State Farm. . . .").[13]

At a minimum, the existence of disputes on these issues, specific to Mr. Belfiore, that will require resolution by the finder of fact, is alone sufficient to preclude a finding that he is "typical" of any proposed class of people who *did* incur out-of-pocket costs from plumbing clogs that *were* caused by Freshmates.  A named plaintiff does not meet the "typicality" requirement of Rule 23(a)(3) if his claim is "subject to a unique defense which could potentially become the focus of the litigation."  *Pagan*, 287 F.R.D. at 146 (internal quotation marks and citation omitted).  "The defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense."  *Hallet v. Li & Fung, Ltd.*, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (internal quotation marks and citation omitted).  Here, the existence of unique issues that must be resolved in evaluating Mr. Belfiore's personal claim precludes a finding of typicality.

## B.   Commonality Cannot Be Established for the Proposed Class.

For many of the same reasons that Mr. Belfiore's claim is not typical of the proposed class, his Complaint fails to present issues that satisfy Rule 23(a)'s requirement of commonality.

To satisfy the commonality requirement, a plaintiff must demonstrate the existence of at least one "common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  None of the allegedly "common" questions identified in paragraph 60 the

---

[13] At his deposition, Mr. Belfiore suggested that he would like his friend's bill to "be taken care of" by P&G.  Dean Dec. Ex. A at 97-98.  But he admits that he has not paid the bill himself or been pressed to do so.

Complaint satisfy this requirement, because none of them would "drive the case forward for every class member" on the basis of common evidence. *Oakley v. Verizon Commc'ns Inc.*, 2012 WL 335657, at \*13 (S.D.N.Y. Feb. 1, 2012).

All but one of the allegedly common questions listed in the Complaint relate to whether Freshmates are, in fact, "flushable." Complaint ¶ 60. The question of whether the product was in fact "flushable" cannot be resolved (at least not in plaintiff's favor) "in one stroke" based on common evidence. Regardless of whether Freshmates were or were not flushable for Mr. Belfiore himself, they are flushable for the vast majority of the proposed class, as evidenced by the fact that P&G has only received flushability-related complaints from fourteen New York purchasers, which represents about ███ percent of sales in the four major markets that include New York. *See* Bush Dec. ¶ 5; Richards Dec. ¶ 5. The remaining question – whether P&G violated Section 349 – presents a *legal* issue that does not constitute as a common question as a matter of law. *See Wal-Mart Stores*, 131 S. Ct. at 2551 (the commonality requirement does "not mean merely that [plaintiffs] have all suffered a violation of the same provision of law.").

The absence of commonality is well-illustrated by the New York Appellate Division's decision in *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50 (1st Dep't 2004). The plaintiff in that case brought suit under Section 349 based on defendant's alleged failure to deliver on its promise of faster internet speeds. Plaintiff sought to represent all purchasers of defendant's internet service. The court held that injury could not be shown on a class-wide basis because internet speeds are dependent on a variety of factors besides the defendant's product. These individualized problems meant that injury could not be resolved on a class-wide basis. The court explained,

> As to proof of injury, individual trials would be required to determine which plaintiffs experienced either slower than

19

> advertised Internet download speeds or connectivity outages and
> the nature, cause and extent of those adverse experiences.  It is
> uncontested, for example, that DSL speed is dependent on a
> number of factors, including the subscriber's own computer and
> network elements that are unrelated to the service itself, such as the
> server on which the website sought to be accessed resides.

*Solomon*, 777 N.Y.S.2d at 56.  Other cases are in accord.[14]

Nor is there any basis for determining "in one stroke" whether class members paid an

unjustified premium for the advertised flushability of Freshmates.  To begin with, plaintiff has to

date not identified any evidence demonstrating that such a premium exists, much less that it is

the same for everyone.  Moreover, even if customers did pay a premium for flushability, whether

any such premium was *unjustified* merely circles back to the question of whether the product was

in fact flushable, and that is not an issue that can be resolved (at least not in plaintiff's favor) "in

one stroke" based on common evidence.

