**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ANTHONY BELFIORE, on behalf of himself
and all others similarly situated,

     Plaintiff,

        vs.

THE PROCTER & GAMBLE COMPANY,

     Defendant.

---

14 Civ. 4090 (JBW)(RML)


**<u>CLASS ACTION</u>**

**REDACTED**


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO <u>DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION</u>

Doc. 183397 v.11

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

PROCEDURAL HISTORY ............................................................................................... 6

ARGUMENT ..................................................................................................................... 7

I.      COMMON ISSUES PREDOMINATE ................................................................... 7

        A.      The Common Issues ................................................................................... 7

        B.      Defendant's Distortions, Exaggerations, And Speculation
                Cannot Distract From The Fact That Common Issues Predominate ..................... 8

II.     TYPICALITY IS SATISFIED ................................................................................ 14

        A.      Plaintiff Is Typical ....................................................................................... 14

        B.      Defendant's Distortions, Exaggerations, And Speculation
                Cannot Distract From Plaintiff's Typicality ............................................. 15

III.    PLAINTIFF IS AN ADEQUATE REPRESENTATIVE ....................................... 18

IV.     DEFENDANT IMPLIEDLY CONCEDES THAT CERTIFICATION OF
        AN INJUNCTIVE CLASS IS WARRANTED AND PROPER ............................ 20

V.      DEFENDANT'S REMAINING ARGUMENTS ARE WITHOUT MERIT ......... 21

CONCLUSION ................................................................................................................... 26

i

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co.*,
09 CV 395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 18, 2013) ..............2, 8, 14, 25

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................23

*Amgen v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ...........................................................................................2, 7-8

*Anonymous v. CVS*,
728 N.Y.S.2d 333, 340 (Sup. Ct. 2001),
aff'd, 293 A.D.2d 285 (N.Y. App. Div. 2002)................................................................10

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014)....................22

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ...........................................................................10, 22

*Bentley v. Verizon Bus. Global, LLC*,
07 Civ. 9590 (DC), 2010 U.S. Dist. LEXIS 32880 (S.D.N.Y. Mar. 31, 2010) ................15

*Brazil v. Dole Packaged Foods, LLC*,
12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575
(N.D. Cal. Nov. 6, 2014)...........................................................................................13

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ...............................................................................10

*Cabral v. Supple*,
ED 12-00085-MWF (OPx), 2013 U.S. Dist. LEXIS 184170
(C.D. Cal. Feb. 14, 2013)...........................................................................................10

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013)......................................................................................23

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ...............................................................................23

*Concepcion v. U.S.*,
181 F.Supp.2d 206 (E.D.N.Y. 2002) ..........................................................................21

*Dow Chem. Co. v. Seegott Holdings, Inc.,*
    768 F.3d 1245 (10th Cir. 2014) ....................................................................23

*Ebin v. Kangadis Food, Inc.,*
    13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 11, 2013) ...............8

*Ebin v. Kangadis Food, Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................... *passim*

*Florez v. U.S.,*
    07-CV-4965 (CPS), 2009 U.S. Dist. LEXIS 63826 (E.D.N.Y. July 23, 2009) ...............21

*Forcellati v. Hylands, Inc.,*
    CV 12-1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600
    (C.D. Cal. Apr. 9, 2014).......................................................................... 8-10, 23

*Gortat v. Capala Bros., Inc.,*
    07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010)..................21

*Guido v. L'Oreal, USA, Inc.,*
    CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031
    (C.D. Cal. July 1, 2013) ..........................................................................2, 22

*Karhu v. Vital Pharm., Inc.,*
    13-60768-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 26756
     (S.D. Fla. Mar. 3, 2014) ............................................................................26

*Keefe v. Shalala,*
    71 F.3d 1060 (2d Cir. 1995)..........................................................................21

*Knipe v. Skinner,*
    999 F.2d 708 (2d Cir. 1993)..........................................................................21

*Lilly v. Jamba Juice Co.,*
    No. 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997
    (N.D. Cal. Sept. 18, 2014) ....................................................................... 23-25

*Maurizio v. Goldsmith,*
    230 F.3d 518 (2d Cir. 2000) ..........................................................................2

*McClain v. S.C. Nat'l Bank,*
    105 F.3d 898 (4th Cir. 1997) .........................................................................15

*McLaughlin v. American Tobacco Co.,*
    522 F.3d 215 (2d Cir. 2008)...........................................................................8

iii

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
    200 F.R.D. 521 (D. Md. 2001)........................................................................15

*Orlander v. Staples, Inc.*,
    13 Civ. 703 (NRB), 2014 U.S. Dist. LEXIS 89259 (S.D.N.Y. June 30, 2014)................18

*Pagan v. Abbott Labs., Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) ..............................................................9, 14

*Randolph v. J.M. Smucker Co.*,
    No. 13-CIV-80581-BLOOM/Valle, 2014 U.S. Dist. LEXIS 176731
    (S.D. Fla. Dec. 23, 2014) ......................................................................26

*Rikos v. The Procter & Gamble Co.*,
    1:11-cv-226, 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio June 19, 2014)..........................9

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).......................................................................14

*In re Scotts EZ Seed Litig.*,
    12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116 (S.D.N.Y. Jan. 26, 2015)......3, 10, 21, 24

*Solomon v. Bell Atl. Corp.*,
    777 N.Y.S.2d 50 (1st Dep't 2004) ..................................................................9

*Sokoloff v. Town Sports Int'l Inc.*,
    6 A.D.3d 185 (1st Dep't 2004) ....................................................................18

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).......................................................................17

*Sykes v. Mel S. Harris & Assocs. LLC*,
    13-2742-cv, 13-2747-cv, 13-2748-cv,
    2015 U.S. App. LEXIS 2057 (2d Cir. Feb. 10, 2015) .....................................7, 14-15

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ....................................................................9

*In re Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001).......................................................................23

*Weiner v. Snapple Bev. Corp.*,
    07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5, 2010)................23

iv

*Werdebaugh v. Blue Diamond Growers,*
    12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ..... 10, 22-24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013) ............................................................................9

*Xavier v. Philip Morris USA Inc.,*
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) .........................................................22

## **Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ...........................................................6

N.Y. General Business Law § 349 ....................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 23, *et seq.*...................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendant's motion to deny class certification repeats the arguments in its failed motion to strike the class allegations from the Complaint.  It is otherwise based upon a distorted definition of the Class and a distortion of the relief sought.  Defendant ignores the predominant common issues relevant to Plaintiff's GBL § 349 claim, and seeks to distract the Court by focusing upon Mr. Belfiore's plumbing, rather than upon Freshmates, the common (mis)representation, the common injury, the common method of computing damages, and the common "reasonable man" legal test.  Once focus is redirected to the Class, as defined, and the actual claim and relief sought, it is clear that certification pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) is amply supported and proper.

