**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ANTHONY BELFIORE, on behalf of himself and all others similarly situated,

                Plaintiff,

      *-against-*

THE PROCTER & GAMBLE COMPANY,

                Defendant.

14 Civ. 4090 (JBW)(RML)

[REDACTED PURSUANT TO STIPULATED PROTECTIVE ORDER]

---

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Andrew D. Schau (AS 5815)
Claire Catalano Dean (CD 4114)
Michael Sochynsky (MS 1238)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Emily Johnson Henn*
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
(650) 632-4700

Sonya D. Winner*
Cortlin H. Lannin*
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94102
(415) 591-6000

* *Admitted pro hac vice*

Attorneys for Defendant
*The Procter & Gamble Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

FACTS .............................................................................................................................. 5

ARGUMENT ..................................................................................................................... 5

I.    PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A
      PREPONDERANCE OF THE EVIDENCE THAT RULE 23(A)'S
      REQUIREMENTS HAVE BEEN SATISFIED. ...................................................... 6

      A.    Plaintiff Has Not Met His Burden of Proving Typicality. ...................... 6

      B.    Plaintiff Has Not Met His Burden of Proving Commonality. ................ 8

      C.    Plaintiff Has Not Met His Burden of Proving Adequacy. ................... 11

II.   PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A
      PREPONDERANCE OF THE EVIDENCE THAT RULE 23(B)(3)'S
      PREDOMINANCE REQUIREMENT HAS BEEN SATISFIED. ................................. 12

III.  PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A
      PREPONDERANCE OF THE EVIDENCE THAT THE CLASS IS
      ASCERTAINABLE. ............................................................................................. 18

IV.   THE COURT MAY NOT CERTIFY AN INJUNCTIVE RELIEF CLASS
      UNDER RULE 23(B)(2). ...................................................................................... 23

      A.    Plaintiff's Failure to Satisfy the Requirements of Rule 23(a) Precludes
            Certification under Rule 23(b)(2). ........................................................ 23

      B.    Plaintiff Also Fails To Satisfy the Separate Requirements of Rule
            23(b)(2). ................................................................................................. 24

            1.    Plaintiff Has Not Demonstrated that Injunctive Relief Is
                  Appropriate for the Class as a Whole. ....................................... 24

            2.    A Rule 23(b)(2) Class May Not Be Certified Because Plaintiff Is
                  Predominantly Seeking Money Damages. ................................... 25

            3.    Mr. Belfiore Lacks Standing to Seek Injunctive Relief. ........... 25

CONCLUSION ................................................................................................................. 26

## SUPPORTING DECLARATIONS (FILED SEPARATELY)

Declaration of Carol A. Scott, Ph.D.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................6, 8, 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................12

*Bakalar v. Vavra*,
    237 F.R.D. 59 (S.D.N.Y. 2006) ....................................................................18

*Brazil v. Dole Packaged Foods, LLC*,
    2014 WL 2466559 (N.D. Cal. May 30, 2014) ......................................14, 15, 17

*Brazil v. Dole Packaged Foods, LLC*,
    2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ....................................................15

*Bruton v. Gerber Prods. Co.*,
    2014 WL 2860995 (N.D. Cal. June 23, 2014) ..................................................18

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ........................................................................21

*Charron v. Pinnacle Grp. N.Y. L.L.C.*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ..................................................................18

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ..................................................................13, 14, 16, 17

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ................................................10

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) ........................................................................24

*Ebin v. Kangadis Food Inc.*,
    279 F.R.D. 561 (S.D.N.Y. 2014) ............................................................3, 8, 18

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................20

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ........................................................................18

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982)................................................................8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)....................................................................11

*Haynes v. Planet Automall, Inc.*,
  276 F.R.D. 65 (E.D.N.Y. 2011) ............................................................1, 11

*Himber v. Intuit, Inc.*, 2012 WL 4442796 (E.D.N.Y. Sept. 25, 2012)........................11

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014)................................................................20

*In re Fla. Cement & Concrete Antitrust Litig.*,
  278 F.R.D. 674 (S.D. Fla. 2012) ................................................................5

*In re Flash Memory Antitrust Litig.*,
  2010 WL 2332081 (N.D. Cal. June 9, 2010) ....................................................5

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)......................................................................18

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)..............................................17, 21

*In re Scotts EZ Seed Litig.*,
  2015 WL 670162 (S.D.N.Y. Jan. 26, 2015) ..........................................16, 17, 18

*In re Taco Bell Wage & Hour Actions*,
  2011 WL 4479730 (E.D. Cal. Sept. 26, 2011)..................................................6

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)....................................................................14

*Karhu v. Vital Pharm., Inc.*,
  2014 WL 815253 (S.D. Fla. Mar. 3, 2014)......................................................21

*Lanovaz v. Twinings N. Am., Inc.*,
  2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ..................................................15

*Maldonado v. Ochsner Clinic Found.*,
  493 F.3d 521 (5th Cir. 2007) ..................................................................24

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)................................................................19, 21

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)................................................................13, 14

iv

*Moheb v. Nutramax Labs. Inc.*,
   2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ........................................................7

*Nationwide Life Ins. Co. v. Haddock*,
   460 F. App'x 26 (2d Cir. 2012) .........................................................................25

*Pagan v. Abbott Labs., Inc.*,
   287 F.R.D. 139 (E.D.N.Y. 2012) ............................................................. *passim*

*Perez v. Metabolife Int'l, Inc.*,
   218 F.R.D. 262 (S.D. Fla. 2003) .......................................................................21

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ......................................................................20

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
   687 F. Supp. 2d 381 (S.D.N.Y. 2010) .................................................................5

*Roach v. T.L. Cannon Corp.*,
   2015 WL 528125 (2d Cir. Feb. 10, 2015) ..........................................................13

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d. Cir. 2001) ...........................................................................24

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) .......................................................................................10

*Tolliver v. McCants*,
   2009 WL 1473445 (S.D.N.Y. May 26, 2009) .......................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..............................................................................*passim*

*Weiner v. Snapple Bev. Corp.*,
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..................................................14, 21

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ............................................................21

**Statutes**

N.Y. Gen. Business L. § 349 ...................................................................... *passim*

**Other Authorities**

7A Charles A. Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005).....................19

CPIP Reception for the NY Water Resources Institute, *available at*
   http://www.cipa.cornell.edu/news/events.cfm?event=2046 ...................................9

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Fed. R. Cilv. P. 23(a) ............................................................................................... *passim*

Fed. R. Civ. P. 23(b) ................................................................................................ *passim*

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................19

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (11th ed. 2014) .........................19

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 8:6 (11th ed. 2014) .........................22

William B. Rubenstein, *Newberg on Class Actions* § 3.3 (5th ed. 2013).....................................19

The Procter & Gamble Company ("P&G") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification.

