**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ANTHONY BELFIORE, on behalf of himself
and all others similarly situated,

    Plaintiff,

       vs.

THE PROCTER & GAMBLE COMPANY,

    Defendant.

14 Civ. 4090 (JBW)(RML)


<u>**CLASS ACTION**</u>

**REDACTED**


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN**
<u>**SUPPORT OF MOTION FOR CLASS CERTIFICATION**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   THIS CASE SATISFIES RULE 23(a) ................................................................ 3

    A.   The Class Is Numerous ........................................................................... 3

    B.   There Are Questions Of Law And Fact Common To All Class Members ............ 3

    C.   Plaintiff's Claims Are Typical ................................................................. 8

    D.   Plaintiff Is An Adequate Representative ................................................. 10

II.  THIS CASE SATISFIES RULE 23(b)(3) .......................................................... 11

    A.   Class-wide Issues Predominate .............................................................. 11

    B.   A Class Action Is Superior ..................................................................... 15

III. THE VERY RECENT DECISION IN *DEI ROSSI v. WHIRLPOOL CORP.* ................. 18

IV.  THIS CASE SATISFIES RULE 23(b)(2) .......................................................... 20

CONCLUSION ............................................................................................................. 21

TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
  09 CV 395 (DLI) (RML), 2013 U.S. Dist. LEXIS 184232
  (E.D.N.Y. July 18, 2013) ........................................................................................ *passim*

*Amgen v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ................................................................................1, 4, 11, 13

*Belfiore v. Procter & Gamble*,
  14-CV-4090, 2015 U.S. Dist. LEXIS 38170 (E.D.N.Y. Mar. 25, 2015).................. *passim*

*Brazil v. Dole Packaged Foods, LLC*,
  12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575
  (N.D. Cal. Nov. 6, 2014).............................................................................................14

*Brown v. Hain Celestial Grp.*,
  No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038
  (N.D. Cal. November 18, 2014)....................................................................................13

*Byrd v. Aaron's Inc.*,
  No. 14-3050, 2015 U.S. App. LEXIS 6190 (3rd Cir. Apr. 16, 2015)..............................17

*Cabral v. Supple, LLC*,
  CASE NO. ED 12-00085-MWF (OPx), 2013 U.S. Dist. LEXIS 184170
  (C.D. Cal. February 14, 2013) .......................................................................................8

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)..........................................................................................17

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................................13

*In re ConAgra Foods, Inc.*,
  CASE NO. CV 11-05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971
  (C.D. Cal. Feb. 23, 2015)..............................................................................................13

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014) ..................................................................................18

*Dei Rossi v. Whirlpool Corp.*,
  No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574
  (E.D. Cal. Apr. 28, 2015)......................................................................................... 18-20

*Ebin v. Kangadis Food, Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ..............................................................................7, 16

*Ebin v. Kangadis Family Mgmt. LLC,*
    45 F. Supp. 3d 395 (S.D.N.Y. 2014)........................................................................ 15-18

*Feinstein v. Firestone Tire & Rubber Co.,*
    535 F. Supp. 595 (S.D.N.Y. 1982)..................................................................................8

*Haynes v. Planet Automall, Inc.,*
    276 F.R.D. 65 (E.D.N.Y. 2011) (Weinstein, J.)..............................................................4

*Karhu v. Vital Pharm., Inc.,*
    CASE NO. 13-60768-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 26756
     (S.D. Fla. Mar. 3, 2014) ..............................................................................................18

*Guido v. L'Oreal, USA, Inc.,*
    CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031
    (C.D. Cal. July 1, 2013) ........................................................................................ 11-12

*Lanovaz v. Twinings N. Am, Inc.,*
    Case No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 57535
    (N.D. Cal. Apr. 24, 2014) ............................................................................................14

*Lilly v. Jamba Juice Co.,*
    No. 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997
    (N.D. Cal. Sept. 18, 2014) ...........................................................................................16

*Moheb v. Nutramax Labs, Inc.,*
    CV 12-3633-JFW (JCx), 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012).........8

*Pagan v. Abbott Labs, Inc.,*
    287 F.R.D. 139 (E.D.N.Y. 2012) ...................................................................................4

*Randolph v. J.M. Smucker Co.,*
    303 F.R.D. 679 (S.D. Fla. 2014).............................................................................16, 18

*In re Scotts EZ Seed Litig.,*
    12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116 (S.D.N.Y. Jan. 26, 2015).............. *passim*

*Soutter v. Equifax Info. Servs., LLC,*
    Civil Action No. 3:10cv107, 2015 U.S. Dist. LEXIS 49995 (E.D. Va. Apr. 15, 2015)....16

*Sykes v. Mel S. Harris & Assoc. LLC,*
    780 F.3d 70 (2d Cir. 2015)...........................................................................................12

*In re U.S. Foodservice Inc. Pricing Litig.,*
    729 F.3d 108 (2d Cir. 2013).........................................................................................7, 13

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)...............................................................................................3

*Xavier v. Philip Morris USA Inc.,*
    787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ..................................................18

**<u>Statutes</u>**

N.Y. General Business Law § 349 ........................................................................ *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

## PRELIMINARY STATEMENT

Plaintiff satisfies Rule 23(a), (b)(2), and (b)(3) and all Class members' claims "will prevail or fail in unison." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). On its Freshmates package, P&G represents to all consumers that Freshmates is flushable and safe for <u>all</u> sewer and septic systems, and Mr. Colin Weir has demonstrated his ability to show the existence of a price premium for this supposed flushability on a class-wide basis.  As per this Court, "the payment of a premium price based on a misrepresentation on the [Freshmates] label" is a class-wide "injury in and of itself" that is "shared with" all Class members. *Belfiore v. Procter & Gamble*, 14-CV-4090, 2015 U.S. Dist. LEXIS 38170, at *11 (E.D.N.Y. Mar. 25, 2015) ("*MTD Opinion*") (ECF No. 78).

