1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    D. JOSEPH KURTZ,                :
                                     :  14-CV-1142 (JBW)
5                 Plaintiff,         :
                                     :
6          v.                        :  225 Cadman Plaza East
                                     :  Brooklyn, New York
7    KIMBERLY-CLARK CORPORATION,     :
     et al.,                         :
8                                    :  May 29, 2015
                  Defendants.        :
9    --------------------------------X
     ANTHONY BELFIORE,               :
10                                   :  14-CV-4090 (JBW)
                  Plaintiff,         :
11                                   :
           v.                        :
12                                   :
     THE PROCTER AND GAMBLE COMPANY, :
13                                   :
                  Defendants.        :
14   --------------------------------X

15
         TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
16           BEFORE THE HONORABLE ROBERT M. LEVY
                UNITED STATES MAGISTRATE JUDGE
17

18   APPEARANCES:

19

     For the Plaintiffs:        MARK S. REICH, ESQ.
20                              Robbins Geller Rudman & Dowd, LLP
                                58 South Service Road, Suite 200
21                              Melville, New York 11747

22                              LESTER L. LEVY, ESQ.
                                Wolf, Popper, LLP
23                              845 Third Avenue, 12th Floor
                                New York, New York 10022

24

25
                                (Appearances continue on next page.)


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

```
 1                                                          2

 2

 3    APPEARANCES CONTINUED:

 4
      For the Defendants:        EAMON PAUL JOYCE, ESQ.
 5                               Sidley Austin LLP
                                 787 Seventh Avenue
 6                               New York, New York 10019

 7                               JAMES M. BERGIN, ESQ.
                                 Morrison & Foerster
 8                               250 West 55th Street
                                 New York, New York 10019
 9
                                 EMILY HENN, ESQ.
10                               Covington & Burling LLP
                                 333 Twin Dolphin Drive, Suite 700
11                               Redwood Shores, California 94065

12

13    Court Transcriber:         SHARI RIEMER, CET-805
                                 TypeWrite Word Processing Service
14                               211 N. Milton Road
                                 Saratoga Springs, New York 12866
15

16

17

18

19

20

21

22

23

24

25
```

3

1   (Proceedings began at 2:33 p.m.)

2           THE COURT: Are we ready?

3           Good afternoon.  This is Judge Levy.  Is everybody

4   on the line?

5           MR. LEVY:  Yes, Your Honor.

6           THE COURT: So let me call the case.  We're on the

7   record.  We're here on <u>Kurtz and Belfiore</u>, 14-CV-1142 and 14-

8   CV-4090 respectively.

9           Would counsel for plaintiffs in Belfiore please

10  state their appearances for the record.

11          MR. LEVY:  Good afternoon, Your Honor.  Lester Levy

12  from the Wolf Popper firm.

13          THE COURT: And defendants.

14          MS. HENN:  Good afternoon, Your Honor.  Emily Henn

15  from Covington & Burling for Proctor & Gamble.

16          THE COURT: And in the Kurtz case, plaintiff's

17  counsel, please.

18          MR. REICH: Mark Reich with Robbins Geller for

19  plaintiff Kurtz and with me is Vince Serra.

20          THE COURT: For defendants.

21          MR. JOYCE:  You Eamon Joyce from Sidley Austin on

22  behalf of Kimberly-Clark.

23          MR. BERGIN:  Also James Bergin from Morrison &

24  Foerster with my colleague Kayvan Sadeghi for Costco.

25          THE COURT: So I think the hardest issue we're going

4

1    to deal with today is scheduling and I'd like to do that first

2    and hopefully it will work out for as many of you as possible.

3            I take it -- the first -- I spent some time with

4    Judge Weinstein's chambers trying to find days that work for

5    both of us.  We both have trials on the week of July 13th

6    which has been causing a bit of I think a problem because it

7    seems to be a good week for many of you.

8            So in the month of June of the dates that Judge

9    Weinstein and I have proposed, is there any date that works

10   for all of you?  Why don't we just start with the parties in

11   the Belfiore case.

12           MR. LEVY: For the plaintiff, I think any date --

13   those dates in June work.

14           THE COURT: Okay.  And for defendants.

15           MS. HENN: Your Honor, this is Emily Henn.  The date

16   the week of June 22nd conflicts with my planned vacation which

17   we had mentioned in the last hearing when we first selected

18   the date.  I believe the third date in June -- no, that's the

19   conflict for the dates in June.

20           THE COURT: So is there a date that works for you in

21   June?

22           MS. HENN: The original scheduled date for science

23   day was June 19th and I think that works for defendants.  It

24   was plaintiffs that sought to move it from that date because

25   of a third party witness unavailability issue.

5

1          THE COURT: Right.  So getting back to the plaintiffs

2   on that.  Is June 19th still not a good date?

