UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTHONY BELFIORE, on behalf of himself and all others similarly situated,

                Plaintiff,

-against-

THE PROCTER & GAMBLE COMPANY,

                Defendant.

14 Civ. 4090 (JBW)(RML)

**DEFENDANT'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING ON PRIMARY JURISDICTION AND A POSSIBLE STAY OF DECISION ON THE CERTIFICATION OF AN INJUNCTIVE CLASS**

The Procter & Gamble Company ("P&G") respectfully responds to the Court's request for supplemental briefing on the following questions: "Can the court invoke the primary jurisdiction doctrine to stay decision on the certification of an injunctive class and to refer the issue to the Federal Trade Commission? Should the court so proceed?" Dkt. No. 135, at 1.

### INTRODUCTION

The primary jurisdiction doctrine permits, but does not require, the Court to stay its decision on the certification of an injunctive relief class. The Court may also stay its decision based on its inherent power to control the disposition of the causes on its docket. For the reasons set forth in P&G's prior submissions, P&G submits that the Court should deny Plaintiff's motion for an injunctive relief class because Plaintiff has not satisfied the requirements of Fed. R. Civ. P. 23(b)(2). However, if the Court is inclined to stay its decision until after the FTC concludes its pending informal inquiry into whether Freshmates are appropriately labeled as "flushable," such an action would be fully within the Court's discretion and could ultimately result in a saving of judicial resources. Among other possibilities, the FTC may take action that moots Plaintiff's

request for injunctive relief. Accordingly, if the Court is not persuaded that it should deny Plaintiff's motion for class certification, it should stay its decision on certification of an injunctive relief class. When the FTC has completed its informal inquiry, P&G submits that the parties should report the results of that inquiry to the Court so that the Court may determine the most appropriate course of action going forward.[1]

## ARGUMENT

**I.     The FTC Has Concurrent Jurisdiction Over Allegations of Unfair or Deceptive Advertising.**

Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a)(1), prohibits "unfair or deceptive acts or practices in or affecting commerce." Sections 5(b) and 13(b) empower the FTC to prosecute such practices through maintenance of an administrative adjudication or court proceeding. 15 U.S.C. §§ 45(b), 53(b). In exercising this authority, the FTC frequently conducts informal, pre-complaint inquiries concerning acts and practices in the marketplace. These informal inquiries are sometimes concluded without formal action by the agency; they may also be resolved by settlement agreement and consent order.[2]

---

[1]     The Court has not requested briefing on the effect of the FTC's inquiry on Plaintiff's request for certification of a damages class. Accordingly, P&G will not address that issue other than to note that the availability of an administrative remedy undermines Plaintiff's argument under Rule 23(b)(3) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Imber-Gluck v. Google Inc.*, 2015 WL 1522076, at *3 (N.D. Cal. Apr. 3, 2015) (denying class certification based on Rule 23(b)(3) where defendant's previous settlement with the FTC "provides nearly all, if not all, of the possible relief sought" in the class case, notwithstanding plaintiffs' claim that the FTC settlement did not impose punitive damages); *see generally* D. Bruce Hoffman, *To Certify or Not: A Modest Proposal for Evaluating the "Superiority" of A Class Action in the Presence of Government Enforcement*, 18 Geo. J. Legal Ethics 1383 (2005).

[2]     *See generally* Federal Trade Commission, *A Brief Overview of the Federal Trade Commission's Investigative and Law Enforcement Authority* (July 2008), *available at* https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority.

The FTC has taken an active interest in whether moist wipes intended for personal hygiene use may appropriately be labeled as "flushable." This interest is evidenced by, among other things, its proposed agreement and consent order with Nice-Pak Products, Inc. *See* 80 Fed. Reg. 29,706 (May 22, 2015). The Nice-Pak consent order has no direct bearing on this case, because P&G's product is quite different from the Nice-Pak product at issue. However, the FTC has made an informal inquiry to P&G concerning the "flushability"-related claims that appear on the Freshmates label. In response to the FTC's requests, P&G has voluntarily provided documents and test data to the FTC concerning the Freshmates product. P&G met with agency representatives earlier this year to discuss the Freshmates technology and labeling claims. This in-person meeting has been supplemented by a number of telephone conferences to discuss follow-up items. Insofar as P&G is aware, the FTC's informal inquiry is ongoing.

