UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Case No. 14 Civ. 4090 (JBW) (RML) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DECERTIFY THE CLASSES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STANDARD OF REVIEW ................................................................................................................ 3

ARGUMENT ...................................................................................................................................... 4

    1.    Due to Jurisdictional Issues, the Motion to Decertify Interferes With the Prompt Resolution of the Issues Before the Court of Appeals ............................... 4

    2.    P&G's Attempt to Decertify the Class on Inadequacy Grounds Lacks Merit ........ 5

    3.    P&G Gives Short Shrift to the U.S. Supreme Court *Shady Grove* Decision .......... 8

    4.    The FTC No-Action Letter is Neither New News nor Significant ...................... 12

    5.    Plaintiff's Injunctive Relief Claims are Vital ...................................................... 13

    6.    P&G Chose Not to Seek a Nationwide Settlement .............................................. 13

CONCLUSION ................................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F. 3d 708 (9th Cir. 2010)..................................................................................................11

*Belfiore v. Procter & Gamble Co.*,
   Case 17-1861 (2d Cir.) ............................................................................................................12

*Eggleston v. Chicago Journeymen Plumbers' Local 130*,
   657 F.2d 890 (7th Cir. 1981)..................................................................................................6, 7

*In re Farmers Ins. Co., F.C.R.A. Litigation*,
   No CIV-03-158-F,
   2006 U.S. Dist. LEXIS 27290 (W.D. Okla. Apr. 13, 2006) .....................................................11

*Gordon v. Hunt*,
   117 F.R.D. 58 (S.D.N.Y. 1987)..................................................................................................3

*In re Hornbeam Corp.*,
   No. 14-MC-424 (Part 1),
   2017 U.S. Dist. LEXIS 128940 (S.D.N.Y. Aug. 14, 2017) ........................................................5

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006)................................................................................................9, 11

*Parker v. Time Warner Entm't Co.*,
   331 F.3d 13 (2d Cir. 2003) ....................................................................................................8, 9

*Pettit v. Procter & Gamble Co.*,
   Case No. 3:15-cv-02150-RS,
   2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ............................................................................1

*In re Pfizer Sec. Lit.*,
   282 F.R.D. 38 (S.D.N.Y. 2012)..................................................................................................7

*Rand v. Monsanto Co.*,
   926 F.2d 596 (7th Cir. 1991)....................................................................................................10

*Ratner v. Chem. Bank N.Y. Trust Co.*,
   54 F.R.D. 412 (S.D.N.Y. 1972)................................................................................................10

*In re Scotts EZ Seed Litig.*,
   12 CV 4727 (VB),
   2017 U.S. Dist. LEXIS 125621 (S.D.N.Y. Aug. 8, 2017) ........................................................9

*Stinson v. City of New York*,
  No. 10 Civ. 4228 (RWS),
  2014 U.S. Dist. LEXIS 133741 (S.D.N.Y. Sep. 23, 2014) ....................................................3, 8

*Shady Grove Orthopedic Assoc, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393, 130 S. Ct. 1431 (2010) ..................................................................................8

*In Re: Toys "R" US- Delaware, Inc. Fair and Accurate Credit
  Transactions Act (FACTA) Litig.*,
  300 F.R.D. 347 (C.D. Cal. 2013) ........................................................................................11

*United States v. Jacobson*,
  15 F.3d 19 (2d Cir. 1994) ..................................................................................................4, 5

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02 Civ. 5571 (RJH) (HBP),
  2009 U.S. Dist. LEXIS 31198 (S.D.N.Y. Mar. 31, 2009) .......................................................3

*Winkler v. NRD Mining, Ltd.*,
  No. CV-82-3318,
  1991 U.S. Dist. LEXIS 5420 (E.D.N.Y. Apr. 16, 1991) ......................................................6, 8

*In re Worldcom Inc. Securities Litigation*,
  219 F.R.D. 267 (S.D.N.Y 2003) ..........................................................................................10

*In re Zyprexa Prods. Liab. Litig.*,
  671 F. Supp. 2d 397 (E.D.N.Y. 2009) .................................................................................10

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................................................3

Fed. R. Civ. P. 68(b) ..................................................................................................................6

Fed. R. Evid. 408 ......................................................................................................................6

Plaintiff Anthony Belfiore ("Plaintiff"), on behalf of the certified class of New York consumers (the "New York Class"), submits this memorandum in opposition to the motion by the Procter & Gamble Company ("P&G" or "Defendant") to decertify the New York Class (the "Motion").

