# **EXHIBIT C**

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 2 of 12 PageID #: 7505

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

KeyCite Yellow Flag - Negative Treatment

Distinguished by Tyler Barnett PR, LLC v. Facebook Inc., N.D.Cal., June 1, 2018

2018 WL 1009257
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Natalia BRUTON, Plaintiff,
v.
GERBER PRODUCTS COMPANY, Defendant.

Case No. 12-CV-02412-LHK
|
Signed 02/13/2018

**Attorneys and Law Firms**

Ben F. Pierce Gore, Pratt & Associates, San Jose, CA, Brian K. Herrington, Don Barrett, P.A., Lexington, MS, David Shelton, David Shelton, PLLC, Oxford, MS, for Plaintiff.

Bryan Alexander Merryman, Deema Basel Abini, Rachel J. Feldman, White & Case LLP, Los Angeles, CA, for Defendant.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

LUCY H. KOH, United States District Judge

*1 Plaintiff Natalia Bruton ("Bruton") brings this putative class action against Gerber Products Company ("Gerber") that alleges that Gerber's product labeling is unlawful, deceptive, and misbranded in violation of federal and California law. Bruton moves to certify a class of California consumers who purchased Gerber products from May 11, 2008 to the date of notice to the class, and Gerber opposes the Motion. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Bruton's Motion for Class Certification.

### I. BACKGROUND

#### A. Factual Background
Gerber, a private corporation with its principal place of business in Fremont, Michigan, claims to be "the world's most trusted name in baby food," and reportedly controls between seventy and eighty percent of the baby food market in the United States. ECF No. 159 at 2 ("MSJ Order"). Gerber packages and sells retail food products, such as puree baby food, snacks, yogurts, side dishes, and beverages, specifically intended for infants and children under two years of age. Id. Gerber organizes its products by "stages," including: "Birth +," "Supported Sitter," "Sitter," "Crawler," "Toddler," and "Preschooler." Id. All of the Gerber product categories other than "Preschooler" describe children under two years of age. Id.

Bruton is a California resident who is "concerned about the nutritional content of the food she purchase[s] for her child's consumption." ECF No. 62, Second Amended Complaint ("SAC") ¶¶ 20, 81. At various times, Bruton purchased many of Gerber's food products that are intended for children under the age of two. MSJ Order at 2. Specifically, Bruton purchased the following products ("Purchased Products"):

(1) Gerber Nature Select 2nd Foods Fruit—Banana Plum Grape;

(2) Gerber Nature Select 2nd Foods Fruit—Apples and Cherries;

(3) Gerber Nature Select 2nd Foods Vegetables—Carrots;

(4) Gerber Nature Select 2nd Foods Spoonable Smoothies —Mango;

(5) Gerber Nature Select 2nd Foods Vegetables—Sweet Potatoes & Corn;

(6) Gerber Organic SmartNourish 2nd Foods—Banana Raspberry Oatmeal;

(7) Gerber Organic SmartNourish 2nd Foods—Butternut Squash & Harvest Apple with Mixed Grains; and

(8) Gerber Organic SmartNourish 2nd Foods—Farmer's Market Vegetable Blend with Mixed Grains.

See Stipulated Chart of Products at Issue in This Case ("Chart"), Ex. A. to ECF No. 117 at 1–3. In addition to bringing claims regarding the Purchased Products, Bruton also asserts claims related to dozens of additional products that Bruton alleges make similar label misrepresentations and violate the same federal and California labeling laws. SAC ¶ 3. Bruton refers to these additional products as the "Substantially Similar Products." Id.; see also Chart at 1–4.

Case 2:14-cv-04090-JBW-RML   Document 306-3   Filed 08/14/19   Page 3 of 12 PageID #: 7506

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

Bruton alleges that Gerber's food products are "misbranded" in violation of federal and California labeling laws because Gerber makes two types of unlawful and deceptive claims on its product labels. First, Bruton challenges Gerber's use of "nutrient content claims," which are claims about specific nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA"), must be made in accordance with federal regulations. *Id.* ¶¶ 51–53; *see* 21U.S.C. § 343(r)(1)(A). Bruton alleges that Gerber makes nutrient content claims on virtually all Gerber food products, despite the fact that the Food and Drug Administration ("FDA") does not authorize nutrient content claims on foods intended for children under age two. SAC ¶ 60; 21 C.F.R. § 101.13(b)(3). Bruton specifically asserts that Defendant makes the following unlawful nutrient content claims: (1) claims that a product is an "Excellent Source" or a "Good Source" of various vitamins and minerals, ("Excellent/Good Source Statements") SAC ¶ 59(a); (2) claims that a product is "As Healthy As Fresh," provides "Nutrition for Healthy Growth & Natural Immune Support," or "Supports Healthy Growth & Development," ("Healthy Statements") *id.* ¶ 59(b); and (3) claims that a product contains "No Added Sugar" or "No Added Refined Sugar," ("No Sugar Added Sugar Statements") *id.* ¶ 59(c).

