## SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement") is entered into between the Plaintiff and the Settlement Class, as defined below, on the one hand, and Defendant The Procter & Gamble Company ("P&G") on the other, as defined herein.

## I. RECITALS

1.1     On May 23, 2014, Anthony Belfiore filed a class action complaint (the "Complaint") against P&G in the Supreme Court of the State of New York, County of Nassau, Case No. 602364//2014 (the "Action"). On July 1, 2014, P&G removed the Action to the United States District Court, Eastern District of New York, where it was assigned Case No. 2:14-cv-04090-JBW-RML. The Complaint discusses that P&G manufactures and markets pre-moistened personal hygiene wipes under the name Charmin Freshmates Flushable Wipes. Although the packaging on the wipes states that the wipes are "flushable," "septic safe," and "safe for sewer and septic systems," the Complaint alleges that the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps. Belfiore alleges in the Complaint that P&G is liable for violation of New York General Business Law § 349. P&G denies all of Belfiore's allegations. P&G, to avoid the costs, disruption, and distraction of further litigation, and without admitting the truth of any allegations made in or related to the Action, or any liability with respect thereto, has concluded that it is desirable that the claims against it be settled and dismissed on the terms reflected in this Agreement.

1.2     On March 27, 2017, the Court in the Action granted Belfiore's motion for class certification, certifying the following class: "All persons and entities who purchased

Charmin Freshmates in the State of New York between May 23, 2011 and March 1, 2017" (the "Class"). P&G filed an interlocutory appeal (the "Appeal"), and on May 14, 2019, the Court of Appeals for the Second Circuit remanded the Action to allow the parties to submit additional evidence sufficient to determine whether Plaintiff satisfied Rule 23(b)(3)'s predominance requirement and whether to decertify the damages classes or maintain the current certification orders. Following an evidentiary hearing, on October 25, 2019, the district court renewed its prior certification order.

   1.3  Notice of the pendency of the Action has not yet been provided to members of the Class.

   1.4  In connection with this settlement, Plaintiff seeks to represent a settlement class consisting of all Persons who purchased the Product in the State of New York between May 23, 2011 and the date of Preliminary Approval, excluding purchases made for purposes of resale (the "Settlement Class").

   1.5  P&G denies all of Plaintiff's allegations and charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. P&G also denies that any person has suffered damage or harm by reason of any alleged conduct, statement, act or omission of P&G. P&G further denies that the Action meets the requisites for certification as a class action under Rule 23 of the Federal Rules of Civil Procedure, except for purposes of settlement, or that the evidence is sufficient to support a finding of liability on the claim in the Action.

   1.6  Before filing and while prosecuting the Action, Wolf Popper LLP ("Plaintiff's Counsel") conducted a thorough examination and investigation of the facts and law. In the Action, Plaintiff's Counsel engaged in fact discovery, both formal and informal, including

- 2 -

reviewing thousands of pages of documents produced by P&G, deposing four 30(b)(6) witnesses, defending five fact and expert witnesses at their depositions, subpoenaing third parties, and presenting three witnesses during evidentiary hearings before the Court.

1.7     Plaintiff's Counsel has analyzed and evaluated the merits of Plaintiff's contentions and this Agreement as it affects members of the Settlement Class. Among the risks of continued litigation are the possibilities that the Court of Appeals for the Second Circuit will reverse the district court's class certification order; that summary judgment will be entered against Plaintiff; and/or that Plaintiff will be unable to prove liability, damages or entitlement to injunctive relief at trial on a classwide or individual basis.

1.8     Plaintiff and Plaintiff's Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Action and the prompt provision of effective relief to the Settlement Class are in the best interests of the members of the Settlement Class.

1.9     P&G agrees that the settlement is fair and reasonable in light of the merits and risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, P&G considers it desirable to resolve the Action on the terms stated herein, in order to avoid further burden, expense, inconvenience, and interference with its ongoing business operations. Therefore, P&G has determined that settlement of the Action on the terms set forth herein is in its best interests.

1.10    This Agreement is contingent upon the issuance by the Court of both Preliminary Approval and Final Approval. Should the Court not issue Preliminary Approval and Final Approval, P&G does not waive, and instead expressly reserves, its rights to defend against

- 3 -

the claims in the Action, and Plaintiff expressly reserves his rights to prosecute the claims in the Action.

1.11    This Agreement reflects a compromise between Plaintiff and P&G (each a "Party" and collectively, the "Parties"), and shall in no event be construed as or be deemed an admission or concession by any Party of the truth, or lack thereof, of any allegation or the validity, or lack thereof, of any purported claim or defense asserted in any of the pleadings in the Action, or of any fault on the part of P&G, and all such allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto.

1.12    The Parties agree that the Action between Plaintiff and the Settlement Class, on the one hand, and P&G, on the other hand, shall be fully and finally compromised, settled and released on the terms and conditions set forth in this Agreement.

1.13    NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims described below, the Parties agree to this Agreement, subject to Court approval, under the following terms and conditions:

## II.    DEFINITIONS

Capitalized terms in this Agreement shall be defined as follows:

2.1    "Agreement" means this Settlement Agreement, including all exhibits hereto.

2.2    "Certified Class" means all persons and entities who purchased Charmin Freshmates in the State of New York between May 23, 2011 and March 1, 2017.

2.3    "Claim Administrator" means Heffler Claims Group or another third party administrator agreed to by the Parties and approved by the Court.

2.4    "Claim Filing Deadline" means thirty (30) days after Final Approval.

- 4 -

2.5 "Claim Form" means the form Settlement Class Members must submit to obtain the Settlement Benefits available through this settlement.

2.6 "Claim Period" means the period beginning on the Notice Date and continuing until the Claim Filing Deadline.

2.7 "Class Representative Payment" means any award sought by application to, and approval by, the Court that is payable to the Plaintiff to compensate him for efforts in bringing the Action and/or achieving the benefits of this settlement on behalf of the Settlement Class, as further discussed in section 7.2.

2.8 "Court" means the United States District Court for the Eastern District of New York.

2.9 "Defendant" means P&G.

2.10 "Effective Date" means the effective date of the settlement, as defined in Section 8.11.

2.11 "Excluded Persons" are (1) Honorable Pamela K. Chen, Honorable Jack B. Weinstein, Honorable Robert M. Levy and Honorable Steven M. Gold, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (6) any persons who timely opt out of the Settlement Class; and (7) any person or entity that purchased the Product for resale.

2.12 "Final Approval" means issuance of judgment, substantially in the form of Exhibit D, granting final approval of this Agreement as binding upon the Parties.

2.13 "GD4" means the Fourth Edition of the INDA Guidelines.

2.14 "Household" means all Persons residing at the same physical address.

- 5 -

2.15    "Action" means the action currently pending in the United States District Court, Eastern District of New York, styled as *Belfiore v. Procter & Gamble Company*, Case No. 2:14-cv-04090-JBW-RML.

2.16    "INDA Guidelines" means the Guidelines for Assessing the Flushability of Disposable Nonwoven Products published by the Association of the Nonwoven Fabrics Industry.

2.17    "Long Form Notice" means the Court-approved form of notice to Settlement Class Members in substantially the same form as Exhibit B1.

2.18    "Notice Date" means a date that is no later than fourteen (14) days after Preliminary Approval.

2.19    "Objection Deadline" means 28 days prior to the initially scheduled hearing on Final Approval.

2.20    "Online Advertisement Notices" means the Court-approved forms of notice to Settlement Class Members in substantially the same form as Exhibit B3.

2.21    "Opt Out Deadline" means 28 days prior to the initially scheduled hearing date on Final Approval.

2.22    "P&G's Counsel" means Kramer Levin Naftalis & Frankel LLP.

2.23    "Parties" means Plaintiff and P&G, collectively.

2.24    "Party" means any one of Plaintiff or P&G.

2.25    "Person(s)" means, without limitation, any natural person, group of natural persons, firm, business, corporation, partnership, government agency or board, association, proprietorship, organization, or any other legal or business entity.

2.26    "Plaintiff" means Anthony Belfiore.

- 6 -

2.27    "Plaintiff's Counsel," "Class Counsel," or "Settlement Class Counsel" mean the law firm of Wolf Popper LLP.

2.28    "Preliminary Approval" means issuance of an order, substantially in the form of Exhibit C, granting preliminary approval of the settlement described in this Agreement.

2.29    "Product" means Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label.

2.30    "Proof of Purchase" means (i) either the actual label or bar code portion of the package of the Product (not a photocopy or digital image file); or (ii) an itemized sales receipt originally generated by a retailer seller, or a photocopy or digital image file thereof, showing the date and place of purchase, name of the product purchased, and the amount paid. The Product package and/or originally-generated receipt must be provided to and validated by the Claim Administrator to qualify as Proof of Purchase.

2.31    "Released Claims" means the claims released as set forth in Sections 9.1 and 9.2 of this Agreement.

2.32    "Released Parties" means P&G and each and all of its predecessors in interest, former, present and future direct and indirect subsidiaries, divisions, parents, successors, and affiliated companies and each and all of its present and former officers, directors, shareholders, successors, partners, employees, agents, representatives, suppliers, resellers, retailers, wholesalers, distributors, customers, insurers, assigns, servants, attorneys, assignees, heirs, and executors, whether specifically named and whether or not participating in the settlement by payment or otherwise.

- 7 -

2.33    "Settlement Benefit" means the benefits provided to Settlement Class Members as set forth in Section 4.1 of this Agreement.

2.34    "Settlement Class Period" means May 23, 2011 to the date of Preliminary Approval.

2.35    "Settlement Class" or "Settlement Class Members" means all Persons who purchased the Product in the State of New York between May 23, 2011 and the date of Preliminary Approval, excluding purchases made for purposes of resale.

2.36    "Settlement Website" means an internet website created and maintained by the Claim Administrator. The URL of the Settlement Website shall be "www.BelfioreWipeSettlement.com".

2.37    "Valid Claim" means a claim submitted in compliance with Part IV of this Agreement, as further described in that Part.

## III.    CHANGED PRACTICES AND INJUNCTIVE RELIEF

3.1    P&G has ceased the manufacture of the Product in the formulation(s) that it used at the time the Action was commenced. Partly as a result of the Action, P&G has agreed that versions of the Product manufactured after January 2016 do not and will not contain synthetic bicomponent (polyester/polyolefin) fibers.

3.2    In a 49-state class settlement (all states excluding New York) approved in *Pettit v. Procter & Gamble Company*, 15-cv-2150 (RGS) (N.D. Cal.) ("*Pettit*") involving a similar challenge to the Product, P&G agreed to the entry of a court order requiring, until two years after the effective date of the *Pettit* settlement, the below changed practices and injunctive relief. P&G agreed to do so and to continue to do so partly as a result of the Action. P&G agrees to extend this relief until two years after the Effective Date.

- 8 -

(a)     Subject to paragraph 3.6, Product marketed by P&G does not contain bicomponent (polyester/polyolefin) fibers;

(b)     P&G has modified the packaging of the Product to include a statement that "Your satisfaction is guaranteed. For details of our refund program go to our website at https://www.charmin.com/en-us/about-us/flushable-wipes-guarantee." P&G provides details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the Product;

(c)     P&G has modified the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems";

(d)     The Product will comply with current and future versions of the INDA Guidelines, including the slosh box test, provided P&G is a member of INDA and the organization maintains the same purpose and mission, with a similar membership composition, as of the date of the Agreement;

(e)     Subject to paragraph 3.5, the Product marketed by P&G will comply with the May 2018 more stringent INDA GD4 test protocols, which (1) decrease the slosh box test duration from 180 minutes to 60 minutes, (2) increase the slosh box text pass-through percentage requirement from 25% to 60%, and (3) decrease the municipal pump test average power increase over baseline from 15% to 5%.

