**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY BELFIORE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>        Defendant. | 14 Civ. 4090 (PKC)(RML)<br><br>**DECLARATION OF MATTHEW INSLEY-PRUITT IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF OUT-OF-POCKET EXPENSES AND CLASS REPRESENTATIVE PAYMENT** |

I, MATTHEW INSLEY-PRUITT, declare as follows:

1.      I am a member of the bars of the State of New York and of this Court.  I am a partner at Wolf Popper LLP, counsel for plaintiff Anthony Belfiore.  I make this declaration in support of Plaintiff's Unopposed Motion for Final Approval of Settlement and Application for Attorneys' Fees and Reimbursement of Out-Of-Pocket Expenses and Class Representative Payment.

2.      Based on our reasoned judgment, Class Counsel[1] believe the proposed Settlement is fair and reasonable.

3.      I and my firm have been thoroughly involved in litigating this Action for six years. The action was originally filed in the Supreme Court of the State of New York in Nassau County on May 23, 2014.  Defendant removed it to this Court on July 1, 2014.  ECF No. 1.

4.      On October 3, 2014, Defendant's fully-briefed motion to dismiss and strike class allegations was filed.  ECF Nos. 17, 18, 19.  Defendant raised arguments in this motion that were

---

[1]      Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement attached to my prior declaration as Exhibit 1.  ECF No. 351-3.

repeated throughout the litigation, such as the appropriateness of class certification—particularly with respect to the availability of damages—and Plaintiff's ability to seek injunctive relief under Article III.  ECF No. 17.

5.      On November 14, 2014, Judge Weinstein held a conference with this case and the coordinated case, *Kurtz v. Kimberly-Clark Corp., et al.*, 14-cv-01142 (the "*Kimberly-Clark Action*"), which Mr. Belfiore attended in person.  Judge Weinstein denied the motion to dismiss from the bench, and allowed limited expedited discovery for class certification, with opposing motions to grant and deny class certification due within 60 days.  ECF No. 33.  A written decision on the motion dismiss was filed on March 25, 2015.  ECF No. 78.

6.      The parties acted quickly to accomplish the necessary discovery.  They exchanged initial disclosures within ten days, submitted a proposed protective order on December 1, 2014 (ECF No. 34), responded to discovery requests by December 8, and began producing documents a few days later.  By the time the settlement was reached, Defendant had produced, and Plaintiff had reviewed, more than 80,000 pages of documents.

7.      Within this time frame, the parties also had several discovery disputes, and there were two conferences before Magistrate Judge Levy regarding the scope of Defendant's production.  *See* ECF Nos. 55, 56.

8.      Defendant took the depositions of the plaintiff (Mr. Belfiore) as well as his wife (Alison Belfiore) and even Mr. Belfiore's plumber (Luis Sudberg).  Plaintiff also allowed Defendant's plumber to come and inspect his home, including running a camera through the pipes under his floor.  Plaintiff's counsel was present at this inspection.

9.      Plaintiff's counsel also took the depositions of four of Defendant's employees pursuant to Rule 30(b)(6) in Cincinnati, Ohio, in advance of class certification.

2

10.     Plaintiff issued fifteen subpoenas to third parties seeking information relevant to class certification, including consumer advocates (such as Consumers Union of United States, Inc., publisher of Consumer Reports); industry groups (such as INDA and NACWA); wastewater organizations (such as PARSA and the City of Kirkland, WA); entities with sales information (such as Nielson and IRI); retailers (such as Amazon, Walgreens, and Walmart); and manufacturers.  In addition to dealing with these third parties, Plaintiff's counsel also had to contend with the objections lodged by the defendants in the *Kimberly-Clark* Action and their effort to quash the subpoenas.  *See* ECF No. 52.  Plaintiff eventually moved to compel some third parties to produce documents pursuant to the issued subpoenas.  *See* ECF No. 123.