The lengthy references in plaintiff's Complaint to alleged problems that some municipal

sewage treatment systems have attributed to "wipes" does not change this conclusion.  Indeed,

these references ultimately have nothing to do with the issues in this case.  Even Mr. Belfiore

himself has not claimed that his decision to buy Freshmates was motivated by concerns about

what would or would not pass effectively through the sewage treatment facility serving Great

---

[14] *See Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201 (W.D. Tex. 2004) (purchaser of
allegedly hazardous treated wood product could not demonstrate commonality due to "property-
specific factors" that would impact whether or not the treated wood might actually cause harm,
including "the climate where the wood is in service; the precipitation to which the wood is
exposed; the acidity of the precipitation; the type of surface water to which the wood is exposed;
the type of structure; the size and location of the lumber on the structure; the use of the structure;
the existence and amount of sawdust from installation; the length of time in service; and the
presence of surface treatments."); *Wethington v. Purdue Pharma LP*, 218 F.R.D. 577, 588 (S.D.
Ohio 2003) (purchaser of allegedly hazardous pain medication could not demonstrate
commonality due to individualized issues, including the "dosage, use and manner of
administration of the drug, individual and family medical and psychological histories, level of
personal awareness regarding the purported risk and medical reasons for use.") (internal
quotations marks and citation omitted).

20

Neck.[15]  His concern was whether the product could be flushed down the toilet *in his house*; he

now believes it could not and bases his claim on that belief.  This Court has already noted that

this case will not "proceed based on alleged municipal injury."  Dkt. No. 23.  In any event, even

if some New York residents would be dissuaded from buying Freshmates if they knew of the

complaints about "wipes" from municipalities in Orange County, California or Vancouver,

Washington (*see* Complaint ¶¶ 25-26), this is not a concern common to the class or a basis for

proving plaintiff's claims on a class-wide basis.

### C.    Mr. Belfiore Is Not an Adequate Class Representative.

Rule 23(a) also requires proof that the named plaintiff "will fairly and adequately protect

the interests of the class."  Mr. Belfiore is unable to satisfy this requirement, for several reasons.

Mr. Belfiore's inability to show that he is a typical member of the proposed class bears

directly on his adequacy as a class representative.  A named plaintiff is an inadequate class

representative if there are material issues bearing on his claim that are unique to him, thus

distracting attention from the class claims.  *See Gary Plastic Packaging Corp. v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the

issue is framed in terms of the typicality of the representative's claims or the adequacy of its

representation, there is a danger that absent class members will suffer if their representative is

preoccupied with defenses unique to it."); *Pagan*, 287 F.R.D. at 150 (citing *Brown*, 609 F.3d at

479 (named plaintiffs cannot adequately represent the class if their case "involves a host of legal

---

[15] Nor has plaintiff claimed that his local facility has encountered any of the kinds of problems
discussed in the complaint.  For that matter, plaintiff has not identified any system anywhere in
the country that has demonstrated a causal connection between its problems and Charmin
Freshmates – a product that is specially designed to be flushable – as opposed to the numerous
other "wipes" products in the marketplace that are *not* so designed but that consumers flush
anyway.  Gooch Dec. ¶¶ 4-5.  Some localities have mounted special public education campaigns
that specifically target the improper disposal of baby wipes.  *Id.* ¶ 6.

and factual issues unique to them and that are likely to distract from their representation of the class.")).  Mr. Belfiore's unique issues, including the fact that he has not incurred any out-of-pocket loss, as well as significant questions about the actual cause of his clogging incident, make him an inadequate class representative.  In *Pagan*, for example, the named plaintiffs were deemed inadequate class representatives because the issue of whether their injuries "were actually caused" by defendants' product was a critical part of determining whether the defendant was liable for their injuries.  *Pagan*, 287 F.R.D. at 150.

To the extent plaintiff contends that certification should be granted based on a "price premium" theory, Mr. Belfiore is an inadequate class representative for another reason:  he does not know the price he himself paid for the product.  He has no receipt and no specific recollection of the price; he only guesses that he "paid between four and five bucks, something like that."  Dean Dec. Ex. A at 31.  Where a named plaintiff lacks personal knowledge or other competent evidence of a fact critical to his own claim, he cannot be an adequate representative for a class of people pursuing similar claims.