The Class is objectively and succinctly defined by Plaintiff as "all persons and entities who purchased Charmin Freshmates in the State of New York between May 23, 2011 and May 23, 2014."  All Class members purchased the same product, sold in packages bearing an identical "flushable" representation and touting "safe for sewer and septic systems."  *See* Ex. C to the Declaration of Lester L. Levy in Support of Plaintiff's Motion for Class Certification, dated February 27, 2015 (image of Freshmates label).

Defendant is liable to the entire Class because its "flushable" representation was (and is) deceptive and caused (and causes) all Class members to pay an unjustified price premium for a product that does not behave as a "flushable" wipe.[1]  Whether the wipes clog in the purchaser's own pipes or elsewhere along a plumbing system (so that it becomes somebody else's problem) is

---

[1] Some Class members suffered additional plumbing damages.

1

irrelevant.  As detailed in Plaintiff's Memorandum in Support of Class Certification, dated Feb. 27, 2015, ECF No. 58-1, ("*Pl. Cert. Mem.*") each element of the Class' GBL § 349 claim will be established via classwide proof.  Whether an act or practice is deceptive in violation of GBL § 349 depends upon whether it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (internal quotation marks omitted).  The materiality of an alleged misrepresentation is a question common to all members of the class because it is adjudged according to an objective, reasonable consumer, standard.  *Ackerman v. Coca-Cola Co.*, 09 CV 395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 18, 2013), at *75 (GBL § 349 claims are determined by "an objective, reasonable consumer standard," they "present liability questions that are capable of class-wide resolution using class-wide evidence, and will generate common answers."); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) ("the same generalized evidence will be used to establish whether [the product's] label is false, and, if so, whether it was likely to mislead a reasonable consumer acting under the circumstances").[2]

Injury and damages are likewise subject to common proof.  As detailed in *Pl. Cert. Mem.*, at 13-15 and in the declaration of Plaintiff's expert, Mr. Colin Weir, hedonic regression can and will be used to determine whether the Class paid a premium for the product because it was

---

[2] *See also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (the "alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class"); *Guido v. L'Oreal, USA, Inc*., CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031, at *32-33 (C.D. Cal. July 1, 2013) (certifying consumer class under GBL § 349 and explaining that materiality is readily "established with common proof" because "whether a reasonable consumer would have been deceived by [the product's] packaging is an objective inquiry . . . ." ).

marketed as "flushable."  Declaration of Colin B. Weir in Support of Plaintiff's Motion for Class Certification, dated February 27, 2015 ("*Weir Decl.*"), at ¶¶ 13-52.  Mr. Weir's ability to isolate a premium for a characteristic has been approved and found sufficient to certify a consumer class claiming deception in violation of GBL § 349.  *See, e.g., In re Scotts EZ Seed Litig.*, 12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116, at *33-37 (S.D.N.Y. Jan. 26, 2015) ("*Scotts*") (certifying Rule 23(b)(2) and (b)(3) consumer classes under GBL § 349 and approving Weir's price premium methodology to demonstrate classwide proof of injury). Once the injury is established, damages can also be calculated on a classwide basis.  GBL § 349 provides for statutory damages of $50 to each class member for each time Defendant violates the statute.  Alternatively, and albeit not necessary, Mr. Weir can determine an average price premium paid for the misrepresentation of flushability.

The injunctive relief sought is likewise, and inherently, classwide.  Hence, certification is proper under Fed. R. Civ. P. 23(b)(2) and (b)(3) and Defendant's motion should be denied.

## **STATEMENT OF FACTS**[3]

In January or February 2014, Plaintiff purchased Freshmates "flushable" wipes for the first and only time.  Transcript of Deposition of Anthony Belfiore, Dec. 18, 2014 ("*Belfiore Tr.*") at 26, excerpts attached as Ex. A. to Declaration of Lester L. Levy, dated March 27, 2015 ("*Levy Decl.*"). He purchased them because the package said they were "flushable."  (*Id*. at 36-38.)  After using them for about six weeks, the relevant March 2014 clog occurred.  (*Id*. at 44-45); Transcript of

---

[3] Plaintiff includes these facts solely because they relate to Defendant's motion. This case is about Freshmates' inability to disintegrate as consumers would expect from a wipe marketed and priced as "flushable." Defendant's references, speculations and exaggerations about Mr. Belfiore's plumbing are irrelevant, but we respond to correct P&G's distortions.

Deposition of Alison Belfiore, Dec. 18, 2014 ("*Alison Belfiore Tr.*") at 27, 30, excerpts attached as Ex. B. to *Levy Decl.*

Plaintiff called his plumber, Mr. Louis Sudberg, who has over 30 years of plumbing experience.  Transcript of Deposition of Louis Sudberg, Dec. 19, 2014 ("*Sudberg Tr.*") at 9, excepts attached as Ex. C. to *Levy Decl.*[4]  There were only three occasions in the past ten years, that Mr. Sudberg had needed to snake the toilet in Plaintiff's upstairs bathroom, and he never needed to do so for the toilet located in the basement.  (*Sudberg Tr.* at 15, 17-19, 21; *Belfiore Tr.* at 67.)  Mr. Sudburg considers snaking "very, very minor stuff" explaining: "Most of that [minor] stuff I do on the way home . . . I mean, you know, I don't bill him for something like that."  (*Id.* at 15-16.)  When toilet snaking works—and it works "99.9% of the time"—"that means the blockage is inside the toilet, not the [sewer] pipe."  (*Id.* at 19-20.)

The March 2014 clog was different than anything the Belfiore family had ever experienced. As per Mr. Sudberg, the plunger did not work and snaking did not work, "indicat[ing] that the stoppage [wasn't] inside the toilet."  (*Id.* at 20, 23, 25.)  He had Plaintiff flush the upstairs toilet to check whether the clog was in the sewer line: "[I]f there is a clog in the [sewer] line, it will come up in the lowest point, which is the basement toilet."  (*Id.* at 25.)  Upon flushing, the water in the basement toilet "started to bubble and rise" confirming a sewer line clog.  (*Id.* at 24-25.)  Mr.