## INTRODUCTION

Plaintiff's motion for class certification offers only the most cursory effort to satisfy the mandatory requirements of Rule 23.  Not only does the motion offer very little in the way of actual evidence in support of the showing he is required to make; in many respects his bare arguments are affirmatively *inconsistent* with the only evidence in the record.

He asserts, for example, that Freshmates are *never* "flushable," even though the product has been subjected to extensive flushability testing and the overwhelming majority of purchasers have never experienced a flushing problem during use.  He asserts that *all* Freshmates purchasers paid a "price premium" for Freshmates in comparison to non-flushable wipes and toilet tissue, but fails to explain how such a premium, if it even exists, could possibly have injured purchasers for whom the product performed exactly as advertised.  He asserts that his claim is *typical* of all class members, even though he experienced plumbing problems before he ever used Freshmates and the record evidence shows that the clog he experienced in 2014 was likely caused by tree roots and other obstructions in his pipes.  And he claims that injunctive relief is warranted even though nearly all class members would be *harmed* by an injunction preventing P&G from truthfully informing consumers that Freshmates – unlike many moist wipes on the market – are flushable and compatible with septic and sewer systems.

Before a class action may be certified, either as a damages class or an injunctive relief class, the court must conduct a rigorous analysis of the evidence supporting each requirement of Rule 23.  The party seeking class certification may not rest on his pleadings.  Rather, he must show by a preponderance of the evidence that each requirement is satisfied.  *See Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 73 (E.D.N.Y. 2011) (noting that Rule 23 does not set forth

a mere pleading standard and reciting *Wal-Mart's* requirement that a "party seeking class certification must affirmatively demonstrate his compliance with the Rule.") (Weinstein, J.).

Plaintiff's motion for class certification falls well short of meeting this standard. Plaintiff relies almost entirely on his pleading – he cites his own Complaint 18 times. He asks this Court to take it on faith (not evidence) that he can establish, through common evidence applicable to the entire class, that Freshmates are not "flushable," and that purchasers who do not experience plumbing problems while using Freshmates are nevertheless injured because the product allegedly costs more than non-flushable wipes and toilet tissue, neither of which have the same features and benefits as Freshmates. Plaintiff submits *no evidence* that consumers regard Freshmates, non-flushable wipes and toilet tissue as competing, interchangeable products, or that the price premium allegedly associated with Freshmates is not fully warranted by the product's distinguishing features and benefits.

Moreover, although a party seeking class certification is obliged to submit his evidence in support of class certification at the time he files his Rule 23 motion – a fact that led Magistrate Judge Robert M. Levy to modify the schedule to permit plaintiff to take discovery and file an affirmative motion for class certification – plaintiff fails to submit *any* fact declarations whatsoever. As a consequence, the record contains *no evidence* that he will be able to prove, through class-wide evidence, that *all* Freshmates purchasers were misled by the "flushability" claims on the package, much less that they all suffered common, class-wide injury. The record contains *no evidence* that plaintiff will be able to prove, through class-wide evidence, that consumers were commonly and materially misled because Freshmates failed to meet their common understanding of "flushable." It contains *no evidence* that he will be able to prove, through class-wide evidence, that purchasers suffered a common injury caused by their purchase

of Freshmates.  Rather, plaintiff's submissions merely beg the question of how consumers who bought wipes that worked for them exactly as advertised could be considered to have paid an as-yet undetermined "price premium."  The record contains *no evidence* that plaintiff can possibly prove, through class-wide evidence, that Freshmates caused the plumbing problems that some small number of purchasers may have experienced while using Freshmates.  And it contains *no evidence* that the members of the proposed "all purchaser" class can be ascertained in an administratively-feasible manner that protects the due process rights of P&G and absent class members.  For these reasons and others, plaintiff has not met his burden of proving by a preponderance of the evidence that the requirements of Rule 23 have been satisfied.

In contrast, P&G has submitted evidence that Freshmates wipes have been extensively tested and shown to be compatible with toilets, drain lines, sewage pumps, septic tanks, and municipal collection and treatment systems.  P&G's evidence also shows that the pipes connecting plaintiff's home to the sewer are filled with tree roots and other obstructions that make them unusually susceptible to clogs.  P&G's evidence affirmatively shows that the claims in this case are not susceptible to generalized proof.

Plaintiff's legal arguments are equally deficient.  Notably, the handful of Section 349 cases cited in his Memorandum of Law involve product labels – like the "pomace oil" that was advertised as "100% Pure Olive Oil" in *Ebin v. Kangadis Food Inc.*, 279 F.R.D. 561 (S.D.N.Y. 2014) – that were misleading to *all* purchasers.  In cases like *Ebin*, all purchasers are injured because all purchasers receive less than what the label promises.  But cases like *Ebin* are not applicable here, because Freshmates delivers the labeled "flushability" benefit to the vast majority of purchasers.  Plaintiff avoids any discussion of more pertinent cases, such as *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139 (E.D.N.Y. 2012), that involved products that allegedly failed

to perform as advertised for only a small subset of purchasers.  In such cases, class certification is inappropriate because most class members are not injured at all, and those who might have been injured present *individual causation issues* that must be separately adjudicated based on individualized proof.

Plaintiff makes a cursory attempt to show that he can prove class-wide injury by submitting a declaration from Colin Weir.[1]  Mr. Weir proposes to use "hedonic regression analysis" to identify and measure "Price Premium Damages" attributable to the challenged "flushability" claims.  But Mr. Weir has not constructed a model, obtained the information required to implement such a model, or attempted to determine, even preliminarily, whether such a model can be made to work based on the information available to him in this case.  *Id.* ¶¶ 32, 34-35.  As P&G's expert, Dr. Carol A. Scott explains, Mr. Weir has not proposed a workable regression model that could be used to measure any sort of class-wide price premium associated with P&G's flushability claims.[2]

Separately, Mr. Weir proposes to calculate ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ even though Section 349 only permits purchasers to receive statutory damages if they "have been injured by reason of" a violation, and Mr. Weir offers no means to identify who those persons might be.