Albeit still at the certification stage, Plaintiff has already set forth ample, universally applicable, evidence that Freshmates do not behave as a reasonable consumer would expect a flushable wipe to behave.  For example, as noted in Plaintiff's opening papers,



Indeed, if any object that could simply pass through plumbing were to be deemed "flushable" and "safe" to flush, then even pennies and golf balls would qualify.  Consumer Reports' independent testing of Freshmates confirm this lack of flushability and Consumer Reports

warns consumers that they "may not want to flush" Freshmates.[1]  Plus, it is "common knowledge" among plumbers that Freshmates do not dissolve when flushed,[2] and it is well documented that serious problems result when Freshmates are put into plumbing, septic, and sewer systems.[3] Whether Freshmates are "flushable" is an overwhelming class-wide question—as is whether touting them as "flushable" is a violation of N.Y. General Obligations Law § 349 ("GBL § 349").

The additional class prerequisites and inquiries are likewise met and/or weigh heavily in favor of certification.  Along with this memorandum, Plaintiff's expert, Mr. Colin Weir, has submitted a responsive declaration further supporting his ability to establish and perform a workable methodology that will allow a jury to determine on a class-wide basis whether Class members were injured by having paid a premium by reason of Defendant's labeling its product as "flushable."  In response to Defendant's expert, Ms. Scott, Mr. Weir's rebuttal declaration confirms, "the data available to me is sufficient to conduct a hedonic regression model in this litigation."  *Rebuttal Declaration of Colin B. Weir In Support of Plaintiff's Motion for Class Certification* ("*Weir Rebuttal Decl.*") at ¶ 11.  If a premium for the flushability attribute is

---

[1] Comp. ¶¶ 20-4, video at http://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wet-wipes/index.htm, last visited Apr. 29, 2015 (Freshmates failed to break down even after being submerged and vigorously agitated for over 24 hours).

[2] *Transcript of Deposition of Louis Sudberg*, Dec. 19, 2014, at 34, Ex. F to the *Levy Cert. Decl.* ("[I]t's common knowledge that these wipes don't dissolve . . . .  [O]nce a week [I] have to snake a toilet and clear it because there is wipes in the toilet. . . . I tell people that they can't use [these] wipes, that they are not flushable.").

[3] Comp. ¶¶ 25-42. Due to the non-dispersibility of "flushable" wipes, the Great Neck Water Pollution Control District (GNWPCD), (Mr. Belfiore's village) has recently urged residents not to flush them. *District Urges Residents 'Don't Flush the Wipes,'* Great Neck Record (Apr. 15-21, 2015) ("Moist wipes are marketed as flushable and able to disintegrate.  However, they do not dissolve the way toilet paper does" and "can clog homeowners' connections causing backups into houses"), Ex. A to the *Reply Declaration of Lester L. Levy in Support of Plaintiff's Motion for Class Certification* ("*Levy Reply. Decl.*").

demonstrated and the jury determines that Freshmates is not flushable, safe for sewer systems and septic tanks, Class members will be entitled to statutory damages of $50 per Freshmates purchase (as well as injunctive relief).   As previously detailed in Plaintiff's papers, the existence of supplemental plumbing damages does not defeat certification.

Injunctive relief is also explicitly provided for in GBL § 349, and is patently proper here. As this Court has already held, to deny Plaintiff's standing "would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *MTD Opinion* at *7.

## ARGUMENT

### I.    THIS CASE SATISFIES RULE 23(a)

#### A.    The Class Is Numerous

P&G does not dispute numerosity.  Indeed, Plaintiff's evidence shows that over a million packages of Freshmates were sold in New York during the Class Period.  *Memorandum of Law in Support of Plaintiff's Motion for Class Certification* ("*Pl.'s Cert. Mem.*") (ECF No. 62-1) at 8. This is more than sufficient to satisfy Rule 23(a)'s numerosity requirement.  *In re Scotts EZ Seed Litig.*, 12 CV 4727 (VB), 2015 U.S. Dist. LEXIS 9116, at *7-8 (S.D.N.Y. Jan. 26, 2015) (numerosity satisfied where just under one-million packages of EZ Seed were sold in New York during the class period).

#### B.    There Are Questions Of Law And Fact Common To All Class Members

"[E]ven a single" common issue "apt to drive the resolution of the litigation" is sufficient to satisfy commonality.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011).  Here, the heart of each Class member's GBL § 349 claim is whether the uniform "flushable" representation is deceptive.  Again, both the product and the allegedly deceptive representation are