3          MR. REICH: Matt, are you on the phone?

4          MALE VOICE:  The third party is still unavailable on

5   that date.  He will be speaking at a conference.

6          MR. JOYCE:  If I may, Judge Levy.  This is Eamon

7   Joyce on behalf of Kimberly-Clark.

8          THE COURT: Yes.

9          MR. JOYCE: Mr. Valet is speaking on a panel from

10  eight a.m. until ten a.m.  He's the third of the four

11  speakers.  Even if he stays until the end he can get on a

12  11:45 flight and be at LaGuardia to by two.  If you or Judge

13  Weinstein have time that afternoon we could take him that

14  afternoon and break up the hearing a little bit.

15          MR. LEVY:  I don't think that works.  Mr. Valet

16  has -- first he's got to prepare and second, he's got

17  equipment that has to be set up in the courtroom.

18          THE COURT: What kind of equipment?

19          MR. LEVY:  I don't think it's going to work.

20          THE COURT: What kind of equipment does he need?

21          MR. LEVY:  He has testing equipment.  He tests these

22  products and there will be a demonstration to show that these

23  products don't break down and don't flush in the real world.

24  So he's going to bring some equipment into the courtroom to

25  show that.

6

1          MR. JOYCE: [Inaudible] hundreds of videos that he

2   has online, Mr. Levy?  I mean he's done this over and over

3   again online.  We've all watched these videos.

4          THE COURT: Tell me about the equipment. Is it large

5   or is it small handheld equipment?

6          MR. LEVY: It's -- some of it is fairly large.  Mark

7   and --

8          MR. REICH: This is Mark Reich, Your Honor. I can

9   speak to that.  The equipment is not handheld.  In fact, we're

10  going to have to work things out I guess with the Marshal's

11  Office or with security of the court to figure out how we're

12  going to get it into the building and utilize it.  So it's

13  certainly not going to be an easy task and certainly not

14  something he can set up very quickly.

15          In responding to the suggestion by Kimberly-Clark's

16  counsel it's a nice idea but again this is a third party that

17  we're dealing with and we're asking for him to rush around

18  flights in order to make it and if there's a one hour or two

19  hour delay which is pretty common then the entire plan is

20  really for naught.  So I don't think that's something that we

21  would agree to on the court side.

22          THE COURT: Where is he coming from?

23          MR. REICH: I believe he's coming from Atlanta.

24          THE COURT: Right.  That's what I recall.  Okay.

25          So let's just say for the moment that June doesn't

7

1    look good.  The week of July 13th is not good for me and Judge

2    Weinstein.  We both have trials that week.  I think the next

3    date that we suggested was the 21st.

4             MR. JOYCE:  If I may, Your Honor.  This is Eamon

5    Joyce again.  Both myself and my witness scheduled our

6    vacations around the original setting.  So I'm going the week

7    of July 20th and more significantly David Powling [Ph.] who's

8    the 30(b)(6) in this case would disclose and in fact was

9    deposed at length is gone from July 16th through August 3rd.

10            THE COURT: Okay.  So basically between our trials

11   and those vacation schedules the only time that works is the

12   week after July 4th and that doesn't work for the court.

13            MR. JOYCE: If I may, Your Honor.

14            THE COURT: Sure.

15            MR. JOYCE: We had one item on the Kimberly-Clark

16   side.  Back when we were initially discussing these issues

17   with Mr. Reich, and we are just talking about defendant's lack

18   of availability after Mr. Levy had filed his letter on the

19   adjournment, I think Mr. Reich had raised the idea that

20   perhaps just Mr. Valet could testify on a different day.  From

21   our perspective, at least Kimberly-Clark's perspective we

22   could live with that.  It wouldn't be optimal insofar as I

23   wouldn't -- I wouldn't probably be in the courtroom and Mr.

24   Powling wouldn't be in the courtroom but I could have somebody

25   else from my team cover that and we could try to find in-house

8

1  counsel on the Kimberly-Clark side with knowledge of these

2  materials.

3          So I would think one possible avenue that if we're

4  trending in this direction is to try to keep June 19th for

5  everybody else because we know everybody is available then and

6  then it just gets as we've discussed really messy thereafter

7  and so assuming everyone else could do -- I think the date is

8  July 21st which is a date I'd be unavailable and Mr. Powling

9  would be unavailable, I'd have co-counsel come and cover that

10 for Valet.

11         THE COURT:  I think you would be a good mediator.

12         Does anyone have an objection to that?

13         MR. REICH:  This is Mark Reich.  I can only speak

14 for the Kurtz side because this is not something that we

15 discussed heavily on the global plaintiff's side but it's a

16 good notion because it will allow things to move along.  The

17 only question would be whether or not plaintiffs would put

18 anybody forward on the June 19th day because we would want to

19 discuss whether or not it made sense for both of our witnesses

20 to be on the same day as opposed to breaking the two of them

21 up and that's something I -- like I said, I have not spoken

22 with Mr. Levy about.