While P&G is not privy to the agency's inquiry concerning the Nice-Pak product, a substantial part of the agency's examination of P&G's product has focused on the ability of various wipe products to pass through municipal sewage system facilities (a question that, as this Court has repeatedly observed, is *not* at issue in this case). P&G has also submitted test data and other information to the FTC bearing on the flushability of Freshmates in consumers' homes.

II.     **The Primary Jurisdiction Doctrine Permits, But Does Not Require, the Court to Stay its Decision on the Certification of an Injunctive Relief Class.**

Primary jurisdiction is a discretionary doctrine that permits courts to refer issues that fall "within the realm of administrative discretion to the appropriate administrative agency for resolution in the first instance." *F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 60 (2d Cir. 2006)

(internal quotation marks omitted).³ Although there is no "fixed formula" for determining whether the doctrine should be applied, courts typically consider four factors in the analysis:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Id.* In addition, the Second Circuit has identified "judicial economy" as a fifth factor to be considered. *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir. 2002). Although the doctrine should not be "lightly invoked or applied," *Glob. Crossing Bandwidth, Inc. v. OLS, Inc.*, 2009 WL 763483, at *2 (W.D.N.Y. Mar. 19, 2009), courts may "apply the doctrine as a prudential matter" even when primary jurisdiction is not statutorily required. *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 294-95 (2d Cir. 2006).

In the false advertising context, the primary jurisdiction doctrine has most often been invoked with respect to issues involving food and drug products that are regulated by the Food and Drug Administration. Courts have most often applied the doctrine to dismiss or refer such issues to the FDA when that agency has already expressed an interest in the issue and there is a risk of inconsistent rulings.⁴ For example, Judge Pratt has observed that primary jurisdiction is

---

³ There are some situations in which the primary jurisdiction doctrine imposes mandatory limits on a court's authority to proceed. However, P&G is aware of no authority that would suggest that the FTC's jurisdiction here is "primary" in any sense imposing a mandatory obligation on this Court to stay these proceedings.

⁴ *See, e.g.*, *Fisher v. Monster Beverage. Corp.*, 2013 WL 10945131, at *12 (C.D. Cal. Nov. 12, 2013 (consumer claims against energy drink manufacturer dismissed without prejudice in part because the "FDA has taken an interest in investigating and resolving whether energy (continued…)

4

"particularly applicable … where the disputed questions are already under consideration by the agency," and are "the subject of on-going [agency] hearings." *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 932 (E.D.N.Y. 1979). *See also Hurley v. Amoco Oil Co.*, 476 F. Supp. 782, 786 (E.D.N.Y 1979) (staying action based on primary jurisdiction pending resolution of issues by the Department of Energy, in part because "the agency has already conducted a preliminary investigation and commenced formal compliance proceedings" and the court would "benefit [from] the agency's handling of related issues before proceeding to judgment.").[5]

Deferring decision on the certification of an injunctive class pending the outcome of the FTC's informal inquiry would be consistent with the factors usually considered in evaluating primary jurisdiction. There is no question that the FTC has expertise and authority to evaluate false advertising claims. And the FTC has invoked that authority here. Moreover, a stay could promote judicial economy and allow the Court to take into consideration the FTC's evaluation of

---

drinks, including Monster, contain unsafe levels of caffeine"); *Aaronson v. Vital Pharms., Inc.*, 2010 WL 625337, at *1–*3 (S.D. Cal. Feb. 17, 2010) (consumer deception claims against an energy drink manufacturer referred to the FDA because of the agency's expertise, the risk of inconsistent injunctions, and the importance of "uniform regulation"); *Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, 2006 WL 3487651, at *6 (E.D. Va. Nov. 30, 2006), *aff'd*, 283 F. App'x 139 (4th Cir. 2008) (consumer deception claims against a dairy producer referred to the FDA and the FTC, in part because the agencies were already considering the issues in administrative proceedings and because "there is clearly a risk of inconsistent judgments if all three proceedings were allowed to proceed independently").