## PRELIMINARY STATEMENT

This is P&G's ***fourth*** attempt to deny New York consumers a class recovery for P&G's deceptive marketing of Freshmates as "flushable" and "safe for sewer and septic systems" in violation of New York General Business Law ("NY GBL") § 349.[1]  For good reason, none of the prior motions have been successful.  Recognizing the soundness of the record developed here and this Court's thorough opinion, Judge Seeborg in the Northern District of California certified similar injunctive and damages classes of California consumers rejecting the same objections from P&G.  *See Pettit v. Procter & Gamble Co.*, Case No. 3:15-cv-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017).[2]

Defendant fails to address any intervening event that should change this Court's class certification decision.  While P&G points to a no-action letter it received from the FTC, this is nothing new—the Court already considered and dismissed Kimberly-Clark's invitation to rely on a near-identical letter it received years ago.  Furthermore, by once again arguing that allowing statutory damages on a class-wide basis would violate due process, Defendant makes no effort to consider the importance of *Shady Grove* or the many cases that hold that such an argument is not

---

[1]  *See* ECF No. 17-1 at 8-10 (motion to strike class claims); ECF Nos. 59 (motion to deny class certification) and 81 (opposition to motion for class certification); ECF No. 222 (renewed motion to deny class certification or for summary judgment).

[2]  Meaningfully, when P&G filed its opening brief appealing this Court's class certification decision, it neglected to inform the Court of Appeals of the *Pettit* decision, even though P&G's counsel was the same in both cases.

valid to defeat class certification, or explain exactly how a possible judgment of $200 million cripples a company with more than $115 ***billion*** in assets.[3]

After P&G lost the motions for class certification in this case and in *Pettit*, it decided to settle the *Pettit* case and shut Plaintiff (the representative of the New York Class) and his counsel out from the settlement negotiations. The first time counsel for the New York Class learned of the *Pettit* settlement was in June 2018, after which Plaintiff's counsel, Lester Levy, received a telephone call from the mediator in the *Pettit* Action, Robert A. Meyers of JAMS. Mr. Meyers stated that P&G refused to modify the terms of the settlement in any way and presented the New York Class with a take-it-or-leave-it proposition, noting that P&G would push through the settlement with or without the New York Class.[4]

The settlement terms the New York Class was presented with had ***no*** changes to the material misrepresentations on Freshmates' label, *i.e.*, that the wipes are flushable and safe for sewer and septic systems. The settlement terms allow P&G to continue misrepresenting the product's attributes and to continue to collect from consumers a premium price for the falsely labeled attributes.

The *Pettit* settlement provides for class members to file a claim of 60 cents per package of Freshmates purchased, up to a limit of $4.20 per household without proof of purchase. The parties in *Pettit* argued to the California district court that 60 cents was a good recovery because the most a claimant could receive upon a full recovery after trial in that action was approximately 36-cents per package. That argument is inapplicable to the New York Class, however, as the maximum recovery for the New York Class is $50 per package, not 36 cents. Releasing a $50 claim for a

---

[3]    *See* Declaration of Lester L. Levy, dated July 31, 2019 ("Levy Decl.") at ¶5.

[4]    *See* Levy Decl. ¶4.