**\*2** Bruton additionally alleges that many of Gerber's products that are labeled with a "No Added Sugar" or "No Added Refined Sugar" nutrient content claim contain sufficiently high levels of calories that federal law requires that the claims be accompanied by a disclosure statement warning of the high caloric value of the products. *Id.* ¶ 69 (citing 21 C.F.R. § 101.60(c)(2)). Because Gerber does not place a disclosure statement on these food products, Bruton asserts that Gerber's product labels violate federal and California law. *Id.* ¶¶ 69–74.

Bruton contends that, by manufacturing, advertising, distributing and selling misbranded food products, Gerber has violated California Health and Safety Code Sections 109885, 110390, 110395, 110398, 110400, 110660, 110665, 110670, 110705, 110760, 110765, and 110770. *Id.* ¶¶ 94–100. In addition, Bruton asserts that Gerber has violated the standards set by 21 C.F.R. §§ 101.13, 101.54, 101.60, and 101.65. *Id.* ¶ 101.

Bruton now seeks to certify the following class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

> All persons in the state of California who, from May 11, 2008, until the date of notice, purchased [Gerber baby food products identified in the Chart] which were labeled with one or more of the following claims: "Excellent Source of," "Good Source of," "Healthy," "No Added Sugar" and/or "No Added Refined Sugar."

ECF No. 82 ("Mot.") at i. [1]

**B. Procedural History**

Bruton filed her initial Complaint against Gerber, Nestlé Holdings, Inc., and Nestlé USA, Inc. on May 11, 2012. ECF No. 1. On July 2, 2012, Bruton filed a Notice of Voluntary Dismissal of Defendant Nestlé Holdings, Inc. ECF No. 9. Gerber and Nestlé USA, Inc. then filed a Motion to Dismiss on August 31, 2012. ECF No. 18. Rather than responding to the Motion to Dismiss, Bruton filed a First Amended Complaint ("FAC") on September 21, 2012. ECF No. 26.

Gerber and Nestlé USA, Inc. subsequently withdrew their Motion to Dismiss the initial Complaint as moot, ECF No. 27, and filed a Motion to Dismiss the FAC, ECF No. 28. On September 6, 2013, the Court granted in part and denied in part Gerber and Nestlé USA, Inc.'s Motion to Dismiss. ECF No. 57. Of relevance here, the Court's order dismissed Bruton's claim for restitution based on unjust enrichment/quasi-contract. *Id.* at 41.

Bruton filed the SAC on October 7, 2013, this time naming Gerber as the sole defendant. *See* SAC. The SAC alleged the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices, SAC ¶¶ 114–40; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, for misleading, deceptive, and untrue advertising, SAC ¶¶ 141–56; and (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, SAC ¶¶ 157–73.

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 4 of 12 PageID #: 7507

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

**\*3** Gerber filed a Motion to Dismiss the SAC on October 31, 2013, ECF No. 65, which the Court granted in part and denied in part on January 15, 2014, ECF No. 83. On November 8, 2013, the parties stipulated to the dismissal of Nestlé USA, Inc. with prejudice. ECF No. 75.

On January 10, 2014, Bruton moved for class certification, seeking to certify both a damages and an injunctive relief class. Mot. Gerber filed an opposition on March 11, 2014, ECF No. 88 ("Opp'n"), and Bruton replied on April 3, 2014, ECF No. 110 ("Reply").[2] On June 23, 2014, the Court concluded that neither proposed class was ascertainable and denied class certification. *See* ECF No. 128 ("Class Cert. Order").

On October 24, 2014, Bruton filed a motion for summary judgment, *see* ECF No. 140, and Gerber filed a motion for summary judgment, *see* ECF No. 141. The parties filed their respective oppositions on November 14, 2014. ECF No. 147; ECF No. 150. Gerber replied on November 25, 2014, ECF No. 152, and Bruton replied on November 26, 2014, ECF No. 154. On December 18, 2014, the Court granted Geber's motion for summary judgment on all of Bruton's UCL, FAL, and CLRA claims. ECF No. 159.

On July 17, 2017, the Ninth Circuit affirmed in part and reversed in part. *Bruton v. Gerber Prod. Co.*, 703 Fed.Appx. 468 (9th Cir. July 17, 2017).[3] The Ninth Circuit reversed the Court's denial of class certification because the decision was based on a lack of ascertainability, and in the subsequently decided *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), the Ninth Circuit, "using different terminology for what the district court called 'ascertainability'—held that there was no separate 'administrative feasibility' requirement for class certification." *Bruton*, 703 Fed.Appx. at 470 (quoting *Briseno*, 844 F.3d at 1123).