3.3     In addition, P&G agrees to the entry by the Court of an order requiring, until two years after the Effective Date, the following:

(a)     On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to exclude the statement "septic safe";

(b)     On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to exclude the statement "safe for sewer and septic systems."

3.4     P&G will provide Plaintiff's Counsel with a draft version of the new Product packaging containing the disclosures required by section 3.3(a) and (b) prior to the hearing on Final Approval.

3.5     For clarity, to implement the labeling changes required by sections 3.3(a) and (b), P&G's Product will contain those labeling changes on or before 90 days after the Effective Date.

3.6     For avoidance of doubt, the distribution or sales by P&G of residual Product manufactured prior to the implementation of the labeling changes described in sections 3.2(b) and (c) and 3.3(a) and (b), or the distribution or sales by third parties of residual Product manufactured prior to the implementation of the labeling changes described in sections 3.2(b) and (c) and 3.3(a) and (b), shall not constitute a violation of this Agreement or the injunction issued pursuant hereto.

3.7     Neither this Agreement nor the injunction issued pursuant hereto shall impose any limitations on P&G's future marketing or sale of the Product except as expressly set forth in sections 3.2 and 3.3. Similarly, neither this Agreement nor the injunction issued pursuant hereto shall impose any limitations on the composition, manufacture, marketing, labeling, advertising, and/or sale of any product or products other than those falling within the definition of "Product" set forth in Part II.

3.8     Nothing in this Part III shall interfere with P&G's obligations to comply with all applicable state and federal laws, including, without limitation, the Federal Trade

- 10 -

Commission Act, or to respond to any enforcement actions issued thereunder by the Federal Trade Commission.

## IV.    MONETARY SETTLEMENT BENEFITS AND CLAIM ADMINISTRATION

4.1      Every Settlement Class Member shall have the right to submit a claim for Settlement Benefits. A claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth herein. Submission of a claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Settlement Class Member, or any other Person except as expressly provided herein.

4.2      At the election of the Settlement Class Member, a Claim Form may be submitted in paper via first class mail or online at the Settlement Website. Claim Forms must be mailed such that they are received by the Claims Administrator (not just postmarked) or submitted online no later than the Claim Filing Deadline. Claim Forms received or submitted online after that date will not be Valid Claims. The Claim Administrator will track Claim Forms with unique security identifiers or control numbers issued to Persons who seek to file a claim. For Claim Forms submitted online, the Settlement Class Member shall have the opportunity to upload Proof of Purchase image files (e.g., jpg, tif, pdf) if submitted pursuant to Section 2.30(ii) above, but Proof of Purchase in the form of actual labels or bar codes portion of the packages of the Product pursuant to Section 2.30(i) must be submitted by mail.

4.3      The Claim Administrator shall be responsible for designing the Claim Form and ensuring it requests sufficient information to determine the validity of submitted claims and to prevent the payment of invalid or fraudulent claims. On the Claim Form, the Settlement Class Member must certify the truth and accuracy of at least the following under the

- 11 -

penalty of perjury, including by signing the Claim Form physically or by e-signature, or the claim will not be considered a Valid Claim by the Claims Administrator:

(a)     The Settlement Class Member's name and physical address;

(b)     That all sections of the Claim form are completed truthfully, accurately, and completely;

(c)     The Settlement Class Member's email address, if the Settlement Class Member elects to provide the information;

(d)     The number of packages of the Product purchased during the Class Period; and

(e)     That the claimed purchases were not made for purposes of resale.

For avoidance of doubt, the Claim Administrator may require Settlement Class Members to provide additional information on the Claim Form to facilitate the identification of Valid Claims, as well as fraudulent or otherwise invalid claims.

4.4     Each Settlement Class Member who submits a Valid Claim without Proof of Purchase shall receive a refund of seventy cents ($0.70) for each Product package purchased in New York during the Class Period, regardless of the price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitations: A maximum of six dollars and thirty cents ($6.30) shall be paid on the combined claims submitted by any Household for claimed purchases that are not corroborated by Proof of Purchase. Each Settlement Class Member who submits a Valid Claim corroborated by Proof of Purchase shall receive a refund of one dollar and twenty cents ($1.20) for the first Product package purchased in New York during the Class Period, and one dollar ($1.00) for any additional Product packages purchased in New York during the Class Period, regardless of the

- 12 -

price the Settlement Class Member paid for the package or the number of wipes contained in each package, subject to the following limitation: A maximum of fifty dollars and twenty cents ($50.20) shall be paid on the combined claims submitted by any Household for claimed purchases that are corroborated by Proof of Purchase. In no event shall (i) the maximum payment to any Household exceed fifty dollars and twenty cents ($50.20), or (ii) a Settlement Class Member receive a payment for a purchase of the Product they did not affirmatively claim on the Claim Form.

4.5     The Claim Administrator shall be responsible for processing Claim Forms and administering the Settlement Website, opt-out process, and Settlement Benefit claims process described herein. The Claim Administrator shall use industry standard efforts to validate claims and supporting documentation. The Claim Administrator shall use adequate and customary procedures and standards to prevent the payment of fraudulent claims and pay only Valid Claims. The Claim Administrator will approve Valid Claims and issue payment based upon the terms and conditions of the Agreement and may reject claims that are invalid or evidence waste, fraud, or abuse. The determination of the validity of all claims shall occur within 60 days of the end of the Claim Period. The Claim Administrator shall approve or deny all claims, and its decision shall be final, binding, and non-appealable by either Party or the Settlement Class Members.

4.6     The Claim Administrator and the Parties shall have the right to audit claims, and the Claim Administrator may request additional information from claimants. If any claim is submitted by a Person with a physical, postal, or IP address outside New York, but who claims to have purchased the Product in New York, the Claim Administrator may, but is not required, to request additional information to validate that claim. The Claim Administrator shall

- 13 -

deny any claim for Products purchased outside New York, subject to the provisions of Section 4.7. Neither Plaintiff nor P&G, nor their respective counsel, shall have any liability whatsoever for any act or omission of the Claim Administrator.

    4.7    As to claims that are denied, within thirty (30) days after the Effective Date, the Claim Administrator shall email all Settlement Class Members whose claims are denied to state the reasons for denial, at the email address (if any) provided by the Settlement Class Member on the Claim Form. If no email address is provided by the Settlement Class Member on the Claim Form, the Claim Administrator shall not have an obligation to provide the Settlement Class Member any notification of the reasons for denial of the claim. Plaintiff or P&G's choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly shall not be construed as a waiver or relinquishment by Plaintiff or P&G as to any of its audit and other rights under the Settlement Agreement. No Person shall have any claim against Plaintiff, P&G, Plaintiff's Counsel, P&G's Counsel, or the Claim Administrator based on any determination of a Valid Claim, distributions or awards made in accordance with this Agreement and the Exhibits hereto.

    4.8    Valid Claims shall be paid by check to the Settlement Class Member and mailed to the address provided on the Claim Form, as updated in the National Change of Address Database. The Claim Administrator shall also have the right (but not the obligation) to allow Settlement Class Members to elect to receive their payments by direct bank deposit or electronic transfer (e.g. PayPal) and if such election is made, shall pay the Valid Claims of such Settlement Class Members through the method so elected. All Valid Claims shall be paid by the Claim Administrator within sixty (60) days after the Effective Date except that, in the event of an

- 14 -

appeal from Final Approval that challenges only the award of attorneys' fees, costs and expenses and/or the Class Representative Payment and does not challenge any other aspect of the settlement, all Valid Claims shall be paid within ninety (90) days after Final Approval, unless otherwise ordered by the Court.

4.9     All settlement checks shall be subject to a one hundred eighty (180) day void period, after which the checks shall no longer be negotiable. If a settlement check is not negotiated within this period, the Settlement Class Member shall not be entitled to any further payment under this Agreement. The amount of any settlement checks that are not negotiated shall revert to P&G.

4.10     No deductions for taxes will be taken from any Settlement Benefit at the time of distribution. Settlement Class Members are responsible for paying all taxes due on such Settlement Benefits. Under no circumstance shall P&G be held liable for any tax payments with respect to the Settlement Benefits, if any. All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued. Neither Plaintiff's Counsel nor P&G's Counsel purport to provide legal advice on tax matters. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any Person or entity for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

4.11     P&G shall bear all fees and expenses incurred by the Claim Administrator as well as the cost of paying Valid Claims.

## V.     NOTICE AND OPT OUTS

5.1     At least ten (10) business days prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice

- 15 -

in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; and a downloadable and online version of the form by which Settlement Class Members may opt out of the Settlement Class. While the Claim Administrator shall have final authority over the design and operation of the Settlement Website, it shall permit Class Counsel and P&G to test the operation of the Settlement Website and shall monitor, and if necessary update and modify, the Settlement Website to ensure that it performs reliably and consistent with the terms of this Agreement, when accessed from all major Internet browsers (desktop and mobile) operating on all major operating systems (including Windows, MacOS, Android, and iOS). The Claim Administrator shall add to the Settlement Website all other material filings by the Parties or the Court regarding the settlement, including Plaintiff's application for attorneys' fees, costs, expenses, and/or Class Representative Payment, the motion for final approval, and any orders with respect to such applications and motions.

5.2     The Settlement Website shall remain accessible until 180 days after all Settlement Benefits are distributed.

5.3     Notice shall be provided according to the Notice Plan attached hereto as Exhibit A, and substantially in the forms attached hereto as Exhibits B1 through B3, except as modified by the Court. The Claim Administrator shall provide a declaration under penalty of perjury to the Court that the notice provides sufficient reach and frequency to alert Settlement Class Members to the pendency of the Action and their rights thereunder.

- 16 -

5.4     The Claim Administrator shall provide notice as required by the Class

Action Fairness Act, 28 U.S.C. § 1715.

5.5     Class Counsel and P&G shall supervise the Claim Administrator in the

performance of the notice functions set forth in this Part V. P&G shall pay all costs of notice as

set forth in this Part V.

5.6     At least fourteen (14) days prior to Final Approval, the Claim

Administrator shall certify to the Court that it has complied with the notice requirements set forth

herein.

## VI.     CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND FILING OF STIPULATION OF DISMISSAL OF THE APPEAL

6.1     Solely for the purpose of effectuating the settlement set forth in this

Agreement and subject to Court approval, the Parties stipulate that (1) a Settlement Class shall be

certified in accordance with the definition of the Settlement Class set forth in this Agreement; (2)

the Plaintiff shall represent the Settlement Class for settlement purposes; (3) Plaintiff's Counsel

shall be appointed as the attorneys for the Settlement Class; and (4) P&G and Plaintiff will

execute and file a Stipulation withdrawing the Appeal in the form annexed as Exhibit E within

three (3) days of Preliminary Approval.

6.2     In the event that this Agreement (including the settlement provided for

herein) is not finally approved, or is terminated or cancelled or fails to become effective for any

reason whatsoever, the Action shall revert to its status as it existed prior to the date of this

Agreement, and the Claim Administrator shall return to P&G any amounts P&G had already

deposited that are not required to pay for notice and administration then-completed. In such

event, neither this Agreement nor any document filed or created in connection with this

settlement may be used as an admission or as evidence for any purpose.

- 17 -

## VII. ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE PAYMENT

7.1    Plaintiff's Counsel may apply to the Court for an award from P&G of their attorneys' fees, costs, and expenses in a total amount not to exceed three million two hundred thousand dollars (\$3,200,000.00).