11.     The parties then filed their opposing motions on class certification on February 27, 2015.  ECF Nos. 58, 59.  The motions included expert reports in support and opposition of both sides' motions.  Plaintiff's damages expert, Mr. Colin Weir, prepared his report based in part on the data sets received in discovery, but he did not run the model to actually produce a result at that time.

12.     After the class certification motions were fully briefed and before the oral argument, Judge Weinstein conducted evidentiary hearings to determine the technology underlying flushable wipes (the "Science Day Hearings") on June 19 and July 21, 2015.  On the first hearing date, Plaintiff's counsel presented the expert opinion of Harold Zitimor (who was deposed previously in Milwaukee, Wisconsin) and cross-examined the multiple witnesses presented by P&G and the defendants in the *Kimberly-Clark* Action.  On the second Science Day Hearing, Plaintiff's counsel presented the testimony of Robert Villee, the Executive Director of the Plainfield Area Regional Sewer Authority, who has performed multiple independent

examinations of the performance of flushable wipes at both his own facilities and at the invitation of several manufacturers.

13.     Around the same time, the Federal Trade Commission (the "FTC") entered into an agreement with Nice-Pak Products, Inc., one of the manufacturers of flushable wipes at issue in the *Kimberly-Clark* Action.  The parties made several submissions regarding the impact of this and similar agreements.  *See, e.g.*, ECF Nos. 94, 96, and 100.

14.     The Court heard oral argument on Plaintiff Belfiore's motion for class certification on August 12, 2015.  ECF No. 126.  At the request of Judge Weinstein, the parties also submitted additional briefing on the application of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to Section 901(b) of the C.P.L.R. and the statutory damages provision of N.Y.G.B.L. § 349(h).  ECF Nos. 129, 130.  The parties then submitted more briefing on the issue of whether the Court should stay the case and refer it to the FTC pursuant to the primary jurisdiction doctrine.  ECF Nos. 146, 148.  Plaintiff's counsel also moved to amend the Protective Order in order to share relevant documents with the FTC.  ECF No. 171.

15.     Judge Weinstein issued an opinion on the class certification motion that stayed the case and referred the matter to the FTC.  ECF No. 149.  The parties then appeared at additional hearings before Judge Weinstein (ECF 150), where Plaintiff Belfiore made an oral motion for reconsideration, which was fully briefed.  The Court then held additional oral argument on the motion for reconsideration on October 21, 2015, which was denied the following day.  ECF Nos. 159, 160.  The plaintiff in the *Kimberly-Clark* Action also made a motion to lift the similar stay in that case, and Plaintiff's counsel also attended that hearing per the Court's order.  ECF No. 166.  This motion was also denied in an opinion by Judge Weinstein.  ECF No. 170.

4

16.     After the FTC responded to Plaintiff Belfiore's inquiry in July 2016, the Court invited additional briefing on how the case should proceed, and had a series of status conferences in the fall of 2016.

17.     Following the FTC's response, P&G filed a new motion to dismiss, deny class certification, or for summary judgment.  ECF No. 222.  Plaintiff opposed this motion as well.

18.     At related hearings on February 2 and 3, 2017, Judge Weinstein indicated that he would grant class certification, and his opinion later issued on March 27, 2017.  ECF No. 252.

19.     Defendant then moved for leave to appeal the class certification decision pursuant to Rule 23(f), which the Second Circuit granted over Plaintiff's opposition.  ECF No. 253.  The parties briefed the appeal in the Second Circuit and participated in the oral argument on April 10, 2019.  After the argument, the Second Circuit issued its mandate directing Judge Weinstein to receive additional evidence and consider the predominance issues relating to the class certification motion.  ECF No. 274.

20.     Judge Weinstein then ordered the parties to appear at a three-day evidentiary hearing to address the issues in the mandate.  The parties appeared again before Judge Weinstein on June 18, 2019, to discuss the proposed evidentiary hearing and the impact of P&G's 49-state *Pettit* Settlement.  ECF No. 287.