Mr. Belfiore is also an inadequate class representative because he is not in a position to fulfill his responsibility to take an active role in directing and participating in the litigation.  *Spagnola*, 264 F.R.D. at 95 (class representative must "have adequate knowledge of the case" and be "actively involved."); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) (named plaintiff must provide "assurance of vigorous prosecution.") (internal quotation marks and citation omitted).  To the extent his *counsel* seek to pursue this case as one about a hypothetical "premium" paid by hundreds of thousands of class members who never suffered any actual ill effects from using Freshmates, that is not Mr. Belfiore's own view of the case.  *See* p. 9 above.  He was clear in his deposition that, even though he may not have paid his

22

friend's "bill," his chief priority in this case is obtaining payment for the cost of actual plumbing problems – a consideration that is of no concern to the majority of the proposed class members, who incurred no such problems or costs.  Dean Dec. Ex. A at 97-98.  *See Spagnola*, 264 F.R.D. at 96 (finding named plaintiff inadequate representative where his deposition testimony introduced legal theories and understanding of the facts that conflicted with plaintiff's own complaint, thus raising credibility and adequacy concerns); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 251 (2d Cir. 2011) (finding that plaintiff who possessed a claim for substantial monetary damages as well as a lesser claim of nominal value could not adequately represent class members who possessed only the latter type of claim).[16]

## II.   THE PROPOSED CLASS IS NOT ASCERTAINABLE.

The Second Circuit, like other courts, recognizes that Rule 23 contains an implied requirement of ascertainability.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 30; *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see also Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 401 (W.D.N.Y. 2013).

For a class to be ascertainable, the class definition must be based on "objective criteria," *and* it must be "administratively feasible" to identify class members without conducting "a mini-

---

[16] There is also a question about Mr. Belfiore's physical ability to satisfy his obligations as a class representative.  He was unwilling to travel a few miles into New York City for his deposition, citing a disability that prevented even modest travel similar to that required to attend a session of this Court.  Dean Dec. Ex. D.  When asked about the extent and nature of this disability in his deposition, Mr. Belfiore identified a work-related back injury that had forced his early retirement.  *Id.* Ex. A at 9.  He testified that this disability would make it difficult for him to sit through a trial.  *Id.* at 10.  These limitations would compromise his ability to assist counsel and perform his obligations as a class representative.  *See, e.g., Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) (holding class representative, "due to his poor health, is unfortunately without the ability to take a sufficiently active and directing role in this litigation," and therefore could not adequately represent the class); *In re Telectronics Pacing Sys., Inc.*, 168 F.R.D. 203, 218 (S.D. Ohio 1996) (finding inadequate a class representative that was unable to travel in order to participate in the litigation).

hearing on the merits of each case." *Charron v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  Class members must be ascertainable to protect the due process rights of both absent class members and the defendant. The ascertainability requirement ensures that class members can be identified "in a manner consistent with the efficiencies of a class action." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013).  It is also important to ensure compliance with the notice requirement of Rule 23(c)(2)(B), which protects due process rights of absent class members by giving them an opportunity to opt out and not be bound by any judgment.  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012).  For a class certified under Rule 23(b)(3), such notice ordinarily must be given personally to each individual class member.  *Id.*; *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).  This in turn requires an administratively feasible method of *identifying* class members.

Plaintiff's proposed class, consisting of all New York residents who have purchased Freshmates, is not ascertainable.  Plaintiff's class definition is based on a "purchase" by a "New York resident" within the class period, however, there is no administratively feasible means of identifying the consumers who purchased Freshmates in New York.  In most class actions, a defendant or third party possesses transaction records from which class members can be reliably identified.  But where – as here – such records do not exist and there is no other reliable method to identify class members, class certification is properly denied.[17]

---

[17]  *See Marcus*, 687 F.3d 583; *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679 (S.D. Fla. 2014); *Stewart v. Beam Global Spirits & Wine, Inc.*, 2014 WL 2920806 (D.N.J. June 27, 2014); *Karhu v. Vital Pharm., Inc.*, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014); *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014).

P&G does not sell Freshmates directly to consumers and does not have any records of consumer purchases.  *See* Richards Dec. ¶ 2.  Rather, P&G, through its subsidiary, sells Freshmates to retailers or wholesalers that handle the distribution and sale to consumers on their own.  *Id*.  Accordingly, P&G's internal data cannot be used to identify class members.  *See Marcus*, 687 F.3d at 593-94 (noting that "courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails.").