---

[4] In order to try to discredit Mr. Sudberg, Defendant describes him as "an unlicensed plumber." However, plumbing is Mr. Subderg's family business.  He owns the business with his brother and father (the same plumbing company that was previously owned by his grandfather).  (*Sudburg Tr.* at 8-9.)  His father and brother maintain the business's plumbing licenses so that Mr. Sudberg himself is not, and need not be, licensed.  (*Id.* at 10.)  Equally irrelevant is Defendant's aspersion that Mr. Sudberg is not a "master plumber."  That license is only required for businesses that operate in New York City, which Mr. Sudberg's business does not.  (*Id.* at 10, 34.)  His business is properly licensed in North Hempstead, where it is located and operates.  (*Id.*)

Sudberg had to remove the basement toilet and run an electric snake through the pipe connecting Plaintiff's toilet to his house trap.  (*Id*. at 26.)  After reaching the trap, Mr. Sudberg removed the snake and found "white wipes wrapped around [it]."  (*Id*. at 27.)

Aside from the wipes, Mr. Sudberg noticed nothing unusual in the line.  (*Id*. at 29.)  He found "sludge," which plumbers refer to as "muck," but that is "normal" and is found in "[e]very pipe."  (*Id*.)

After removing the wipes, and aware that that they could have just backed up from the actual clog, (*Id*. at 27), Mr. Sudberg snaked the pipe running from the trap to the main sewer line.  (*Id*. at 31.)  "[B]etween ten and 15 feet" down the pipe, he felt a binding and he pulled out the snake along with "a string of wipes." (*Id*. at 32-33; *Belfiore Tr*. at 82.)  He inserted the snake again and pulled out a little more of the wipes from the same location and then, by at least the third time, the water pushed through.  (*Sudberg Tr*. at 33.)  He snaked the length of the pipe just to be sure and found nothing.  (*Id*.)  He did not deem it necessary to run a camera down Plaintiff's sewer line because "that is something that is only done on somebody that has a reoccurring problem or a stoppage that can't be cleared.  In other words, it's not normal practice to camera a line."  (*Id*. at 18, 35.)

Once Mr. Sudberg removed the wipes, Plaintiff and his wife stopped using Freshmates, (*Belfiore Tr*. at 46, 90-91), and have never had a plumbing issue in the nine months since.  (*Id*. at 70.)[5]

---

[5] Desperate to create individual issues (and distract the Court from the overwhelming common issues), Defendant resorts to wild-eyed attacks on Mr. Belfiore's plumbing – i.e. his "pipes are unusually susceptible to clogs"; he has a "poorly-maintained sewer connection"; he uses "an unlicensed plumber"; he needs "frequent plumbing services"; his pipes are in "poor condition"; he

After clearing the March 2014 clog, Mr. Sudberg gave Plaintiff an itemized bill for $526.83.  (*Sudberg Tr.* at 22-23; *Belfiore Tr.* at 84, 86-87; Complaint at ¶ 45.)  Albeit currently having a difficult time paying because he is out of work, Plaintiff intends to pay this bill as soon as he gets the money.  (*Belfiore Tr.* at 85-86.)

### PROCEDURAL HISTORY

On May 23, 2014, Mr. Belfiore filed his case in the Supreme Court of the State of New York, County of Nassau.  On July 1, 2014, Defendant removed the case to the Eastern District of New York, based on the Class Action Fairness Act, 28 U.S.C. § 1332(d).

On or about October 1, 2014, Defendant moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the claim for injunctive relief for lack of standing; moved to dismiss under Rule 12(b)(6) for failure to state a claim; and moved to strike plaintiff's class action-related allegations under Rule 12(f).

Oral argument was heard on November 14, 2014.  The motions were denied.  By memorandum, dated March 20, 2015 ("*March 20 Decision*"), ECF No. 78, this Court explained the reasons for that decision.

---

has "experienced clog toilets repeatedly"; he has "extensive defects in his home plumbing"; and "a long history of clogs."  These gross exaggerations fly in the face of the facts as to how few times he has needed a plumber (three times in ten years) and that he has not had any clog after he stopped using Freshmates and the wipe clog was cleared by the plumber in March 2014.

# ARGUMENT

## I.   COMMON ISSUES PREDOMINATE

### A.   The Common Issues

As required by Fed. R. Civ. P. 23(a) and 23(b)(3) common issues exist and predominate. The common issues of law and fact that will be decisive of the Class' GBL § 349 claim include: (1) what does Defendant's "flushable" representation mean to a reasonable consumer; (2) do Freshmates satisfy such meaning; (3) is Defendant's "flushable" representation materially misleading; (4) were Class members injured by paying a price premium caused by the misrepresentation; (5) what is the proper measure of damages; (6) are statutory damages of $50.00 per Class member and per purchase, appropriate; (7) are aggregate price premium damages appropriate; (8) are plumbing damages appropriate; (9) is the Class entitled to injunctive relief; (10) what is the proper injunctive relief.

These common issues easily predominate over any possible individual issues. *Sykes v. Mel S. Harris & Assocs. LLC*, 13-2742-cv, 13-2747-cv, 13-2748-cv, 2015 U.S. App. LEXIS 2057, at *36 (2d Cir. Feb. 10, 2015) ("The mere existence of individual issues will not be sufficient to defeat certification."); *see also Amgen*, 133 S. Ct. at 1196 (predominance "does not require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof.") (internal quotation marks omitted and alterations in original).[6]

---

[6] The only conceivable individual issue is the supplemental plumbing damages some class members incurred, in addition to the common price premium and statutory damages.   As previously noted, an individual damage issue does not defeat certification.  This Court has already opined that while plumbing costs are injuries potentially not shared with all class members, this does not matter.   "Plaintiff even under the microscope of a class certification motion, is not

7

In the instant case, all Class members' claims "will prevail or fail in unison." *Id*. at 1191. Thus, if the jury determines that the "flushable" (mis)representation meets the interpretation of a reasonable consumer, or that the (mis)representation is not material, or that no premium was attributed to the (mis)representation, then the class claim fails on the merits.