In short, plaintiff fails to make a credible or even serious evidentiary or legal case for class certification under Rule 23.  His evidence does not withstand the rigorous analysis required by Supreme Court precedent.  His motion for class certification should be denied.

---

[1] Declaration of Colin B. Weir dated Feb. 27, 2015, Dkt. No. 62-3 ("Weir Dec.") ¶ 1.

[2] *See* Declaration of Carol A. Scott, Ph.D. dated March 26, 2015 ("Scott Dec.") ¶¶ 5-9, 47.

**FACTS**

P&G incorporates by reference the detailed discussion of the facts and claims in this case set forth at pp. 4-9 of its Memorandum of Law in Support of its Motion to Deny Class Certification, Dkt. No. 60 ("Def.'s Memo. to Deny").

**ARGUMENT**

P&G has already shown in its Motion to Deny Class Certification that there are multiple independent reasons why a damages class may not be certified under Rules 23(a) and (b)(3). The failure to satisfy Rule 23(a) also precludes certification of an injunctive relief class under Rule 23(b)(2).  To avoid burdening the Court with undue repetition, P&G does not repeat all of those arguments here.  Instead, this Opposition focuses on P&G's direct response to the specific arguments presented in plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Class Certification, Dkt. No. 58-1 ("Pl.'s Memo. to Certify")

Although plaintiff bears the initial burden of proving that Rule 23's evidentiary requirements have been met, he offers little or no evidence on key elements of the class certification inquiry.  His failure to submit evidence is significant because his evidence in support of class certification (if any) should have been proffered with his moving papers, so that P&G would have a full and fair opportunity to respond.  *Tolliver v. McCants*, 2009 WL 1473445, at *3 (S.D.N.Y. May 26, 2009); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010).  Notably, plaintiff's failure to meet his initial burden cannot be remedied in his reply papers, as courts generally follow the rule that new evidence or analysis presented for the first time in a reply will not be considered.  *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."); *In re Fla. Cement &*

*Concrete Antitrust Litig.*, 278 F.R.D. 674, 683-84 (S.D. Fla. 2012); *In re Taco Bell Wage & Hour Actions*, 2011 WL 4479730, at *7 (E.D. Cal. Sept. 26, 2011).

I.   **PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT RULE 23(A)'S REQUIREMENTS HAVE BEEN SATISFIED.**

    A.   **Plaintiff Has Not Met His Burden of Proving Typicality.**

Plaintiff devotes a scant two paragraphs in his Memorandum to discussing typicality. Pl.'s Memo. to Certify at 10.  He summarily asserts that his claim is "no different than other class members" because he purchased Freshmates at a "premium over non flushable wipes (and toilet paper)." *Id.*[3]  He relies on one Section 349 case – *Ackerman v. Coca-Cola Co.* – in which Magistrate Judge Levy found that the typicality requirement was satisfied where the plaintiff alleged that the name "vitaminwater" was misleading to reasonable consumers because the product was not, in fact, healthier than competing beverages. *Id.*, 2013 WL 7044866 at *11 (E.D.N.Y. July 18, 2013).

*Ackerman* is, if anything, contrary overall to plaintiff's position here.  Although Judge Levy found typicality to exist, he went on to deny class certification in that case because "[p]roof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof." *Id.* at *20.

In any event, the typicality finding in that case is readily distinguishable.  Like the other cases on which plaintiff principally relies, *Ackerman* involved a product claim that, if it was misleading at all, was equally misleading to *all* purchasers.  "Vitaminwater" either is healthier than competing beverages or it is not.  Thus, unlike in this case, the question of whether the

---

[3] In fact, Mr. Belfiore does not remember the price he paid for Freshmates and did not keep a record of his purchase.  Dkt. No. 63-1 ("Dean Dec. Ex. A") at 31.

name "vitaminwater" is misleading did not depend on the individual purchaser's experience with the product in actual use.

Here, in contrast, the claim that Freshmates is not "flushable" because it clogged Mr. Belfiore's pipes is unique to Mr. Belfiore's actual experience; plaintiff has not shown (and could not show) through common evidence that the product is actually "non-flushable" for everyone. Mr. Belfiore's experience is not typical of the majority of purchasers, many of whom have been using the product for years, and for whom the product has always been fully "flushable."  *See Pagan*, 287 F.R.D. at 150 (plaintiff claiming damages for medical expenses not typical because most class members did not incur such expenses).  Indeed, Mr. Belfiore's claim is not even typical of persons who did experience plumbing problems, because all such claims raise individual causation issues.  Whether Freshmates were in fact "flushable" for Mr. Belfiore will require evaluation of individualized facts, such as the fact that the pipes connecting his home to the sewer contain tree roots and other obstructions that make them unusually susceptible to clogging, that he experienced clogged pipes even before he used Freshmates, and that someone in the Belfiore home has been flushing non-flushable materials down the toilet.  Dkt. No. 65 ("O'Shea Dec.") ¶ 11; Dean Dec. Ex. A at 67-69; Dkt. No. 70 ("Sabaliunas Dec.") ¶¶ 9-13.

These facts raise individual defenses that are not common to the entire class and thus preclude a finding that Mr. Belfiore is "typical" of the class his lawyer asks that he be permitted to represent.[4]  *See Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *4 (C.D. Cal. Sept. 4,

---

[4] As shown in P&G's Motion to Deny Class Certification, Mr. Belfiore himself thinks he is seeking to represent a much narrower class of persons who experienced clogs after using Freshmates.  Dean Dec. Ex. A at 98-99.  While he is *more* typical of that smaller group than he is of the much larger class his lawyers seek to certify, the specific individualized questions that must be answered to adjudicate his claim would still preclude a finding of typicality even for that narrower class.

2012) (typicality not satisfied where the product "works for some, but may not work as well for others, but the proposed class does not differentiate between these groups."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (declining to certify a class of consumers alleging breach of warranty where "the majority of the putative class members have no legally recognizable claim" because the "majority of the tires sold to putative class members … [did] what they were supposed to do for as long as they were supposed to do it[.]"); *see also* Def.'s Memo. to Deny at 15-18.