3

exactly the same for all Class members. *See Scotts*, 2015 U.S. Dist. LEXIS 9116, at *9, 11 (where "[e]ach container of EZ Seed contained the same product . . . bore the [same allegedly deceptive] . . . claim" that EZ Seed grew grass "50% thicker" than "ordinary seed," the issue of "whether the 50% thicker claim is false and/or misleading" was "common to all class members."); *Ackerman v. Coca-Cola Co.*, 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *40-42 (E.D.N.Y. July 18, 2013) (where "all the products at issue bore the same [allegedly] misleading claim," the issue of "whether or not the product name was misleading or deceptive to a reasonable consumer is a single question of fact that satisfies the commonality element."). In stark contrast to the uniformity of the product and representation in this case, Defendant's repeated and heavy reliance upon *Pagan v. Abbott Labs, Inc.*, 287 F.R.D. 139, 148-150 (E.D.N.Y. 2012) is completely misplaced. In *Pagan,* there was no uniform product and commonality was not satisfied because plaintiffs' claim that Similac contained beetle parts could not apply class-wide because many of the products were not contaminated.[4]

Next, whether this universally labeled product is materially deceptive and/or misleading is determined on an objective, reasonable consumer standard. *Haynes*, 276 F.R.D. 65 at 78 (test for deception is "likely to mislead a reasonable consumer acting reasonably under the circumstances."). A jury will resolve the issue of deception based on the understanding of a reasonable consumer and the universal (in)efficacy of the product as flushable. All claims will be resolved in a single stroke, without any individualized issues. *Amgen*, 133 S. Ct. at 1191. There

---

[4] *See also Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 80 (E.D.N.Y. 2011) (Weinstein, J.) (commonality not satisfied where the allegedly deceptive "oral representations" at issue were not "materially uniform for the entire class").

is no need or relevance to test whether each and every individual class member was subjectively misled, as Defendant baldly advocates.

Plaintiff has not merely raised deception as a common issue, but has already submitted evidence enabling a jury to resolve it on a class-wide basis including, *inter alia*, P&G's own documents and admissions tending to show that flushablility means more than passing through a toilet.  Evidence of the unflushability of Freshmates is manifest, as are reports by consumers and municipalities that Freshmates have caused serious problems.[5]

Given its irrefutable admission(s), P&G claims that its own understanding of "flushable" is not relevant to that of a reasonable consumer, ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Irrespective of the ultimate determination, the question of how a reasonable consumer understands "flushable" and safe for sewer and septic systems, is necessarily common and class-wide.  Whether the jury accepts Plaintiff's testimony as to his understanding of the term; whether the jury is presented with consumer marketing studies of what consumers think flushable means—i.e., just going down their own pipes irrespective of whether the wipe gets stuck 10 feet away and/or ends up wreaking havoc

---

[5] While municipalities are not included in the Class, a jury may consider the problems Freshmates have caused in their sewer systems as relevant evidence of whether P&G's flushable representation is deceptive to a reasonable consumer.  Indeed, P&G claims that it submitted evidence that Freshmates is somehow compatible with municipal collection and treatment systems, *Def.'s Opp. Memo.* at 3, and elsewhere faults Plaintiff for not having presented evidence of damage to "public and private wastewater treatment systems in New York."  *Id.* at 9.

in septic tanks or water treatment facilities; and irrespective of whether the jury is given and/or accepts ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, a reasonable consumer's understanding of the term flushable is another, overwhelming, common question.

Plaintiff has also submitted evidence that would enable a jury to resolve the common issue of injury on a class-wide basis.  Such evidence includes Mr. Weir's proposed price premium methodology that will isolate any premium caused solely by the "flushable" (mis)representation by controlling for other possible contributing product attributes (e.g., brand, package count/size). *Declaration of Colin B. Weir In Support of Plaintiff's Motion for Class Certification* (filed Feb. 27, 2015) ("*Weir Decl.*") at ¶¶ 14, 27, 33-34 (ECF No. 62-3).[6]

As detailed in Plaintiff's prior briefs, Mr. Weir's model directly ties the Class' common theory of liability (that the "flushable" representation is deceptive) to its common theory of injury (that the Class paid a price premium due to the "flushable" representation).  *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *22 n.7, 32-36 (Mr. Weir's methodology for establishing price premium injury on a classwide basis "satisf[ies] *Comcast*" because it "will isolate the premium associated with the 50% thicker claim using . . . hedonic regression," and distinguishing cases such as *POM Wonderful*, which P&G relies on, where the plaintiffs' proposed models did "not attempt to isolate the premium due only to the allegedly misleading marketing statement."); *see also In re U.S.*

---

[6] P&G's claim that Plaintiff is making the deception both the act and the injury, is simply wrong. *Def.'s Opp. Memo.* at 10.

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013) ("Plaintiffs' proposed measure for damages is . . . directly linked with their underlying theory of classwide liability [that the misrepresentations on the invoices caused overpayments] and is therefore in accord with the Supreme Court's recent decision in *Comcast*").

P&G misstates the Class' injury when it claims that Mr. Weir's model cannot identify the price premium injury to consumers who did not experience plumbing problems from using Freshmates.  This argument improperly conflates the Court-acknowledged price premium injury with the supplemental, plumbing injuries.  Again, this Court has held that a price premium injury is "an injury in and of itself" that is "shared with . . . all consumers who purchased the products," whereas plumbing injuries can only occur after purchase (i.e., after the "shared" occurrence of price premium injuries).  *MTD Opinion* at *11-12 (further noting that the fact that not all Class members incurred plumbing cost injuries "does not matter" because even under the microscope of a class certification motion . . . one common injury, payment of a price premium, [is] sufficient.").  Hence, when, and if, Mr. Weir's methodology establishes the existence (or non-existence) of a price premium injury, it will do so for all consumers who purchased Freshmates, irrespective of whether those purchasers suffered additional, subsequent, plumbing injuries.