23         MS. HENN:  This is Emily Henn for Proctor & Gamble.

24 My company witness, similar to Kimberly-Clark's company

25 witness, is not available on the later date, July 21st, and

1    while I have discussed with my clients the possibility of

2    having Valet only day that day I think that we would have an

3    objection to both of plaintiff's witnesses going on a later

4    different day on which when my client's witness couldn't be

5    there to participate and watch.

6         THE COURT: Okay.  Well, I like the suggestion and I

7    think the Valet only day is probably the best way to handle

8    it.  I think it mediates between the pros and cons for both

9    sides of the various dates.  Since there's no perfect date I

10   think that's probably the best thing we can do.  I have 15

11   conferences to adjourn that day.  I think we'll have a lot of

12   people that will be unhappy on the 21st but I'm willing to do

13   it and Judge Weinstein is willing to do it.  So I think that's

14   the solution then.

15        MR. JOYCE: So when would the second day be, July 21?

16        THE COURT: It would be 21 and I think on -- let me

17   just ask Karen.  Judge Weinstein and I are free from 10:30 on.

18   If you prefer to make it an afternoon or morning -- how long

19   is Mr. Valet going to take?

20        MR. JOYCE: We don't know at this point.  We have to

21   speak to him.

22        THE COURT: Does it make sense to just -- or do you

23   know that he is available that date or are you not sure?

24        MR. JOYCE: I'm not even sure he's available that

25   day.  Mark, do you know?

10

1          MR. REICH: I'm checking.

2          MS. HENN:  This is July 21st at 10:30?

3          THE COURT: Yes. Or it could be in the afternoon too

4   for those of you coming from afar, whichever works.  We're

5   free from -- we can be free from 10:30 on.  We can make it

6   either at 10:30 or at 2:00 for example, 1:00.  Whatever time

7   you want to make it.

8          MS. HENN: Your Honor, this is Emily Henn again for

9   Proctor & Gamble.  The rest of the hearing would revert to the

10  originally scheduled date of June 19th?

11         THE COURT: Yes.

12         MS. HENN: Am I understanding that correctly?  Okay.

13         MR. LEVY:  Your Honor, while we're waiting to find

14  out Valet's availability, this is Lester Levy at Wolf Popper.

15  Mr. Belfiore, I can't imagine him participating in science day

16  when we're talking about the defendant's presentation of how

17  these are manufactured and how they work or don't work.  I was

18  wondering whether he -- Mr. Belfiore can be excused from

19  attending science day.

20         THE COURT: That's fine with me.  I don't think Judge

21  Weinstein would have a view on that.

22         MR. LEVY: He didn't.  It is in his order.  I think

23  [inaudible] plaintiffs on the phone but I can't imagine

24  hanging on the phone for four hours [inaudible].

25         THE COURT: It might be -- Judge Weinstein often does

1    like to do a little fact finding or at least a little

2    investigation at the -- if he would be available by phone I

3    think that would probably work.  He doesn't have to --

4              MR. LEVY: You'd be a good mediator yourself.

5              THE COURT: So let's try that.

6              MR. LEVY: Okay.

7              THE COURT: We also have to find another date for the

8    class certification argument.  Does the 21st -- one thought

9    would be -- I don't know if it -- do we need a separation from

10   a science day too and the class cert hearing or just from

11   science day one and --

12             MR. LEVY: That would be up to Judge Weinstein but if

13   we did Valet in the morning of the 21st we might be able to

14   have the class in the afternoon.

15             THE COURT: Right.  That's what I was thinking.

16             MR. JOYCE:  Judge Levy, unfortunately that's where

17   you end up losing me.

18             THE COURT: Right.  I forgot.  Sorry.

19             MR. JOYCE: My client is perfectly happy having co-

20   counsel cover Valet but I've been the one involved in class

21   cert and so --

22             THE COURT: Of course.

23             MR. JOYCE:  -- I would ask that that occur while I

24   was available.

25             THE COURT: Okay.  So do you want to pick another

12

1  day?

2         MR. JOYCE: I can tell you from my perspective I

3  don't -- assuming Judge Weinstein doesn't need -- having just

4  seen David Powling on June 19th assuming Judge Weinstein

5  doesn't need my witness back again on the class cert hearing

6  day I'm free that entire next week.  I'd request that it not

7  be the 27th because I get back to New York late on the 26th

8  but any other day the week of the 27th would be fine for me.

9  I don't know how that lines up with other people.

10         MR. LEVY:  For plaintiff in the Belfiore case, it's

11  -- I'm available that week.