[5]    *Cf. Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *13 (S.D.N.Y. May 7, 2015) (declining to invoke primary jurisdiction in part because the FDA was not "contemplating the same issue"); *Pom Wonderful v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009) (declining to invoke primary jurisdiction in part because there was no evidence that the FDA had taken any interest in investigating the claims or issues presented).

5

the Freshmates label, to the extent the FTC's ultimate conclusion has a bearing on the issues presented in this case.[6]

On the question of whether the issues are "particularly within the agency's discretion," *Verity Int'l*, 443 F.3d at 60, Section 349 of New York's General Business Law (the statute Plaintiff invokes here) provides that "it shall be a complete defense" under the statute if the challenged act or practice "complies with the rules and regulations of, and the statutes administered by, the federal trade commission … as such rules, regulations or statutes are interpreted by the federal trade commission." N.Y.G.B.L. § 349(d).  Accordingly, while an adverse finding by the FTC may have limited bearing on these proceedings (particularly to the extent the agency focuses on the interests of municipal treatment facilities), a determination that the Freshmates flushability claims are supported by competent and reliable evidence under Section 5 of the FTCA would, at a minimum, be important to these proceedings and could even be conclusive.

In light of these considerations, the Court would be well within its discretion in invoking the primary jurisdiction doctrine here to stay the certification issue pending the conclusion of the FTC's inquiry.

.

---

[6]  It would not, however, be appropriate to refer the issue of certification of an injunctive class *per se* to the FTC, as this issue is well "within the conventional experience of judges" and is not "within the agency's particular field of expertise." *F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d at 60.

**III.    Separate and Apart From the Primary Jurisdiction Doctrine, the Court Has Inherent Authority To Stay its Decision on the Certification of an Injunctive Relief Class.**

This Court may also decide in its discretion to stay these proceedings "pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014) (quotations omitted); *see also City of New York v. Gutlove & Shirvint, Inc.*, 2008 WL 4862697, at *1 (E.D.N.Y. Nov. 10, 2008) ("It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its docket.") (citing *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)). Thus, separate and apart from the primary jurisdiction doctrine, the Court has discretionary authority to stay its decision on the certification of an injunctive class pending resolution of the FTC's informal inquiry. *But see Am. Booksellers Ass'n, Inc. v. Random House, Inc.*, 1996 WL 499520, at *8 (S.D.N.Y. Sept. 4, 1996) (denying motion to stay entire case based on a 16-year-old FTC investigation where there was "no assurance that the FTC actions will be resolved shortly.")

The Second Circuit's decision in *Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*, 803 F.2d 69, 74 (2d Cir. 1986) is instructive. The Second Circuit stayed that case pending resolution of issues before the National Labor Relations Board without invoking the primary jurisdiction doctrine, reasoning that a stay would promote judicial efficiency, reduce the risk of inconsistent adjudications, and place the district court in a better position to determine the most appropriate course of action going forward. *Id.* Thus, if this Court is so inclined, it has discretion to stay its decision on the certification of an injunctive relief class without invoking the primary jurisdiction doctrine.

7

## CONCLUSION

P&G submits that the Court should deny Plaintiff's motion to certify an injunctive relief class. However, if the Court is inclined instead to stay its decision whether to certify an injunctive relief class, it would be squarely within the Court's discretionary authority to do so pursuant to the prudential doctrine of primary jurisdiction or based on its inherent authority to control the disposition of the causes on its docket.

                              Respectfully submitted:

                              **s/ Andrew D. Schau**
                              Andrew D. Schau
                              Michael Sochynsky
                              **COVINGTON & BURLING LLP**
                              The New York Times Building
                              620 Eighth Avenue
                              New York, NY 10018
                              aschau@cov.com
                              (212) 841-1000

                              Emily Johnson Henn*
                              **COVINGTON & BURLING LLP**
                              333 Twin Dolphin Drive, Suite 700
                              Redwood Shores, CA 94061
                              (650) 632-4700

                              Sonya D. Winner*
                              Cortlin H. Lannin*
                              **COVINGTON & BURLING LLP**
                              One Front Street, 35th Floor
                              San Francisco, CA 94102
                              (415) 591-6000

                              \* *Admitted pro hac vice*

                              *Attorneys for Defendant*
Dated: September 9, 2015            *The Procter & Gamble Company*