60-cent recovery and agreeing to a settlement that allows the material misrepresentations and unlawful premium price to remain is not an acceptable outcome for the New York Class.[5]

Other aspects of the *Pettit* settlement are non-monetary and temporary (only promised for 2 years). In any event, the New York Class obtains the benefit of the non-monetary terms whether it was part of the settlement or not, as these items pertain to testing, composition of the product, and minor changes in the label wording. This is so because P&G is not likely to have a separate product and label in New York than in the other 49 states.[6] By not joining the *Pettit* settlement, the New York Class receives the benefits of these non-monetary terms without having to release any of its claims.

## STANDARD OF REVIEW

While Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure (the "Rules") allows a district court to alter or amend its class certification decision prior to final judgment, a court "may not, however 'disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question.'" *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2014 U.S. Dist. LEXIS 133741, at *3 (S.D.N.Y. Sep. 23, 2014) (citation omitted). Absent such, "the factual underpinnings of a court's prior certification order are 'deemed to be the law of the case.'" *Id.* at *3-4 (citation omitted). Therefore, "decertifying or redefining the scope of a class should only be done where defendants have met their 'heavy burden' of proving the necessity of taking such a 'drastic' step." *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 U.S. Dist. LEXIS 31198, at *22 (S.D.N.Y. Mar. 31, 2009) (citation omitted); *see also Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987) ("defendants bear a heavy burden to prove

---

[5] Because the New York Class members were not part of the *Pettit* settlement, they could not object to the settlement.

[6] *See* Levy Decl., Ex. B at 21:14-20.

3

the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class").

Because P&G has not met its "heavy burden" of demonstrating *any* significant intervening event or a compelling reason to reexamine this Court's prior determination that Plaintiff and his counsel have met Rule 23(a)'s adequacy requirement, this Motion must be denied.

## ARGUMENT

1. **Due to Jurisdictional Issues, the Motion to Decertify Interferes With the Prompt Resolution of the Issues Before the Court of Appeals**

After this Court certified a damages class and injunctive relief class, P&G appealed the class certification decision to the Second Circuit. As part of the appeal, the Second Circuit considered the *Pettit* settlement (during oral argument) and the FTC no-action letter (as a motion for judicial notice while briefing was ongoing). After oral argument, the Second Circuit's assigned panel of judges (the "Panel") issued a Mandate to this Court (ECF No. 274, the "Mandate"), remanding the case "so that the parties may be afforded the chance to supplement the record with additional evidence and so that the district court can then make appropriate findings *on the predominance issue*." Mandate at 4 (emphasis added).[7] The Second Circuit noted that current record should be supplemented as to "Plaintiffs' proof that they can establish the injury and causation elements of their claims at trial with common evidence." *Id.* The Panel stayed consideration of the appeal as to the injunctive class. *Id.* at 4-5.

The Panel's Mandate was issued "pursuant to the procedure set out in *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994) . . . ." Mandate at 4. *Jacobson* recognizes that a Circuit

---

[7] In compliance with the Mandate, this Court ordered an evidentiary hearing take place on August 6 through 8, at which Plaintiff's expert, Colin Weir, is scheduled to testify about the class-wide premium his damages model has derived for Defendant's "flushable" representations.

4

Court has the authority to "seek supplementation of the record while retaining jurisdiction, without a mandate issuing or the need for a new notice of appeal." 15 F.3d at 22. However, the Second Circuit concluded that "the better practice" in cases requiring additional development of the record, such as here, "is to direct that a mandate issue forthwith" that contains "conditions upon the occurrence of which jurisdiction will be ***automatically restored*** to the appellate panel without a new notice of appeal." *Id.* (emphasis added). This is precisely what the Panel did here. *See* Mandate at 4 (allowing any party to this Action to restore jurisdiction without a new notice of appeal within 30 days of this Court's judgment on Plaintiffs satisfaction of Rule 23(b)(3)'s predominance requirement).