The Ninth Circuit affirmed the grant of summary judgment for Gerber on Bruton's claims that Gerber's labels were deceptive in violation of the UCL, FAL, and CLRA. *Id.* However, the Ninth Circuit reversed the grant of summary judgment for Gerber on Bruton's claim that the labels were unlawful under the UCL. *Id.* at 471–72. The Ninth Circuit found the Court had erred in applying the reasonable consumer test to the UCL's unlawful prong because the UCL's unlawful prong borrows predicate legal violations, and California's Sherman Law, which is the predicate violation in this case, incorporates FDA regulations which do not include the reasonable consumer test. *Id.* at 472.

The Ninth Circuit also reversed the Court's dismissal of Bruton's claim for unjust enrichment/quasi-contract because after the Court dismissed the claim, the California Supreme Court allowed an independent claim for unjust enrichment to proceed in an insurance dispute. *Id.* at 470 (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)). Thus, Bruton's remaining claims are (1) that Gerber's labels were unlawful under the UCL, and (2) a claim for unjust enrichment/quasi-contract.

**\*4** On August 8, 2017, the Ninth Circuit issued its mandate. On October 4, 2017, the Court instructed the parties to file supplemental cross briefs on class certification. ECF No. 104. On November 1, 2017, Bruton and Gerber both filed their briefs. ECF Nos. 176 ("Bruton Br."), 177 ("Gerber Br."). On November 15, 2017, Bruton and Gerber both filed the replies. ECF Nos. 179 ("Bruton Reply"), 180 ("Gerber Reply").

## II. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate ... compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 5 of 12 PageID #: 7508

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]" Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194 (2013) (quoting Dukes, 564 U.S. at 351); see also Mazza, 666 F.3d at 588 (" 'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.' " (quoting Zinser, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). Comcast, 569 U.S. at 34 (stating that Congress included "addition[al] ... procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

*5 Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Amgen, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id. at 1195. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. Zinser, 253 F.3d at 1186.

## III. DISCUSSION

Bruton seeks to certify a national class of consumers who purchased Gerber products during the class period under both Rule 23(b)(2) and Rule 23(b)(3). Mot. at i, 14–15. Specifically, Bruton moves to certify a class seeking restitution and damages under Rule 23(b)(3), and to certify an injunctive relief class under Rule 23(b)(2). Id. at 14–15.

The Court denies certification of the Rule 23(b)(2) class because Bruton lacks standing to pursue injunctive relief. The Court also denies certification of the Rule 23(b)(3) class because Bruton's damages theory fails to satisfy Rule 23(b)(3)'s predominance requirement. Because the injunctive relief class fails for lack of standing, and because the damages class fails to satisfy Rule 23(b)(3), the Court does not reach whether the proposed classes comply with Rule 23(a).

### A. Standing

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). Not only must at least one named plaintiff satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that [s]he has standing for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). In line with the Ninth Circuit's decision that Bruton has potentially viable UCL and unjust enrichment/quasi-contract claims, the Court finds that Bruton has standing to seek damages. Bruton, 703 Fed.Appx. at 470–72; see ECF No. 83 (order denying Gerber's motion to dismiss on standing grounds). The subsequent analysis instead centers on whether Bruton has standing to seek injunctive relief, and by extension whether Bruton can certify a Rule 23(b)(2) injunctive class.

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 6 of 12 PageID #: 7509

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

A [Rule 23(b)(2)](#) class can only be certified if the named plaintiff shows that she herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers–Durgin v. de la Vina,* 199 F.3d 1037, 1044–45 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). To establish standing for prospective injunctive relief, Bruton must demonstrate that "[s]he has suffered or is threatened with a 'concrete and particularized' legal harm ... coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.' " *Bates,* 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief ... [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future." (internal quotation marks and citation omitted)). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates,* 511 F.3d at 985 (citation omitted). The alleged threat cannot be "conjectural" or "hypothetical." *Lyons,* 461 U.S. at 101–02. Thus, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974).