7.2    The Plaintiff may additionally apply to the Court for a Class Representative Payment as compensation for (a) the time and effort undertaken in and risks of pursuing the Actions including the risk of liability for the Parties' costs of suit, and (b) the general release set forth in Section 9.2. The Class Representative Payment to the Plaintiff shall not exceed \$10,000.

7.3    P&G agrees not to oppose or to submit any evidence or argument challenging or undermining Plaintiff's Counsel's application for attorneys' fees, costs, expenses, or the Class Representative Payment. P&G shall not be in violation of this term if its attorneys provide the Court with evidence, including evidence of their lodestars, that is specifically requested by the Court; however, no Party shall seek such a request. The attorneys' fees, costs, and expenses awarded by the Court as set forth under Section 7.1 shall be the total obligation of P&G to pay attorneys' fees, costs, and expenses of any kind to Plaintiff's Counsel in connection with the Action and this Agreement. Any Class Representative Payment awarded by the Court as set forth in Section 7.2 shall be the total obligation of P&G to pay money to the Plaintiff in connection with the Action and this Agreement, other than amounts due to the Plaintiff for any Valid Claims submitted pursuant to Part IV of this Agreement. Plaintiff's Counsel and the Plaintiff agree that the denial, downward modification or failure to grant the request for attorneys' fees, costs, or expenses, or Class Representative Payment, shall not constitute grounds for modification or termination of the Agreement.

- 18 -

7.4    Within ten (10) days of the Effective Date, P&G shall pay the amount of the awarded attorneys' fees, costs, expenses, and Class Representative Payment to Plaintiff's Counsel, not to exceed the limits set forth in Sections 7.1 and 7.2.

## VIII.  CLASS SETTLEMENT PROCEDURES

8.1    Settlement Approval. As soon as practicable after the execution of this Agreement, Plaintiff's Counsel shall move for a Preliminary Approval order, substantially in the form of Exhibit C, preliminarily approving this Agreement and this settlement as fair, reasonable and adequate; approving Class Notice to the Settlement Class Members as described in Part V above; and setting a hearing to consider Final Approval of the settlement and any objections thereto. P&G shall have no obligation to make separate filings in support of the motion. P&G shall appear at the hearing to confirm its agreement with the terms of the settlement as provided herein.

8.2    Final Approval Order and Judgment. No later than forty-two (42) days prior to the hearing on Final Approval, Plaintiff shall move for entry of an order of Final Approval, substantially in the form of Exhibit D, granting Final Approval of this Settlement and holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this Agreement, ordering the releases as set forth in Part IX, below, and entering judgment in this case. P&G shall have no obligation to make separate filings in support of the motion. P&G shall appear at the hearing to confirm its agreement with the terms of the settlement as provided herein.

8.3    Opt-Outs and Objections. The Long Form Notice shall advise prospective Settlement Class Members of their rights to forego the benefits of this Settlement and pursue an

- 19 -

individual claim; to object to this Settlement individually or through counsel; and, if they object, to appear at the Final Approval hearing.

8.4     If any Settlement Class Member wishes to object to the settlement and/or to be heard, the Settlement Class Member must send a written notice of objection by the deadlines established by the Court to the Claim Administrator or counsel for the parties. Each such objection must comply with the instructions set forth in the Long Form Notice and must be received (not just postmarked) by the Objection Deadline or they shall not be valid. The Claim Administrator or counsel for the Parties will then file all objections, requests to appear, and supporting papers with the Court.

8.5     If any Settlement Class Member wishes to be excluded from this settlement, the Settlement Class Member may do so by completing the opt-out form at the Settlement Website; downloading and submitting to the Claim Administrator a completed opt-out form; or submitting a valid request to opt out, as described in the Long Form Notice, to the Claim Administrator. Requests to opt out must be submitted online or received (not just postmarked) by the Opt Out Deadline or they shall not be valid. A Settlement Class Member who elects to opt out of this settlement shall not be permitted to object to this settlement or to intervene.

8.6     The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or opt out who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

8.7     No later than three (3) days after the Opt Out Deadline, the Claim Administrator shall prepare and deliver to the Parties a list of the names of the Persons who,

- 20 -

pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner. Plaintiff's Counsel shall file that list with the Court no later than fourteen (14) days prior to Final Approval.

8.8    P&G shall have the unilateral right to terminate the Agreement in the event that more than 1,000 Persons exclude themselves from the Settlement Class, by providing notice of termination within five (5) business days of delivery by the Claim Administrator of the list of persons who made timely requests of exclusion, as set forth in Section 8.13.

8.9    If a Settlement Class Member submits both a Claim Form and an opt-out request, the Claim Form shall take precedence and be considered valid and binding, and the opt-out request shall be deemed to have been sent by mistake and rejected.

8.10    A Settlement Class Member who objects to the settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms. A Settlement Class Member shall not be entitled to an extension to the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

8.11    Effective Date. The settlement shall become final and effective upon the occurrence of all of the following ("Effective Date"):

(a)    The settlement receives Final Approval by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

(b)    As provided for in Section 8.2, entry is made of the order and final judgment, with prejudice, with respect to the Released Claims against P&G and the Released Parties; and

- 21 -

(c)     If an appeal has been timely filed from a Final Approval,

completion of such appeal(s) finally approving the settlement and any proceedings on remand

from a decision of an appeals court, provided, however, that a modification or reversal on appeal

of the amount of the fees, costs, and expenses awarded by the Court to Plaintiff's Counsel, or the

amount of any Class Representative Payment, shall not prevent this settlement from becoming

final and effective if all other aspects of the final judgment have been affirmed.  If no appeal is

filed from the Court's order finally approving the settlement under Rule 23(e) of the Federal

Rules of Civil Procedure, the Effective Date shall be the date on which the time for any such

appeals has lapsed.

8.12     Effect if Settlement Not Approved or Agreement is Terminated.  This

Agreement was entered into only for purposes of settlement.  In the event that Preliminary or

Final Approval of this settlement and this Agreement does not occur for any reason, or if Final

Approval is reversed on appeal, then no term or condition of this Agreement, or any draft

thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties'

settlement discussions shall have any effect, nor shall any such matter be admissible in evidence

for any purpose in the Action, or in any other proceeding; and the Action shall continue as if the

settlement had not occurred.  Alternatively, in the event that the Court declines to enter the

Preliminary Approval order or to grant Final Approval (or enters any order that increases the cost

or burden of the settlement to P&G beyond what is set forth in this Agreement), the Parties may,

but are not required to, modify this Agreement.  Such a modification shall be binding only if it is

in writing and executed by Plaintiff's Counsel and P&G's Counsel.  The Parties agree that all

drafts, discussions, negotiations, documentation or other information prepared in relation to this

Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and

may not, absent a court order, be disclosed to any Person other than the Parties' counsel, and only for purposes of the Action.

          8.13   Additional Procedures for Members of the Certified Class. The Long Form Notice shall advise members of the Certified Class that, if the settlement is not finally approved, or if the Effective Date does not occur for any other reason, then the Action will continue on behalf of the Certified Class. Members of the Certified Class who do not wish to be bound by a judgment in favor of or against the Certified Class must exclude themselves from the Certified Class. The Parties shall request that, in the order of Preliminary Approval, the Court order that the process and time limits for members of the Certified Class to exclude themselves are identical to those set forth with regard to the Settlement Class, except as follows. If the settlement is not finally approved or the Effective Date does not occur, members of the Certified Class who submitted timely objections to the settlement or timely claims under the settlement (whether or not such claims are deemed Valid Claims) shall have an additional forty-five (45) days from the date they are provided notice of the termination to exclude themselves from the Certified Class, and members of the Certified Class who submitted timely requests to exclude themselves from the settlement shall have an additional forty-five (45) days from the date they are provided notice of the termination to revoke their requests for exclusion and to rejoin the Certified Class. To effectuate this right, in the event of termination, notice shall be provided by email to all members of the Certified Class who submitted timely objections to the settlement or timely claims under the settlement (whether or not such claims are deemed Valid Claims) and who provided an email address in connection with their objections or claims, informing such Persons of an additional period to exclude themselves from the Certified Class and linking to an exclusion form on the Settlement Website. In addition, in the event that termination occurs,

- 23 -

notice shall be provided by email to all members of the Certified Class who submitted a timely request to exclude themselves from the Settlement Class and who provided an email address in connection with their request for exclusion, informing such persons of an additional period to revoke their request for exclusion and to rejoin the Certified Class for purposes of the continued litigation. Within ten (10) days of any event causing termination, the Parties shall meet and confer in good faith regarding the content of such notice and to obtain Court approval for distribution of the notice, and shall agree to an appropriate schedule to afford members of the Certified Class forty-five (45) days to respond to it; provided, however, that in the event of termination, neither P&G nor Plaintiff or Plaintiff's counsel agree to bear any expenses relating to the costs of providing the post-termination notice to, and administration of post-termination exclusion requests (and revocation of exclusion requests) for, the Certified Class, as described in this Section 8.13. Members of the Certified Class who did not file an objection by the Objection Deadline or a claim by the Claim Filing Deadline shall have no further right to exclude themselves from the Certified Class, even if the Settlement is not approved or the Effective Date does not occur.

## IX. RELEASES

9.1    Plaintiff's Release of the Released Parties. Upon Final Approval, Plaintiff and his agents, assigns, attorneys, and members of his family on the one hand, and the Released Parties on the other hand, shall mutually release and forever discharge each other from and shall be forever barred from instituting, maintaining, or prosecuting:

(a)    any and all claims, suits, debts, liens, demands, rights, actions, causes of action, obligations, controversies, damages, costs, expenses, attorneys' fees, or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Action, based upon any violation of any

- 24 -

state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Action, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs;

(b)     any and all other claims, suits, debts, liens, demands, rights, actions, causes of action, obligations, controversies, damages, costs, expenses, attorneys' fees, or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise. Plaintiff and P&G expressly understand and acknowledge that it is possible that unknown losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiff and P&G explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiff and P&G with the knowledge of the possibility of such unknown claims, were given in exchange for a full accord, satisfaction, and discharge of all such claims.

(c)     Each and every term of this Section shall be binding upon, and inure to the benefit of Plaintiff and the Released Parties, and any of their successors and personal representatives, which Persons and entities are intended to be beneficiaries of this Section.

9.2     Settlement Class Members' Release of the Released Parties.

(a)     Upon Final Approval, Settlement Class Members (except any such Person who has filed a proper and timely request for exclusion from the Settlement Class) shall release and forever discharge the Released Parties from any and all claims, suits, debts, liens,

- 25 -

demands, rights, actions, causes of action, obligations, controversies, damages, costs, expenses, attorneys' fees, or liabilities of any nature whatsoever, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that were, or could have been, asserted in the Action regarding (i) the flushability or (ii) the safety for sewer and septic of the Product and statements concerning the Product's (i) flushability or (ii) safety for sewer and septic, except that there shall be no release of claims for personal injury or property damage allegedly caused by use of the Product.

(b) Each and every term of this Section shall be binding upon the Settlement Class Members and any of their successors and personal representatives, and inure to the benefit of the Released Parties, and any of their successors and personal representatives, which Persons and entities are intended to be beneficiaries of this Section.

(c) The Parties shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

(d) Nothing in this Section 9.2 shall operate to bar or release any claim for personal injury or property damage (for example, costs of plumbing repairs) arising out of the use of the Product, nor shall anything in this Section 9.2 operate to bar any defense, cross-claim or counter-claim in any action initiated by any of the Released Parties against any Settlement Class Member.