21.     The parties then conducted additional expert discovery at a rapid pace, including preparing additional expert reports that included the actual implementation by Plaintiff's damages expert—Mr. Weir—of his proposed hedonic regression analysis performed on the new data set received pursuant to a third-party subpoena.  *See* ECF No. 295.  Defendant's expert also prepared her own supplemental report criticizing the work performed by Mr. Weir.  Defendant deposed Mr. Weir in Boston on July 26, 2019.

22.     In the middle of these preparations for the evidentiary hearing, Defendant moved once more to decertify the class based in large part on the settlement in the *Pettit* Action and a repetition of other prior arguments, which Plaintiff opposed.  ECF Nos. 294, 302.

23.     On August 6, 7, 8, and 12, 2019, the Court held evidentiary hearings on the Plaintiff's ability to determine damages on a classwide basis.  Plaintiff's counsel presented the testimony of Mr. Weir, and Defendants in this action and the *Kimberly-Clark* Action presented three different expert witnesses to attack Mr. Weir's analysis.

24.     Based on the discussions in the hearing, Plaintiff also moved to modify the class definition to bring the class period to the present.  ECF No. 307.

25.     The parties then filed detailed post-evidentiary hearing briefing, reviewing the testimony presented at the hearing.  ECF Nos. 320, 321.  Further oral argument was held to discuss the hearing on October 8, 2019.  On October 25, 2019, Judge Weinstein reaffirmed the decision to certify the class.  ECF No. 335.

26.     As expected, Defendant renewed their appeal of the class certification decision in the Second Circuit, and Plaintiff filed an opposition brief.

27.     Settlement discussions in this matter were conducted over the course of several years.  For example, the parties met with Magistrate Judge Levy to discuss a potential settlement as early as August 12, 2015 and continuing into 2016.  Many of these discussions in that time period included counsel for plaintiffs in the *Pettit* Action in an effort to resolve the dispute on a nationwide basis.  Judge Weinstein not only repeatedly encouraged the parties to engage in settlement discussions, he also encouraged them to consider whether aggregate agency resolution would be appropriate.  ECF No. 179.  The parties renewed settlement discussions in 2019, including under the supervision of Chief Magistrate Judge Steven M. Gold.

28.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff employee of my firm—Wolf Popper LLP—who was involved in this Action, and the lodestar calculation based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates of such person in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.  Because Plaintiff's counsel's lodestar is so large, timekeepers with fewer than 40 hours recorded have been removed.

29.     Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.  As the Settlement approval process proceeds, my firm will spend a substantial amount of time preparing for the final approval hearing, addressing any objections, and overseeing the administration of the Settlement funds.  This additional time will not be separately compensated.

30.     The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as current rates charged for their services in noncontingent matters and/or which have been utilized in the lodestar cross-check accepted in other securities or shareholder litigation.

31.     The total number of hours expended on this Action by my firm from its inception through and including May 31, 2020, is 7,596. The total lodestar for my firm for that period is $5,407,974.50.

32.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7

33.     As detailed in Exhibit 2, my firm has incurred a total of $202,838.07 in unreimbursed expenses in connection with the prosecution of this Action.

34.     The expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.  The most significant expenses were incurred in connection with the retention and use of experts/consultants, travel and depositions, legal research and copying.  Overhead expenses of the firm are not included in Exhibit 2 and Plaintiff's counsel are not seeking reimbursement for such overhead expenses.

35.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this Action.

36.     The Claim Administrator (Heffler Claims Group) has been providing Plaintiff's Counsel with updates on the claims administration and notice process.  As of June 5, 2020, Settlement Class Members have made 39,238 total claims, with only five (5) requests for exclusion and zero (0) objections to any part of the Settlement or the fee and expense application since the Court granted preliminary approval of the Settlement.

37.     Attached as Exhibit 4 is the Declaration of Anthony Belfiore.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of June, 2020 at Baltimore, Maryland.

       /s/ Matthew Insley-Pruitt
         Matthew Insley-Pruitt