Nor will plaintiff be able to identify class members through records maintained by non-party retailers.  *See Randolph,* 303 F.R.D. at 690 (plaintiff seeking to rely on retailer data bears the burden of producing "sufficient evidence to show that such records can be used to identify class members") (internal quotation marks and citation omitted).  As far as P&G is aware, there is no database (or collection of databases) of third-party data that could serve to identify all (or even the substantial majority of) purchasers of Freshmates in New York.  *See* Richards Dec. ¶¶ 7-8.  Indeed, it is extremely unlikely that there is any database that identifies Mr. Belfiore's own purchase of Freshmates – the only evidence that exists of that purchase is Mr. Belfiore's own say-so.

Unless plaintiff can show the existence of a comprehensive source of data identifying who the members of his proposed class actually are, this alone should defeat class certification. *See Stewart*, 2014 WL 2920806, at *8; *see also Carrera*, 727 F.3d at 311-12 (class not ascertainable where plaintiff attempted to rely on combination of retailer data and consumer affidavits); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 441 (N.D. Cal. 2014) (rejecting reliance on data that reflected only 5% of relevant purchases and did not record the date or

25

location of purchase); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (finding class insufficient in absence of reliable data identifying class members).

This is not a case in which it would be appropriate, let alone legally permissible, to address the issue of ascertainability by permitting class members to self-identify.  To begin with, such an approach would not address the critical class notice issue – class members cannot come forward to identify themselves if they do not know about the suit, and the method provided under federal law for ensuring that they do know about the suit – personal notice – cannot be accomplished if no one knows who they are.

Even leaving aside the issue of notice, self-identification is not a practical option here. Such an approach is not suitable where, as here, most potential class members will not have retained proof of purchase, such as a purchase receipt.  Even the named plaintiff cannot produce a receipt.  Dean Dec. Ex. A at 31-32; *see Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) ("However beloved Snapple may be, there is no evidence to suggest that its consumers treat it like a fine wine and remove and save its labels."); *In re POM Wonderful LLC*, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) (class unascertainable because "[f]ew, if any, consumers are likely to have retained receipts during the class period."). Without receipts or similar proof of purchase there is no objective, manageable mechanism for confirming the identities of class members.

Attempting to prove class membership through affidavits from individual class members unsupported by any other proof of purchase would "amount to no more than ascertaining by potential class members' say so." *Marcus*, 687 F.3d at 594.  In addition to the possibility that consumers might submit untruthful statements, most are unlikely to remember the facts that would be necessary to determine class membership and prove their claims.  Each purported class

member would be required to remember, among other things, the specific product and quantity

purchased, the date and location of purchase, and the exact price paid (including whether a

coupon was used and how much of the purchase price was tax).  Mr. Belfiore himself is unable

to answer these critical questions with the needed precision; he does not even know how much

he paid.  Such "subjective memory problem[s]" preclude reliance on after-the-fact recollections

of these and other necessary details even apart from the risk of invention.  *See Jones v. ConAgra*

*Foods, Inc.*, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014); *Weiner*, 2010 WL 3119452, at

*13 ("[S]oliciting declarations from putative class members regarding their history of Snapple

purchases would invite them to speculate, or worse."); *In re Clorox Consumer Litig.*, 301 F.R.D.

at 441 (concluding that consumers' inability to remember the details of their product purchases

"is precisely why affidavits from consumers are insufficient to identify the class").[18]

In sum, because plaintiff will not be able to offer a workable and reliable way to identify

class members, plaintiff's proposed class is not ascertainable.  Class certification should be

denied for this reason alone.  *In re Clorox Consumer Litig.*, 301 F.R.D. at 442; *Karhu*, 2014 WL

815253, at *3; *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696, at *3 (N.D. Cal. Feb.

13, 2014).

---

[18] Moreover, P&G has a "due process right to challenge the proof used to demonstrate class membership."  *Carrera*, 727 F.3d at 307; *see also Karhu*, 2014 WL 815253, at *3 ("Accepting affidavits of [product] purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each putative class member.") (citing *McLaughlin v. Am. Tobacco Co.*, 552 F.3d 215, 232 (2d Cir. 2008)); *Xavier*, 787 F. Supp. 2d at 1090 (describing defendant's inability to cross-examine absent class members as improper and unjust). However, such a process would render the class action unmanageable.  *Karhu*, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014).