**B.     Defendant's Distortions, Exaggerations, And Speculation
Cannot Distract From The Fact That Common Issues Predominate**

There is no need or reason for the Court to inquire into, or even consider, each Class member's experience using Freshmates.    The issue of whether Defendant's "flushable" representation is deceptive—including what "flushable" means and whether Freshmates satisfies this meaning—will be determined according to the understanding of a reasonable consumer and objective testing.  Liability under GBL § 349 does not depend upon whether Class members relied upon the representation when they purchased Freshmates nor does it depend upon whether the product met their personal, subjective, expectations. *See, e.g.*, *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *8 ("reliance is not an element of a section 349 claim") (internal quotation marks omitted).[7]  As explained by Judge Rakoff in *Ebin*, "the injury is the purchase price." *Ebin v. Kandagis Food Inc.*, 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 11, 2013).  The class-wide injury occurs "at the point of purchase," well before the product is ever used. *Forcellati v. Hylands, Inc.*, CV 12-1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600, at

---

required to demonstrate that all of the putative class member had identical motivations or injuries in purchasing Freshmates." *March 20 Decision* at p. 11 (citing, *Ackerman*).

[7] Defendant's repeated reliance upon *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) is inapposite. *McLaughlin* was a fraud-based RICO case in which plaintiffs were required to prove reliance on the alleged false statement.  It is *not* logically applicable to GBL § 349 cases, which have no element of reliance.

*9-10 n.2 (C.D. Cal. Apr. 9, 2014) ("the relevant economic injury occurred at the point of purchase").  As Judge Rakoff stated in *Ebin*, when he rejected the same defensive argument that some class members may have been happy with the pomace oil they received as opposed to the 100% pure olive oil represented: "even if a class member actively wanted to buy pomace instead of 100% pure olive oil, they nevertheless paid too much for it."  *Ebin*, 297 F.R.D. at 568-69; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 855, 857 (6th Cir. 2013) ("Because *all* Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class.") (emphasis in original); *Rikos v. The Procter & Gamble Co.*, 1:11-cv-226, 2014 U.S. Dist. LEXIS 109302, at *10, 15 (S.D. Ohio June 19, 2014) ("Consumer happiness is not the touchstone in a false advertising case.  The question [of injury revolves around] whether the defendant falsely advertised the product."  "[Here,] [a]ll proposed class members spent money on the allegedly false advertised product.  Such economic loss is a classic form of injury-in-fact[.]").[8]

---

[8] Defendant's cases are factually and legally inapposite.  *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 148 (E.D.N.Y. 2012), involves differences in the *product* itself.  As such, common proof of consumers' claims was not found.  *Pagan*, 287 F.R.D. at 148 (plaintiffs cannot present proof of classwide injury because "the evidence in this case suggests that most of the members of the class would have not suffered any injury at all because almost all of the recalled Similac did not, in fact, contain any beetle parts."). Defendant's reliance on *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50 (1st Dep't 2004) is similarly misplaced.  In *Solomon*, the allegedly deceptive product—internet service—necessarily was faster for some consumers in some regions than in others located elsewhere.  Here, the product (Freshmates) and the misrepresentations are identical and deception will be determined by a reasonable consumer, and the injury is unrelated to the performance or use of the product for any individual class member. Defendant distorts the holding in *Vaccariello v. XM Satellite Radio, Inc.,* 295 F.R.D. 62 (S.D.N.Y. 2013) concerning alleged nondisclosure of an automatic renewal policy.  Defendant cites snippets referring to whether customers wanted to be renewed, and ignores the plethora of facts concerning the existence of various iterations of

9

Indeed, despite the fact that classes of consumers will always invariably include individuals who are happy with their purchases, consumer classes are routinely certified. *See, e.g.*, *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *19-22 (certifying consumer classes under GBL § 349); *Ebin,* 297 F.R.D. 561 (same); *Werdebaugh v. Blue Diamond Growers*, 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *55-58 (N.D. Cal. May 23, 2014) (certifying consumer class under statutes similar to GBL § 349 in California and explaining that each class member's "individual experience with a product is irrelevant" where, as here, "the injury under the [relevant statute] is established by an objective test").[9]

Moreover, Defendant's factual inference that some Freshmates purchasers were "happy" is deeply flawed.   P&G infers that because it received only a limited number of consumer complaints about Freshmates, consumers are either happy with the product or do not care about the product's flushability.   However, common sense dictates that only a small fraction of dissatisfied customers actually contact a manufacturer—especially for a product with a relatively low price.   Second, P&G's internal documents show that █████████████████████████

---

customer disclosures and possible acceptance of the automatic renewal terms online. *Id.* In contrast, here, as in *Scotts*, *Ebin* and countless other consumer product cases in which consumer classes were certified, the product at issue and the misleading representations about it are *identical* for all Class members.

[9] *See also Anonymous v. CVS*, 728 N.Y.S.2d 333, 340 (Sup. Ct. 2001), aff'd, 293 A.D.2d 285 (N.Y. App. Div. 2002) (even if some customers of the independent pharmacies continued to fill their prescriptions at CVS, i.e. were "happy" with the new pharmacy, that did not warrant dismissal of the class GBL § 349 claim nor affect class certification); *Cabral v. Supple*, ED 12-00085-MWF (OPx), 2013 U.S. Dist. LEXIS 184170, at *8-11 (C.D. Cal. Feb. 14, 2013) (rejecting defendant's argument that satisfied customers were not injured); *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *27-30 (same, certifying class of purchasers of mislabeled children's cold medicines); *Astiana v. Kashi Co*., 291 F.R.D. 493, 502 (S.D. Cal. 2013) ("*Kashi*") (same, certifying class of purchasers of mislabeled snack foods); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (same, certifying class of purchasers of mislabeled dietary supplement).

10

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Third, and also as per Defendant's own

documents, █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Fourth,

Defendant's documents evidence that ██████████████████████████████

███████████████ [10]   Lastly, whether the product passed INDA's "flushability" tests is of little

_____

[10] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

11

relevance given that INDA is an industry group controlled by the same product manufacturers that it is supposed to govern, and, in any event, the full merits are not currently before the Court.[11]

With respect to damages and injury, once it is determined that a price premium (no matter how large) was paid by reason of the flushability (mis)representation, then the injury has occurred and the statutory damages of $50 per occurrence pursuant to GBL § 349 applies. The class injury and damages are thus common. The existence of a price premium injury can also be established classwide. As declared in the *Weir Decl.*, his already-accepted methodology controls for all product attributes (i.e.: brand loyalty) and can isolate a price premium related specifically to "flushability." *See Pl. Cert. Mem.* at 13-14.