Plaintiff's failure to meet Rule 23(a)'s typicality requirement precludes certification of a damages class under Rule 23(b)(3) or an injunctive relief class under Rule 23(b)(2).

**B.      Plaintiff Has Not Met His Burden of Proving Commonality.**

Plaintiff identifies three issues that he says "indisputably satisfy commonalty."  Pl.'s Memo. to Certify at 9.  These issues are:  "i) whether Freshmates is flushable, ii) whether Freshmates is safe for septic and sewer systems; and iii) what flushable means to the reasonable consumer."  *Id.*  Although plaintiff claims these questions present common issues, he proffers *no common evidence* demonstrating that to be the case.  Indeed, the only evidence before the Court concerning whether Freshmates are "flushable" and "safe for septic and sewer systems" is the evidence submitted by P&G in connection with its Motion to Deny Class Certification.  That evidence establishes that Freshmates wipes have been extensively tested and shown to be compatible with toilets, drain lines, sewage pumps, septic tanks, and municipal collection and treatment systems.  Sabaliunas Dec. ¶¶ 5-8.

Plaintiff also proffers no evidence showing that he could prove through common evidence how consumers understand the term "flushable" as it appears on the Freshmates package.  Instead, plaintiff's commonality argument rests on a facile reliance on cases like *Ebin v. Kangadis Food, Inc.* and *Ackerman v. Coca-Cola Co*, both of which involved product labels

that, if they were misleading at all, were by definition misleading to all purchasers in the same, common way. "Pomace oil" either is "100% Pure Olive Oil" or it is not; it cannot be "100% Pure Olive Oil" to some purchasers and "not 100% Pure Olive Oil" to other purchasers. Freshmates, on the other hand, are "flushable" for the vast majority of consumers, as this record establishes. This is true even if (as P&G contests) they contributed to Mr. Belfiore's clog. Thus, the question of whether Freshmates are "flushable" for the tiny handful of consumers who claim to have suffered a clog necessarily raises individual issues that are not susceptible to class-wide resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).[5]

Similarly, even if it were relevant in this case (which the Court has already indicated it is not, *see* Dkt. Nos. 23, 77), the question of whether Freshmates are "safe for septic and sewer systems" cannot be resolved (at least in plaintiff's favor) "in one stroke" for all septic and sewer systems. Plaintiff has submitted no evidence that *any* of the more than one million private septic systems or thousands of public and private wastewater treatment systems in New York (or elsewhere) have been damaged by Freshmates.[6] Plaintiff has certainly made no showing that

---

[5] Plaintiff tries to sidestep the question of how consumers understand the term "flushable" by arguing that "P&G, itself, understands that flushability means more than just being capable of going down the toilet." Pl.'s Memo. to Certify at 1. Plaintiff laid no foundation for the P&G document cited as support for this statement, which merely states that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 62-2 Ex. B. The fact that an industry standard imposes conservative testing requirements is hardly proof that an ordinary consumer has those requirements in mind in applying his own common sense in reading a label. In any event, this is a non-issue, as it is undisputed that Freshmates passes all of the tests required for the product to be labeled as "flushable" under these guidelines. Sabaliunas Dec. ¶¶ 5-8.

[6] According to information published by Cornell University, New York State has "over 610 municipal wastewater treatment facilities, thousands of privately-held residential facilities, and an estimated 1.5 million septic systems." *See* CPIP Reception for the NY Water Resources Institute, http://www.cipa.cornell.edu/news/events.cfm?event=2046 (last visited March 26, 2015).

these myriad systems are so similar that common proof can be used to establish that Freshmates is unsafe for use in all – or even many – of them.

Finally, resolving what "flushability" might mean in an abstract sense to a hypothetical "reasonable consumer" is not a common question whose resolution will advance all class members' claims "in one stroke."  The reason, simply, is that deception alone is not actionable under Section 349.  To the contrary, a plaintiff seeking recovery under the statute must also demonstrate that the deceptive claim resulted in "an actual injury" to himself.  *Pagan*, 287 F.R.D. at 148; *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999) (plaintiff must demonstrate that defendant "has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiffs has been injured by reason thereof.") (citations and internal quotation marks omitted).  In order to secure a remedy under Section 349, the plaintiff must prove that he was injured by defendant's violation of the statute.  *Id.*; *see also Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at \*7 (E.D.N.Y. Sept. 26, 2012) (holding that the plaintiff's attempt to "set[] forth deception as both act and injury" was insufficient, because a plaintiff must prove "actual or pecuniary harm that is separate and apart from the alleged deception itself.").

Finally, plaintiff claims that "other common questions include whether Class members are entitled to injunctive relief; whether each Class member is entitled to the uniform measure of damages of $50 provided for in GBL § 349; and whether each Class member paid a premium for the wipes because they were marketed as flushable."  Pl's Memo. to Certify at 9.  The first and second of these questions are simply legal issues of the sort that the Supreme Court has made clear *may not*, as a matter of law, be treated as common questions for purposes of Rule 23(a).  *See Wal-Mart*, 131 S. Ct. at 2551 (the commonality requirement does "not mean merely that

10

[class members] have all suffered a violation of the same provision of law."); *see also Haynes*, 276 F.R.D. at 79 (holding that questions such as the availability of particular remedies and whether defendant's conduct constitutes deceptive practices under Section 349 are "legal questions peripheral to the certification decision" and therefore insufficient to satisfy commonality) (Weinstein, J). Also, all three questions merely circle back to the flushability issue, an issue that cannot be resolved through common proof. Moreover, because consumers who receive the full benefit of the bargain are not injured by reason of a violation of the statute, the provision for statutory damages under Section 349 does not establish commonality:

> The existence of a minimum amount of statutory damages [under Section 349] does not assist the Plaintiffs in overcoming the hurdle of affirmatively demonstrating commonality, because . . . the Plaintiffs need to first show that the class members have been injured or harmed in the same way. *See Himber [v. Intuit, Inc.]*, 2012 WL 4442796, at *9 [E.D.N.Y. Sept. 25, 2012] ("[T]he lack of non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under the relevant statutory provision[.]").

*Pagan*, 287 F.R.D. at 149.