P&G's corollary argument that consumers who did not experience plumbing injuries did not sustain any injuries, is simply wrong.  All Class members suffered the same, "shared" price premium injuries as soon as they purchased Freshmates and "paid too much for it."  *Ebin v. Kandagis Food, Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014) ("even if a class member actively wanted to buy [cheaper and impure] pomace instead of 100% pure olive oil [that defendant had misrepresented as pure], they nevertheless paid too much for it.").  All New York consumers who purchased Freshmates, irrespective of whether they own septic tanks and/or sewer systems, and

irrespective of whether they suffered supplemental plumbing cost injuries, are injured and are proper members of the Class.

### C.  Plaintiff's Claims Are Typical

Plaintiff purchased the same product bearing the same "flushable" representation as every other Class member.  *Pl.'s Cert. Mem.* at 10; *Pl.'s Opp. Memo.* at 14-18.  All Class members, including Plaintiff, allege that Defendant's representation was deceptive under GBL § 349.  *Id.* Plaintiff's claim "arises from the same course of events," and will be proven through the same common evidence (some of which is described above) and legal arguments, as those of all other Class members.  *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *10-11 (typicality satisfied where all class members, including plaintiff, received the same product with the same "50% thicker" representation, and all "will marshal the same evidence and arguments in support of their claims" that this representation was deceptive under GBL § 349).[7]

---

[7] The cases relied upon by P&G to defeat class are inapposite because they either involve breach of warranty claims that turn on whether the product worked as warranted for each person, or false advertising claims where there was proof that the product did exactly what it was advertised to do. *See, e.g., Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (declining to certify class of tire purchasers alleging breach of warranty claims because the majority of the tires sold did what they were warranted to do); *Moheb v. Nutramax Labs, Inc.*, CV 12-3633-JFW (JCx), 2012 U.S. Dist. LEXIS 167330, at *11 (C.D. Cal. Sept. 4, 2012) (declined to certify class of medical product purchasers alleging false advertising claims under California law because scientific evidence *proved* that the product effectively treated the ailments that it was represented to treat). *Compare with Scotts*, 2015 U.S. Dist. LEXIS 9116, at *18-22 (explaining that argument that EZ Seed worked as advertised because it grew grass for some consumers represented "a misunderstanding" of the plaintiffs' theory of liability, which was not merely that EZ Seed *could* grow grass in some lawns, but that it did so in *all* lawns and the grass that it grew was "50% thicker" than that grown from "ordinary seed") and *Cabral v. Supple, LLC*, CASE NO. ED 12-00085-MWF (OPx), 2013 U.S. Dist. LEXIS 184170, at *19-20 (C.D. Cal. February 14, 2013) (certifying class and refusing to follow *Moheb*).

Unable to credibly dispute Mr. Belfiore's typicality, P&G continues to distort, exaggerate, and speculate about the facts of Plaintiff's clog to try to distract from his typicality of the Class of purchasers which he seeks to certify. *First*, P&G ignores the obvious—that by purchasing the product at a "flushable" premium, Mr. Belfiore was injured just as the rest of the Class. *Second*, and irrelevant to the class-wide price premium injury, Plaintiff amply demonstrated in his *Opp. Memo*. at 15-18, that none of P&G's hypothetical causes were relevant to the March 2014 clog. Plaintiff's clog occurred almost immediately after he started using Freshmates and never returned once he stopped using them. *Id*. at 17. *Third*, even if Freshmates were not the cause Plaintiff's March 2014 clog (which is not credible), that still does not mean that Freshmates performs consistent with a reasonable consumer's understanding of a product that is flushable and safe. At most, it would mean that Plaintiff had sustained no additional plumbing cost injury (which is not the case). Once a jury determines that the "flushable" (mis)representation was materially misleading, Plaintiff will be deemed to have sustained the same price premium injury as all other Class members who purchased Freshmates.

The "flushable" representation is made to all Class members without limitation. Nevertheless, P&G now tries to alter and dilute this language claiming that Freshmates are only "flushable" in "well-maintained" plumbing systems and that they are only "compatible with" (as opposed to "safe for") such systems. Again, no such limitations appear anywhere on the package. As this Court has recognized, if P&G had wanted to limit the applicability of its "flushable" representation, it should have "just put in a plain forthright statement" on the package. *Transcript*

*of Civil Cause for Motion Hearing before the Honorable Jack Weinstein*, at 22:16-23 (Mar. 31, 2015).[8]

### D. Plaintiff Is An Adequate Representative

Plaintiff has indisputably demonstrated his commitment and ability to represent the Class at every stage of this litigation. *Pl.'s Cert. Mem.* at 11; *Pl.'s Opp. Memo.* at 18-20. He has traveled to and attended a lengthy court hearing; responded to written discovery requests; reviewed court submissions; sat for a deposition and offered his wife and plumber to be deposed; and opened his house to P&G for an hours-long inspection of his plumbing system that required P&G to tear apart his basement floor. *Id.* Plaintiff has also testified to his understanding of the requirements of a class representative and his willingness and ability to serve. *Pl.'s Opp. Memo.* at 19.[9] No antagonism has ever been identified between Plaintiff's interests and those of the Class. Nor have the qualifications of Plaintiff's counsel, Wolf Popper LLP, ever been called into question. *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *13 (adequacy satisfied where nothing in the record suggested that lead plaintiffs' interests were antagonistic to those of other class members; the plaintiffs demonstrated their commitment to pursuing their claims by responding to extensive written discovery requests, sitting for lengthy depositions, and testifying that they understood the requirements of serving as lead plaintiff; and plaintiffs' counsel were experienced and qualified class action lawyers).