12         MS. HENN: For Proctor & Gamble we are also available

13  that week.

14         THE COURT: I'm just told that that week may not be

15  so good.  We're looking at the week of August 10th or August

16  17th.  Either of those weeks, do you have availability any

17  days those weeks?

18         MR. BERGIN: James Bergin for Costco.  The week of

19  August 10th is better for us than the 17th but we can make the

20  17th, the week of the 17th work if necessary.

21         THE COURT: How is the week of the 10th for others?

22         MALE VOICE:  For [inaudible] it works for us.

23         MR. LEVY:  It works for plaintiffs.

24         MS. HENN: Pardon me.  This is Emily Henn for Proctor

25  & Gamble.  The beginning of that week is good.  On Thursday I

1  have a court hearing in California, Thursday the 13th of

2  August but if that's the only day that works for the court I

3  can probably have a colleague attend it.

4        MR. JOYCE: For Kimberly-Clark both of those weeks

5  look good for me.

6        THE COURT: Is the 12th -- Ms. Henn, is the 12th a

7  little too tight for you or would the 12th work?

8        MS. HENN: The 12th would work.  I could slide back

9  [inaudible] problem.

10        THE COURT: Let's make it the 12th.

11                    [Pause in proceedings.]

12        THE COURT: Again, I think we can choose any time on

13  the 12th if that works for all of you.  Is the morning better

14  than the afternoon or does it matter?  I assume it's probably

15  better for Ms. Henn to do it in the morning or not?

16        MS. HENN: Yes, Your Honor, the morning or early

17  afternoon.  Either would be fine.

18        MR. JOYCE: Morning is fine by me.  Kimberly-Clark.

19        MR. BERGIN: Morning is fine for Costco.

20        THE COURT: So why don't we make it 10:30.  10:30 on

21  August 12th.  Excellent.  Now we just have to hope that Mr.

22  Valet works.

23        Anything else on scheduling?

24        When will we hear from Mr. Valet?  Do you think it's

25  possible to reach him today or do wait until Monday?

14

1        MR. REICH:  Vince Serra from my office, this is Mark

2    Reich speaking, is calling him right now and following up with

3    an email but I [inaudible] a moment ago so hopefully we have

4    an answer within a minute or so.

5        THE COURT: So let's talk about the other issues

6    then.  Is the deposition issue the only other issue we have at

7    this point or -- I'm trying to remember what else there is.

8        MALE VOICE:  I think that's it.

9        MALE VOICE: Some document discovery also.

10       THE COURT: What's the document discovery issue?

11       MALE VOICE:  We had served a subpoena requesting

12   documents and a deposition.

13       THE COURT: So is the documents related to the

14   deposition?

15       MALE VOICE: Yes.

16       THE COURT: Okay.  Well, as I said before when we

17   first had a conference, I wasn't sure whether it would be

18   necessary to take a deposition but I was going to allow any

19   party that wanted to to depose a witness because it could

20   make -- I think it's an opportunity that a party ought to have

21   at this point.  Science day is not an official event and --

22   but again it could go a long way towards convincing Judge

23   Weinstein or at least educating the court as to some of the

24   issue and I wanted to give the parties the opportunity to take

25   depositions if they thought it was reasonable. I don't think

15

1   it would be a waste of resources because it could in fact

2   obviate the need for other kinds of depositions in the future.

3   So I'm going to permit the deposition of the Marquette expert

4   or witness.  I take it the witness has not been clarified --

5   isn't clarified whether he's a fact or an expert witness,

6   correct?  He's just a -- he's doing -- making a presentation

7   at a forum for the court.

8           MALE VOICE: That's correct.

9           THE COURT: Is there any reason why it would matter

10  procedurally at this point whether he is deemed an expert?  We

11  don't need to get into that, do we?

12          MALE VOICE: He's not -- he's definitely not this

13  trial expert [inaudible] rules provide for reports and all

14  [inaudible] designated as a trial expert.  He's not.

15          THE COURT: No Rule 26(a) disclosure is necessary at

16  this point.

17          MR. JOYCE:  Right.  If I may, Your Honor.  This is

18  Eamon Joyce for Kimberly-Clark.  I don't think that

19  distinction matters.  We are seeking an expert report from

20  him.  The rule that plaintiffs relied on in their papers was

21  26(b)(4)(D) which is the exemption from discovery for

22  consulting experts.

23          THE COURT: Right.

24          MR. JOYCE: I just don't think that rule really lines

25  up here where we know he is coming into court.

16

1          THE COURT: No, I agree.  You don't need to argue

2    that further.  I thought about that and I agree at this point.

3    I do understand plaintiff's position and there may be some

4    collateral consequences to that down the line but at this

5    point I don't see a problem.