While this Court may have jurisdiction at the time this brief is filed, it would be divested of any such jurisdiction upon entering any findings regarding predominance in accordance with the Mandate, at which time jurisdiction over the class certification decision will be automatically restored to the Second Circuit. *See* Mandate 4-5 (instructing the clerk to restore jurisdiction upon notice, by letter, of this Court's judgment on the predominance issue); *see also In re Hornbeam Corp.*, No. 14-MC-424 (Part 1), 2017 U.S. Dist. LEXIS 128940, at *2-3 (S.D.N.Y. Aug. 14, 2017) ("a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously" and, therefore, a proper appeal "divests the district court of its control over those aspects of the case involved in the appeal" (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). This motion therefore interferes with the prompt resolution of the narrow issue of predominance pursuant to the Second Circuit's Mandate.

**2. P&G's Attempt to Decertify the Class on Inadequacy Grounds Lacks Merit**

Prior to this Motion, this Court already reviewed fifteen memoranda of law on class issues and held extensive oral arguments before rendering a comprehensive decision to certify a damages class and injunctive relief class under Rules 23(b)(2) and (3). Among the Court's findings, it

5

determined that Plaintiff and his counsel met Rule 23(a)'s adequacy requirement, and that Plaintiff's counsel "has handled the case with great skill and full attention." ECF No. 252 ("Class Cert. Op.") at 18. P&G nevertheless attempts to have this Court revisit its certification decision on adequacy grounds based upon Plaintiff's refusal to accept the terms dictated to it by P&G without any ability to negotiate. Notably absent from P&G's Motion papers is any decision supporting the proposition that a plaintiff is inadequate if he or she does not accept the terms of a take-it-or-leave-it settlement offer. *But see Winkler v. NRD Mining, Ltd.*, No. CV-82-3318, 1991 U.S. Dist. LEXIS 5420, at *6-9 (E.D.N.Y. Apr. 16, 1991) (denying motion to decertify due to the plaintiff's refusal to accept settlement offer, finding "it is not the role of the court to dictate settlement terms, nor should the court substitute its 'business judgment' for that of the various parties and their attorneys" (citation omitted)).

Furthermore, adopting Defendant's novel argument will only encourage bad behavior from other defendants. If turning down a settlement offer is grounds to challenge the adequacy of the class representative, defendants will be incentivized to make low ball offers and threaten to move for decertification if rejected, or actually file such meritless motions, increasing the costs on the Plaintiff and wasting the time of the Court. This position also violates the clear commandment of Rule 68: "Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs." Fed. R. Civ. P. 68(b); *see also* Fed. R. Evid. 408.

Courts have recognized that when a defendant attacks the adequacy of class counsel or the class representative, what it really seeks is ***no*** representation and ***no class-wide recovery***. For example, in *Eggleston v. Chicago Journeymen Plumbers' Local 130*, the Seventh Circuit found:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative

6

> plaintiffs will fairly and adequately protect the interests of the class," . . . [relying on the defendant] is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house.

657 F.2d 890, 895 (7th Cir. 1981). Similarly, in *Umbriac v. AmericanSnacks, Inc.*, the District Court for the Eastern District of Pennsylvania stated:

> It is in the nature of the motion practice on class determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions . . . while the implicit, but nonetheless real, objective of their vigorous legal assaults is to insure "no" representation for the class.

388 F. Supp. 265, 275 (E.D. Pa. 1975); *see also In re Pfizer Sec. Lit.,* 282 F.R.D. 38, 47-48 (S.D.N.Y. 2012).

This Court has already determined Plaintiff is adequate. In so determining, the Court applied a three-part test:

> First, plaintiff must "demonstrate that class counsel is qualified, experienced . . . [and] generally able to conduct the litigation," *id.* (citation omitted), and that no conflicts exist that "might impair its representation." *Seijas v. Rep. of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010) (citation omitted). Second, "the named plaintiff must show that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Id.* (citations omitted). Third, "a named plaintiff must exhibit enough integrity and credibility to convince the court that the named plaintiff will diligently perform its fiduciary duties to the class."

Class Cert. Op. at 89-90 (citations omitted).