**\*6** The gravamen of Gerber's argument is that Bruton lacks the real and immediate threat of repeated injury necessary for Bruton to have standing to seek injunctive relief because the harm Bruton seeks to enjoin—Gerber's mislabeling of its baby food—no longer exists. Mot. at 14–15 ("Plaintiff seeks an injunction to stop Defendant from continuing to misbrand and sell its products in the referenced unlawful and misbranded manner."). Gerber ceased using the challenged label statements on the eight products Bruton bought years ago. ECF No. 144 at 4 ("As a result of the 2012 packaging re-design, labels on eleven of the fifteen Products no longer contain any of the Statements."). Moreover, Gerber ceased using the challenged label statements entirely on all remaining products in the class definition around the same time. Gerber Reply at 3; *see* ECF No. 117 (chart noting that labeling of all challenged products has changed, or the product has been discontinued). Thus, Gerber argues that Bruton lacks standing to seek injunctive relief, which precludes certification of a Rule 23(b)(2) class.

Bruton replies that even if Gerber has stopped mislabeling its baby food, she still has standing to seek injunctive relief in light of *Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103 (9th Cir. 2017). Davidson was a putative lead plaintiff who purchased pre-moistened wipes that were marketed and sold by Kimberly-Clark as "flushable." *Id.* at 1107. After discovering the wipes were not flushable, Davidson brought a putative class action against Kimberly-Clark alleging violations of the CLRA, FAL, and UCL. *Id.* at 1107–08. The district court found Davidson lacked standing to seek injunctive relief because Davidson, having learned Kimberly-Clark's wipes were not flushable, was unlikely to purchase the wipes in future. *Id.* at 1109. The Ninth Circuit reversed, holding "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 1115 (quoting *Summers,* 555 U.S. at 493). That threat of future harm might be that a consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or the possibility that a consumer "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.*

*Davidson* does not give Bruton standing because Gerber, unlike Kimberly-Clark, has stopped making the misleading statements. The Ninth Circuit found that Davidson faced an actual or imminent threat of future harm (and thus had standing to seek injunctive relief) because Kimberly-Clark continued to use the misleading "flushable" description. *See id.* at 1116 ("Davidson's allegation that she has 'no way of determining whether the representation 'flushable' is in fact true' ... establish[es] Article III standing to assert a claim for injunctive relief."). Indeed, both scenarios that the Ninth Circuit indicated might confer standing presumed that the misleading advertising or labeling was ongoing. Davidson could only be "unable to rely on the [wipes'] advertising or labeling in future" if the wipes' advertising or labeling was actually misleading, and Davidson could only

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 7 of 12 PageID #: 7510

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

buy the wipes based on a "reasonabl[e], but incorrect[ ], assum[ption] that the product was improved" if the wipes continued to advertise themselves as "flushable." *Id.* at 1115. Consequently, unlike Davidson, Bruton does not face an actual or imminent threat of future harm because the source of potential harm, namely Gerber's mislabeling, has ceased. Put otherwise, Bruton *can* rely on Gerber's baby food advertising and labeling because it is no longer inaccurate, and Bruton *cannot* buy Gerber baby food based on a reasonable but mistaken assumption that Gerber's baby food is, for instance, "As Healthy As Fresh" or "Supports Healthy Growth & Development" because Gerber no longer claims its baby food is either of those things.

**\*7** Furthermore, the policy concerns that animated *Davidson* are absent in this suit. In past, courts have found that consumers who discovered that they had purchased a product based on misleading advertising lacked standing to pursue an injunction preventing the misleading advertising. *Id.* at 1113–15. The courts' rationale has been that a consumer is unlikely to be fooled into buying the product again, and thus lacks the requisite threat of future harm. *See id. Davidson* was concerned that this risked gutting consumer protection laws like the UCL because such laws rely on injunctive relief to protect consumers from unfair business practices. *Id.* at 1115–16. However, that concern does not apply where, as here, the business has ceased the offending practice on its own and thus there is nothing left to enjoin.

More broadly, the Court notes that Bruton, like other plaintiffs dismissed for lack of standing to seek injunctive relief, can sue a defendant who recommences the allegedly harmful conduct. Moreover, if Gerber recommenced the objectionable conduct, and stopped again to defeat Plaintiff's standing, such conduct would fall squarely within the established exception to mootness for disputes that are " 'capable of repetition, yet evading review.' " *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Under this doctrine, cases that would otherwise be moot upon a defendant's cessation of the challenged conduct remain live "where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.' " *Id.* (quoting *Spencer*, 523 U.S. at 17) (alterations in original). Consequently, if a defendant in a labeling or advertising case like this one begins using the challenged statements after a plaintiff's request for injunctive relief is dismissed on standing grounds, a plaintiff will be able to bring a second suit that will very likely avoid a standing dismissal even if the defendant ceases the challenged conduct.