9.3 Satisfaction of Obligations. Plaintiff, on behalf of himself and all Settlement Class Members, agrees that the consideration provided under this Agreement, including the Injunctive Relief set forth in Part III of the Agreement, satisfies and resolves all

- 26 -

allegations in the Action relating to deceptive labeling and advertising of the Product during the Class Period as "flushable," "safe for sewer and septic systems," and "septic safe."

9.4    Effectuation of Settlement.  None of the above releases include releases of causes of action to enforce the terms of the Settlement.

9.5    No Admission of Liability.  This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party.  P&G expressly denies the allegations of the Complaint in the Action.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties in any proceeding, other than such proceedings as may be necessary to consummate, interpret, or enforce this Agreement. Similarly, neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any weakness or infirmity of any claim asserted in the Complaint by Plaintiff in any proceeding, other than such proceedings as may be necessary to consummate, interpret or enforce this Agreement.

## X.    ADDITIONAL PROVISIONS

10.1    Best Efforts.  Subject to the limitations expressed herein, Plaintiff's Counsel and P&G's Counsel shall use their best efforts to cause the Court to give Preliminary

Approval to this Agreement and settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, and to obtain Final Approval of this Agreement.

      10.2   Changes of Time Periods; Termination Rights. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiff's Counsel and P&G's Counsel, without notice to Settlement Class Members except that the Claim Administrator shall ensure that such dates are posted on the Settlement Website. All other terms and limitations set forth in this Agreement and in the documents referred to or incorporated herein (including but not limited to the notice and notice plan, the preliminary approval order, the final approval order, and the claim form) shall be deemed material to the Parties' Agreement, and in the event any such other term is altered or amended by the Court, or any other court, any Party whose rights or obligations are affected by the alteration or amendment may terminate this Agreement upon written notice provided within ten (10) business days of the Court's order or five (5) business days of receipt of actual notice of the Court's order, whichever is later. In the event the Parties wish to negotiate a possible amendment to this Agreement in lieu of termination, the time period for such notice of termination may be extended pursuant to written consent of all the Parties.

      10.3   Time for Compliance. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

- 28 -

10.4 Governing Law. This Agreement is intended to and shall be governed by the laws of the State of New York, without regard to conflicts of law principles.

10.5 Entire Agreement. The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Agreement. Any amendment or modification of the Agreement must be in writing signed by each of the Parties and their counsel.

10.6 Advice of Counsel. The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Any presumption that uncertainties in a contract are interpreted against the party causing an uncertainty to exist is hereby waived by all Parties.

10.7 Binding Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Parties hereto.

10.8 No Waiver. The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

10.9 Execution in Counterparts. This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts

and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

        10.10  Captions. Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Agreement.

        10.11  Extensions of Time. The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

        10.12  Enforcement of this Agreement. The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement.

        10.13  Plaintiff to be Included in Settlement Class. Plaintiff hereby agrees not to request to opt out or otherwise be excluded from the Settlement Class. Any such request shall be void and of no force or effect.

        10.14  Notices. All notices to the Parties or counsel required by this Agreement, shall be made in writing and communicated by mail and fax or email to the following addresses:

        If to Plaintiff or Plaintiff's Counsel:

        Chet B. Waldman
        Matthew Insley-Pruitt, Esq.
        Wolf Popper LLP
        845 Third Avenue
        New York NY 10022
        Telephone: (212) 759-4600
        Fax: (212) 486-2093
        Email: cwaldman@wolfpopper.com
        and minsley-pruitt@wolfpopper.com

If to P&G's Counsel:

Harold P. Weinberger, Esq.
Eileen M. Patt, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
Email: hweinberger@kramerlevin.com
and epatt@kramerlevin.com

10.15 Publicity. To the extent Plaintiff, Plaintiff's Counsel, P&G, or P&G's

Counsel make any public statements regarding the settlement of this litigation, any such

statements shall be consistent with the Court-approved documents that comprise this Settlement

Agreement or otherwise agreed on by the Parties in writing in advance.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AS TO FORM:**

DATED: February 6, 2020

WOLF POPPER LLP

_Chet B. Wa_

Chet B. Waldman
Matthew Insley-Pruitt, Esq.
Attorneys for Plaintiff

DATED: February __, 2020

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Harold P. Weinberger, Esq.
Eileen M. Patt, Esq.
Attorneys for P&G

**APPROVED AND AGREED:**

DATED: February 6, 2020

ANTHONY BELFIORE

Anthony Belfiore

DATED: February __, 2020

THE PROCTER & GAMBLE COMPANY

By: _____

Name: _____

Title: _____

- 32 -

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AS TO FORM:**

DATED: February __, 2020          WOLF POPPER LLP

                                  _____
                                  Chet B. Waldman
                                  Matthew Insley-Pruitt, Esq.
                                  Attorneys for Plaintiff

DATED: February _10_, 2020        KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                  _____
                                  Harold P. Weinberger, Esq.
                                  Eileen M. Patt, Esq.
                                  Attorneys for P&G

**APPROVED AND AGREED:**

DATED: February __, 2020          ANTHONY BELFIORE

                                  _____
                                  Anthony Belfiore

DATED: February _10_, 2020        THE PROCTER & GAMBLE COMPANY

                                  By: _____
                                  Name: _KEN  PATEL_____
                                  Title: _VICE PRESIDENT AND CHIEF
                                          ETHICS & COMPLIANCE OFFICER_

# EXHIBIT A

EXHIBIT A - NOTICE PLAN

## SETTLEMENT WEBSITE

At least ten business days prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, in compliance with the Settlement Agreement. The parties shall be permitted to test the operation of the Settlement Website and the Claim Administrator shall fix operational problems that are identified by the Parties prior to the Notice Date. The website will serve as a "landing page for the banner advertising," where Settlement Class Members may get information about the Settlement and obtain and/or submit a Claim Form, along with other information which includes information about the class action, their rights, the Long Form Notice (in the form attached hereto as Exhibit B1), the Claim Form, and related information, including the Settlement Agreement, court orders, and Plaintiff's Motion for Approval of Fees, Costs, Expenses, and Class Representative Payments.

## NOTICE PROGRAM

As soon as reasonably practicable, but beginning not later than thirty days (30) days following Preliminary Approval, and continuing for at least thirty days (30) days thereafter, the Claim Administrator shall cause the Notice Plan, described below, to be published. The Notice Plan described herein is designed to reach an estimated 72% percent of the Settlement Class Members, on average notice 2.8 times each. Such reach and frequency shall be measured using reasonably relied upon media research data, validation and reach and frequency tools such as GfK Mediamark Research and Intelligence LLC, comScore and Telmar.

All notices shall point to (and in the case of online notices shall hyperlink to) the Settlement Website.

## PRINT ADVERTISEMENTS

The Claim Administrator will cause the Published Notice, in the form attached hereto as Exhibit B2, to be published once, as 1(one) page black and white advertisement, in People Magazine.

## INTERNET ADVERTISEMENT

The Claim Administrator shall cause the Online Advertisement Notices, in the form attached hereto as Exhibit B3, to be published on internet sites through an appropriate programmatic

EXHIBIT A - NOTICE PLAN

network, for a total of at least 12 million combined impressions (including both desktop and mobile impressions).

The online notice program shall include the following:

- Tracking which webpages and times of day are generating the highest click-through rate and conversion rate, and to the extent practicable, redirecting future impressions to those higher-performing locations instead of lower-performing locations.
- Multiple targeting layers will be implemented to help ensure delivery to the most appropriate users, inclusive of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting.
- Notice will target adults 25-54 with increased impressions in New York State. Online display ads will be served to this target group across a whitelist of pre-vetted websites, multiple exchanges and social media platforms Facebook and Instagram. The online program will negatively target (exclude) residents of all states other than New York.
- Contextual targeting to sites whose content features keywords related to the product and the class action. Example content incudes pages with keywords such as Charmin Freshmates, Charmin wipes, Freshmates coupons, moist wipes, wipes coupons, wipes class action, and Charmin class action, among others. A similar list of keywords will be applied to keyword search targeting which show advertisements to users in their Google search results. Online display ads will run in English and Spanish.
- Using cookies or similar technology to identify persons who have visited the Settlement Website but not completed the Claim Form or exclusion form, and targeting additional impressions or other communications to such persons to encourage them to return to the Settlement Website to complete a Claim Form.

**PRESS RELEASE**

The Published Notice will be issued as a press release over PR Newswire, as well as websites, databases, and online services including featured placement in news sections of leading portals.

EXHIBIT A - NOTICE PLAN

## MEDIA MONITORING

The Claim Administrator intends to monitor various media channels for subsequent news articles and various social mentions as a result of press release efforts. A complete report on the results will be filed with the Court upon completion of the notice program.

## TOLL FREE INFORMATION LINE

A toll free telephone helpline will be established and maintained by the Claim Administrator. It will be available 24-hours a day where callers may obtain information about the settlement. Those who call the toll-free information line or who write to the Claim Administrator may request a printed copy of the Long Form Notice and Claim Form, which the Claim Administrator shall provide by first class mail.

## NOTICES

Within ten (10) days after this settlement is filed in court, the Claim Administrator shall provide the notices to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, et seq.

At least fourteen (14) days prior to the hearing on Final Approval, the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

# EXHIBIT B1

**Attention Purchasers of Charmin Freshmates Flushable Wipes Before [Date of Preliminary Approval]**

**This notice may affect your rights.  Please read it carefully.**

*A court authorized this notice. This is not a solicitation from a lawyer.*

- This class action settlement will resolve a lawsuit against The Procter & Gamble Company ("P&G") involving Charmin Freshmates Flushable Wipes. The lawsuit contends that these wipes were inappropriately marketed as "flushable," "septic safe," and "safe for sewer and septic systems." The lawsuit seeks a court order to stop the practices and to refund to customers a portion of the purchase price. P&G denies these allegations and maintains that the wipes perform as advertised.

- In connection with this settlement, P&G agreed to make changes to the labeling of the wipes. In addition, P&G will provide Class Members a partial cash refund of (i) seventy cents ($0.70) per package purchased, up to $6.30 per Household without proof of purchase; or (ii) one dollar and twenty cents ($1.20) for the first package with proof of purchase (and $1.00 for any additional packages with proof of purchase), up to $50.20 per Household with proof of purchase.

- The lawyers who brought the lawsuit will ask the Court for up to $3,200,000 to be paid to them by P&G as fees and expenses for investigating the facts, litigating the case, and negotiating the settlement. They will additionally ask for $10,000 for the plaintiff, Anthony Belfiore ("Plaintiff"), who initially brought this lawsuit. This will be requested as Class Representative Payment, to compensate the Plaintiff for taking on the risks of pursuing this litigation and for agreeing to a broader release of claims than other settlement class members.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

- This notice summarizes the proposed settlement. For the precise terms and conditions of the Settlement, please see the settlement agreement available at www.BelfioreWipeSettlement.com, contact the Claim Administrator by calling 1 (833) 930-2423 or writing to Belfiore v. P&G, PO Box 34880, Philadelphia, PA, 19101-4880, or contact Class Counsel at Wolf Popper LLP, 845 Third Avenue, New York NY 10022.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

EXHIBIT B1: LONG FORM NOTICE

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive payment, i.e., partial refunds for your purchases. | [30 days after Final Approval Hearing] |
| **EXCLUDE YOURSELF** | Get out of the lawsuits and the settlement. This is the only option that allows you to ever bring or join another lawsuit against P&G that raises the same legal claims released by this settlement. You will receive no payment. | [28 days before Final Approval Hearing] |
| **OBJECT OR COMMENT** | Write to the Court about why you do or don't like the settlement, the amount of attorneys' fees, or the payments to the Plaintiff.<br><br>You may also submit a Claim Form if you object. | [28 days before Final Approval Hearing] |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement, the amount of attorney's fees, or the payments to the Plaintiff.<br><br>You may also submit a Claim Form if you go to the hearing. | [Date of Final Approval Hearing] |
| **DO NOTHING** | You will receive no payment and have no right to sue later for the claims released by the settlement. | |

- These rights and options—and the deadlines to exercise them—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

**Fairness Hearing**

On _____, at ____, the Court will hold a hearing to determine (1) whether the proposed settlement is fair, reasonable, and adequate and should receive final approval; (2) whether the applications for attorneys' fees, costs, and/or expenses brought by the Class Counsel should be granted; and (3) whether the application for Class Representative Payment to the Plaintiff who brought the lawsuit should be granted. The hearing will be held in Courtroom 4F North at the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, before the Honorable Pamela K. Chen.  This hearing date may change without further notice to you. Consult the Settlement Website at www.BelfioreWipeSettlement.com, or the Court docket in this case at ecf.nyed.uscourts.gov (perform a case number query using case number Case No. 2:14-cv-04090), for updated information on the hearing date and time.