### III.    MR. BELFIORE CANNOT SATISFY THE REQUIREMENTS OF RULE 23(B).

In addition to satisfying each of the four criteria established under Rule 23(a) and

establishing that the proposed class is ascertainable, plaintiff must also satisfy the requirements

of one of the prongs of Rule 23(b).  Where, as here, the plaintiff seeks monetary relief,

certification may occur only under Rule 23(b)(3), and the requirements of that provision govern.

*Wal-Mart Stores*, 131 S. Ct. at 2257.  Plaintiff cannot satisfy those requirements here.

### A.    Common Issues Do Not Predominate.

Under Rule 23(b)(3), a party seeking class certification must show, *inter alia*, that

questions of law or fact "predominate over any questions affecting only individual members…."

The inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  The

predominance requirement is "far more demanding" than the commonality requirement under

Rule 23(a) and must be satisfied with evidentiary proof." *Id.*; *see Comcast*, 133 S. Ct. at 1432;

*Goodman*, 300 F.R.D. at 102 (predominance "is considered a more 'demanding criterion than the

commonality inquiry under Rule 23(a).'") (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247,

1252 (2d Cir. 2002)).

A plaintiff suing under Section 349 of the New York General Business Law must prove:

"first, that the challenged act or practice was consumer-oriented; second, that it was misleading

in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).  "Failure to establish that the elements of each

cause of action are subject to class wide proof is sufficient grounds for denying class

certification." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 73 (S.D.N.Y. 2013).

Leaving aside the status of the first element (a point that may be open to dispute if plaintiff

pursues a claim linked to municipal sewage treatment facilities), it is plain that individualized issues will predominate on the second and third elements.

> ### 1.   Individualized Issues Will Predominate on the Question of Whether Class Members Were Deceived.

Purchasers for whom Freshmates have consistently flushed without problem cannot have been *deceived by* the claim that the product is "flushable." For those customers, Freshmates *are* "flushable." Determining whether the challenged statements are misleading or false as to any given purchaser will thus require individualized proof concerning each purchaser's experience with the product. *See Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 75-76 (S.D.N.Y. 2006) (collecting § 349 cases where individualized issues such as proof of injury precluded certification).

*Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013) is instructive on this point. In that case, a purchaser of XM Satellite radio programing alleged that defendant's automatic renewal policy violated Section 349. The court held that injury could not be demonstrated on a class-wide basis because "whether a customer requested, wanted, or approved renewal of their subscription is not amenable to being proven through class-wide proof. Because Plaintiff is unable to prove through common evidence which customers in fact wanted their subscriptions to be automatically renewed, the predominance questions are not met." *Id.* at 68. Common questions did not predominate in *Vaccareiello* because – as here – an individualized inquiry was required to determine whether class members had a positive or negative experience with the product.

Similarly, determining whether the challenged statement is "material" to individual Freshmates purchasers will also require individualized proof. This precise problem precluded class certification in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008). In that

case, plaintiffs sought to certify a class of purchasers of so-called "light" cigarettes, arguing that

they had been falsely advertised as safer than full-flavored cigarettes.  The Second Circuit

reversed this Court's class certification order, in part because class members might have

purchased defendant's cigarettes "for some reason other than the belief that Lights were a

healthier alternative – for example, if a Lights smoker was unaware of that representation,

preferred the taste of Lights, or chose Lights as an expression of personal style."  522 F.3d at

223.[19]

  Applied here, the available evidence indicates that consumers choose to purchase

Freshmates for a variety of reasons, many of which are unrelated to the challenged statements

about flushability.  *See* Otero Dec. ¶¶ 5-7; Bush Dec. Ex A.  Some buy the product because they

are looking for pre-moistened cloths that provide a more complete cleaning experience than

conventional toilet tissue and have found that Freshmates best satisfy this need.  Otero Dec. ¶ 5;

Bush Dec. Ex A (collecting New York consumer reviews of Freshmates, which include

statements such as "I like [Freshmates] better because the moisture level is better and it cleans

better" and "thank you for making a product that makes me so much more fresh after leaving the

restroom.").  Some consumers may make their choice because they prefer Charmin-brand

products, and Freshmates are the only Charmin wipes that are sold.  Otero Dec. ¶ 5; Bush Dec.