Defendant's argument that Weir's model would not be able to account for Freshmates purchasers who "did not pay a premium because the product flushed as advertised" completely misconstrues the concept of price premium damages, which occur at the point of sale. Defendant's citation to Magistrate Judge Levy's decision in *Ackerman* on this point, is misplaced. Here, unlike in *Ackerman*, Plaintiff's expert will be able to show on a classwide basis that the flushable representation on all packages of Freshmates sold in New York caused all Class members to pay an unjustified price premium. Once it is determined that the Class paid a price premium (no matter whether the size of that premium differed from one occasion to another), then all Class members are entitled to statutory damages of $50 (or the average price premium, which Weir will also be able to calculate). In contrast, in *Ackerman*, the plaintiffs had not even proposed a classwide methodology for determining and price premium injury. Moreover, since the *Ackerman* decision, two GBL § 349 class actions have been certified. In *Ebin, supra*, and, most recently, in *Scotts*, *supra*, the district courts approved Colin Weir's methodologies to demonstrate classwide injury. Defendant's citation to *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575 (N.D. Cal. Nov. 6, 2014) is inapposite. There, the court decertified the class *after* the completion of discovery and only *after* the plaintiff's expert could not run his proposed methodology effectively.

Irrespective of the above, this Court has already recognized that courts construe the payment of a premium price to be an injury and, as Plaintiff pleads that part of his injury was payment of a premium price based on the misrepresentation on the Freshmates label, injury is shared with the class of all consumers who purchased the product. *March 20 Decision* at p. 10.

13

## II.   TYPICALITY IS SATISFIED

### A.   Plaintiff Is Typical

"The typicality requirement is not demanding."   *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *42.  Where, as here, the named plaintiff's claim arises from the same course of events as those of absent class members, the commonality and typicality requirements "tend to merge" and typicality is satisfied.   *Sykes*, 2015 U.S. App. LEXIS 2057, at *19.   It is undisputed that Plaintiff purchased the same product as every other Class member and received the same non-disintergratable "flushable wipe." (*Belfiore Tr*. at 30-38.)[12]  The elements of Plaintiff's claim will be established with the same classwide proof used to establish the elements of all other Class members' claims.   Resolving the merits of Mr. Belfiore's claim—whether Freshmates is "flushable" as understood by a reasonable consumer and whether a premium was paid for purported flushability—will resolve those of all other Class members, establishing typicality (in addition to commonality).[13]

---

[12] *Compare with Pagan*, 287 F.R.D. at 148 (the challenged product was not uniform because "almost all of the recalled Similac did not, in fact, contain any beetle parts.").

[13] *See also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."); *Id.* at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

14

As every other consumer, Mr. Belfiore purchased Freshmates during the Class Period at a price inflated by the misrepresentation of flushability.[14]  He also has additional damages for the plumbing bill, which he testified he considers an outstanding debt.  (*Belfiore Tr.* at 85-86.)[15, 16]

**B.  Defendant's Distortions, Exaggerations, and Speculation Cannot Distract From Plaintiff's Typicality**

In a vain attempt to attack Plaintiff's typicality, Defendant contorts and actually seeks to change the Class definition from all purchasers of Freshmates to a "straw man" class of persons who suffered plumbing expenses.  Defendant creates the straw class to knock down.[17]

After creating the make-believe class of persons who suffered plumbing costs, P&G claims that Mr. Belfiore's plumbing is not typical and that he has had clogs in the past.  But, as Defendant's former Senior Communications Manager, Jay Gooch, █████████████

---

[14] Accordingly, Defendant's cases on this point are irrelevant in that they concern plaintiffs who were never injured by the practices they challenged and were deemed to be non-members of the very classes they sought to represent.  *See, e.g.*, *Bentley v. Verizon Bus. Global, LLC*, 07 Civ. 9590 (DC), 2010 U.S. Dist. LEXIS 32880, at *2 (S.D.N.Y. Mar. 31, 2010) (plaintiff "was *not* enrolled" in and was thus "not [deceptively] charged" for the unauthorized phone plan at issue); *McClain v. S.C. Nat'l Bank,* 105 F.3d 898 (4th Cir. 1997) (plaintiff's allegedly deceptive charges were forgiven by her creditor); *Ostrof v. State Farm Mut. Auto. Ins. Co.,* 200 F.R.D. 521, 529 (D. Md. 2001) (bills were paid by defendant insurance company so that plaintiff was "not [even] a member of the proposed class").

[15] Defendant inconsistently argues on the one hand, that Plaintiff never intends to pay his plumber's bill, and on the other hand, that "*his chief priority* in this case is obtaining payment for the cost of [his] actual plumbing problems."  Defendant's Memorandum of Law in Support of its Motion to Deny Class Certification ("*Def. Br.*") at 22-23.

[16] Again, supplemental plumbing damages do not preclude certification.  *March 20 Decision* at p. 10-11; *Sykes*, 2015 U.S. App. LEXIS 2057, at * 22 ("The presence of individualized damages cannot, by itself, defeat class certification under Fed. R. Civ. P. 23(b)(3).").

[17] The cases Defendant relies on to knock down its straw man class are inapposite, because they involve situations wherein plaintiffs allege physical injuries due to use, as opposed to mere purchase, of various medical drugs or agents, which necessarily raise individual questions of causation as to each and every member of the class.  *See Def. Br.* at 15-16 (citing cases).

15

████████████████████████████████████████████

██████████████████████████████████  Defendant's plumbing expert from Roto

Rooter, Terence O'Shea, agrees that clogs are often "run-of-the-mill" occurrences that "can occur

for a variety of reasons."  O'Shea Decl. at ¶¶ 1, 6.  Indeed, common sense dictates that it would be

atypical for someone to have never experienced a toilet clog.

Moreover, and also irrelevant to the actual Class claim, the factual circumstances of the

March 2014 clog rule out the possibility that Plaintiff's plumbing was the cause.  The clog was

located 15 feet inside the pipe from the trap to the sewer line, and at best, Defendant's plumbing

expert says that, in his inspection, occurring nine months after the clog was removed, he noticed

some tree roots and scaling some 20 or 25 feet past where the clog occurred.  O'Shea Decl. at ¶ 7.

Plus, O'Shea, qualified his speculation as to Defendant's version of the cause of the clog by

conceding that "[i]t is impossible to identify with certainty after the fact what caused a particular

clog . . . ."  Id. at ¶ 12.[18]

Defendant's further speculation as to two purported objects O'Shea says he spotted in the

plumbing system nine months after the wipe clog was cleared is likewise irrelevant and unreliable.