Plaintiff's failure to meet Rule 23(a)'s commonality requirement precludes certification of a damages class under Rule 23(b)(3) or an injunctive relief class under Rule 23(b)(2).

### C.   Plaintiff Has Not Met His Burden of Proving Adequacy.

Plaintiff argues that Mr. Belfiore is an adequate class representative because he has complied with his discovery obligations. Pl.'s Memo. to Certify at 11. He cites no authority to support the argument that discovery compliance is alone sufficient.

P&G's reasons for challenging Mr. Belfiore's adequacy are described in P&G's Motion to Deny Class Certification. *See* Def.'s Memo. to Deny at 21-23. They include:

- The fact that Mr. Belfiore's personal claim raises unique causation issues that would distract attention from the class claims. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless

of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.") (internal citations omitted); *Pagan*, 287 F.R.D. at 150 (named plaintiffs cannot adequately represent the class if their case "involves a host of legal and factual issues unique to them and that are likely to distract from their representation of the class.").

- The fact that Mr. Belfiore's own litigation objectives appear to be different from those of his counsel. Def.'s Memo. to Deny at 22-23. Mr. Belfiore's primary goal is to secure recompense for class members who experienced plumbing problems, something that cannot be achieved in a class action because causation cannot be shown based on class-wide evidence. His counsel's primary objective is instead to secure "price premium" damages for everyone who ever purchased Freshmates, even if those purchasers were not injured because the product worked as advertised.

- Mr. Belfiore is unable to meaningfully assist his counsel and represent the class in these proceedings. Def.'s Memo. to Deny at 23 n.16.

Plaintiff's failure to meet Rule 23(a)'s adequacy requirement precludes certification of a damages class under Rule 23(b)(3) or an injunctive relief class under Rule 23(b)(2).

## II.  PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT HAS BEEN SATISFIED.

Plaintiff fails to make a persuasive showing that common issues predominate over questions affecting only individual class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997). To the contrary, individual issues predominate with respect to (1) whether individual class members were *deceived* by the challenged flushability claims, (2) whether the challenged claims were *material* to each class member's decision to purchase Freshmates, (3) whether individual class members were *injured* by reason of those claims, (4) whether any alleged plumbing problems class members experienced while using Freshmates were *caused* by Freshmates, (5) whether the *amount* of any class member's plumbing-related damages can be

assessed without individual trials,[7] and (6) whether all class members paid an *unjustified* price premium by reason of the challenged claims.  *See* Def.'s Memo. to Deny at 28-36.  For the most part, plaintiff fails to address these issues.

Plaintiff asserts that he will be able to prove class-wide, "price premium" damages using "hedonic regression analysis."  He submits a declaration from Colin Weir, a litigation consultant, who claims he will be able develop a regression model using data that may be forthcoming in the future.  *See* Weir Dec. at ¶¶ 34-35.  Mr. Weir has not constructed his regression model or shown that one can be applied in this case.  Scott Dec. ¶¶ 5, 7, 8, 15-42.  He has not even selected appropriate comparison products to use in such a model.  *Id.* ¶¶ 7, 15, 18-19.  And importantly, he has not (and cannot) explain how a "price premium" model can be applied to the majority of Freshmates purchasers who have flushed the product without incident (often for years) and thus consistently received the full benefit of their bargain.  His proposal to use regression analysis overlooks the fact that, for the vast majority of users, Freshmates works exactly as advertised. *Id.* ¶¶ 9, 43-47.

In *Comcast Corp. v. Behrend*, the Supreme Court held that a district court may not certify a Rule 23(b)(3) class if the plaintiff has failed to demonstrate that his proposed method for calculating class-wide damages fits his theory of liability.  *Id.*, 133 S. Ct. 1426, 1433 (2013).  At the certification stage, the proposed method of calculating damages must be sufficiently well developed to permit the court to "examine the [plaintiff's] proposed damages methodology … to ensure that it is consistent with the classwide theory of liability and capable of measurement on a

---

[7] The Second Circuit recently confirmed that "'the fact that damages may have to be ascertained on an individual basis [is a] … *factor that we [must] consider* in deciding whether issues susceptible to generalized proof 'outweigh' individual issues.'"  *Roach v. T.L. Cannon Corp.*, 2015 WL 528125, at *6 (2d Cir. Feb. 10, 2015) (emphasis added) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)).

classwide basis." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013).  As the Supreme Court in *Comcast* made clear, plaintiffs must provide more than mere assurances that they will be able to calculate damages for the class through an appropriate methodology to be developed later.  *Comcast*, 133 S. Ct. at 1434.  To satisfy their burden, plaintiffs must take the "first step" of offering a "translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*."  *Id.* at 1435.  At a minimum, plaintiffs must "demonstrate that the proposed methodology can be applied class-wide and 'that they could, at trial, marshal facts sufficient to permit them to rely upon' the proposed methodology."  *Weiner v. Snapple Bev. Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (quoting *McLaughlin*, 522 F.3d at 229 (2d Cir. 2008)).

Mr. Weir's vague assurances that a regression model can be used in this case are wholly insufficient under *Comcast*.  In fact, as P&G's expert, Dr. Carol A. Scott, explains in her declaration, regression analysis is *not* a suitable or appropriate way to identify or measure an alleged price premium associated with the "flushability" claims at issue in this case.  *See* Scott Dec. ¶¶ 5-9.  Aside from the fact that Mr. Weir has not even attempted to construct a workable regression model – and lacks the data required in order to do so – the usual kind of regression analysis cannot work in this case because the Freshmates package and other labeling always featured flushability claims.  Dkt. No. 62-2 Ex. D ("Otero Deposition") at 46.  It is impossible, therefore, to compare the price of Freshmates "before" and "after" the flushability claims were added to the package to determine whether the claims are associated with a price effect.  Scott Dec. ¶¶ 11-12.

Courts frequently reject the use of regression analysis in these circumstances.  *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ("*Dole I*") provides a

case in point.  The plaintiff's expert in that case promised that he would be able to do a "before"

and "after" regression analysis on the price of defendant's product.  Based on that promise, the

district court provisionally accepted plaintiff's proposed regression model.  *Id.* at *17-18.  But

the court subsequently rejected the regression model (and decertified the class) when it became

clear that the plaintiff would not be able to compare the price of the product "before the

[challenged] label statement was introduced, and the [the price of the] same product after its

label included the alleged representation."  *Brazil v. Dole Packaged Foods, LLC*, 2014 WL

5794873, at *5 (N.D. Cal. Nov. 6, 2014) ("*Dole II*") (quoting *Dole I*).  The court ruled that given

the absence of a "before" and "after" price comparison, the plaintiff could not meet his "burden

to show that the model he proposes is capable of controlling for all other factors and isolating the

price premium attributable to" the challenged packaging claim.  *Id.* at *13; *see also Lanovaz v.