---

[8] P&G's continued reference to a class other than the Class, as defined and sought by Plaintiff, is irrelevant. P&G is seeking to deny certification of a class that Plaintiff is not seeking to certify!

[9] Mr. Belfiore has also fended off P&G's irrelevant and baseless personal attacks on his physical ability to serve as a class representative and the credibility of he and his wife, as well as P&G's manipulation of his deposition testimony. *Pl.'s Opp. Memo.* at 19-20.

## II.   **THIS CASE SATISFIES RULE 23(b)(3)**

### A.   **Class-wide Issues Predominate**

As discussed above, Plaintiff has demonstrated that the central issues of all Class members' GBL § 349 claim can be proven on a class-wide basis.  *See also  Scotts*, 2015 U.S. Dist. LEXIS 9116, at *21 (predominance satisfied after determining that "[c]lasswide evidence will be used to establish whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *id*. at *22 n.7, 32-36 (same, after determining that the plaintiffs' expert, Mr. Weir, had "proposed [a] suitable damages methodolog[y] for establishing [price premium] injury on a classwide basis"); *Amgen*, 133 S. Ct. at 1196 (predominance "does not require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof.") (internal quotation marks omitted).

Once these common, central issues of deception and injury are resolved, all Class members will either be entitled to injunctive relief and statutory damages of $50 per Freshmates purchase, or not.  GBL § 349(h); *Guido v. L'Oreal, USA, Inc.*, CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031, at *46 (C.D. Cal. July 1, 2013) (certifying a consumer damages class under GBL § 349 and recognizing that each injured consumer is entitled to receive $50 by statute);  *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *71 (recommending certification of a consumer injunction class under GBL § 349 and recognizing that "[i]f, as plaintiffs allege, the name 'vitaminwater' is misleading to a reasonable consumer, then equitable relief in the form of an injunction would be an appropriate remedy.").

While this Court has noted similarities between this case and *Ackerman*, *see Scheduling Order* (dated Mar. 23, 2015), the damage classes' respective entitlement to statutory damages is actually quite dissimilar.  The *Ackerman* plaintiffs did not propose any methodology for proving

11

their price premium injury on a class-wide basis, and instead improperly attempted to bootstrap class-wide injury to the mere availability of statutory damages. *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *78-81.  Here, in stark contrast, Plaintiff has provided a method for determining class-wide injury through Mr. Weir's model, thereby entitling the Class to statutory damages. *See also Scotts*, 2015 U.S. Dist. LEXIS 9116, at *22 n.7 (distinguishing *Ackerman* and *Weiner v. Snapple* as examples of "inapposite" "cases in which courts decline to find common questions . . . as to injury because plaintiffs have not [even] proposed suitable damages methodologies").

Albeit unnecessary given GBL § 349's statutory damages, Mr. Weir can also determine the average price premium paid for the "flushability" (mis)representation. Application of this formula would not prevent certification of a damages class. Nor do individual plumbing damages prevent certification of a damages class. *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 81-82 (2d Cir. 2015) ("[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues" because "[t]he presence of individualized damages cannot, by itself, defeat class certification under Fed. R. Civ. P. 23(b)(3).") (internal citations omitted)).

P&G's challenges to predominance based upon Ms. Scott's supposed problems with Mr. Weir's price premium methodology are meritless. *First*, arguments that the model does not satisfy *Comcast* are legally wrong. *See supra*. *Second*, Mr. Weir does have the information necessary (or has access to such information during merits discovery) to isolate any premium caused solely by the "flushable" (mis)representation by controlling for other possible contributing product attributes. *Weir Rebuttal Decl.* at ¶ 11, and he further explains why P&G's arguments against hedonic regression are misplaced. *Third*, it has already been demonstrated that Mr. Weir's methodology has been accepted by other courts.

12

In any case, and as repeatedly set forth in Plaintiff's prior papers, the Court need not guess as to whether Mr. Weir will be able to prove the existence of a price premium—if a price premium is not ultimately proven, then all Class members' claims will "fail in unison," creating no individualized issues capable of defeating predominance. *Amgen*, 133 S. Ct. at 1191. At this stage, Mr. Weir is not required to build his model or run it. *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *35-36 ("[N]othing in *Comcast* requires an expert to perform his analyses at the class certification stage."). "The point for Rule 23 purposes is to determine whether there is an acceptable class-wide [damages] approach, not to actually calculate under that approach before liability is established." *Brown v. Hain Celestial Grp.*, No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038, at *57 (N.D. Cal. November 18, 2014).[10] Even P&G agrees the model need not be run successfully until the parties are "at trial." *Def.'s Opp. Memo.* at 14.[11]

---

[10] *See also Scotts*, 2015 U.S. Dist. LEXIS 9116, at *34 n.11 (refusing to follow *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 551-53 (C.D. Cal. 2014), which required Mr. Weir to build his model prior to certification, because "the Second Circuit has interpreted *Comcast* to require only that 'courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis.' Thus, this Court declines to hold an expert, at the class certification stage, must describe his proposed methodologies in the level of detail required by *Conagra*.") (quoting *U.S. Foodservice*, 729 F.3d at 123 n.8). In the *Conagra* case, given the time for merits discovery to conclude, Mr. Weir *was successful* in building a model that met that court's strict requirements to certify a damages class of New York consumers bringing GBL § 349 claims. *See In re Conagra Foods, Inc.*, CASE NO. CV 11-05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971, at *25 (C.D. Cal. Feb. 23, 2015) ("The court is not persuaded that any of [defendant's expert, Dr. Keith R.] Ugone's criticisms indicate that Weir's methodology is unreliable or that he cannot offer an opinion in support of plaintiffs' amended motion for class certification.").