6          MR. REICH: Your Honor, this is Mark Reich.  Could we

7    ask that there be coordination among the defendants or this

8    sort of deposition perhaps where one firm is elected as the

9    questioner so that the witness is not sitting through a full

10   day deposition having repeated questions coming from three

11   different parties?

12         MS. HENN: If I could address that, Your Honor.

13   Defendants did notice the deposition and subpoena the witness

14   for the same date with the idea in mind that we would

15   coordinate.  I do think we may want the ability to ask limited

16   additional questions although there may well be one defense

17   lawyer who takes the lead in the deposition.  The companies

18   that are involved in this hearing have different products and

19   different interests and may have questions specific to their

20   company or their product but we would certainly work to make

21   it efficient and have no interest in asking repetitive

22   questions or belaboring the deposition.

23         MR. BERGIN: This is James Bergin for Costco.  We

24   join in Ms. Henn's comments.  I would just add that because

25   the parties -- the defendant's technologies are different from

1   one another there may well be a need for individual questions.

2   We would want the opportunity to do -- if there is a

3   designated lead questioner to ask supplemental questions as

4   well.

5            THE COURT: I understand that.  That makes sense and

6   I trust you to be -- to use your discretion and be reasonable.

7            Are you going to notice a deposition for a different

8   date from the date you subpoenaed the witness now that the --

9   well, actually it isn't that much additional time, is it?  So

10  I guess you are going to do it on the original date.  Is that

11  correct?

12           MR. REICH: This is Mark Reich, Your Honor.  I'm

13  hopeful that now that we know the court's position on this

14  that plaintiff's counsel and defense counsel can coordinate a

15  mutual convenient date for all.

16           THE COURT: Good.  Is there --

17           MS. HENN: Your Honor, I wanted to mention while

18  we're on the subject of depositions, to my knowledge

19  defendants have not served a subpoena on Mr. Valet with the

20  hearing fine [inaudible] scheduled in July. We may do that and

21  I just wanted to raise that as a possibility.  We've not done

22  it yet and I don't think there's any dispute or anything to

23  present to the court but since we're on the subject we wanted

24  to mention that that is a possibility that Proctor & Gamble

25  will seek a deposition of Mr. Valet as well.

18

1        THE COURT: Are there any of the defendant's

2   witnesses who have not been questioned who might be subject to

3   questioning deposition?

4        MR. REICH:  Yes, there's one witness for Kimberly-

5   Clark that has not sat for a deposition and we will as counsel

6   for Kurtz -- this is Mark Reich speaking -- that we will work

7   with counsel to Kimberly-Clark to discuss whether or not we

8   need that deposition.

9             THE COURT: Okay.

10        MR. JOYCE: Can I raise two things.  I can respond to

11   that, Mr. Reich.  First, we out of an abundance of caution

12   disclosed the two witnesses not having done formal interviews

13   with them and I can assure you that we're only going to call

14   Mr. Powling at this hearing.  So we have no intention to call

15   Mr. Vogel and he's not going to be attending or what have you.

16   So that's that piece of it.

17        In terms of building on Ms. Henn's comments on a

18   potential deposition of Valet, from Kimberly-Clark's

19   perspective one thing that could go a long way to clarifying

20   at least from our side whether that's necessary is whether we

21   could get a supplemental production from Valet or from Parsa.

22   I know both plaintiffs subpoenaed -- and, Judge Levy, for your

23   information, Parsa is Mr. Valet's employer.  Back in December

24   or January both plaintiffs subpoenaed Parsa and we received a

25   Parsa production but obviously we've got five or six months

19

1   more of documents since then.  So if there would be a way to

2   supplement that Parsa production I think at least from my

3   client's perspective we'd have a lot more information about

4   whether a deposition was necessary.

5          MR. REICH: This is Mark Reich.  If I could maybe

6   respond to that.  We'd try.  I've been in contact with counsel

7   for Parsa and perhaps an easy way to streamline is to make an

8   introduction between Mr. Joyce and Parsa's counsel.

9          MR. JOYCE: Sounds fine to me.

10         MS. HENN: And for Proctor & Gamble I just wanted to

11  mention that we have not received the Parsa production from

12  earlier in the case and would just request that plaintiffs

13  produce that to us.  I don't know whether Parsa was subpoenaed

14  by plaintiff in our case or not but regardless given now that

15  he said Mr. Valet who works at Parsa is going to be a witness

16  at science day we would request a copy of that production and

17  any supplemental production.

18         THE COURT: So it sounds as though you're all in

19  agreement on how to proceed with respect to discovery and the

20  only question is Mr. Valet's availability.  I take it he's --

21         MR. REICH: We got voice mail.

22         THE COURT: Okay.  So why don't we come up with a

23  back up plan just in case he's not available.  Any other days

24  the week of the -- that week in July that works?  Ms. Henn,

25  you can't do it on the Thursday.