This Court found that Plaintiff met all three criteria, holding that "[a]dequacy is satisfied" where Plaintiff "demonstrated [his] commitment to pursue these claims on behalf of class members by . . . sitting for lengthy depositions," appearing in court, "understand[ing] he will 'probably have to go to court' again," and having "read the complaint before it was file." *Id.* at 91. This conclusion is currently the "law of the case" and may not be disturbed "absent some significant intervening

7

event or a showing of compelling reasons to reexamine the question." *See Stinson*, 2014 U.S. Dist. LEXIS 133741, at *3-4. The refusal to succumb to P&G's take-it-or-leave-it settlement terms is neither a significant intervening event nor a compelling reason to reexamine this Court's prior determination. *See Winkler*, *supra*, 1991 U.S. Dist. LEXIS 5420, at *6-9.[8]

### 3. P&G Gives Short Shrift to the U.S. Supreme Court *Shady Grove* Decision

In 2010, the U.S. Supreme Court held that a class action may proceed in federal court seeking statutory damages provided under NY GBL § 349. *Shady Grove Orthopedic Assoc, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431 (2010). Ignoring that holding, P&G seeks to decertify the New York Class because Plaintiff is seeking the exact same statutory damages for the New York Class.

In arguing its position, P&G offers little to no discussion of *Shady Grove*, a binding decision on this Court. Instead, P&G blithely relies on cases decided ***prior to*** the *Shady Grove* decision. For example, P&G cites to *Parker v. Time Warner Entm't Co.*, 331 F.3d 13 (2d Cir. 2003), decided seven years before *Shady Grove*. In *Parker*, the Second Circuit vacated a district court decision denying class certification and remanded for further proceedings. *Parker* involved a proposed class of 12 million cable subscribers in 23 states seeking damages of ***$12 billion***. In dicta, the circuit court noted concerns of certain judges who speculated that there ***might*** be an instance where a devastatingly large damage award ***might*** lead to the financial demise of a defendant and create an *in terrorem* effect, possibly raising a due process issue. Even then, the

---

[8] P&G also implies that Plaintiff should be found inadequate because the *Pettit* settlement terms included a longer class period than that certified here. Decert Br. at 5. However, as P&G is surely aware, it is standard to extend the class period if there is a continuing wrong. This Court *sua sponte* extended the class period from May 23, 2014, as sought in Plaintiff's Motion for Class Certification (ECF No. 58), to March 1, 2017 (Class Cert Op. at 130). Plaintiff will move this Court at the proper time to amend the class period to extend through the date when the Court approves the issuance of class notice.

8

Court noted that the due process clause cannot be used to prevent class certification, but possibly to reduce the damage award *after trial*. 331 F.3d at 21; *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified."); *In re Scotts EZ Seed Litig.*, 12 CV 4727 (VB), 2017 U.S. Dist. LEXIS 125621, at *17-18 (S.D.N.Y. Aug. 8, 2017). Notably, Defendant raised the same due process argument—relying in large part on *Parker*— almost four years ago. *See* ECF No. 130 at 4 ("Finally, it is worth noting that aggregating statutory damages claims in a class action would raise significant fairness and due process concerns."). The Class Certification Opinion obviously considered this argument and was not persuaded.

In the instant case, the maximum statutory damages are likely less than $200 million, not $12 billion. P&G is a behemoth, with assets of more than $115 billion.[9] A judgement of less than one-fifth of 1% of P&G's assets would not "lead to the financial demise" of P&G and would not implicate a denial of due process. Even if so, P&G's argument is clearly premature. It is not until a judgment is entered that a court would know whether the amount was unjustified under the circumstances—and here, the circumstances include P&G's continuing violations of NY GBL § 349 that have been going on for years—at which point the court may consider lowering the amount. Denying a motion for class certification is certainly not the proper procedural mechanism for addressing P&G's speculative argument.