The bottom line is that nothing in *Davidson* suggests the Ninth Circuit created a freestanding right to seek injunctive relief based on conduct that has ended. *See, e.g., Tyler Barnett PR, LLC v. Facebook Inc.*, 2017 WL 6449821, at \*3 (N.D. Cal. Dec. 18, 2017) (discussing *Davidson* and finding plaintiffs lacked standing to seek injunctive relief because Facebook had already corrected the two analytics alleged to have caused plaintiffs' injury); *but see Martin v. Tradewinds Beverage Co.*, 2018 WL 313123, at \*3 (C.D. Cal. Jan. 4, 2018) (brief discussion concluding *Davidson* permits injunctions where challenged label is no longer used). The Court therefore concludes Bruton lacks standing to pursue injunctive relief because the conduct that Bruton would enjoin, Gerber's mislabeling, has ended. In turn, because Bruton lacks standing to seek injunctive relief, the Court DENIES certification of a Rule 23(b)(2) class. The Court now turns to Bruton's request to certify a Rule 23(b)(3) damages class.

### B. Rule 23(b)(3)

For a class action to be certified under Rule 23(b)(3), the class representative must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that Bruton fails to satisfy the predominance requirement.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted).

**\*8** To satisfy the Rule 23(b)(3) predominance requirement, Bruton must present a damages model that is

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 8 of 12 PageID #: 7511

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

"consistent with [her] liability case." *Comcast*, 569 U.S. at 35 (internal quotation marks omitted). More specifically, Bruton's "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [Gerber's conduct]." *Id.* At this stage, however, "[c]alculations need not be exact." *Id.*

At the outset, the Court notes that Bruton's November 15, 2017 supplemental reply brief requests to supplement Bruton's previous class certification briefing by submitting further argument on the applicability of nonrestitutionary disgorgement. Bruton did not raise this issue in her November 1, 2017 initial supplemental brief following remand from the Ninth Circuit, despite the Court's instruction that briefing should "discuss[ ] the impact of the impact of any intervening Ninth Circuit case law." ECF No. 175. A party cannot raise an issue for the first time in its reply brief. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."). The Court therefore DENIES Bruton's request to file additional briefing on this newly raised issue.

The Court now turns to restitutionary damages, the type of damages that Bruton's model seeks to prove. Restitutionary damages, a remedy whose purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). The UCL, FAL, and CLRA authorize trial courts to grant restitution to private litigants asserting claims under those statutes. *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006) ("The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants asserting claims under those statutes."). The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received. *See id.* at 700 (rejecting restitutionary award for products "Made in U.S.A." where expert "did not attempt to quantify either the dollar value of the consumer impact or the advantage realized by [the defendant]"). This calculation contemplates the production of evidence that attaches a dollar value to the "consumer impact" caused by the unlawful business practices. *Id.* The Ninth Circuit has affirmed this Court's holding that restitution is determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices. *Brazil v. Dole Packaged Foods, LLC*, 660 Fed.Appx. 531, 534 (9th Cir. 2016) (*Brazil III*), *aff'g* 2014 WL 5794873 (N.D. Cal. 2014) (*Brazil II*) ("The district court did not err in its class certification decisions. The district court correctly limited damages to the difference between the prices customers paid and the value of the fruit they bought—in other words, the 'price premium' attributable to Dole's 'All Natural Fruit' labels."); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *8 (N.D. Cal. 2014) (*Werdebaugh I*) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received.").

*9 With respect to the damages class, Bruton's damages expert, Dr. Oral Capps, proposes three models for measuring the price premium attributable to Gerber's use of the misleading labels: (1) a Full Refund Model, (2) a Price Premium Model, and (3) a Regression Model. ECF No. 82-9 ("Capps Decl."). Dr. Capps' declaration in support of the instant motion for class certification is materially indistinguishable from the declarations that Dr. Capps submitted in support of the motions for class certification in *Brazil* and *Werdebaugh*. Compare ECF No. 82-9 *with* ECF Nos. 101-9 and 101-10 in *Brazil*, 12-CV-01831-LHK, *and* ECF No. 77-4 in *Werdebaugh*, 12-CV-02425-LHK; *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *15 (N.D. Cal. 2014) (*Brazil I*) ("Brazil's damages expert, Dr. Oral Capps, presents three damages models: (1) a Full Refund Model, (2) a Price Premium Model, and (3) a Regression Model.").

In *Brazil* and *Werdebaugh* the Court rejected Dr. Capps' proposed Full Refund Model and proposed Price Premium Model, but initially granted class certification based on Dr. Capps' proposed Regression Model. However, the Court decertified the classes because the actual damages model Dr. Capps implemented instead of the proposed Regression Model failed to satisfy Rule 23(b)(3)'s predominance requirement. Although the Ninth Circuit did not review this Court's decertification order in *Werdebaugh*, the Ninth Circuit affirmed this Court's closely analogous decertification order in *Brazil*. *Brazil III*, 660 Fed.Appx. 531. The Court therefore refers to this Court's analysis in those cases. The Court analyzes each of Dr. Capps' proposed models below.