EXHIBIT B1: LONG FORM NOTICE

**Important Dates**

\_\_\_\_\_ Objection Deadline
\_\_\_\_\_ Claim Form Deadline
\_\_\_\_\_ Exclusion Deadline
\_\_\_\_\_ Fairness Hearing

## Table of Contents

How Do I Know If I Am Affected By The Litigation And The Settlement? ................................ 3
What Is The Lawsuit About? ................................................................................................... 4
What Does Plaintiff Seek To Recover In The Lawsuit? ........................................................... 5
Why Is The Case Being Settled? ............................................................................................. 5
What Is The Settlement? ........................................................................................................ 6
What Can I Get In The Settlement? ........................................................................................ 7
How Do I Make A Claim? ....................................................................................................... 8
What Does Plaintiff And His Lawyers Get? ............................................................................ 8
What Claims Are Released By The Settlement? ...................................................................... 9
Can I Exclude Myself From The Settlement? .......................................................................... 9
Can I Object To The Settlement? ........................................................................................... 10
When Will The Court Decide If The Settlement Is Approved? ............................................... 11
Special Notice For Members Of The Class ............................................................................. 12
How Do I Get More Information? .......................................................................................... 13

## How Do I Know If I Am Affected By The Litigation And The Settlement?

This case involves Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label (the "Product"). For purposes of settlement only, the Court has certified a settlement class (the "Settlement Class"). You are a member of the Settlement Class ("Settlement Class Member") if, between May 23, 2011 and [date of Preliminary Approval], you purchased the Product anywhere in the State of New York. Your purchase cannot have been for purpose of resale.

The Settlement Class excludes (1) Honorable Pamela K. Chen, Honorable Jack B. Weinstein, Honorable Robert M. Levy, and Honorable Steven M. Gold, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely

3

EXHIBIT B1: LONG FORM NOTICE

elect to opt out of the Settlement Class. The settlement also excludes persons who made their purchases outside of New York or those who purchased the Product for resale.

If you are a member of the Settlement Class, you will be bound by the settlement and judgment in this case, unless you request to be excluded.

If the settlement does not become effective (for example, because it is not finally approved, or the approval is reversed on appeal), then this litigation will continue on behalf of purchasers in New York. Specifically, a class of people who purchased the Product in New York between May 23, 2011 and March 1, 2017 has already been certified by the Court. To be clear, this class is somewhat *different* than the Settlement Class discussed above. It is defined as "All persons and entities who purchased Charmin Freshmates in the State of New York between May 23, 2011 and March 1, 2017." In this notice, this group will be referred to as the Class. Members of the Class have the same rights as all Settlement Class Members as explained in this notice, except that they will remain part of the case even if the settlement is rejected, as specified in the section "Special Notice for Members of the Class."

## What Is The Lawsuit About?

Plaintiff asserts that, although the packaging on the Freshmates wipes states that the wipes are "flushable," "septic safe," and "safe for sewer and septic systems," the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps. Plaintiff alleges that P&G is liable for violation of New York General Business Law § 349.  Plaintiff seeks to pursue his claims on behalf of himself and others who purchased the Product in New York.

4

EXHIBIT B1: LONG FORM NOTICE

P&G denies that there is any factual or legal basis for Plaintiff's allegations. P&G contends that the labeling of the Product was truthful and non-misleading. P&G therefore denies any liability. P&G also denies that Plaintiff or any other members of the Settlement Class have suffered injury or are entitled to monetary or other relief.

The Court has not determined whether Plaintiff or P&G is correct.

**What Does Plaintiff Seek To Recover In The Lawsuit?**

The lawsuit contends that, if P&G had not engaged in the labeling, marketing, and advertising that Plaintiff challenges, the price of the Product would have been lower. Plaintiff seeks to recover, on behalf of a class of individuals who purchased the Product in New York (except for purchases made for resale), the dollar amount of the price "premium" that is attributable to the alleged misrepresentations.

P&G denies that there is any legal entitlement to a refund or any other monetary relief.

**Why Is The Case Being Settled?**

Plaintiff's counsel has investigated the manufacture, marketing, labeling, and performance of the Product. P&G has produced thousands of pages of documents for review by Plaintiff's counsel. In addition, Plaintiff's counsel has taken depositions of four of P&G's employees. The parties also have exchanged written responses to questions posed by the other party. Plaintiff's counsel has also obtained documents from third parties, including wastewater treatment professionals and INDA, the trade association for manufacturers of flushable wipes. Plaintiff also retained two experts to evaluate the Product and damages and have had extensive consultations with wastewater professionals. Five of Plaintiff's witnesses have been deposed, and both expert witnesses and a wastewater professional provided testimony before the Court on behalf of Plaintiff at evidentiary hearings.

EXHIBIT B1: LONG FORM NOTICE

Based on this investigation, Plaintiff's counsel has determined that there are significant risks of continuing the litigation. In particular, the appellate court may reverse the Court's order granting class certification.  Additionally, there may be substantial difficulties establishing that: (1) P&G's marketing and advertising of the Product was likely to deceive or confuse reasonable persons about the performance of the Product; (2) the Product is not flushable according to how a reasonable consumer understands that term, (3) a reasonable consumer would find material the alleged effects of flushing the Product on sewer treatment facilities; and/or (4) damages or restitution should be awarded or, if so, that any such award should be more than nominal or more than the recovery to Settlement Class Members from the proposed settlement. In particular, it may be difficult to establish that the pricing of the Product would have been different had the marketing and labeling been different.

Since the initiation of this litigation, Plaintiff, through his counsel, and P&G participated in settlement conferences, including before third-party mediators. This settlement was reached following those efforts.

After taking into account the risks and costs of further litigation, Plaintiff and his counsel believe that the terms and conditions of the settlement are fair, reasonable, adequate, and equitable, and that the settlement is in the best interest of the Settlement Class Members.

## What Is The Settlement?

P&G has already made changes to the material used in manufacturing the Product and has agreed to make further changes to the labeling of the Product packaging. In particular, P&G has ceased manufacturing the Product in the formulation(s) that it used at the time the action was commenced. Partly as a result of the litigation, P&G has also changed the composition of the

6

EXHIBIT B1: LONG FORM NOTICE

wipes. P&G also has agreed to comply with more stringent industry-standard flushability testing protocols than existed when the litigation was filed.

Partly as a result of the litigation, P&G has modified the packaging of the Product to include a statement that "Your satisfaction is guaranteed. For details of our refund program go to our website at https://www.charmin.com/en-us/about-us/flushable-wipes-guarantee."  P&G provides details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product. P&G also modified the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems".

Additionally, as a result of the settlement, P&G has agreed to modify the packaging of the Product to exclude the statements "septic safe" and "safe for sewer and septic systems."

In addition, as part of the settlement, P&G will provide partial refunds to Settlement Class Members and payments to Plaintiff's counsel ("Class Counsel") and the named Plaintiff, as described in the next sections.

## What Can I Get In The Settlement?

If you file a valid claim without proof of purchase, you will receive seventy cents ($0.70) for each package of the Product that you purchased in New York between May 24, 2011 and [date of Preliminary Approval]. Your total refund will be limited to $6.30 per Household.  If you file a valid claim with proof of purchase, you will receive one dollar and twenty cents ($1.20) for the first package purchased in New York between May 24, 2011 and [date of Preliminary Approval], and $1.00 for any additional packages, up to $50.20 per Household.

"Proof of Purchase" means the actual label or bar code portion of the package of the Product (not a photocopy or digital image), or the original or photocopy or digital image of an

7

itemized sales receipt originally generated by a retail seller showing the date and place of purchase, name of the product purchased, and the amount paid.

## How Do I Make A Claim?

To make a claim, you must fill out the claim form available on the settlement website, www.BelfioreWipeSettlement.com. You can submit the claim form online, unless you are providing Proof of Purchase by the actual label or bar code portion of the package, or you can print it and mail it to the Claim Administrator at: [address]. Claim forms must be submitted online or received, not just postmarked, by [30 days after scheduled final approval hearing].

## What Do Plaintiff And His Lawyers Get?

To date, Class Counsel have not been compensated for any of their work on this case. Plaintiff's counsel will present evidence to the Court that they have spent more than 8,000 hours litigating this case. In addition, Class Counsel will present evidence that they have paid out-of-pocket expenses (including deposition transcript fees, court reporter fees, filing fees, service costs, copying costs, and travel expenses) of approximately $200,000. None of these expenses has yet been reimbursed. As part of the settlement, Class Counsel may apply to the Court to award them up to $3,200,000 from P&G to pay their attorneys' fees, costs, and expenses, which presently amounts to a discount of over $2,000,000 from the amount of hours Class Counsel have expended on this litigation over the past 6 years multiplied by their usual hourly billing rates.

In addition, the Class Representative in this case may apply to the Court for a payment of $10,000. This payment is designed to compensate Plaintiff for the time, effort, and risks he undertook in pursuing this litigation and for executing a broader release of claims than other Settlement Class Members. Neither any award of fees and costs to Class Counsel nor any

8

EXHIBIT B1: LONG FORM NOTICE

payment to the Class Representative will affect compensation to Settlement Class Members from the settlement.

Plaintiff and his lawyers will file a motion with the Court on or before [42 days before final approval hearing, i.e., 14 days before objection deadline] in support of their applications for attorneys' fees, costs and expenses and payment to the Plaintiff. A copy of that motion will be available on the settlement website.

The Court will determine the amount of fees, costs, expenses, and payment to the Plaintiff to award.

## What Claims Are Released By The Settlement?

The settlement releases all claims by Settlement Class Members against P&G and its affiliates that were or could have been asserted by Plaintiff in this case, and that relate to the flushability or the safety for sewer and septic of the Product, or to statements concerning the Product's flushability or safety for sewer and septic. This release includes claims that may not yet be known or suspected. However, there is no release of claims for personal injury or property damage (for example, costs of plumbing repairs) arising out of the use of the Product. For further information, please see Section 9.2 of the Settlement Agreement, available on the settlement website at www.BelfioreWipeSettlement.com.

## Can I Exclude Myself From The Settlement?

You can exclude yourself from the Settlement Class if you wish to retain the right to sue P&G separately for the claims released by the settlement. If you exclude yourself, you cannot file a claim or object to the settlement. You do not need to exclude yourself if you merely want to retain a right to sue for personal injury or property damage arising out of your use of the Product.