Ex. A ("I like [Freshmates] more than the Scotts and Cottonelle.").  Consumers may choose to

purchase Freshmates because Freshmates are stronger than other options, or because they offer a

---

[19] Although *McLaughlin* was a fraud-based RICO case in which plaintiffs were required to prove reliance on the alleged false statement, it is logically applicable to Section 349 cases requiring individualized proof of causation and injury.  *See Havnes v. Planet Automall, Inc.*, 276 F.R.D. 65, 80 (E.D.N.Y. 2011) (Weinstein, J.) (applying *McLaughlin* in a § 349 case); *Morrisey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 213 (3d Dep't 2010) ("Although reliance is not an element [of a § 349 claim], plaintiffs must show that the 'material deceptive act' caused the injury.").

more sanitary option when used to care for the personal hygiene needs of sick or disabled

persons.  Otero Dec. ¶ 5; Bush Dec. Ex. A ("I really like the Charmin Freshmates Wipes.  I had

the Cottonelle wipes and I changed it because I found the [F]reshmates wipes to be stronger."; "I

have had a lot digestive and bowel upsets over the past six months, causing me to use an

inordinate amount of toilet tissue….  I was in almost constant pain.  One day's use of Charmin

Freshmates literally obliterated that pain.").  Still others may choose Freshmates because they

like the fragrance or the packaging.  Bush Dec. Ex. A ("I love the fragrance especially, and how

moist they are."; "I'm calling to tell that I love the new Charmin Freshmates Packaging.").[20]

> For the many individuals whose purchasing choice focuses on these other factors, the fact

that the product is also advertised as "flushable" may not be material.  Indeed, for an appreciable

proportion of Freshmates customers, flushability does not appear to be a factor at all.  Many

customers do not even keep the product in the bathroom.  Otero Dec. ¶ 7.  A consumer who

keeps and uses a package of Freshmates in his car, for example, likely does not care whether or

not the product will flush down the toilet.  *See id.*

> Absent individual trials, it is impossible to know why each purchaser chose Freshmates.

Materiality therefore cannot be demonstrated in this case through common evidence.  *See*

*Pelman v. McDonald's Corp.* 272 F.R.D. 82, 94 (S.D.N.Y. 2010) (reasoning that because a

person chooses where to eat based on a variety of factors, resolution of whether plaintiffs chose

to patronize defendant's restaurant chain for health reasons is "an inquiry which … requires

---

[20] Courts have cited consumer testimonials to show that injury is not a common question because
purchasers are satisfied.  *See, e.g.*, *Moheb*, 2012 WL 6951904, at *4 ("Moreover, the existence of
economic injury is also not a common question, because many purchasers are satisfied . . . (e.g.,
reviews say "Worth every penny!" and "100% worth it").");  *see also Blumenthal Distrib., Inc. v.
Exec. Chair, Inc.*, 2010 WL 5980151, at *9 (E.D.N.Y. Nov. 9, 2010) *report and recommendation
adopted*, 2011 WL 839546 (E.D.N.Y. Mar. 3, 2011) (noting in a trademark case that unsolicited
customer reviews praising plaintiff's product supported a finding of secondary meaning).

individualized proof."); *Newman*, 238 F.R.D. at 74 (individual questions such as whether each class member was influenced to purchase service based on alleged misrepresentation would overwhelm common questions); *Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) (declining to certify consumer class alleging deceptive labeling consisting of all purchasers where class "would likely include people with varying rationales behind their purchases" entirely unrelated to packaging, such as the product's performance and brand); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 582 (N.D. Ill. 2005) (denying class certification in part because it would be "impossible to prove on a classwide basis" that allegedly deceptive claim caused each class member to purchase the product because "Coca–Cola's marketing may be just one of many reasons for an individual's decision to purchase the product."), *aff'd*, 472 F.3d 506 (7th Cir. 2006).