According to P&G's Darius Sabaliunas, one object may have been a non Freshmates wipe because,

while the surface of the object appears to have "consistent[ly] spac[ed]" "dimples," the surface of

a Freshmates wipe is "smooth" and "not dimpled."  Sabaliunas Decl. at ¶ 11.  In reality, and still

irrelevant, the item could even be toilet paper, since a host of *flushable* products, including toilet

---

[18] O'Shea notably fails to disclose how much P&G is paying him for his "expert" analysis, nor how much it has previously paid him, or his company, Roto Rooter, with which P&G has a longstanding business relationship.  *See* PG_B0004046, Ex. S. to *Levy Decl*.

paper, have quilted patterns and evenly spaced dimples.  *See* Ex. T. to *Levy Decl*. (sample images of quilted toilet paper found after a cursory internet search).  As for the identity of the other object, also supposedly located nine months after the Freshmates clog was cleared, the image shows no discernable shape or other characteristics.  Nevertheless, Sabaliunas claims that he is somehow able to "suspect" that it is "a tampon that was flushed down a toilet."  Sabaliunas Decl. at ¶ 13. P&G is telling the Court: "*Don't look at the uniform product or the uniform (mis)representations, instead, look at this (maybe possible tampon)*"*!*

In contrast to Defendant's speculations, at the time of the clog, Mr. Sudberg pulled out the objects causing the March 2014 clog and immediately recognized them as "wipes."  (*Sudberg Tr*. at 32-33.)  Mr. Sudberg had previously observed many instances where "flushable wipes" caused other customers' similar clogs.  (*Id*. at 34.)  Plus, Plaintiff's family had never experienced a clog similar to the March 2014 clog until after they started using Freshmates, (*Belfiore Tr*. at 67-68); prior to that, no one had flushed anything that was not represented to be "flushable," (*Belfiore Tr*. at 50-52, 123; *Alison Belfiore Tr*. at 26-27); and since they stopped using Freshmates, they have not experienced a clog.  (*Belfiore Tr*. at 70.)[19]

Mr. Belfiore's claim that he paid a premium for a product that misrepresents itself as flushable (and safe for plumbing and septic tanks) is the claim of every other Class member.[20]

---

[19] After Plaintiff spent hours in his deposition testifying that neither he nor anyone else in his family had flushed non-flushable products down his toilet, Defendant's attorney asked an "*anything is possible*" question.  *Belfiore Tr*. at 125 ("Q: Do you have any way to know *for sure* whether anybody in your family has ever flushed baby wipes down the toilet in your house?" A: "No."  MS. WINNER: "I have no further questions.").  This does not refute Plaintiff's testimony, but simply shows he will honestly answer any question posed.

[20] Defendant's cases are inapposite.  *See, e.g.*, *Spagnola v. The Chubb Corp*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming dismissal of plaintiff's GBL § 349 claim based on an allegedly deceptive

Relevant to Mr. Belfiore's typicality of the actual Class, as defined (all purchasers), and the consumer deception claim as actually alleged, P&G does not market Freshmates as flushable for any specific plumbing.  Notably, Defendant's new defense—that Freshmates are safe to flush as long as consumers use them in "well-maintained" plumbing systems" is both amorphous and irrelevant.  The statement is neither mentioned nor defined on the Freshmates package.  Nor does the package disclose that Freshmates do not disintegrate. Defendant's further statement, that flushability is dependent upon "follow[ing] the package instructions" can, at most, mean not to flush more than 1 or 2 wipes at a time as per the sole "recommendation" on the package, and with which Plaintiff complied.   (*Belfiore Tr.* at 47; *Alison Belfiore Tr.* at 30.)

Considering the Class, as actually defined, as purchasers of Freshmates in New York, there is no question that Mr. Belfiore is typical.

## III.  PLAINTIFF IS AN ADEQUATE REPRESENTATIVE

As detailed in *Pl. Cert. Mem.*, Mr. Belfiore is an adequate representative and has demonstrated his willingness to represent the Class.  He has already, *inter alia,* traveled to and from Court and attended a lengthy Court hearing, he sat for a deposition, he had his wife and

---

insurance contract because he did not claim that he did not receive adequate insurance coverage, thus "fail[ing] to plead either a deceptive act or requisite injury."); *Sokoloff v. Town Sports Int'l Inc*., 6 A.D.3d 185 (1st Dep't 2004) (dismissing plaintiff's individual GBL § 349 action claim based on the fact that the gym made its initiation fees nonrefundable and limited its liability because she lacked any actual injury and was still an active member of the gym); *Orlander v. Staples, Inc*., 13 Civ. 703 (NRB), 2014 U.S. Dist. LEXIS 89259 (S.D.N.Y. June 30, 2014) (dismissing plaintiff's GBL § 349 claim based on an allegedly deceptive computer repair services contract for lack of injury because even though the extended warranty ran concurrent, he could still have gotten his computer fixed at no charge).  Considering the actual Class definition and Class claim, namely, paying a premium for a product because it was deceptively touted as flushable, it is clear that those cases offer no assistance or authority in the actual case at bar.

18

plumber sit for a deposition, he reviewed papers and discussed same with his counsel and he opened his house to Defendant for an intrusive plumbing inspection.

Nevertheless, Defendant disturbingly states that Plaintiff lacks the motivation as well as the physical ability to represent the Class.  While Mr. Belfiore has a disability that prevents him from performing his physical job, that in no way translates into meaning that he is unable to attend court hearings, as Defendant insinuates.  *See Def. Br.* at 23 n.16.  Plaintiff's job was that of "*an ironworker*" who "[p]uts buildings up, work[s] on bridges," and works on "big construction projects." (*Belfiore Tr.* at 9-11.)  The inability to perform those tasks is clearly independent of his ability to perform his responsibilities as the class representative.  Again, he has already traveled to Court and sat for hours during the hearings before Judge Weinstein and Judge Levy.  When asked at his deposition whether he had "any disability that would interfere with your ability to travel to court," Plaintiff responded clearly and unambiguously: "No." (*Id*. at 10.)  When asked what he had done to play an active role in the litigation, Plaintiff responded that, among other things, "I have been to court already for it." (*Id*. at 104.)  Plaintiff also stated that he understood that as a class representative "I would probably have to go to court." (*Id*. at 102.)[21]  When asked whether he had "any disability that might make it difficult for you to read court papers," Plaintiff again responded: "No." (*Id*. at 10.)  Plaintiff also stated that he had read the entire complaint and reviewed it before it was filed. (*Id*. at 21, 114.)

---

[21] As to the location of the depositions P&G took, Plaintiff's counsel successfully argued that the depositions should take place in the Eastern District rather than require Plaintiff, his working wife, and his plumber to travel to Manhattan to accommodate Defendant's attorneys' convenience, when the case was brought in Nassau County, where the parties and the witnesses reside.