Twinings N. Am., Inc.*, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014) (finding that

regression analysis was "ruled out" where the challenged claims "have been on the labels over

the entire class period.").

      Mr. Weir suggests that he can develop a regression model that ███████████████

█████████████████████████████████████████████████████████████████████████

████████████████  But he does not claim to actually possess such a model now; nor does he appear

to have fully thought through what such a model would even look like.[8]  His mere prediction that

---

[8] Mr. Weir's alternative methods for calculating "damages" ███████████████████
█████████████████  The former would require proof – which plaintiff does not even pretend to
have – that no class member gained *any* benefit at all from his purchase of Freshmates.  The
second requires proof that every class member suffered actual injury-in-fact from his or her
purchase of Freshmates, but that requires proof, *inter alia*, that every class member paid a
premium price for the product because of the flushability label – and plaintiff's only proffered
evidence of *that* is, again, Mr. Weir's proposed regression model.

he ought to be able to develop a useful model in the future falls far short of what *Comcast* requires. *See Comcast*, 133 S. Ct. at 1434. Moreover, as Dr. Scott explains, Mr. Weir's optimism that a workable model should be possible in this case is misplaced, for numerous reasons. *See generally* Scott Declaration. These reasons include:

- Mr. Weir has not identified any competing products that could be used as comparator products because they share the features and benefits of "flushable" wipes but lack the "flushability" claim. *Id.* ¶¶ 7, 15, 18-19.

- Mr. Weir has not identified any non-flushable comparison products at all that fit a criterion he has previously identified as critical for an analysis of this kind: co-location on the same store shelf as the product at issue. *Id.* ¶¶ 19-20.

- Mr. Weir has provisionally identified only ███████████████████ ███████████████████████ in order to attempt to determine whether the "flushability" claims are associated with a price effect, and ███████████ ██████████████████████████ *Id.* ¶¶ 23-24.

- The data available to Mr. Weir are insufficient to allow him to ████████████ ███████████████████████████████████████████ *Id.* ¶¶ 25-42.

- The ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████ *Id.* ¶ 35.

- The data available to Dr. Weir do not include complete or transparent data relating to ███████████████████████████████████████████ ███████████ *Id.* ¶¶ 18, 37-39.

These are serious problems that anyone familiar with regression analysis should be able to anticipate and discuss. Mr. Weir, however, neither acknowledges the problems nor offers any solutions. Accordingly, plaintiff has not met his burden of proving that he will be able to measure class-wide injury though common proof.

Plaintiff's reliance on *In re Scotts EZ Seed Litig.*, 2015 WL 670162 (S.D.N.Y. Jan. 26, 2015), a case that provisionally accepted a regression model at the class certification stage, is

16

misplaced.  The plaintiffs in that case alleged that defendant's grass seed product "does not grow grass at all," let alone grows grass that is "50% thicker with half the water" compared with "ordinary seed," as defendant claimed.  *Id.* 2015 WL 670162, at *1.  The court found that plaintiff's first damages theory – that every purchaser was injured because "*nobody* was able to grow grass using EZ seed" and, therefore, "plaintiffs received no benefit whatsoever" from purchasing the product – could be established with common proof, because the veracity of the claim did not depend on individualized proof.  *Id.*, at *7, *11-12 (emphasis in original).  That finding has no bearing on this case because plaintiff does not (and cannot) allege that Freshmates has no value whatsoever.  *See Dole I*, 2014 WL 2466559, at *15 (rejecting full refund model on grounds that it presumes plaintiffs received no benefit from product); *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (rejecting a full refund model because consumers benefited from consumption of the defendant's products).

The court in *EZ Seed* also found that plaintiffs satisfied their burden under *Comcast* with respect to the "50% thicker claim" because, although their expert failed to explain *in his declaration* how he "will isolate the price premium associated with the 50% thicker claim," he had provided additional information at his deposition that, in the court's view, made up for those deficiencies.  *EZ Seed*, 2015 WL 670162, at *13.  Here, unlike in *EZ Seed*, there is no evidence that fills that gap.  Nor could there be.  As Dr. Scott explains, the information available in this case is simply not sufficient to conduct a reliable regression analysis.  Scott Dec. ¶¶ 5, 8, 25-42.  Because the proof affirmatively shows that the data available to Mr. Weir will not permit him to

prove the existence of a price premium or isolate the price effect of the "flushability" claims, *EZ Seed* is inapplicable.[9]

## III.   PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROVING BY A PREPONDERANCE OF THE EVIDENCE THAT THE CLASS IS ASCERTAINABLE.

A class that is not ascertainable may not be certified.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  To be ascertainable, a class must meet two criteria.  First, the class must be objectively defined so that it is clear who is and who is not a member of the class.  *Charron v. Pinnacle Grp. N.Y. L.L.C.*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010).  Second, it must be "administratively feasible" to identify class members without conducting a "mini-hearing on the merits of each case."  *Id.*; *see also EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."); *Bruton v. Gerber Prods. Co.*, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014) ("A class is ascertainable if it is defined by 'objective criteria' *and* if it is 'administratively feasible' to determine whether a particular individual is a member of the class.") (emphasis added); *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) ("Class membership must be readily identifiable such that a court

---

[9] Dr. Weir's damages methodology in *Ebin v. Kangadis Food, Inc.*, which another court accepted at the class certification stage, was better developed and informed than the regression model proposed here.  As discussed above, moreover, *Ebin* involved a fact pattern, unlike that presented here, in which the core misrepresentation claim was inherently a common one.  In that case, Dr. Weir submitted a report indicating that he could calculate class-wide damages attributable to the false "100% Pure Olive Oil" claim based on (1) the average price of true 100% pure olive oil, (2) the average price of "pomace oil" sold by companies other than defendant, and (3) the average price of "pomace oil" sold by defendant.  This comparatively straightforward approach is not an option in the more complex situation presented here, which is presumably why Mr. Weir proposes instead to develop a vaguely-described, complicated regression analysis that would take the more complex facts into account in some as-yet-undescribed way.