[11] This Court, as others, may also certify a damages class pending the end of merits discovery and provide Mr. Weir the opportunity to build and run his model; if he proves unable to do so, the Court can decertify the damages class. *See, e.g.*, *Scotts*, 2015 U.S. Dist. LEXIS 9116, at *36 ("If, after further discovery, [Mr.] Weir is unable to prove the existence of a price premium, or isolate a price premium associated with the 50% thicker claim, defendants may move to decertify the class.").

Moreover, contrary to Ms. Scott's contention otherwise, Mr. Weir is not required to perform a hedonic regression analysis by making a direct before-and-after comparison of the prices between Freshmates without the "flushable" representation and Freshmates with the representation. *Weir Rebuttal Decl.* at ¶¶ 16, 17 ("I do not share Prof. Scott's assessment that before-and-after analysis is the ideal method for determining a price premium in this litigation. Before-and-after analysis is simply one of many alternative methods that can make such an assessment.").[12]  P&G is also incorrect in stating that the products being compared must be sold side-by-side for the hedonic regression to work. *Weir Rebuttal Decl.* at ¶¶ 33-36.

Notably, even P&G recognizes that a comparison between different products is acceptable when it states that the "flushable" representation on Freshmates is the only way for consumers to "accurately distinguish[] Freshmates from other products, such as baby wipes, that are not designed to be flushed." *Def.'s Opp. Memo.* at 24.  A direct product comparison (as opposed to before-and-after) via hedonic regression as proposed by Mr. Weir is a scientifically recognized method of identifying a price premium. *See generally Weir Rebuttal Decl.*[13]

---

[12] While the *Dole* court decertified the damages class after certain data needed to calculate damages under the expert's initially proposed before-and-after comparison methodology did not exist after the conclusion of merits-based discovery, the court allowed the expert to *propose a substitute methodology* that did *not* use such comparisons, but this too failed for the independent reason that it did not isolate the premium attributable to the misrepresentation at issue.  *See Brazil v. Dole Packaged Foods*, Case No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 157575, at *16-24, 34-45 (N.D. Cal. Nov. 6, 2014).  *Lanovaz v. Twinings N. Am, Inc.*, Case No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 57535, at *23-24 (N.D. Cal. Apr. 24, 2014), which P&G also cites for this proposition, merely "ruled out" the possibility of making such before-and-after comparison, but it nowhere indicated that it was a *necessary* comparison for any hedonic regression.

[13] In any case, this battle of the experts does not affect certification of an injunction class.  *See Dole*, 2014 U.S. Dist. LEXIS 157575, at *38-39 (decertifying 23(b)(3) class after plaintiff's expert ultimately failed to account for all factors in running his price premium model, but *leaving* the 23(b)(2) class in tact); *see also Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *41, 71 (after declining to recommend certification of a damages class because the plaintiffs failed even to

## B.      A Class Action Is Superior

By not challenging that Plaintiff has demonstrated "superiority," P&G concedes it.  *See*

*Def.'s Opp. Memo*. at 18-22.  Instead, P&G grasps onto an argument that the Class members'

identities are not "ascertainable."  *Id*.  However, Plaintiff has already demonstrated how Class

members may be ascertained.  *Pl.'s Cert. Memo*. at 17-20 and *Pl.'s Opp. Memo*. at 21-26.  Courts

routinely certify objectively defined classes of consumers who have purchased the same low

cost/high volume products bearing the same (mis)representation on the label, even where it is

likely that such consumers did not retain receipts or proof of purchase.  *See, e.g.*, *Scotts*, 2015 U.S.

Dist. LEXIS 9116, at *15-16 ("If proof of purchase were required to satisfy the ascertainability

requirement, there would be no such thing as a consumer class action, especially with respect to

low-cost products.") (internal quotation marks omitted).

Identifying class members need not occur prior to class certification, and not every class

member needs to receive individual notice; rather the best practicable notice under the

circumstances is required.  As Magistrate Judge Levy explained in *Ackerman*:

> While it may be difficult to locate those individuals [who purchased vitaminwater
> during the class period], since most will not have kept receipts or other
> documentation of their purchases, the criteria used to define the class are objective.
> There are no subjective issues such that determining class membership would
> require a mini-hearing on the merits of each case.  I therefore conclude that the
> classes are sufficiently ascertainable . . . .

*Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *61-62 (internal quotation marks and citations

omitted).  In *Ebin v. Kangadis Family Management LLC*, Judge Rakoff similarly observed that:

> [W]hether or not an individual purchased during the class period a tin of Capatriti
> in the United States labeled "100% Pure Olive Oil" that actually contained Pomace

---

"propose[]" a suitable methodology—let alone propose one in the first instance and fail to run it
successfully later—Magistrate Judge Levy still recommend certification of an injunction class).

is about as objectively determinable a question as one can ask.  . . . .  None of these determinations involves any subjective inquiry, such as inquiries into putative class members' state of mind.  Although the limitations of both [defendant's] records and the retailers' records may make it somewhat challenging to identify every single class member, there is no requirement that all class members be identified; what is required is merely individual notice to those class members *who can be identified through reasonable effort*."

*Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 399 (S.D.N.Y. 2014) ("*Ebin II*")

(quoting Fed. R. Civ. P. 23(c)(2)(B)) (emphasis added).[14]

Sufficient notice can take many forms, including: direct mailings to retail customers whose contact information and purchase information may be available via store membership cards; targeted internet and print media campaigns to which potential class members can respond; and sworn affidavits identifying the particulars of consumers' purchases (e.g., self-identification).  *See, e.g.*, *Lilly v. Jamba Juice Co.*, Case No. 13-cv-02998-JST, 2014 U.S. Dist. LEXIS 131997, at *12-13 (N.D. Cal. Sept. 18, 2014) (approving such methods); *Ebin*, 297 F.R.D. at 567 (same); *see also Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, at *689 n.8 (S.D. Fla. 2014) (noting that a

---

[14] P&G's argument that it may be difficult to identify Freshmates purchasers is of no moment.  The standard for ascertainability, as P&G concedes, is administrative feasibility, not ease-ibility.  As Plaintiff has already demonstrated, if he and other class plaintiffs were required to identify each and every purchaser of high cost/low volume consumer goods before satisfying ascertainability, "there would be no such thing as a consumer class action."  *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *62 n.24 (internal quotation marks omitted); *see Scotts*, 2015 U.S. Dist. LEXIS 9116, at *16 n.6 ("[T]he Second Circuit has instructed that failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.") (internal quotation marks and citation omitted); *see also Soutter v. Equifax Info. Servs., LLC*, Civil Action No. 3:10cv107, 2015 U.S. Dist. LEXIS 49995, at *26 (E.D. Va. Apr. 15, 2015) ("Where a plaintiff proposes objective criteria capable of identifying those individuals described in the class definition, the ascertainability requirement is satisfied.  . . . .  The fact that applying the criteria could take significant time and effort . . . does not factor into the Court's ascertainability determination.  Holding otherwise would mean that defendants could defeat class certification when their conduct affects a large number of individuals and the class-action device can be most useful.").

prohibition on self-identification "would be a devastating blow to the class action device and would ultimately undermine the viability of the class action for small-ticket consumer items.").

Notably, when consumers who purchased Freshmates complain to P&G about flushability, P&G accepts their self-identification, and refunds them the amount of their claimed plumbing cost injuries up to $200, without receipt or proof. PG_B0075390, attached as Ex. U to the *Levy Opp. Decl.* (customer relations instructions for complaints about flushability: "Not necessary to send in any receipts."). The Federal Trade Commission utilizes consumer self-identification to distribute settlement funds to consumers as compensation for their having purchased deceptively advertised products. *Pl.'s Opp. Memo.* at 25 & 25 n.26.

The fact that P&G does not sell Freshmates directly to consumers does not defeat certification. *Pl.'s Opp. Memo.* at 24 n.25. Plaintiff has already identified the purchasers of 18,000 shipments of Freshmates in New York from online retailers and he will identify many additional purchasers from brick-and-mortar retailer through loyalty cards.[15]   *See also Ebin II*, 45 F. Supp.

---

[15] While P&G argues that this number is insufficient for demonstrating ascertainability, such argument should be addressed to the distinct issue of numerosity, which P&G does not and cannot contest. *Byrd v. Aaron's Inc.*, No. 14-3050, 2015 U.S. App. LEXIS 6190, at *23 (3rd Cir. Apr. 16, 2015) (reversing district court's decision denying class certification on ascertainability grounds and explaining that it found "troubling" the district court's discussion of class membership in addressing ascertainability because such discussion "related to [the issue] of numerosity—not class definition or ascertainability."). In *Byrd*, the Third Circuit sought to "dispel any confusion" caused by *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), and reaffirmed that "[t]he ascertainability inquiry is narrow" and "only requires the plaintiff to show that class members can be identified." *Id.* at *10, 21. The Third Circuit explained that the defendants' and the district court's reliance on *Carrera* was "misplaced" because the class in *Carrera* was particularly unascertainable, as "the plaintiff's proposed retail records did not identify a *single* purchaser of the Bayer diet supplement" and self-identification was not warranted because "even the named plaintiff could not recall *whether* he had purchased the diet supplement." *Id.* at 17-18, 34 (emphasis added); *see also id.* at *39 (Rendell, J., *concurring*) ("the time has come to do away with this newly created aspect of Rule 23 in the Third Circuit. Our heightened ascertainability requirement defies clarification. Additionally, it narrows the availability of class actions in a way that the drafters of Rule 23 could

17

3d at 398-99 (finding unpersuasive *In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D. Cal. 2014), upon which P&G relies).[16]  P&G's speculation that Freshmates purchasers will not want to self-identify also fails to defeat or prevent certification.

P&G cannot use the term "ascertainability" to alter the well-established, due process, notice regiments.  Ascertainability, a possible sub-concern of manageability and/or superiority does not impose more than class notice. [17]

## III.    THE VERY RECENT DECISION IN *DEI ROSSI v. WHIRLPOOL CORP.*

This week, the court in *Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal. Apr. 28, 2015), certified a class of consumers alleging that they were injured by paying a price premium for refrigerators falsely labeled with Energy Star efficiency logos, in violation of California's consumer protection and false advertising statutes.  In certifying the class, the *Dei Rossi* court resolved in the plaintiffs' favor many issues pertinent to

---

not have intended."); *Pl.'s Opp. Memo.* at 23 n.24 (citing cases distinguishing and refusing to follow *Carrera*).