1          MS. HENN: No.  I think that week is relatively open

2    for Proctor & Gamble.  It was in August that we had the

3    Thursday conflict.

4          THE COURT: It was.  Okay.

5          MS. HENN: So the week of July 20th is open for us.

6          MR. JOYCE:  Judge Levy, from Kimberly-Clark's

7    perspective, I had only focused on the 21st insofar as it was

8    the date that your law clerk had [inaudible] but we'd be

9    amenable to the same arrangement that entire week where my co-

10   counsel would cover the Valet side of things if he could

11   appear that week.

12          THE COURT: Okay.  So the 21st I know will work.  If

13   it doesn't then we have a backup date for everyone for the

14   rest of that week then, correct, the 22nd, 23rd or 24th would

15   work for everyone if necessary?

16          MR. LEVY:  For Belfiore, yes.

17          MR. REICH:  For Kurtz plaintiffs, yes.

18          MR. BERGIN: Costco, yes.

19          MS. HENN:  For Proctor & Gamble, yes.

20          THE COURT: Is there anything else we need to

21   discuss?

22          MR. REICH:  While we do have Your Honor on the

23   phone, perhaps we can get any guidance Your Honor may have in

24   terms of procedure for bringing machinery or so on into the

25   court.  Do we need an order from the court in order to

21

1  accomplish that?  Would that make things easier for security

2  if they had an order from Your Honor?

3         THE COURT: I'm going to give you a contact person.

4  You've been talking to Hannah Roth, my law clerk.  R-O-T-H,

5  Hannah first name, and just call her at 718-613-2344 and she

6  will guide you through all the dark and shadowy corners of the

7  courthouse to get you in.

8         MR. REICH: Thank you, Your Honor.

9         MR. BERGIN:  Your Honor, this is Jim Bergin for

10  Costco.  In discussions amongst counsel regarding science day

11  we have often come up against a question of how exactly will

12  the format of the day go and will the court be asking

13  questions, will counsel be permitted to ask questions?  Do you

14  know yet how -- what we should expect in the way of a format

15  for the science day presentation?

16         THE COURT: I don't.  Knowing Judge Weinstein I know

17  that he will be asking a lot of questions.  I'm guessing that

18  questions by counsel will be permitted.  So I'm going to

19  suggest that you assume that unless we inform you otherwise

20  and we'll check with Judge Weinstein's chambers to see if he

21  has a different view but it seems to me that that's probably

22  the way we will handle it.

23         But when you say questions, do you mean cross

24  examination or how do you plan on doing that?  Let me tell you

25  actually what we did.  When we had -- I organized a training

22

1   for -- I may have told you this.  A training for our Storm

2   Sandy mediation program that we had here and it was a training

3   for lawyers and it was training by plaintiffs and defendants

4   in those cases.  We just had the experts speak and then we had

5   the lawyers speak afterwards giving their perspective on what

6   was seen rather than examining the witnesses and I found that

7   that worked pretty well.  We had a large audience of people.

8   We had judges and counsel there and mediators and it seemed to

9   work well.

10          Does anyone -- does that format sound like a

11  reasonable one for you if that's what the court ultimately

12  decides to do?

13          MR. JOYCE: From Kimberly-Clark's perspective that

14  sounds fine to me.  The only caveat I would say is sometimes

15  my witness can slip into science speak and if I could have

16  leave to prod him back into English from time to time.

17          THE COURT: Of course.

18          MR. JOYCE: But beyond that that sounds completely

19  reasonable.

20          THE COURT: Does anybody have a problem with that?

21          MS. HENN: No, Your Honor.  This is Emily for Proctor

22  & Gamble.

23          MR. BERGIN:  Your Honor, no problem with that from

24  Costco.

25          THE COURT: And plaintiffs?

23

1          MR. REICH: I'm not sure how that would work.  Are

2    you saying the witness would take the stand and make a

3    presentation without --

4          THE COURT: Yes.

5          MR. REICH:  -- being directed by questioning,

6    just --

7          THE COURT: I think you would ask -- well, we

8    actually did it that way.  It was one general question tell us

9    what you want to tell us and the witness just went off and

10   then I think the court or the parties basically or the

11   mediators in that case asked some questions.  So as I'm

12   thinking of it more that my guess is that you could ask a

13   couple of broad questions.  If you thought that it was

14   necessary to ask some more questions I'm sure you could do it

15   to prompt the witness to discuss some issues that hadn't been

16   discussed but I don't -- I didn't envision it as a direct

17   examination of a witness but more of as an n explanation.

18         MR. REICH: And no cross examination of the other

19   party's witness?