Moreover, it is ironic that P&G cries crocodile tears over the prospect of having class-wide statutory damages assessed against it. This case was commenced by plaintiff in state court. P&G removed it to federal court four years after the *Shady Grove* decision, despite knowing that by

---

[9] Levy Decl. at ¶5.

9

doing so it would face class-wide statutory damages. P&G must have concluded that it benefits more by the removal than by keeping the class case in state court.

The other cases P&G rely on are equally unpersuasive. In *Ratner v. Chem. Bank N.Y. Trust Co.*, decided 38 years before *Shady Grove*, there were no actual damages, only "a technical and debatable violation of the Truth in Lending Act." 54 F.R.D. 412, 416 (S.D.N.Y. 1972). In *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991), the Seventh Circuit remanded the class decision back to the district court to determine the plaintiff's adequacy where the plaintiff (a) did not even know he was the plaintiff or the class representative, and (b) believed he could receive $100,000, although his lawyers stated his individual maximum claim was for only $1,135.

In *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 402 (E.D.N.Y. 2009), also decided before *Shady Grove*, this Court was concerned that there might be a multi-billion-dollar penalty that could result in serious harm or bankruptcy to the defendant and to the pharmaceutical industry generally. This is hardly the case here, where a full statutory recovery would not have a material effect on P&G's tremendous financial resources. *See* Class Cert Op. at 20 ("The instant case is not barred by [*Zyprexa*].").

Furthermore, courts have denied arguments based upon the cases cited above even without the benefit of the Supreme Court's *Shady Grove* opinion. For example, in granting class certification in *In re Worldcom Inc. Securities Litigation*, Judge Cote rejected the defendant's arguments that, based on *Parker*, class certification might expose the defendant to erroneous damages for what should be a comparatively minute award of damages. The court found that this argument could not defeat an otherwise proper certification. 219 F.R.D. 267, 305-06 (S.D.N.Y 2003).

10

In *In re Farmers Ins. Co., F.C.R.A. Litigation*, the district court rejected the defendant's arguments based on *Parker* and *Ratner* and certified the class. The Court found:

> As to the potential for annihilating damages, the court notes that the record does not establish that the statutory damages sought by plaintiffs (should they prevail) would be a crushing or fatal blow for defendants. In addition, the court notes that the potential for large damages is due to the size of the class and that the size of the class is not a fortuity (as might be true in, say, a mass casualty case) - it is essentially a function of the scale of the defendants' insurance business. A finding that the class action is not superior because damages are large, due to the large number of affected individuals, would invite defendants to violate the law on a grand scale.

No. CIV-03-158-F, 2006 U.S. Dist. LEXIS 27290, at *45-46 (W.D. Okla. Apr. 13, 2006) (citing 1 Herbert B. Newburg & Alba Conte, Newberg on Class Actions, § 4.43, p 331 (4th ed. 2002)).

In *In Re: Toys "R" US- Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347 (C.D. Cal. 2013), the court granted the plaintiffs' motion to certify classes over the defendants' arguments that the class damages, which included statutory damages, might be excessive. The court held that, even if a possible award will ultimately be excessive, the certification stage is not the correct point in the proceedings to draw such a conclusion. The district court relied on the 9th Circuit and 7th Circuit decisions in *Bateman v. Am. Multi-Cinema, Inc.*, 623 F. 3d 708, 723 (9th Cir. 2010) and *Murray,* 434 F.3d at 954, respectively.

By this motion, P&G seeks no class and no recovery against it. Plaintiff and his counsel did not suddenly become inadequate by not succumbing to the settlement terms P&G sought to foster on them. There is no due process concern currently in existence, and if one arises after a judgment, the Court can deal with it appropriately.

### 4. **The FTC No-Action Letter is Neither New News nor Significant**

This Court invited the FTC to assist in resolving the flushability claims. The FTC declined, stating that its definition of flushablility could assist the parties and the Court in their respective analyses. Class Cert. Op. at 9, 31.