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 9 of 12 PageID #: 7512

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

This Court rejects Dr. Capps' proposed Full Refund Model for the same reasons as in *Brazil* and *Werdebaugh*. Specifically, Dr. Capp's proposed Full Refund Model proposes refunding the entire purchase price of the challenged product to consumers. Capps Decl. ¶¶ 10–12. As in *Brazil*, the Court rejects this model because it assumes consumers received no benefit from purchasing the products, and "[t]his cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins, and minerals." *Brazil I*, 2014 WL 2466559, at *15; *see* *Brazil III*, 660 Fed.Appx. at 534 (affirming this Court's decision to limit damages "to the difference between the prices customers paid and the value of the fruit they bought").

Similarly, Dr. Capps' proposed Price Premium Model proposes comparing the price of the identified Gerber products to the price of allegedly comparable products (*e.g.* Beech-Nut baby food) that lack the challenged statements, and then calculating the entire price difference as restitution for Gerber's misrepresentation. Capps Decl. ¶ 14. As in *Brazil*, the Court rejects this model because "Dr. Capps has no way of linking the price difference, if any, to the allegedly unlawful or deceptive label statements or controlling for other reasons why allegedly comparable products may have different prices." *Brazil I*, 2014 WL 2466559, at *16. Put otherwise, the Price Premium Model presumes that the entire price difference between Gerber baby food and a competitor such as Beech Nut baby food is attributable to Gerber's misleading statements, when any number of factors—such as brand recognition or loyalty, ingredients, and product quality—might explain all or part of the difference. *Id.*; *see also* *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. 2014) ("[T]he Price Premium model simply calculates what the price difference [is]. This damages 'model' does not comport with *Comcast*'s requirement that class-wide damages be tied to a legal theory, nor can this court conduct the required 'rigorous analysis' where there is nothing of substance to analyze.").

Dr. Capps' final proposed damages model is an "econometric or regression analysis," ("the Regression Model"). Capps Decl. ¶ 16. "Regression analysis involves the relationship between a variable to be explained, known as the 'dependent variable,' such as the quantity demanded of a particular good or the price of a particular good, and additional variables that are thought to produce or to be associated with the dependent variable, known as the 'explanatory' or 'independent' variables.... Regression analysis may be useful in determining whether a particular effect is present as well as in measuring the magnitude of a particular effect." *Id.* ¶ 17. Dr. Capps explains: "It is well documented in the economics literature that commonly recognized factors are associated with sales, the dependent variable in the regression analyses, namely price of the product, prices of competing and complementary products, income, advertising, seasonality, and regional differences.... By controlling for these factors and considering differences in sales of Gerber baby food products before and after the labeling of the language 'Excellent Source of', 'Good Source of', containing 'No Added Sugar' or containing 'No Added Refined Sugar', a quantitative measure of damages in this litigation may be provided." *Id.* ¶ 18. Put otherwise, Dr. Capps proposes to determine damages by comparing the sales of the products at issue before and after Gerber used the disputed labels and by using regression analysis to control for other variables that might otherwise explain changes in Gerber's sales.

*10 In *Brazil* and *Werdebaugh*, the Court initially granted the plaintiffs' motions for class certification in reliance on Dr. Capps' proposed Regression Model. The Court found the proposed Regression Model complied with *Comcast*'s holding that to satisfy Rule 23(b)(3)'s predominance requirement, damages models must measure only those damages attributable to the defendant's conduct. *Brazil I*, 2014 WL 2466559, at *17. Specifically, the Court found that the proposed Regression Model satisfied *Comcast* because it could "isolate[ ] the effect of the alleged misrepresentation by controlling for all other factors that may affect" the products' price and sales. *Id.* Once the proposed Regression Model had controlled for other factors, it could "compare[ ] data on identical Dole products: the product before the label statement was introduced, and the same product after its label included the alleged misrepresentation." *Id.* That distinguished the proposed Regression Model from the proposed Price Premium Model the Court had rejected because the proposed Regression Model's direct comparison of the same product with and without the challenged labeling "ensures that factors like brand loyalty and product quality remain constant." *Id.*; *see* *Werdebaugh I*, 2014 WL 2191901, at *24–26 (reaching same conclusion after similar analysis).