EXHIBIT B1: LONG FORM NOTICE

To exclude yourself, you must complete and submit the online form at the settlement website or mail a request to opt out of the settlement to the Claim Administrator at [address]. If mailed, the exclusion request must contain your name, address, the words "I wish to be excluded from the Charmin Freshmates Class Action Settlement," and your signature.

If submitted online, exclusion requests must be made by [28 days before Final Approval Hearing]. If mailed, exclusion requests must be *received* (not postmarked) by [28 days before Final Approval Hearing].

## Can I Object To The Settlement?

You can ask the Court to deny approval of the settlement by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval to the entire settlement, no settlement payments will be made, and the lawsuit will continue. If that is what you want to happen, you must object.

You can also ask the Court to disapprove the requested payment to Plaintiff and to his attorneys. If those payments are disapproved or adjusted, no additional money will be paid to the Settlement Class.

You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. To appear at the Final Approval Hearing, you need to file a written objection to the settlement or a written request to the Court for permission to appear.

You can exercise any of the above options regardless of whether or not you file a claim, but not if you exclude yourself from the settlement class.

Any objection must include (1) the case name and number *Belfiore v. Procter & Gamble Company,* Case No. 2:14-cv-04090-PKC-RML (E.D.N.Y.); (2) your name, address, and

EXHIBIT B1: LONG FORM NOTICE

telephone number; (3) documents or testimony sufficient to establish that you are a member of the Settlement Class; (4) a detailed statement of your objection(s), including the grounds for those objection(s); (5) a statement as to whether you are requesting the opportunity to appear and be heard at the final approval hearing; (6) the name(s) and address(es) of all lawyers (if any) who (a) are representing you in making the objection, (b) may be entitled to compensation in connection with your objection, and/or (c) will appear on your behalf at the final approval hearing; (7) the name(s) and address(es) of all persons (if any) who will be called to testify in support of your objection; (8) copies of any papers, briefs, or other documents upon which your objection is based if not already in the court file; (9) a detailed list of any other objections you or your counsel have submitted to any class action in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (10) your signature as objector, in addition to the signature of your attorney, if an attorney is representing you in connection with the objection. Failure to include this information and documentation may be grounds for overruling and striking your objection.

All written objections, requests to appear, and supporting papers must clearly identify the case name and number, *Belfiore v. Procter & Gamble Company*, Case No. 2:14-cv-04090-JBW-RML (E.D.N.Y.). They must be sent to the Claim Administrator or counsel for Plaintiff and P&G at the addresses shown on the settlement website, who will then file all objections, requests to appear, and supporting papers with the Court. Documents must be *received*, not merely postmarked, on or before [28 days before Final Approval Hearing].

## When Will The Court Decide If The Settlement Is Approved?

The Court will hold a hearing on [hearing date] to consider whether to approve the settlement. The hearing will be held in the United States District Court, Eastern District of New

11

EXHIBIT B1: LONG FORM NOTICE

York, before the Honorable Pamela K. Chen, in Courtroom 4F North. The hearing is open to the public. However, only persons who have filed an objection or a request to appear at the hearing may actually address the Court. This hearing date may change without further notice to you. Consult the settlement website at www.BelfioreWipeSettlement.com or the Court docket in this case at ecf.nyed.uscourts.gov (perform a case number query using case number 2:14-cv-04090) for updated information on the hearing date and time.

**Special Notice For Members Of The Class**

As noted above, the Class is different than the Settlement Class and includes "all persons and entities who purchased Charmin Freshmates in the State of New York between May 23, 2011 and March 1, 2017." This section provides further information about the rights of the members of the Class.

All sections of this notice apply to you. You have the right to make a claim under this settlement, object to the settlement, or exclude yourself, just like other members of the Settlement Class.

If the settlement is not approved, or if the Effective Date does not occur for any other reason, as further explained in the Settlement Agreement, and you have not excluded yourself from the settlement, the litigation will continue on your behalf as a member of the Class. The Court has already appointed Plaintiff Anthony Belfiore and Class Counsel to represent your interests.

If the litigation continues, and a judgment is obtained against the Class in favor of P&G, that judgment will prevent you from bringing a separate lawsuit against P&G for the claims that were or could have been litigated in this case. If judgment is obtained against P&G in favor of

12

EXHIBIT B1: LONG FORM NOTICE

the Class, and you are entitled to any portion of that judgment, you will receive further notification about your rights.

**How Do I Get More Information?**

You can inspect many of the court documents connected with this case on the settlement website, www.BelfioreWipeSettlement.com. Other papers filed in this lawsuit are available by accessing the Court docket in this case at ecf.nyed.uscourts.gov (perform a case number query using case number 2:14-cv-04090), or by visiting the office of the Clerk of the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, from 8:30 a.m. to 4:45 p.m., Monday through Friday, excluding court holidays.

You can also obtain additional information by contacting the Claim Administrator through the settlement website (www.BelfioreWipeSettlement.com) or by calling 1 (833) 930-2423 or writing to Belfiore v. P&G, PO Box 34880, Philadelphia, PA, 19101-4880.

EXHIBIT B1: LONG FORM NOTICE

# EXHIBIT B2

# Purchasers of Charmin Freshmates Flushable Wipes:
# A Class Action Settlement May Affect Your Rights

**WHO IS AFFECTED**
A class action settlement has been reached involving Charmin Freshmates Flushable Wipes. The settlement involves all pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label ("Wipes"). The lawsuit claims that the Wipes are not actually flushable. P&G denies these allegations and maintains that the Wipes perform as advertised. You may be an eligible class member if you purchased the Wipes in the State of New York, between May 23, 2011 and [date of PAO].

**WHAT DOES THE SETTLEMENT PROVIDE?**
In connection with this settlement, The Procter & Gamble Company ("P&G") will change the labeling of the Wipes and agreed to stricter industry-standard testing protocols. P&G will also pay a partial cash refund of (i) seventy cents ($0.70) per package purchased, up to $6.30 per Household without proof of purchase; or (ii) one dollar and twenty cents ($1.20) for the first package with proof of purchase (and $1.00 for any additional packages with proof of purchase), up to $50.20 per Household with proof of purchase. Proof of purchase means the actual label or bar code portion of the package of the Product (not a photocopy or digital image), or the original or photocopy or digital image of an itemized sales receipt originally generated by a retail seller showing the date and place of purchase, name of the product purchased, and the amount paid.

**WHAT ARE MY OPTIONS?**
You must **submit a claim** online by [date] or by mail so that it is *received* (not merely postmarked) no later than [date] to receive a payment. You can **opt out of the class** and keep your right to sue P&G on the released claims by [date]. The settlement will release all claims related to Plaintiff's contentions that P&G's marketing, advertising, and sale of the Wipes with the representations "flushable," "septic safe," and "safe for sewer and septic systems" were false or misleading. There is no release of claims for personal injury or property damage allegedly caused by use of the Wipes. You can also **object to the settlement** by [date], which does not affect your ability to file a claim. For details on how to opt out, object, or to file a claim, please visit www.BelfioreWipeSettlement.com or contact the Claim Administrator. If you **do nothing** you will not receive a payment and you will be bound by the decisions of the Court.

**COURT HEARING AND ATTORNEYS' FEES**
The Court will hold a hearing on [Month Day, Year at _:__ _.m. ET] to consider whether to approve the settlement. If the settlement is approved, the attorneys for the class will ask the Court for an award from P&G of up to $3,200,000 in fees, costs, and expenses, and a class representative payment of $10,000 for the named plaintiff. Note that the hearing date may change without further notice to you although any such change will be reflected on the website. You may attend the hearing, but you do not have to. Plaintiff's Motion for Attorneys' Fees and Costs will be posted on the settlement website after it is filed.

**MORE INFORMATION**
This is only a Summary.  For more information, please visit: www.BelfioreWipeSettlement,com or contact the Claim Administrator by calling 1 (833) 930-2423 or writing to Belfiore v. P&G, PO Box 34880, Philadelphia, PA, 19101-4880. You may also contact Plaintiff's counsel, Wolf

EXHIBIT B2 – SUMMARY PUBLISHED NOTICE

Popper LLP, 845 Third Avenue, New York NY 10022. The case name is *Belfiore v. Procter & Gamble Company*, U.S District Court for the Eastern District of York Case No. 2:14-cv-04090.

# EXHIBIT B3

<u>**Online Banner Ad**</u>

**Charmin Freshmates Flushable Wipes Purchasers**
**You Could Get a Cash Refund from a Class Action Settlement.**
**Learn more**

<u>**Mobile Banner Ad**</u>

**Charmin Freshmates Flushable Wipes Purchasers:**
**You Could Get a Cash Refund from a Class Settlement.**

<u>**Facebook Ad**</u>

**Text:** Charmin Freshmates Flushable Wipes Purchasers - You Could Get a Cash Refund from a Class Action Settlement.

**Headline:** Charmin Freshmates Flushable Wipes Settlement

**Website:** www.BelfioreWipeSettlement.com

**Description:** Court Authorized Notice

EXHIBIT B3 – ONLINE NOTICE

EXHIBIT B3 – ONLINE NOTICE

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of himself and others similarly situated, | Case No. 2:14-cv-04090-PKC |
| Plaintiff, | |
| v. | [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| PROCTER & GAMBLE CO., | |
| Defendant. | |

## RECITALS

On May 23, 2014, Anthony Belfiore filed a class action complaint against the Procter & Gamble Company ("P&G") in the Supreme Court of the State of New York, County of Nassau, Case No. 602364/2014 (the "Action"). On July 1, 2014, P&G removed the Action to the United States District Court, Eastern District of New York, where it was assigned Case No. 2:14-cv-04090-JBW-RML, now 2:14-cv-04090-PKC-RML.

Plaintiff Belfiore ("Class Representative") has moved the Court for preliminary approval of a proposed class action settlement with P&G, the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on February 14, 2020 ("Settlement Agreement").

This Action concerns the marketing and labeling of Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label (the "Product"). Plaintiff alleges that the Product is mislabeled as "flushable," "septic safe," and "safe for sewer and septic systems" because the Product is not suitable for flushing. In particular, Plaintiff alleges that the Product is not appropriate for disposal in the sewer system and that the Product is not likely to dissolve and disperse in a sufficiently limited amount of time, which made them likely to clog toilets, drainlines, sewer pipes, and sewage treatment facilities.

Plaintiff contends that, by marketing the wipes as "flushable," "septic safe," and "safe for sewer and septic systems," P&G was able to sell the Product at a higher price than it would have been sold without the misstatements. Plaintiff seeks to recover, on behalf of a class of all purchasers who purchased the Product in New York (except for re-sellers), the dollar amount of the price "premium" that is attributable to the alleged misrepresentations. Belfiore alleges in his complaint that P&G is liable for violation of New York General Business Law § 349.

P&G denies that there is any factual or legal basis for Plaintiff's allegations. P&G contends that the labeling of the Product is truthful and non-misleading. It also denies that purchasers paid a "premium" for the Product as the result of any misrepresentations. P&G therefore denies any liability. P&G also denies that Plaintiff or any other members of the

settlement class have suffered injury or are entitled to monetary or other relief. P&G also denies that this case was properly certified as a class action, except for purposes of settlement.

Substantial discovery was taken by the parties. For example, P&G produced thousands of pages of documents and four 30(b)(6) witnesses for depositions. Plaintiff Belfiore responded to discovery requests, had his home plumbing inspected, and was deposed, as was his wife and plumber. Third parties were subpoenaed. The parties each retained experts, three of whom were deposed.