> **2.  For Those Class Members Who Experienced Plumbing Problems, Individualized Issues as to the Causes of Those Problems Will Predominate.**

For the tiny number of New Yorkers who may claim that their use of Freshmates resulted in clogged toilets or pipes, *see* Bush Decl. ¶ 5, each such case raises a causation issue that would require individualized inquiries concerning, *inter alia*, the condition of each purchaser's plumbing system, his or her concurrent use of other "flushable" and "non-flushable" products, whether the individual attempted to flush an unreasonably large number of wipes at the same time, and whether other persons known or unknown flushed inappropriate material.  *See* O'Shea Dec. ¶¶ 5, 12.  In *Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 511-13 (S.D.N.Y. 2011), the plaintiffs alleged that the defendant had manufactured defective tires.  In declining to certify the class for lack of predominance, the court explained that even if plaintiffs could demonstrate a common defect, "they would still need to demonstrate that this defect caused each class member's [tire] to puncture.  But tires can puncture for any number of reasons, and not all

of these reasons will relate to the defect." *Id.* Likewise, toilets may clog for a wide variety of reasons that have nothing to do with Freshmates.

Courts have overwhelmingly found that where causation must be assessed on a case-by-case basis, class certification is not appropriate. *See, e.g.*, *Pagan v. Abbott Labs.*, 287 F.R.D. at 151 (class certification denied for lack of predominance where each class member would be required to prove that "recalled Similac was the cause" of his or her injury); *Weiner*, 2010 WL 3119452, at *6 (class certification denied in § 349 case because "individualized inquiries as to causation, injury, and damages for each of the millions of putative class members would predominate over any issues law or fact common to the class."); *Pelman*, 272 F.R.D. at 95 (denying certification in § 349 case for lack of predominance where "individual questions about causation would overwhelm" common questions).[21] [22]

Moreover, any claim that rested on an allegation that class members were misled about the alleged impacts on municipal sewage systems would create individualized issues as to whether each class member was already aware of those issues when he or she purchased Freshmates. Plaintiff alleges in his Complaint that these problems have been widely publicized,

---

[21] *Accord*: *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (declining to certify a class of tire purchasers because of "myriad [individual] questions," including "other possible causes of the problem encountered."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-10 (7th Cir. 2002) (noting that class treatment was unmanageable in part because individual factors could affect the alleged tire failure); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 451-52 (E.D. Pa. 2000) (declining to certify a class of vehicle owners whose paint had delaminated allegedly because of a faulty painting process in part because the paint could delaminate for reasons other than the alleged defect).

[22] Although this Court has already ruled that alleged impacts on municipal sewer systems are not relevant to this case, Dkt. No. 23, it is equally obvious that individual causation issues would predominate if plaintiffs were to seek to prove that Freshmates causes harm to municipal systems. Plaintiff would have to prove that each sewer system was damaged by *Freshmates* in particular, as opposed to the many other products that move through municipal sewer systems (including numerous kinds of non-flushable wipes). It is inconceivable that plaintiff would be able to adduce common evidence on this issue.

including through extensive news reports.  *See* Complaint ¶¶ 16-42.  A plaintiff (or class member) may not recover on a misrepresentation claim if he actually knew the truth and elected to purchase the product anyway.  *Newman*, 238 F.R.D. at 78.  The existence of the plentiful sources of information cited by plaintiff himself are alone sufficient to defeat any showing of predominance for a claim focusing on this kind of impact.  *See Solomon*, 777 N.Y.S.2d at 56 ("Even assuming that all the members of the class saw the same advertisements, questions as to whether each individual was reasonably misled by them predominate, given the alternative sources of information about DSL service that each may have had.").

**3.      Plaintiff Cannot Prove through Common Evidence that All Class Members Paid an Unwarranted Price Premium.**

While defendant has not yet had an opportunity to see whatever evidence plaintiff intends to put forward to prove "price premium" damages for the class through common proof, it is extremely unlikely that competent and reliable evidence exists for that purpose.  *See generally* Scott Dec. ¶¶ 4-19 (describing the many difficulties involved in isolating the price effect of a single product characteristic).  And absent such evidence, no class may be certified for any such claim.  *See Comcast*, 133 S. Ct. at 1432-33; *Fleischman v. Albany Med. Ctr.*, 2010 WL 681992, at *4 (N.D.N.Y. Feb. 16, 2010) ("[I]f the measure of out of pocket damages requires individualized proof, then classwide issues cannot be said to predominate.") (citing *McLaughlin*, 522 F.2d at 227).