19

Defendant argues that Mr. Belfiore is not an adequate representative of the class because he can't remember to the penny how much he paid for Freshmates over a year ago.  He did testify that he recalls the price to be between $4 and $5.  (*Belfiore Tr.* at 31.)  Defendant argues that he needs to have kept his receipt of Freshmates purchase to be an adequate class representative.  P&G has no authority for that position and its insistence on a receipt from Mr. Belfiore is quite remarkable.  ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

Defendant also shamelessly manipulates Plaintiff's deposition testimony to try to create the false impression that Plaintiff is unaware of the class he is representing and/or only seeking to represent a class of persons who have experienced plumbing damages.  To the contrary, Plaintiff stated that he was seeking to represent persons who experienced plumbing damages <u>and</u> all persons who were deceived by their Freshmates purchases, even those who may not have experienced plumbing damages.  (*Belfiore Tr.* at 124.)  As Defendant is undoubtedly well aware (and concerned), Plaintiff has always sought to represent and have certified a single, uniform Class that includes all purchasers of Freshmates in New York.  *See, e.g.*, Complaint at ¶ 54; Opposition to Motion to Dismiss at 1-2, 11, 25; Motion to Certify Class at 1.  It is not up to Defendant to rewrite the Class definition as it sees fit, and as it deems more defensible.

## IV.   DEFENDANT IMPLIEDLY CONCEDES THAT CERTIFICATION OF AN INJUNCTIVE CLASS IS WARRANTED AND PROPER

Plaintiff requests injunctive relief and certification of an injunctive class.  Complaint at ¶ 64 and p. 21.  Indeed, acutely aware of said claim, Defendant sought to dismiss the claim for injunctive relief, but was unsuccessful.  *March 20 Decision* at p. 5-7.  The fact that Defendant has

consciously and explicitly chosen not to address the injunctive class on its motion, *Def. Br.* at 36 n.23, bars it from doing so in any reply papers in further support of this motion.[22]  For the reasons detailed in *Pl. Cert. Mem.*, at 20-25, injunctive relief is especially warranted in this case, and is expressly provided for in GBL § 349.  Certification under Rule 23(b)(2) does not implicate predominance, nor any other conceivable individual concerns.

## V.    DEFENDANT'S REMAINING ARGUMENTS ARE WITHOUT MERIT

As detailed in *Pl. Cert. Mem.*, ascertainability is not a bar to certification.  *See Pl. Cert. Mem.* at 17-20.  "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable."  *Ebin*, 297 F.R.D. at 567 (internal quotation marks omitted).  Ascertainability "does not require that every class member be identifiable prior to class certification."  *Gortat v. Capala Bros., Inc.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010).

The Class is objectively defined as all persons or entities who purchased Freshmates in New York State between May 23, 2011 and May 23, 2014.  There is only one product at issue and it was labeled in a uniform manner.  *See, e.g.*, *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *16 (finding proposed classes of New York and California purchasers of EZ Seed packages containing the same 50% thicker (mis)representation "sufficiently specific to satisfy the ascertainability requirement"); *Ebin*, 297 F.R.D. at 564, 567 (finding proposed class of "all persons in the United States" who

---

[22] *Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995) ("We will not consider arguments raised for the first time in a reply brief."); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Concepcion v. U.S.*, 181 F.Supp.2d 206, 231 (E.D.N.Y. 2002) ("[I]t is well settled . . . that a party may not raise an argument for the first time in a reply brief."); *Florez v. U.S.*, 07-CV-4965 (CPS), 2009 U.S. Dist. LEXIS 63826, at *27 n.13 (E.D.N.Y. July 23, 2009) (same).

purchased defendant's olive oil containing the same "100% Pure Olive Oil" (mis)representation packaged before March 1, 2013 ascertainable); *see also Kashi*, 291 F.R.D. at 500 (ascertainability satisfied where the class definition "simply identifies purchasers of [d]efendant's products," packages of which all "included the [same] allegedly material misrepresentations."); *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *18 (ascertainability satisfied where "the requirement for membership in the class [was merely] whether a consumer purchased a particular product after a particular date"); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *40 (ascertainability satisfied where "all purchasers of Blue Diamond's almond milk products are included in the class definition, and all cartons of the challenged almond milk products bore the [same] alleged mislabeling.").[23]

Classes of consumers purchasing low cost/high volume goods are found to satisfy the ascertainability element because, *inter alia*, absent such certification, the consumer deception statutes would be eviscerated. Indeed, absent certification of consumer class actions, defendants would have *carte blanche* to deceive consumers. *See, e.g.*, *Pl. Cert. Mem.* at 18 (listing examples of classes found ascertainable for low cost products); *Ebin*, 297 F.R.D. at 567 (explaining that, because "the class action device, at its very core, is designed for cases like this where a large

---

[23] The cases Defendant relies on are inapposite and involve classes defined in a far less objective manner, covering purchasers of multiple products and/or prohibitively long time periods. *See, e.g.*, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying ascertainability of a class that smoked cigarettes for at least "twenty years"); *Astiana v. Ben & Jerry's Homemade, Inc*., No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) (denying ascertainability of a class who had purchased ice cream containing alkalized cocoa processed with a synthetic ingredient where only one of the defendant's fifteen suppliers had used a synthetic ingredient, and the plaintiff could provide no method of identifying which consumers had purchased ice cream from that supplier).

number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit," ascertainability issues "should not be made into a device for defeating the action"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 566-67 (C.D. Cal. 2014) (finding ascertainability for a low cost Wesson Oil product because to do otherwise "would effectively prohibit class actions involving low priced consumer goods—the very type of claims that would not be filed individually—thereby upending '[t]he policy at the very core of the class action mechanism.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).[24]