can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries.").[10]

In this case, the class is not ascertainable. Because P&G does not sell Freshmates directly to consumers, it has no information from which members of the proposed class can be identified. *See* Dkt. No. 67 ("Richards Dec.") ¶ 2. Nor has plaintiff shown that such information is available elsewhere. Without such records, actual notice cannot be provided to all individual class members. Class members who do not receive notice are deprived of their due process right to opt out of the class and not be bound by the judgment. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012) (notice under Rule 23(c)(2)(B) required to protect the due process rights of absent class members and defendants). A number of courts have found that where "nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *See id.*, 687 F.3d at 593 (collecting cases); *cf. Ackerman*, 2013 WL 7044866, at *21 (where it is "exceedingly difficult to identify" class members, they are denied "appropriate notice and an opportunity to opt out.").

Plaintiff points out that he was able to identify *some* class members by serving subpoenas on three large internet retailers: Amazon.com, Drugstore.com, Inc., and Quidsi, Inc. Pl.'s Memo.

---

[10] The leading class action treatises agree that ascertainability requires an administratively feasible method of identifying class members without undertaking individualized fact inquiries. *See* William B. Rubenstein, *Newberg on Class Actions* § 3.3 (5th ed. 2013) ("In addition to asking whether there are objective criteria by which class membership may be determined, courts also ask whether an analysis of this criteria is administratively feasible. Administrative feasibility means *that identifying class members is a manageable process that does not require much, if any, individual factual inquiry*.") (emphasis added); 7A Charles A. Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless . . . it is administratively feasible for the court to determine whether a particular individual is a member."); 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:2 (11th ed. 2014) (in order to certify a class, "it must be administratively feasible for the court to determine whether a given person fits within the class definition without effectively conducting a mini-trial of each person's claim").

to Certify at 19.  This falls far short of demonstrating that the class *as a whole* is ascertainable.

The █████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at 20 and n.23.

This represents less than ████ of the approximately ████████ shipments made during the class

period, █████████████████████████████████████████████████████

████████ "Richards Dec." ¶ 5.  Internet retailers differ from brick-and-mortar retailers in that

they often keep detailed records of sales of even simple consumer items like wipes.  But where,

as here, ██████████████████████████████████████████████, and where, as

here, there is no showing that comparable data is available from the traditional retailers who

made the bulk of the subject sales, a plaintiff cannot rely on internet sales data alone to prove

ascertainability.  *See In re Clorox Consumer Litig.*, 301 F.R.D. 436, 441 (N.D. Cal. 2014)

(rejecting reliance on data that reflected only 5% of relevant purchases); *Randolph v. J.M.*

*Smucker Co.*, 303 F.R.D. 679, 690 (S.D. Fla. 2014) (rejecting the use of internet retailer data

where plaintiff failed to make an evidentiary showing that such records could be used to identify

class members).

Because class members cannot be identified using purchaser databases, there is no way to

identify them so as to permit the individual notice required for a Rule 23(b)(3) class.  *See Eisen*

*v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).  Plaintiff has no answer to this.  Instead, he

simply suggests that class members, having learned of the litigation through some means he does

not describe, could come forward affirmatively to identify themselves, by submitting purchases

receipts, product packaging or labels, or "affidavits identifying the particulars of their

purchases."  Pl.'s Memo. to Certify at 19.

Even if self-identification could satisfy Rule 23 in some cases, it is not appropriate here. As evidenced by Mr. Belfiore's own circumstances, purchasers of Freshmates are not likely to have maintained purchase receipts or product labels. Courts regularly deny class certification in such circumstances. *See, e.g.*, *Weiner*, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (finding plaintiff's proposed use of receipts and signed declarations "unrealistic" because plaintiff offered "no basis to find that putative class members will have retained a receipt" or other proof of purchase); *In re POM Wonderful*, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) ("In situations where purported class members purchase an inexpensive product for a variety of reasons, and are unlikely to retain receipts or other transaction records, class actions may present such daunting administrative challenges that class treatment is not feasible.").

As for plaintiff's suggestion that class members could self-identify by affidavit, most courts have rejected this approach as inappropriate, unreliable and inconsistent with the defendant's due process right to cross-examine its accusers and to "litigate its . . . defenses to individual claims." *Wal-Mart*, 131 S. Ct. at 2561. *See, e.g.*, *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (emphasizing defendants' "due process right to challenge the proof used to demonstrate class membership."); *Marcus*, 687 F.3d at 594 (3d Cir. 2012) ("Forcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) ("To accept [affidavits] without the benefit of cross examination" would "not be proper or just."); *Karhu v. Vital Pharm., Inc.*, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014) ("Accepting affidavits of [product] purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each putative class member."), *appeal pending*, No. 14-11648 (11th Cir.); *Perez v.*

*Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("Although Plaintiffs suggested that class membership could be determined through affidavits and fact sheets, allowing such uncorroborated and self-serving evidence without giving Defendant an opportunity to challenge the class member's evidentiary submissions would likely implicate Defendant's due process rights."); *see also* 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 8:6 (11th ed. 2014) ("Courts have rejected proposals to employ class member affidavits and sworn questionnaires as substitutes for traditional individualized proofs" because such submissions "are, most importantly, not subject to cross-examination.").[11]

In sum, plaintiff has failed to satisfy his burden of proving that the proposed class is ascertainable. There is no database or combination of databases that can be used to comprehensively identify purchasers of Freshmates in New York; purchasers are unlikely to have retained objective proof that they purchased the product; and self-identification by affidavit would be unreliable, improper and inconsistent with P&G's rights.