[16] P&G otherwise relies upon widely distinguished authority whose reasoning has been criticized, such as *Snapple*, *POM Wonderful*, and *Karhu v. Vital Pharm., Inc.*, CASE NO. 13-60768-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 26756 (S.D. Fla. Mar. 3, 2014) (which is *on appeal*). *Pl.'s Opp. Memo.* at 23 n.24 (addressing *Snapple* and *POM Wonderful*), 26 n.27 (addressing *Karhu*).  P&G's reliance on inapposite cases, such as *Xavier v. Philip Morris USA Inc.,* 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (class of consumers who smoked cigarettes for at least "twenty years" was too large, amorphous, and subjective to be ascertained), and *Randolph*, 303 F.R.D. at 689 n.8 (finding self-identification "troublesome" because the representations at issue did not appear on all products at all times and the plaintiff could not even recall which product she purchased, yet recognizing that outside of its limited facts, "no authority" holds that self-identification is *per se* invalid, since disallowing self-identification would "be a devastating blow to the class action device"), is unpersuasive.

[17] As for the injunctive class, Magistrate Judge Levy has aptly observed, "ascertainability is of minor concern" for the certification of a Rule 23(b)(2) class.  *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *63-64 n.26.

the instant litigation.  For example, the court rejected the defendant's "flawed" argument that the class was not cohesive because of individual differences in the way the refrigerators performed after purchase.  As the court explained, "[t]he proposed class members all purchased the same models of refrigerators that were built to the same specifications.  To accept Defendant's assertion that this Court would need to test each refrigerator would be unreasonable and would support a finding that class certification is not appropriate for litigation involving consumer products." *Id.* at *9-10.

The *Dei Rossi* court also rejected as "irrelevant" the defendant's argument that consumers who used their refrigerators on certain low-energy settings were not damaged because they "received exactly what they bargained for."  *Id*. at *10-11.  The court explained that it was "not convinced that a consumer who purchased a product, at a premium, based on advertised specifications has not suffered an economic injury when that product fails to meet the advertised specifications."  *Id*.

The *Dei Rossi* court further rejected the defendant's argument that predominance could not be satisfied because the issue of materiality could not be resolved on a class-wide basis, as it depended upon the views of each individual class member.  In so holding, the court explained that "materiality" is measured pursuant to "a single, objective reasonable consumer standard" and "not, as Defendant urges, a subjective test that inquires into each class members' experience with the product."  *Id*. at *22 (internal quotation marks omitted).

The *Dei Rossi* court accepted Mr. Weir's methodology for demonstrating class-wide damages and found him to be a well-qualified expert.  *Id*. at *2-3 n.1 ("The Court has reviewed [Mr.] Weir's credentials and finds that he is qualified as an expert."  "The Court has reviewed [Mr.] Weir's proposed methods and finds that they are sufficient at this juncture of the

19

litigation.").  It also found that Mr. Weir was not required to perform his methodology at the class certification stage, but only to propose it.  *Id*. ("at the class certification stage plaintiffs need only propose a valid method for calculating class wide damages, not an actual calculation of damages").  Furthermore, the court was "not impressed" with the defendant's "repeated attempt to argue the merits of this case at the class certification stage."  *Id*. ("Defendant's continuous assertions that Plaintiffs have not proven that the refrigerator models at issue do not adhere to the energy star guidelines are not helpful to this Court in determining whether Plaintiffs' proposed damages expert has presented an adequate model for computing damages.").  In making these determinations, the court rejected the arguments of defendant's expert, Carol Scott (the same person P&G relies on in this case).

Finally, the *Dei Rossi* court found superiority satisfied and held that, "[g]iven the small size of each class member's claims in this situation, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action."  *Id*. at *36.

## IV.   THIS CASE SATISFIES RULE 23(b)(2)

This Court has already indicated that class-wide injunctive relief may well be appropriate.  *MTD Opinion* at *4-7 (finding that Plaintiff has standing for class-wide injunctive relief); Scheduling Order (dated Mar. 23, 2015) (noting possible appropriateness of class-wide injunctive relief).

Injunctive relief is expressly provided for in GBL § 349 and certification under Rule 23(b)(2) does not implicate predominance, nor any other conceivable individual issues.  *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at *71 (certifying Rule 23(b)(2) class even though predominance was not shown).  Plaintiff is not seeking certification of an injunctive class as an "alternative."

20

Plaintiff has always sought certification of separate injunctive relief and monetary damages classes under Rule 23(b)(2) and (b)(3), and as previously detailed in Plaintiff's opening brief, such dual certification is appropriate and routinely granted.  P&G fails to contest the appropriateness of injunctive relief, other than to repeat its arguments against certification under Rule 23(a) discussed and refuted *supra*.

As this Court recognized, to prohibit Plaintiff from seeking to end a deceptive consumer practice "would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *MTD Opinion* at *7.

<u>**CONCLUSION**</u>

For the reasons stated herein and in Plaintiff's prior memoranda, declarations, and exhibits in support of Plaintiff's Motion for Class Certification and in opposition to Defendant's Motion to Deny Class Certification, Plaintiff respectfully requests that this Court certify this case as a class action under Rule 23(b)(2) and 23(b)(3), certify the Class (as defined by Plaintiff), appoint him as Class representative, and appoint Wolf Popper as Class counsel.

Dated: April 30, 2015

**WOLF POPPER LLP**

<u>/s/ Lester L. Levy</u>
Lester L. Levy
Michele Fried Raphael
Matthew Insley-Pruitt
Robert S. Plosky
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600

*Attorneys for Plaintiff*

21