20   work

21         THE COURT: I didn't see that, no.  That isn't how I

22   was envisioning it.  I do need to talk to Judge Weinstein

23   about it.  We haven't talked about it.

24         MR. REICH: And after the witnesses done then the

25   attorneys can make a short presentation on their own?

1          THE COURT: Yes.  That's how I see it.

2          MS. HENN: Your Honor, that process sounds good to us

3    for Proctor & Gamble.  I think it would be helpful to have

4    clarification if that will be the process so we'll be properly

5    prepared but it sounds like a useful process that would work

6    for this hearing.

7          THE COURT: I will clarify that for you and either

8    Hannah or I will get back to you in some way on that.

9          MS. HENN: Thank you, Your Honor.

10         THE COURT: So as soon as you hear about Mr. Valet

11   please let me know and then otherwise we'll assume we have a

12   hearing at -- on June 19th and I think -- did we say 10:30 on

13   the 19th?  I don't remember what we said.  I don't think --

14         MR. REICH: I think that was the original setting.

15         THE COURT: So we'll go back to that setting.  Then

16   on the 21st, 10:30 again.  Again, on the 12th of August for

17   the class certification hearing 10:30.  So it's 10:30 each one

18   of those dates.

19         MS. HENN: Thank you, Your Honor.  We very much

20   appreciate the court accommodating the various schedules as

21   difficult as it has been.  Thank you.

22         THE COURT: Well, let me just say that you are the

23   best organized conference call with multi parties that I've

24   had in a long time.  So I appreciate how you've conducted

25   yourselves.  So thank you.

25

1          MR. REICH: Thank you very much.

2          THE COURT: Have a nice weekend.

3    (Off the record at 3:07 p.m.)

4    (Back on the record at 3:09 p.m.)

5          THE COURT: So let's just make a list of what we need

6    to discuss. So is this case going to turn on science

7    ultimately?

8          MALE VOICE: You can answer that because you've been

9    dealing more with the experts, Caroline.

10         FEMALE VOICE: I think -- I think it's going to be

11   certainly a main aspect of the case.  Whether the case turns

12   on  it or not it's a false advertising case.  It's our

13   contention that the products can't actually do the -- perform

14   the efficacy results that are advertised.  So in a sense it

15   science will be a large part of the case.  We have experts

16   that we've been working with that have addressed even in this

17   case have looked at certain aspects of the -- I don't know if

18   they're formulas but the ingredients and the claims and they

19   have analyzed to a small degree in preparation for the last

20   round of briefing that we had on the motion, on the second

21   motion to dismiss.  Obviously we have two different viewpoints

22   on the science so it's going to be one of the major issues.

23         THE COURT: Is the science something that the court

24   is going to need to understand early on in the case or not?

25         FEMALE VOICE: I don't -- I don't think so.  I

26

1    mean --

2              MALE VOICE:  I think it's fair to say in terms of

3    early on in the case for class cert certainly.  The science I

4    think is going to be shown to be uniform.  The advertising is

5    going to be shown to be uniform.  So I mean to the extent

6    that's going to be an issue it will be at trial or at summary

7    judgment.  I really don't think it's going to be an issue at

8    class cert but obviously we're going to need to see the

9    defendant's studies for documents and correspondence, speak to

10   their witnesses to really get and understand that.  For all I

11   know they're going to say that the science isn't uniform which

12   I've never heard before any of these cases but there's always

13   a first time.

14             MALE VOICE: Your Honor, if I may.  The big issue

15   here for today from our point of view is whether this case is

16   going to take three to four years because I think one or more

17   of the lawyers sitting on the other side of the table are the

18   plaintiff's lawyers, lead counsel in the case against Loreal

19   in New Jersey, against Avon in the Southern District, and we

20   monitor those docket sheets and these cases go on forever.

21             So what we're interested in -- when we talk about

22   settlement, to me what we want is a schedule that will get us

23   from Point A to Point B and if in the course of that we can

24   get some work done and we can settle the cases, terrific.  If

25   we can't we can't but we don't want well, we're going to talk

1    settlement in six months so let's not do anything.  We want to

2    get this case with a tough deadline that we will try to meet

3    although I've never known one where we've actually met it but

4    if you don't actually set it you never meet it.

5            So the big difference we have with the plaintiffs on

6    scheduling the things we need to do is let's look at the

7    dates.  Now, Adam -- Mr. Levin said earlier that -- I'm sorry,

8    Adam said -- I know we're sitting here informally.  So Adam

9    said earlier they may want to move just to point out one of

10   the issues.  They may want to move for class certification

11   early.  Great.  That's terrific.  That's fine with us but the

12   schedule they propose one day it could come out of the blue

13   and then we have 60 days not only to take all their experts to

14   get our papers in.