On August 29, 2017, after the New York Class and the *Pettit* Class were both certified in separate district courts, the FTC decided that, considering its resource allocation and enforcement priorities, it would not take enforcement action. In its letter to P&G, the FTC explicitly stated that its decision "is not to be construed as a determination that a violation of law did not occur," and that it "reserves the right to take such further action as the public interest may warrant." ECF No. 294-3 (FTC No-Action Letter).[10] As this Court recognized when confronted with a substantially similar no-action letter issued to Kimberly-Clark preceding the class certification decision (Class Cert. Op. at 29-30), the letter has no impact on this Court's class certification determinations. *Id.* at 109-10 ("A decision not to order Kimberly-Clark to change its labeling does not indicate that the FTC approves of the labeling or that plaintiffs' pursuit of more detailed relief is imprudent." (citing cases)). Furthermore, Defendant raised a similar argument years ago. *See, e.g.*, Defendant The Procter & Gamble Company's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Claim for Injunctive Relief and Renewed Motion to Deny Class Certification or, in the Alternative, for Summary Judgment, Dec. 30, 2016 (filed under seal; ECF No. 223-1) ("[T]he Federal Trade Commission's ('FTC') recent Nice-Pak order, in which it announced a standard for

---

[10] As noted previously, the Second Circuit was informed of the FTC's no-action letter and the issues raised here were subsequently briefed by both parties. *See Belfiore v. Procter & Gamble Co.*, Case 17-1861 (2d Cir.) at ECF No. 39 (Motion for Judicial Notice of FTC Letter); ECF No. 121 at 20-21 (Defendant's argument); ECF No. 119 at 13 n.11 (Plaintiff's argument). The Mandate makes no reference to the no-action letter.

'flushable' and 'safe for sewer and septic systems,' moots plaintiff's attempt to seek a classwide injunction.").

### 5. Plaintiff's Injunctive Relief Claims are Vital

Plaintiff has fought strenuously to have P&G remove the "flushable" misrepresentations, including that the product is "safe for sewer and septic systems," off its labeling and marketing. That injunctive relief is a core component of the relief sought here. Those misrepresentations remaining on the label and website following the *Pettit* settlement is a continuing wrong, which is causing injury to the New York Class on a daily basis. The failure of the *Pettit* settlement to include the removal of these key misrepresentations was a main reason why the *Pettit* settlement was deemed inadequate for the New York Class.

### 6. P&G Chose Not to Seek a Nationwide Settlement

New York Class counsel, *Pettit's* class counsel, and P&G's counsel engaged for months in settlement negotiations under the supervision of Magistrate Judge Levy. However, P&G unilaterally broke off the negotiations.[11]

Subsequently, P&G decided on a 49-state settlement strategy and to negotiate with *Pettit's* counsel without including the New York Class. Only after a 49-state settlement was reached was counsel for the New York Class presented with an ultimatum: accept the non-negotiable terms offered or continue litigating.

Now P&G tells the Court the pendency of the New York action jeopardizes the nationwide uniformity of P&G's labeling. Putting aside the shameless audacity of such an argument given the context, if the outcome of this case is a finding that the representations "flushable" and "safe

---

[11] Levy Decl. ¶ 2.

13

for sewer and septic systems" are materially misleading, it is likely that P&G would remove these representations from all labels in every state.

## CONCLUSION

P&G seeks by this motion to deprive the New York Class of representation because Plaintiff and his counsel would not succumb to P&G's take-it-or-leave-it settlement terms. These terms left the material misrepresentations on the product label, allowed P&G to continue to collect a premium from consumers for those misrepresentations, and provided for inadequate compensation for past injury under New York law.

P&G has failed to meet its heavy burden of providing a compelling reason for the Court to reexamine its earlier class certification determinations.

DATED: July 31, 2019

Respectfully submitted,

By: */s/ Lester L. Levy*
Lester L. Levy
Matthew Insley-Pruitt
Sean M. Zaroogian
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600

*Attorneys for Plaintiff and the New York Class*