However, the Court ultimately decertified the classes in *Brazil* and *Werdebaugh*. *Brazil II*, 2014 WL 5794873; *Werdebaugh II*, 2014 WL 7148923. In both cases, after

Case 2:14-cv-04090-JBW-RML Document 306-3 Filed 08/14/19 Page 10 of 12 PageID #: 7513

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

the Court granted certification in reliance on the proposed Regression Model outlined above, Dr. Capps concluded that the Regression Model was unworkable because the challenged labels remained on the products throughout the class period, thereby preventing a direct comparison of the same products with and without the challenged labeling. *Brazil II*, 2014 WL 5794873, at *6; *Werdebaugh II*, 2014 WL 7148923, at *9. Instead, Dr. Capps applied a different variant of regression analysis called "hedonic price analysis" or "hedonic regression." *Id.* The Court found that this analysis failed to satisfy *Comcast* because Dr. Capps did not show how the model "controls for other variables affecting price." *Brazil II*, 2014 WL 5794873, at *11; *Werdebaugh II*, 2014 WL 7148923, at *12. The Ninth Circuit affirmed in *Brazil*, holding that "[b]ecause Brazil did not explain how ... [damages] could be calculated with proof common to the class, the district court did not abuse its discretion by granting Dole's motion to decertify." *Brazil III*, 660 Fed.Appx. at 535.

With this backdrop in mind, the Court finds that the Regression Model Dr. Capps proposed in the instant case does not satisfy *Comcast* because (1) the proposed Regression Model lacks a reliable means for comparing the products with and without the challenged label statements and (2) Bruton does not explain how the proposed Regression Model will account for independent variables that might affect the products' price or sales, such as advertising, brand recognition or loyalty, the prices of competing products, regional differences, consumers' income, and seasonality.

At the outset, the Court notes that this case is far more complex than *Brazil* and *Werdebaugh*, where the Court initially approved the proposed Regression Model. The plaintiff in *Brazil* sought class certification based on ten products that all included the allegedly inaccurate label statement "All Natural Fruit." *Brazil I*, 2014 WL 2466559, at *2. The plaintiff in *Werdebaugh* sought class certification based on nineteen products whose labels contained either the statement "evaporated cane juice" when the ingredient was actually sugar, or included the statement "All Natural" when the product contained synthetic ingredients, or both. *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *1 (N.D. Cal. 2014) (*Werdebaugh II*). Those facts pale in comparison to the number and variety of labels and products at issue in this case: Bruton moves for class certification based on 69 products, and at least five distinct statements spread across 344 labels. Class Cert. Order at 3; ECF Nos. 97–100 (a total of 344 challenged labels). Moreover, of the 69 products at issue, "66 had multiple label iterations with material variation—some labels contained the challenged statements, some did not, and some had only one or different statements in different locations than on other variations of the same product label." Gerber Br. at 1–2. Though not dispositive in its own right, this increased complexity makes it more difficult for the proposed Regression Model to control for all factors and distill the different label variations into the simple before and after comparison the proposed Regression Model seeks to achieve.

*11 A more important flaw is that the proposed Regression Model presumes Bruton will be able to determine precisely when consumers were buying Gerber products *with* the challenged label statements, and when consumers were buying Gerber products *without* the challenged label statements. The Court has previously explained why this assumption is mistaken.

> Gerber reports (without contradiction from Bruton) that based on differences in printing times, shipping times, and inventory needs at retail stores, a new label produced by Gerber may appear for sale on a store shelf anywhere between three and thirteen months after the new label is approved. [ECF No. 90,] Levitan Decl. ¶¶ 14–15. Based on this time gap, Gerber contends it will not be able to identify what label was on a consumer's product even if the consumer remembers the exact date on which she purchased the product.

Class Cert. Order at 9–10. Thus, there is no way to determine what label was on the product a consumer purchased in the retail transactions that are the foundation of the proposed Regression Model's analysis. This problem is not hypothetical. Gerber also submitted evidence (which Bruton again did not contest) that at certain times in the class period, "there were two different labels for sale in one store—such that on a given day one consumer may have purchased a product with a challenged label statement while another purchaser of the same product did not." *Id.* at 10. Dr. Carol A.

Case 2:14-cv-04090-JBW-RML   Document 306-3   Filed 08/14/19   Page 11 of 12 PageID #: 7514

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

Scott, a marketing analyst, visited a San Mateo grocery store in February 2014. ECF No. 87-6 ¶ 35 ("Scott Decl."). As the Court recounted:

> Dr. Scott observed five different versions of Gerber 2nd Foods for sale with two different labels, one with challenged label statements and one without. [Scott. Decl.] ¶ 3 8, Ex. 9. Dr. Scott submitted photos showing Gerber 2nd Foods Peaches, Apple Strawberry Banana, Sweet Potatoes, and Green Beans for sale with multiple labels. Scott Decl. Ex. 9. One version of each label contains the statement "Supports Healthy Growth and Development," while the other version contains no challenged statements. *Id.*

Class Cert. Order at 10. Given the absence of a reliable means to compare products with and without the challenged labeling, the Court finds that the proposed Regression Model fails to satisfy *Comcast*.