The terms of the settlement are summarized in the proposed Long Form Notice to Settlement Class Members, which is attached as Exhibit B1 to the Settlement Agreement. In brief, in a 49-state class settlement (excluding New York) approved in *Pettit v. Procter & Gamble Company*, 15-cv-2150 (RGS) (N.D. Cal.) ("*Pettit*") involving a similar challenge to the Product, P&G agreed to the entry of a court order requiring, until two years after the effective date of the *Pettit* settlement, to change the formulation of the Product, agreed to stricter testing protocols announced by the industry association INDA, and modify its labeling of the Product to include the statements "Use only in well-maintained plumbing systems" and "Your satisfaction is guaranteed.  For details of our refund program go to our website at https://www.charmin.com/en-us/about-us/flushable-wipes-guarantee."  P&G provides details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product. P&G agreed to the terms of the *Pettit* settlement partly as a result of this Action and has agreed to continue the injunction in the Pettit action for a period of two years from the Effective Date of the settlement.

Additionally, P&G has agreed to modify its labeling on future newly packaged Product to exclude the statements "septic safe," and "safe for sewer and septic systems."  These changes will be incorporated in a court injunction.  In addition, all Settlement Class Members may submit a claim for a refund of $1.20 per package with proof of purchase (and $1.00 for any additional Product packages with proof of purchase), up to a total of $50.20 per household. Valid claims will be paid even without proof of purchase, in the amount of $0.70 per Product package up to a

total of $6.30 per household.

As part of the settlement, Plaintiff's counsel may apply to this Court to award them up to $3,200,000 from P&G to pay their attorneys' fees, costs, and expenses. They may also apply to this Court for a payment up to $10,000 to the Class Representative from P&G. Such amounts must be approved by the Court, and the Court will defer any ruling on the appropriateness of such awards until the final approval hearing.

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this Action, and good cause appearing therefore, the Court grants preliminary approval and hereby finds and concludes as follows:

1.      The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreement except as otherwise expressly provided.

2.      The Court preliminarily approves the Settlement Agreement as within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration. The Settlement Agreement was reached as a result of arm's length negotiations between the Parties and their counsel. Additionally, before entering into the Agreement, Plaintiff's Counsel reviewed thousands of pages of documents produced by P&G, took depositions of P&G's employees, requested and received written discovery responses from P&G and third parties, and conducted expert discovery. The Parties also briefed numerous motions, including: a motion for class certification which was granted by the Court, although P&G has appealed that decision; multiple motions by P&G to decertify the Class; and motions to dismiss and for summary judgment.  Thus, Plaintiff and his counsel had sufficient information to evaluate the strengths and weaknesses of the case and to conduct informed settlement discussions.

3.      For purposes of the settlement only, the Court certifies the Settlement Class, which consists of all Persons who purchased the Product in the United States between May 24, 2011 and the date of Preliminary Approval, excluding purchases made outside the State of New York and purchases made for purposes of resale. Excluded Persons from the settlement are (1)

Honorable Pamela K. Chen, Honorable Jack B. Weinstein, Honorable Robert M. Levy and Honorable Steven M. Gold, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (6) any person or entity who purchased the Product for resale; and (7) any persons who timely excludes themselves from the Settlement Class.

4.      The Court preliminarily finds and concludes, solely for purposes of considering this settlement, that the requirements of Rule 23 of the Federal Rules of Civil Procedure are conditionally satisfied for certification of the Settlement Class to pursue claims under the consumer protection law of New York. Plaintiff has met the requirements of Rule 23 for the reasons set forth in Plaintiff's motion for preliminary approval, as well as for the reasons stated in the Court's order granting certification of the class and the briefing and arguments provided by Mr. Belfiore in support of that motion. For those reasons, this Court finds that common issues predominate with respect to the Settlement Class.

5.      The Court conditionally designates the law firm of Wolf Popper LLP as Settlement Class Counsel and Anthony Belfiore as Class Representative for purposes of this settlement. The Court preliminarily finds that the Class Representative and Class Counsel fairly and adequately represent and protect the interests of the absent Settlement Class Members. The Court designates, and approves, Heffler Claims Group to serve as Claim Administrator.

6.      Since the Settlement Agreement is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class pursuant to the Settlement Agreement as set forth in the Notice Plan. The Claim Administrator shall provide notice in compliance with 28 U.S.C. § 1715. As set forth in the Notice Plan, the Claim Administrator shall do the following:

a.      At least ten (10) business days prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers

to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel; the Settlement Agreement; the signed order of Preliminary Approval and publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; and a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class. The Claim Administrator shall add to the Settlement Website all other material filings by the Parties or the Court regarding the settlement, including Plaintiff's application for attorneys' fees, costs, expenses and/or a payment to the Class Representative, the motion for final approval, and any orders with respect to such applications and motions.

b.      The Claim Administrator shall cause the Published Notice to be published in accordance with the Notice Plan as soon as practicable after the Notice Date.

c.      The Claim Administrator shall initiate the process of providing the Online Notice on websites as set forth in the Notice Plan, so that overall notice of the Settlement (including the Online Notice and the Publication Notice) is reasonably calculated to apprise the Settlement Class Members of the Settlement.

d.      The Claim Administrator shall issue the Published Notice as a press release, as further described in the Notice Plan.

e.      The Claim Administrator shall set up the toll-free number as further described in the Notice Plan.

7.      A Final Approval Hearing shall be held before this Court at [ ] on [ ], 2020, in Courtroom 4F North, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn NY 11201, to address: (a) whether the proposed settlement should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order should be entered, and (b) whether Class Counsel's application for attorneys' fees, costs, expenses and payment to the Class Representative should be approved.

8.      The Court approves, as to form and content, Notices that are substantially similar

to the forms attached as Exhibits B1 to B3 to the Settlement Agreement, as well as a Claim Form that is substantially similar to the form attached to this Order as Exhibit 1. The Claim Form and all the notices are written in plain English and are easy to comprehend. The Parties shall have discretion to jointly make non-material minor revisions to the claim form and Notices before publishing. Responsibility for settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject to the oversight of the Parties and this Court as described in the Settlement Agreement.

9.      The Court finds that the Parties' plan for providing notice to the Settlement Class is reasonably calculated to provide notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval hearing, and complies fully with the requirements of the New York and United States Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law. The Parties and the Claim Administrator shall comply with the Notice Plan as set forth in the Settlement Agreement.

10.     Any member of the Settlement Class who desires to be excluded from the Settlement Class, and therefore not be bound by the terms of the Settlement Agreement, must submit a request for exclusion to the Claim Administrator, pursuant to the instructions set forth in the Long Form Notice. The request must be submitted online by no later than [28 days prior to Final Approval] or if mailed, it must be received by the Claim Administrator (not just postmarked) by no later than [28 days prior to Final Approval]. No one shall be permitted to exercise any exclusion rights on behalf of any other Person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization, and no one may exclude other Persons within the Settlement Class as a group, class, or in the aggregate.

11.     No later than three (3) days after [28 days prior to the Final Approval], the Claim Administrator shall prepare and deliver to the Parties a list of the names of the Persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a

valid and timely manner. Plaintiff's Counsel shall file that list with the Court no later than fourteen (14) days prior to Final Approval. The Court retains jurisdiction to resolve any disputed exclusion requests.

12.     Any member of the Settlement Class who elects to be excluded shall not receive any benefits of the settlement, shall not be bound by the terms of the Settlement Agreement, and shall have no standing to object to the settlement or intervene in the litigation. If the settlement is granted final approval, all Settlement Class Members who do not timely submit a valid request for exclusion will be bound by the order of final approval and final judgment, and enjoined from bringing or prosecuting any action relating to the released claims.

13.     Any Settlement Class Member who does not submit a valid and timely request for exclusion may submit an objection to the Settlement Agreement. The written objection must satisfy the requirements described in the Long Form Notice. An objection must be electronically filed or received (and not just postmarked) no later than [28 days before Final Approval Hearing], or it will be rejected.

14.     Any Settlement Class Member shall have the right to appear and be heard at the Final Approval hearing, either personally or through an attorney retained at the Settlement Class Member's own expense, provided they file a request to be heard and/or objection as described in the Long Form Notice. However, if the Settlement Class Member wishes to object to the settlement at the Final Approval hearing (either personally or through counsel), the Settlement Class Member must submit a written objection as set forth in the prior paragraph of this Order.

15.     Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. No later than [14 days prior to Final Approval], Plaintiff's Counsel shall file all such objections and supporting documentation with the Court.

16.     Plaintiff shall file his motions for Final Approval and for any award of attorneys' fees, costs, expenses, and Class Representative Payment no later than [42 days prior to Final Approval], and the reply in support of that motion and responses to any objections and requests

to intervene no later than [14 days prior to Final Approval]. Those motions and all supporting documentation shall simultaneously be posted to the Settlement Website.

17.     No later than [14 days prior to Final Approval], the Claim Administrator shall provide a declaration to the Court regarding the number and dollar amount of claims received to date.

18.     In the event that the proposed settlement is not finally approved by the Court, or in the event that the Settlement Agreement becomes null and void or terminates pursuant to its terms, this Preliminary Approval Order and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in these cases or in any other case or controversy; in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

19.     This Order shall not be construed as an admission or concession by P&G of the truth of any allegations made by the Plaintiff or of liability or fault of any kind. This Order shall also not be construed as an admission or concession by Plaintiff of any weakness or infirmity of any claim or allegation made by the Plaintiff in this Action.

20.     The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members. The Final Approval Hearing may, from time to time and without further notice to the Settlement Class Members, be continued by Order of the Court. However, any continuance by the Court will be noted on the Settlement Website.

        **IT IS SO ORDERED** this _____ day of _____, 2020.


                                        _____
                                        HON. PAMELA K. CHEN
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

<table>
<tr><td>

MUST BE
SUBMITTED
NO LATER THAN,
**MONTH X, 2020**

</td><td>

For Office Use Only

</td></tr>
</table>

| Class Member ID: | **Charmin Freshmates Class Action Settlement** |
|---|---|
| 3100000000000 | **[Downloadable] Claim Form** |

To make a claim under the settlement, you must complete this form and mail it to the address below. (Alternatively, you can complete and submit the online claim form at www.BelfioreWipeSettlement.com/claimform.)   All information will be kept private. Your claim form must be received, not just postmarked, by __, 2020. It will not be disclosed to anyone other than the Court, the Claim Administrator, and the Parties in this case, and their counsel, and will be used only for purposes of administering this settlement. Importantly, your submission, whether online or by mail, will be submitted to a federal court and subject to the penalty of perjury carrying penalties under U.S. laws including criminal, civil and financial penalties for fraudulent submissions.

This settlement involves Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label (the "Product"). If your claim is validated and the Court approves the settlement, you will receive a refund of (i) seventy cents ($0.70) for every package of the Product you purchased in New York between April 6, 2011 and [date of preliminary approval],if you do not have Proof of Purchase; or one dollar and twenty cents ($1.20) for the first package not just purchased (and $1.00 for any additional packages purchased) if you submit Proof of Purchase. **If you do not submit Proof of Purchase, your total refund will be limited to $6.30 per household. Proof of Purchase means the actual label or bar code portion of the package of the Product (not a photocopy or digital image), or the original or photocopy or digital image of an itemized sales receipt originally generated by a retail seller showing the date and place of purchase, name of the product purchased, and the amount paid. Even if you submit Proof of Purchase, your total refund will be limited to $50.20 per household.**

Refunds will be issued after the Settlement's Effective Date. Please save a copy of this completed form and your Proof of Purchase for your records. **For further information, visit [URL]. In order to receive a refund, you must complete all of the information below and on the following pages, as well as sign and date the form.**

---

**Name:** _____  _____  _____
       *First Name*                  *M.I.*        *Last Name*

**Street Address:** _____

**City:** _____

**State:** ____ ____        **Zip Code:** __ __ __ __ __ - __ __ __ __ (zip4 optional)

**Email Address:** _____ @ _____

---

**I purchased:**  [Insert total number here] _____ packages of the Product between May 23, 2011 and [DATE OF PRELIM. APPROVAL]. Please list the retailer(s) and in which state(s) you purchased the Product:

    (1) Number of packages:____ Store Name(s):_____ State(s): _____
    (2) Number of packages:____ Store Name(s):_____ State(s): _____
    [attach additional sheets if needed]

These purchases were not made in a state other than New York, and were not for purpose of resale to others. I certify under penalty of perjury under the laws of the United States that all of the foregoing is true and correct.