Plaintiff must present a damage model that "measure[s] only those damages attributable to [the defendant's conduct]," as distinct from other factors such as brand loyalty, other desirable product features and the like.  *Comcast*, 133 S. Ct. at 1433.  In this case, consumers may purchase Freshmates for reasons unrelated to the challenged "flushability" claim.  Where

34

purchasing decisions may be based a variety factors, courts routinely reject price premium claims based on a single product attribute.

Oscar v. BMW of North America, LLC, 2012 WL 2359964, at *4 (S.D.N.Y. June 19, 2012) is a case in point. The plaintiff in that case alleged that all purchasers of BMW's "MINI S" model car paid an unwarranted price premium because BMW did not inform them that the run-flat tires ("RFTs") on the MINI S model were more expensive than normal tires and could not be repaired in the event that they were damaged. Plaintiff claimed that consumers would have been unwilling to purchase the cars at a premium price if they had been notified of these shortcomings. The court rejected this theory, finding that common issues did not predominate because individual inquiries were needed in order to determine whether individual purchasers were injured:

> It is impossible to determine, on a global basis, whether the presence of RFTs, as opposed to the other standard equipment differentiating the MINI S from the MINI Cooper "caused" consumers to pay a higher sum for the MINI S. For some consumers, the RFTs may have been an important factor; for others, not at all; for others, somewhere in between; and others, perhaps most others, may never have thought to isolate the relative contribution of each of the differences between these models in deciding to purchase the MINI S. There are, simply, too many confounding factors to permit a factfinder to make that determination on a class-wide basis.

2012 WL 2359964, at *4. See also Schrank v. Citibannk (S.D.), N.A. (In re Currency Conversion Fee Antitrust Litig.), 230 F.R.D. 303, 311 (S.D.N.Y. 2004) (finding in a Section 349 case that "individual questions about causation would overwhelm" common questions).

Magistrate Judge Levy reached a similar conclusion in Ackerman v. Coca-Cola Co., 2013 WL 7044866 (E.D.N.Y. July 18, 2013), a Section 349 case in which plaintiff alleged that purchasers paid a price premium for "vitaminwater" because the product falsely claimed that it

was healthier than other beverages.  Magistrate Judge Levy found that the price premium theory was not susceptible to common proof:

> Proof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof.  Nor have plaintiffs proposed a suitable methodology or formula for establishing causation and injury on a class-wide basis.  Indeed, plaintiffs have cited no case certifying a Rule 23(b)(3) consumer class for claims brought under GBL § 349 based on allegations of misleading product labeling or marketing, and this court's research uncovered none."

*Id.* at *20 (internal citations omitted); *see also Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014) (rejecting plaintiff's statistical model because it failed to isolate and measure the price effect of the challenged "all natural" claim from other price-related factors).

In this case, the obstacles to constructing a reliable and robust damages model would be insurmountable.  Among other things, there is no reliable way such a model could account for, and properly exclude, the majority of purchasers who did not pay a premium because the product flushed as advertised, or those who purchased the product for reasons unrelated to flushability.  *See* Otero Dec. ¶¶ 5-6; *see generally* Scott Dec. ¶¶ 5-7.

P&G has yet to see plaintiff's "price premium" damages model, which will presumably be provided for the first time with plaintiff's class certification motion.  P&G reserves the right to address that model once it becomes known.[23]

## CONCLUSION

For the foregoing reasons, the Court should deny class certification in this case.

---

[23] Mr. Belfiore has not sought an injunction class pursuant to Rule 23(b)(2).  Should he do so, P&G reserves the right to oppose the motion.

Respectfully submitted:

/s/ **Andrew D. Schau**

Andrew D. Schau (AS 5815)
Claire Catalano Dean (CD 4114)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Emily Johnson Henn*
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
(650) 632-4700

Sonya D. Winner*
Cortlin H. Lannin*
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94102
(415) 591-6000

* *Admitted pro hac vice*

*Attorneys for Defendant*
Dated:  February 27, 2015           *The Procter & Gamble Company*