---

[24] Defendant's reliance on *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) and *Weiner v. Snapple Bev. Corp.,* 07 Civ. 8742 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5, 2010) is misplaced. *Carerra* is an out-of-circuit decision and has been rejected by courts outside the Third Circuit. *See, e.g.*, *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *37-38 (refusing to follow *Carerra* and noting that, "[w]hile *Carerra* may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit.") (internal quotation marks omitted); *Forcellati,* 2014 U.S. Dist. LEXIS 50600, at *14 ("Given that facilitating small claims is [t]he policy at the very core of the class action mechanism, . . . we decline to follow *Carerra*") (internal quotation marks and citation omitted); *Lilly v. Jamba Juice Company*, 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997, at *11 (N.D. Cal. Sep. 18, 2014) ("Adopting the *Carerra* approach would have significant negative ramifications for the ability to obtain redress for consumer injuries."); *see also Dow Chem. Co. v. Seegott Holdings, Inc.*, 768 F.3d 1245, 1269 (10th Cir. 2014) (distinguishing *Carrera*). *Weiner* is a *district court* decision that has been distinguished by other district courts in this Circuit and never adopted by the Second Circuit. *See, e.g.*, *Ebin*, 297 F.R.D. at 567, 572 (Judge Rakoff aptly recognized that "*Snapple* goes further than this Court is prepared to go, and, indeed, would render class actions against producers almost impossible to bring." "Those aspects of *Snapple* discussing ascertainability . . . were seemingly at odds with the Second Circuit's prior indication that denial of certification on the grounds of manageability alone is disfavored.") (citing *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)); *Ebin*, 297 F.R.D. at 572 (distinguishing *Snapple* because "the heart of the *Snapple* case was a conclusion that predominance had not been shown because the submissions of plaintiff's expert on injury and damages were unreliable and had to be excluded, whereas here, as noted above, the submissions of plaintiff's expert [Colin Weir] remain intact for present purposes."). Like *Snapple*, *In re POM Wonderful LLC* is another case that Defendant relies upon that has been widely distinguished on its facts and not followed. *See Def. Br.* at 26.

Such classes are certified irrespective of the fact that their members are not likely to retain receipts of purchases.  *See, e.g.*, *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *16 (finding class of purchasers of low cost consumer product ascertainable although class members are unlikely to have retained receipts because, "[i]f proof of purchase was required to satisfy the ascertainability requirement, there would be no such thing as a consumer class action, especially with respect to low-cost products.") (internal quotation marks omitted); *Ebin*, 297 F.R.D. at 567 (same, listing appropriate methods of identifying class members, including self-identification via sworn affidavits, and explaining that declining to certify classes when consumers are likely to lack proof of purchase "would render class actions against producers almost impossible to bring."); *Lilly*, 2014 U.S. Dist. LEXIS 131997, at *4, 11 (same, and explaining that "[f]ew people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase.  Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits."); *Werdebaug*h, 2014 U.S. Dist. LEXIS 71575, at *40 (same, and explaining that "inviting plaintiffs to submit affidavits attesting to their belief that they have purchased a carton of Blue Diamond almond milk in the past several years is . . . [sufficiently] likel[y] to elicit reliable affidavits" to demonstrate ascertainability).[25]

---

[25] P&G's argument the class is not ascertainable because it sells Freshmates to retailers and distributors, as opposed to consumers directly, is meritless.  This is the situation in nearly every class action involving low priced/high volume consumer goods.  *See, e.g.*, *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *2, 41 n.6 (finding ascertainability even though "more than 99.9% [of product sales are] . . . to retailers or distributors" and not directly to consumers, and noting that because the certified class was all purchasers in California, instead of nationwide, "the burden of

24

To the extent Defendant challenges self-identification based upon notice concerns, as detailed in *Pl. Cert. Mem.*, "our law has long recognized that direct notice to [and therefore identification of] every class member is not always possible" and that all that is required is the best notice practicable under the circumstances. *Pl. Cert. Mem.* at 18-19 (quoting *Lilly*, 2014 U.S. Dist. LEXIS 131997, at *13). Plaintiff will use, with the Court's approval, the best notice practicable under the circumstances, including written and online publication that allows for self-identification via sworn affidavits/declarations. Notably, the Federal Trade Commission ("FTC") distributes settlement funds to consumers as compensation for their having purchased deceptively advertised products, via the self-identification method.[26] And, as previously noted, *supra*, ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

_____

ascertaining the identity of class members will ultimately be much lighter."). Indeed, while the identity of class members "need not be determined prior to class certification," *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *61, Plaintiff has already learned the identity of purchasers of more than 18,000 shipments of Freshmates through subpoenas served on some of the very retailers and distributors to whom P&G sells Freshmates. *See Pl. Cert. Mem.* at 20. Many more will be identified by future subpoenas and by retailers' loyalty card records that track purchases of Freshmates.

[26] *See, e.g.*, https://www.ftc.gov/enforcement/cases-proceedings/refunds/wacoal-refunds (telling consumers to apply for a refund if they purchased Wacoal iPants products—which was deceptively marketed as being scientifically proven to reduce the cellulite and thigh size of the wearer—by clicking the link taking them to an online claim form that does not require proof of purchase or receipt, but simply requires consumers to sign a declaration that "to the best of [their] knowledge" they purchased the iPants products: https://secureweb2.rustconsulting.com/ftcwacoal/ocf.aspx). Sites/link last visited Mar. 20, 2015. As noted in the second link referring to Rust Consulting, the FTC employs private claims administrators to administer settlements and apparently relies upon public news stories to advise consumers of their right/ability to submit claims.

██████████████████████████████████████████████████

██████████████████████████████████████████████. [27]

Hence, Defendant's purported bases for denying class certification are meritless.

## CONCLUSION

Widespread damage is being caused by non-flushable "flushable" products like Freshmates.  This case enables New York consumers to do something about the damages caused to them now, and the potential damages if not stopped.

Plaintiff respectfully requests that this Court reject Defendant's Motion to Deny Class Certification.

------

[27] *See also Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, at *689 n.8 (S.D. Fla. 2014) (collecting self-identification cases and holding that "the Court finds no authority that this method is per se invalid," although it was "troublesome" in *Randolph* because the challenged term did not appear on all products, nor at all times, the products were not the same for all class members, and plaintiff could not even recall which specific product she purchased). As the *Randolf* court explained, widely applying the holding of that case or others Defendant relies upon here, including *Carerra* and *Karhu v. Vital Pharm., Inc.*, 13-60768-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 26756 (S.D. Fla. Mar. 3, 2014), beyond their "limited . . . facts" would "be a devastating blow to the class action device and would ultimately undermine the viability of the class action for small ticket consumer items."  *Id.* (explaining that, "[a]lthough, in reaching [its] conclusion, the [c]ourt has relied on cases that have, in turn, relied on *Carerra*, the [c]ourt expresses caution with the reasoning of *Karhu* and *Carerra*. . . . .  Accordingly, the holding contained herein is expressly limited to the facts presented.").

26

Dated: March 27, 2015

**WOLF POPPER LLP**

<u>/s/ Lester L. Levy</u>
Lester L. Levy
Michele Fried Raphael
Matthew Insley-Pruitt
Robert S. Plosky
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600

*Attorneys for Plaintiff*

27