---

[11] It is extremely doubtful that consumers would take the trouble to self-identify by affidavit, even if they were offered the opportunity to do so. According to a declaration submitted by a class action claims administrator in a case involving Duracell batteries, in cases where consumers receive little or no direct mail notice, the claims rate will "almost always" be "less than one percent." *See* Declaration of Deborah McComb ¶ 5, *Poertner v. Gillette Co.*, No. 6:12-cv-00803 (M.D. Fla. Apr. 22, 2014), *available at* http://blogs.reuters.com/alison-frankel/files/2014/05/duracellclassaction-mccombdeclaration.pdf. The settlements discussed in the declaration involved products "such as toothpaste, children's clothing, heating pads, gift cards, an over-the-counter medication, a snack food, a weight loss supplement and sunglasses." *Id.* In those settlements, the median claims rate was a miniscule .023%. Thus, the overwhelming majority of class members – approximately 99.8% – do not even bother to submit a claim form. There is no reason to believe a greater percentage of purchasers would submit affidavits in this case.

## IV.   THE COURT MAY NOT CERTIFY AN INJUNCTIVE RELIEF CLASS UNDER RULE 23(B)(2).

### A.   Plaintiff's Failure to Satisfy the Requirements of Rule 23(a) Precludes Certification under Rule 23(b)(2).

A class that fails to satisfy each of the factors set forth in Rule 23(a) may not be certified as an injunctive relief class under Rule 23(b)(2).  *See* Fed. R. Civ. P. 23(b)(2) (a prerequisite to any 23(b) class is that "Rule 23(a) is satisfied").  Because plaintiff has not demonstrated typicality, commonality or adequacy under Rule 23(a), the Court may not certify an injunctive relief class under Rule 23(b)(2).

*First*, as explained above and in P&G's Motion to Deny Class Certification, Mr. Belfiore, who personally wishes to represent a class of other New York purchasers of Freshmates who suffered clogs, is not typical of the class his counsel is seeking to certify consisting of *all* New York residents who bought Freshmates, the vast majority of whom have never suffered a plumbing problem from the product and for whom the product has never been anything but "flushable."

*Second*, plaintiff asks this Court to take it on faith (not evidence) that he can establish through common evidence applicable to the entire class that Freshmates are not "flushable," and that purchasers who have no problems in flushing Freshmates are nevertheless injured because the product allegedly costs more than products with *different* features and benefits, such as non-flushable wipes and toilet tissue.  Yet plaintiff submits *no evidence*:

- that consumers regard Freshmates, non-flushable wipes, and toilet tissue as competing, interchangeable products;

- that the price premium allegedly associated with Freshmates is not fully warranted by the product's distinguishing features and benefits;

- that plaintiff will be able to prove, through class-wide evidence, that consumers have a common understanding of the term "flushable" that Freshmates does not meet; *or*

- that *all* Freshmates purchasers were misled by the "flushability" claims on the package, much less that they all suffered resulting injury.

For these reasons and others, plaintiff has not met his burden of proving by a preponderance of the evidence that the requirements of Rule 23(a) have been satisfied.

**B.     Plaintiff Also Fails To Satisfy the Separate Requirements of Rule 23(b)(2).**

Plaintiff's request for certification of a Rule 23(b)(2) class also fails because (a) he has failed to satisfy the separate requirements of Rule 23(b)(2) itself; (b) he primarily seeks monetary relief; and (c) he lacks Article III standing.

**1.     Plaintiff Has Not Demonstrated that Injunctive Relief Is Appropriate for the Class as a Whole.**

A Rule 23(b)(2) class can be certified "*only* when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart*, 131 S. Ct. at 2557 (emphasis added); Fed. R. Civ. P. 23(b)(2) (party seeking declaratory relief required to show that such relief "is appropriate respecting the class as a whole.").  An injunctive relief class is inappropriate in this case because the vast majority of Freshmates purchasers used the product without experiencing plumbing problems.  Consumers who are satisfied with the product would be *harmed* by an injunction that prevented P&G from labeling the product as "flushable."  An injunction would deprive these consumers of truthful information that accurately distinguishes Freshmates from other products, such as baby wipes, that are not designed to be flushable. Plaintiff's inability to show group-wide injury is fatal to his claim for injunctive relief.  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d. Cir. 2001); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) ("A fundamental conflict exists where some class members claim to have been harmed by the same conduct that benefitted other members of the class."); *c.f. Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir.

2007) ("Rule 23(b)(2) certification is … inappropriate when the majority of the class does not face future harm.").

## 2.   A Rule 23(b)(2) Class May Not Be Certified Because Plaintiff Is Predominantly Seeking Money Damages.

While a Rule 23(b)(2) class may be certified (assuming the Rule's requirements are met) to pursue injunctive relief, Rule 23(b)(2) does *not* provide an alternative path to certification of a class that is actually seeking monetary relief. The Supreme Court has made clear that a Rule 23(b)(2) class may not be certified when money damages are the predominant relief sought. *Wal-Mart*, 131 S. Ct. at 2557 ("[U]nless merely 'incidental' to the requested declaratory of injunctive relief, claims for individualized monetary damages preclude class certification under Rule 23(b)(2)."); *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012). In this case, plaintiff's request for money damages – on behalf of himself and on behalf of the putative class – is the predominant form of relief sought; it is not merely "incidental" to his request for injunctive relief. Indeed, at his deposition he testified that P&G should be required to pay his plumbing bill and compensate "other people who experienced the same problem" that he experienced. Dean Dec. Ex. A at 97-98. He did not even mention injunctive relief. Thus, certification of a Rule 23(b)(2) injunction class is not permitted. To put it simply, this is not a case about injunctive relief; it is a case about damages. And for that purpose, certification is available, if at all, *only* under Rule 23(b)(3).

## 3.   Mr. Belfiore Lacks Standing to Seek Injunctive Relief.

This Court has ruled that Mr. Belfiore may seek injunctive relief. Dkt. No. 78 at 7. Although P&G respectfully disagrees with this ruling, it represents the law of the case. Accordingly, and solely to preserve its rights, P&G references and reincorporates the standing

arguments set forth in its prior memoranda in support of its motion to dismiss.  *See* Dkt. Nos. 17-1 at 10-12; 18 at 6-11.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion for class certification.


Respectfully submitted:

/s/ **Andrew D. Schau**
Andrew D. Schau (AS 5815)
Claire Catalano Dean (CD 4114)
Michael Sochynsky (MS 1238)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000

Emily Johnson Henn*
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
(650) 632-4700

Sonya D. Winner*
Cortlin H. Lannin*
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94102
(415) 591-6000

* *Admitted pro hac vice*

*Attorneys for Defendant*
Dated:  March 27, 2015                    *The Procter & Gamble Company*