15           Now that to me is totally unfair.  If it's at the

16   end of discovery and both parties have agreed that we're not

17   bifurcating discovery, fact discovery will be the same.

18   Merits, damages and class issues because that's the efficient

19   way to get things done given that with Comcast and the Second

20   Circuit cases that have followed Comcast you got to know what

21   your damage theory is.  You have to see whether there's a

22   class wide theory.  To know that you've got to know sort of

23   what the merits are all about.

24           So the big differences we have between us relate to

25   those sort of details on the schedule.  I don't really have a

1  problem with saying okay, defendants, you get your electronic

2  discovery done by a certain date.  Okay, that's fine.  The

3  question is really what happens afterwards.  Why do we need a

4  year before we start class discovery, the class briefing they

5  say and then you follow that out it won't even be submitted to

6  the court for a year and a half and then we go back and we

7  start merits expert discovery.

8        So we're talking about without even an extension on

9  our proposal two and a half years before we get somewhere.  So

10  those are really what we say as the issues today.  Let's get

11  working.

12        MALE VOICE: That's not really accurate, Your Honor,

13  and I can explain why.  In terms of two and a half years --

14  and, first of all, I always find it interesting when an hourly

15  lawyer is going to accuse a contingency lawyer of wanting to

16  waste time.  The last thing I want to do is waste time.  We

17  want to get to where we need to go.  We want to bring this

18  case to an effective and appropriate resolution and we're

19  prepared to do that.  The way that we structured this being

20  down this road, and we've all been down this road a number of

21  times, as Your Honor, this is nothing new.  We think the way

22  that we've structured our proposed schedule deals with the

23  realities of these kinds of cases.  We all see it -- as I said

24  earlier, we all see again and again if there's simply a closed

25  discovery date it seems that the last big production of

1    documents occurs on that date then all of a sudden we have to

2    come back in and reopen the schedule.

3              So based on our experience in trying to deal with

4    the practical realities for better or for worse what we've

5    proposed here sets for a structure that prevents the moral

6    hazard so to speak and forces everyone to do exactly what Ken

7    is saying and that is keep us -- keep us moving forward as

8    quickly as possible, get their documents, enable us to start

9    taking the other side's deps.  They'll depose our client and

10   we'll see where we are relatively quickly.

11             So I think also in terms of class cert, and I'm not

12   going to debate the other side's overstatement of Comcast or

13   their overstatement the merits at class cert now, the fact is

14   that if we're going to move for class cert before the close of

15   discovery under AmJam we don't need the same level of expert

16   work on class cert necessarily that we do at merits.  So all

17   I'm saying is that to the extent that we want to move for

18   class earlier we should be allowed to do so.  Frankly, Rule 23

19   provides that we should move as soon as reasonably

20   practicable.

21             The other sides wants to push it all the way at the

22   end so I'm a little confused how on the one and they're saying

23   they want to move as fast as possible and on the other hand

24   they're saying let's push off a pivotal event until all the

25   way at the end.  So it's not really clear.  I think that what

30

1  we proposed here makes more sense.

2         THE COURT: If class certification briefing were to

3  take place, would other discovery continue at the same time?

4         MALE VOICE: Sure.

5         THE COURT: Or would it stop?

6         MALE VOICE: No.  It would all keep going forward.

7         THE COURT: So let me just tell you my philosophy at

8  least on how to manage these cases and also a settlement.  I

9  see settlement on a parallel track.  You wouldn't slow down

10  discovery at all and I think settlement is something that you

11  have to think about at all phases of the case and I think it's

12  something your clients need to be thinking about.  You're all

13  experienced litigators.  I know you all think about it all the

14  time so you don't need me to remind you of that.  But it's

15  something that's important to me to think about since so few

16  cases actually are decided either at trial and often on

17  motions.

18         As far as the case management goes, I think in the

19  big cases I like a case management order that is -- that has

20  [inaudible] and I like it -- we're going to do initial

21  disclosures by such and such a date, we're going to have

22  discovery, interrogatories, document requests, ESI, whatever

23  on particular dates, responses on particular dates.  I also

24  like to have you in relatively frequently to make sure that

25  you're on track.  I don't want you to feel that I'm too far

31

1  away or too close but what I really want is to make sure that

2  I'm here to make -- to untie the knots for the knots to have

3  to take place.

4          So I will promise you that I will be available for

5  discovery issues as long as you meet and confer and I would

6  like to just get reasonable mile posts.  I think setting dates

7  for when motions are going to be filed is --

8  (Proceedings concluded at 3:18 p.m.)

9                        *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

32

1          I certify that the foregoing is a court transcript

2  from an electronic sound recording of the proceedings in the

3  above-entitled matter.

4

5  _____

6                        Shari Riemer, CET-805

7  Dated:  June 9, 2015