Dr. Capps' declaration has also failed to specify, even in broad terms, how the proposed Regression Model will control for other factors that might distort the proposed Regression Model's ability to isolate the damages attributable to the mislabeling of the products. Dr. Capps' declaration identifies potentially problematic variables such as "price of the product, prices of competing and complementary products, income, advertising, seasonality, and regional differences." Capps Decl. ¶ 18; *id.* ¶ 19 (stating necessary information includes "prices of competing and complementary products; disposable personal income of consumers; and population."). Yet after providing a partial list of the variables that might distort the proposed Regression Model's analysis, Dr. Capps merely states that subsequent analysis will be "controlling for these factors" and declines to elaborate further. *Id.* ¶ 18; *see id.* ¶ 21 ("The subsequent calculation of damages rests on the estimated coefficient associated with this dummy variable, controlling for other factors that may also affect sales.").

 **\*12**  The Court grants that absolute precision is not required at the class certification stage. Plaintiffs are required to "present a likely method for determining class damages"

and "it is not necessary to show that [plaintiff's] method will work with certainty at this time." *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted). However, the Court is bound by the *Comcast* holding that the "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [Gerber's conduct]." *Comcast*, 569 U.S. at 35. Here, Dr. Capps has identified a number of variables that might prevent the proposed Regression Model from complying with *Comcast*'s requirements, but has failed to provide a meaningful explanation as to how the variables will be addressed. That does not satisfy *Comcast*—real explanation is necessary. See *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at \*20 (N.D. Cal. 2014) (deeming proposed damages model inadequate because "the regression analysis [Dr. Capps] proposes is vague and abstract ... Capps does not provide a clearly defined list of variables, he has not determined whether the data related to any or all of his proposed control variables exists, and he has not determined, or shown how he would determine, which competing and complementary products he would use."); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25–26 (D.D.C. 2012) (finding Dr. Capps' methodology failed to satisfy predominance requirement because Dr. Capps had "not yet performed a single regression" making his methodology "tentative at best" and "too vague for the Court to even evaluate.").

Moreover, although the "hedonic price analysis" that Dr. Capps ultimately employed in *Brazil* and *Werdebaugh* differs from the proposed Regression Model here, the Court notes that in both cases Dr. Capps failed to adequately control for variables, in particular advertising, that affect price or sales. *Brazil II*, 2014 WL 5794873, at \*11; *Werdebaugh II*, 2014 WL 7148923, at \*12. Given this background, and given that Dr. Capps' declaration acknowledges that other variables (including advertising) will need to be controlled for in the proposed Regression Model, the Court is concerned that Dr. Capps' analysis will again fail to adequately control for these important variables. Capps Decl. ¶¶ 18–19, 21. This further reinforces the Court's conclusion that Dr. Capps has failed to provide enough explanation for how the variables will be addressed, and thus has failed to satisfy *Comcast*.

In sum, the Court finds that the damages models Bruton presents fail to satisfy *Comcast*. In particular, the Court finds

Case 2:14-cv-04090-JBW-RML   Document 306-3   Filed 08/14/19   Page 12 of 12 PageID #: 7515

Bruton v. Gerber Products Company, Not Reported in Fed. Supp. (2018)

that the proposed Regression Model fails to satisfy *Comcast* because it lacks a reliable means to compare the products at issue with and without the challenged label statements, and because Bruton does not explain how the proposed Regression Model will control for variables that might distort the proposed Regression Model's analysis.

## IV. DISCUSSION

For the foregoing reasons, the Court hereby DENIES Bruton's Motion for Class Certification.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1009257

Footnotes

1   Bruton filed her Motion for Class Certification on January 10, 2014, ECF No. 82, several days before this Court issued its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, ("Second MTD Order") ECF No. 83. Because the Second MTD Order dismissed certain products from the case, Bruton's original proposed class definition referred to an overinclusive set of products. *See* Mot. at i. Accordingly, the Court directed the parties to file an updated list of the products still at issue. ECF No. 116. In response, the parties filed the Chart, ECF No. 117, upon which the Court now relies as the determinative list of the products at issue in this case.

2   On May 9, 2014, the parties stipulated to a "list of products still at issue in this case." ECF No. 117 at 1. The list included the eight Purchased Products enumerated above. *See* Chart at 1–3.

3   The Ninth Circuit's decision withdrew and replaced a previous memorandum disposition and partial dissent. *Bruton v. Gerber Prod. Co.*, 2017 WL 1396221 (9th Cir. Apr. 19, 2017), *opinion withdrawn and superseded*, 703 Fed.Appx. 468 (9th Cir. July 17, 2017).

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.