**SIGNATURE:** _____    **PRINTED NAME:** _____

**DATED:**  ___ ___ / ___ ___ / ___ ___ ___ ___

**Mail, WITH YOUR PROOF OF PURCHASE, IF ANY, to: Freshmates Settlement Claim Administrator, [address]**

# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of himself and others similarly situated, | Case No. 2:14-cv-04090-PKC |
| Plaintiff, | [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| PROCTER & GAMBLE CO., | |
| Defendant. | |

On May 23, 2014, Anthony Belfiore filed a class action complaint against P&G in the
Supreme Court of the State of New York, County of Nassau, Case No. 602364/2014 (the
"Action").  On July 1, 2014, P&G removed the Action to the United States District Court,
Eastern District of New York, where it was assigned Case No. 2:14-cv-04090-JBW-RML, now
2:14-cv-04090-PKC-RML.  In his complaint, Belfiore alleges that P&G manufactures and
markets pre-moistened personal hygiene wipes under the name Charmin Freshmates Flushable
Wipes.  Belfiore further alleges that, although the packaging on the wipes states that the wipes
are "flushable," "septic safe," and "safe for sewer and septic systems," the wipes are not suitable
for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system
operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic
systems, and sewage lines and pumps.  Belfiore alleges in his complaint that P&G is liable for
violation of New York General Business Law § 349.

P&G denies that there is any factual or legal basis for Plaintiff's allegations. It contends
that the labeling of the Charmin Freshmates product is truthful and non-misleading, and that
purchasers did not pay a "premium" for the wipes as the result of any misrepresentations. P&G
therefore denies any liability. P&G also denies that Plaintiff or any other members of the
settlement class have suffered injury or are entitled to monetary or other relief. P&G denies that
this case should have been certified as a class action, except for purposes of settlement.

On _____, this Court granted preliminary approval of a proposed settlement between the
parties. In the Preliminary Approval Order, *see* Dkt. No. __, the Court provisionally certified a
Settlement Class of all Persons, other than Excluded Persons, who purchased the Product in New
York between May 23, 2011 and [the date of Preliminary Approval], excluding purchases for
purposes of resale. "Products" means Charmin Freshmates Flushable Wipes and any other pre-
moistened wipes sold under the Charmin brand name bearing the word "flushable" on the
package label. The Court also approved the procedures for giving notice and the forms of notice.
Additionally, in the Preliminary Approval Order, the Court concluded that the Parties' proposed
settlement, as set forth in the Settlement Agreement, was within range of possible final approval.

Now pending before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement, and Plaintiff's Motion for an Award of Attorneys' Fees and Costs and a Class Representative Payment. In accordance with the Preliminary Approval Order and the Settlement Agreement, on _____, the Court held a duly noticed Fairness Hearing for purposes of: (a) determining the fairness, adequacy, and reasonableness of the settlement; and (b) ruling upon an application by Class Counsel for an award of fees, costs, and expenses, and a Class Representative Payment.

The Parties and the Claim Administrator have submitted evidence, which the Court accepts, showing the following. Approximately _____ advertisement impressions were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class. These ads were purchased through [ ]. Notice also was published [ ] times in the _____. These print publications have combined circulation of _____ and combined readership of _____. A press release was issued through the _____ network which is distributed to more than ____ media outlets, and articles about the settlement appeared in at least ___ publications. All of the online notices linked to, and the printed notices referred to, the Settlement Website, which contains a detailed class notice, including the procedures for Settlement Class Members to exclude themselves or object to the settlement, as well as a copy of the Settlement Agreement and motion papers filed in connection with the settlement.

A total of ___ persons filed timely requests to opt out of the Settlement Class.

In addition, ___ persons filed objections to the settlement. [Discuss substance of objections.]

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this Action, and good cause appearing therefore, the Court hereby grants the Motion for Final Approval, and finds and concludes as follows:

1.      The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.      The Court has jurisdiction over these cases and over all claims raised therein and

all Parties thereto.

3.      The Court reaffirms its findings at preliminary approval that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

4.      For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All Persons who purchased the Product in New York between May 23, 2011 and [the date of Preliminary Approval], excluding purchases for purposes of resale.

5.      Excluded from the Settlement Class are (1) Honorable Pamela K. Chen, Honorable Jack B. Weinstein, Honorable Robert M. Levy and Honorable Steven M. Gold, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (6); and persons or entities who purchased the Product for resale; and (7) any persons who timely excluded themselves from the Settlement Class. The following persons timely submitted requests to exclude themselves and shall be excluded from the settlement class: [ ].

6.      For the purpose of this settlement, the Court hereby finally certifies Plaintiff Anthony Belfiore as Class Representative, and Wolf Popper as Settlement Class Counsel.

7.      The Parties complied in all material respects with the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class of the pendency of the litigation; the existence and terms of the Settlement Agreement; their rights to make claims, exclude themselves, or object; and the matters to be decided at the Final Approval Hearing. Further, the Notice Plan satisfied the requirements of the United States and New York Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law.

8.      The Court has determined that full opportunity has been given to the members of the Settlement Class to exclude themselves from the settlement, object to the terms of the settlement or to Class Counsel's request for attorneys' fees, costs, and expenses and for payments to the Class Representative, and otherwise participate in the Final Approval Hearing held on [      ] 2020. The Court has considered all submissions and arguments made at the final approval hearing provided by Settlement Class Members objecting to the settlement as well as the Plaintiff's responses to those objections, and has determined, for all the reasons set forth in those responses, that none of the objections have any merit or warrant disapproval of the Settlement Agreement.  In addition, [          ]. All such objections to the settlement are overruled.

9.      The Court finds that the settlement is in all respects fair, reasonable, and adequate. The Court therefore finally approves the settlement for all the reasons set forth in the Motion for Final Approval including, but not limited to, the fact that the Settlement Agreement was the product of informed, arms-length negotiations between competent, able counsel; the record was sufficiently developed and complete through meaningful discovery and motion proceedings to have enabled counsel for the Parties to have adequately evaluated and considered the strengths and weaknesses of their respective positions; the cases involved disputed claims, and these disputes underscore the uncertainty and risks of the outcome in this matter; the settlement

provides meaningful remedial and monetary benefits for the disputed claims; and the Parties were represented by highly qualified counsel who, throughout this case, vigorously and adequately represented their respective parties' interests.

10.     The Settlement is in the best interests of the Settlement Class in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the class claims. The relief provided to the Settlement Class Members under the Settlement Agreement is appropriate as to the individual members of the Settlement Class and to the Settlement Class as a whole. All requirements of statute, rule, and Constitution necessary to effectuate the settlement have been met and satisfied. The Parties shall continue to effectuate the Settlement Agreement in accordance with its terms.

11.     P&G is enjoined as follows for two years from the Effective Date, as defined in the Settlement Agreement:

> (a)     P&G will maintain its modification of the packaging of the Product to include a statement that "Your satisfaction is guaranteed. For details of our refund program go to our website at https://www.charmin.com/en-us/about-us/flushable-wipes-guarantee." P&G provides details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product;

> (b)     P&G will maintain its modification of the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems";

> (c)     On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to exclude the statements "septic safe" and "safe for sewer and septic systems."

> (d)     The Product will maintain its compliance with the May 2018 more stringent INDA GD4 test protocols which (1) decrease the slosh box test duration from 180 minutes to 60 minutes, (2) increase the slosh box text pass-through percentage requirement from 25% to 60%, and (3) decrease the municipal pump test average power increase over baseline from 15% to 5%.

> (e)     The Product will comply with current and future versions of the INDA Guideline, including the slosh box test, provided P&G is a

member of INDA and the organization maintains the same purpose and mission, with a similar membership composition, as on the date of the Settlement Agreement.

12.     For avoidance of doubt, the distribution or sales by P&G of residual Product manufactured prior to the implementation of the labeling changes described in paragraph 11; or the distribution or sales by third parties of residual Product manufactured prior to the implementation of the labeling changes described in paragraph 11, shall not constitute a violation of the injunction issued herein.

13.     All Valid Claims shall be paid according to the terms of, and by the deadlines set forth, in the Settlement Agreement.

14.     By operation of this Final Approval Order and Judgment, Plaintiff on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Action, based upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Action, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

15.     By operation of this Final Approval Order and Judgment, Settlement Class Members shall have released and forever discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature

whatsoever, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that were, or could have been, asserted in the Action regarding (i) the flushability or (ii) the safety for sewer and septic of the Product and statements concerning the Product's (i) flushability or (ii) safety for sewer and septic, except that there shall be no release of claims for personal injury or property damage allegedly caused by use of the Product, nor any release of claims for purchases made outside of New York.

16.     Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

17.     No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. P&G's agreement not to oppose the entry of this Final Approval Order and Judgment shall not be construed as an admission or concession by P&G that class certification was appropriate in the cases or would be appropriate in any other action. Similarly, neither the Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any weakness or affirmity of any claim asserted in the Action by Plaintiff.

18.     For the reasons stated in the separate Order on Class Counsel's application for an award of attorneys' fees, costs, expenses and Class Representative Payment, the following amounts shall be paid by P&G:

a.      Fees, costs, and expenses to Class Counsel: $_____

b.      Class representative payment to Plaintiff Anthony Belfiore: $ _____

Such amounts shall be paid according to the terms of the Settlement Agreement.

19.     This order shall constitute a final judgment binding the Parties with respect to this case.

20.     Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the interpretation, implementation and enforcement of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions *ex ante*.

21.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

**IT IS SO ORDERED** this ____ day of _____, 2020.


                                        _____
                                        Honorable Pamela K. Chen
                                        United States District Court Judge

# EXHIBIT E

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————— x
                               :
                               :
ANTHONY BELFIORE on behalf of himself and   :
others similarly situated,                :     17-1861-cv
                               :
              Plaintiff-Appellees,       :
                               :
            -against-              :    **STIPULATION OF**
                               :    **VOLUNTARY DISMISSAL OF**
THE PROCTER & GAMBLE COMPANY,    :    **APPEAL WITH PREJUDICE**
                               :
            Defendant-Appellant.    :
                               :
                               :
———————————————————— x

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned

counsel for the respective parties, that pursuant to Rule 42(b) of the Federal Rules of Appellate

Procedure, the above-captioned appeal is withdrawn with prejudice, each party to bear its own

costs and attorneys' fees.

Dated: _____, __, 2020
        New York, New York

Kramer Levin Naftalis & Frankel LLP         Wolf Popper LLP


By:_____     By:_____
     Harold P. Weinberger                   Matthew Insley-Pruitt

1177 Avenue of the Americas              845 Third Avenue
New York, NY  10036                     New York NY 10022
(212) 715-9100                           (212) 759-4600

Attorneys for Defendant-Appellant       Attorneys for Plaintiff-Appellee


So Ordered:


_____