UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ANTHONY BELFIORE, on behalf of himself
and others similarly situated,

                    Plaintiff,

      - against -

PROCTER & GAMBLE CO.,

                    Defendant.
------------------------------------------------------x

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
14-CV-04090 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

On May 23, 2014, Anthony Belfiore filed a class action complaint against P&G in the Supreme Court of the State of New York, County of Nassau, Case No. 602364/2014 (the "Action"). (Dkt. 1.) On July 1, 2014, P&G removed the Action to the United States District Court, Eastern District of New York, where it was assigned Case No. 14-CV-04090-JBW-RML, now 14-CV-04090-PKC-RML. (*Id.*) In his Complaint, Belfiore alleges that P&G manufactures and markets pre-moistened personal hygiene wipes under the name Charmin Freshmates Flushable Wipes. (Dkt. 1, at ECF[1] 8.) Belfiore further alleges that, although the packaging on the wipes states that the wipes are "flushable," "septic safe," and "safe for sewer and septic systems," the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps. (*Id.* at ECF 8–18.) Belfiore alleges in his Complaint that P&G is liable for violation of New York General Business Law § 349. (*Id.* at ECF 20–21.)

---

[1] Citations to ECF refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

P&G denies that there is any factual or legal basis for Plaintiff's allegations. It contends that the labeling of the Charmin Freshmates product is truthful and non-misleading, and that purchasers did not pay a "premium" for the wipes as the result of any misrepresentations. P&G therefore denies any liability. P&G also denies that Plaintiff or any other members of the settlement class have suffered injury or are entitled to monetary or other relief. P&G denies that this case should have been certified as a class action, except for purposes of settlement.

On March 6, 2020, this Court granted preliminary approval of a proposed settlement between the parties. In the Preliminary Approval Order, the Court provisionally certified a Settlement Class of all Persons, other than Excluded Persons, who purchased the Product in New York between May 24, 2011[2] and March 6, 2020, excluding purchases made for purposes of resale. (Preliminary Approval Order, Dkt. 352, ¶ 3.) "Products" means Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label. The Court also approved the procedures for giving notice and the forms of notice. (*Id.* ¶¶ 6, 9–11.) Additionally, in the Preliminary Approval Order, the Court concluded that the Parties' proposed settlement, as set forth in the Settlement Agreement, was within range of possible final approval. (*Id.* ¶ 2.)

Now pending before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement, and Plaintiff's Motion for an Award of Attorneys' Fees and Costs and a Class Representative Payment. (Dkt 358.) In accordance with the Preliminary Approval Order and the Settlement Agreement, on July 23, 2020, the Court held a duly noticed Fairness Hearing for purposes of: (a) determining the fairness, adequacy, and reasonableness of the settlement; and (b)

---

[2] The Preliminary Approval Order specifies this date as May 24, 2011, which is hereby corrected *nunc pro tunc* to May 23, 2011, based on the dates specified in the Settlement Agreement, Notice, and Claim Form. (*See* Dkt. 351-3, ECF 2, 8, 41–42, 53, 69.)

2

ruling upon an application by Class Counsel for an award of fees, costs, and expenses, and a Class Representative Payment. (*See* July 23, 2020 Minute Entry.)

The Parties and the Claim Administrator have submitted evidence, which the Court accepts, showing the following. Approximately 38 million online impressions targeted to reach potential members of the Settlement Class were displayed via cross-device targeting on mobile and desktop. Impressions ran on multiple inventory exchanges, Google search, and the social networking sites Facebook and Instagram. Notice was also published once in the New York edition of *People Magazine*, which has a circulation of 119,700 and a readership of 1,214,955. A press release was issued across PR Newswire's US1 and Hispanic New York State Newslines. Approximately 260 news mentions of the settlement resulted from the press releases. All of the online notices linked to, and the printed notices referred to, the Settlement Website, which contains a detailed class notice, including the procedures for Settlement Class Members to exclude themselves or object to the settlement, as well as a copy of the Settlement Agreement and motion papers filed in connection with the settlement.

A total of nine (9) persons filed timely requests to opt out of the Settlement Class; however, none of these individuals appear to be Settlement Class Members because they provide addresses outside of New York.

In addition, no persons filed objections to the settlement.

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this Action, and good cause appearing therefore, the Court hereby grants the Motion for Final Approval, and finds and concludes as follows:

1. The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2. The Court has jurisdiction over these cases and over all claims raised therein and all Parties thereto.

3. The Court reaffirms its findings at preliminary approval that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

4. For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All Persons who purchased the Product in New York between May 23, 2011 and March 6, 2020,[3] excluding purchases for purposes of resale.

5. Excluded from the Settlement Class are (1) Honorable Pamela K. Chen, Honorable Jack B. Weinstein, Honorable Robert M. Levy and Honorable Steven M. Gold, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has

---

[3] As discussed *supra*, the Court certifies the Settlement Class with these dates based on the dates specified in the Settlement Agreement, Notice, and Claim Form (Dkt. 351-3, ECF 2, 8, 41–42, 53, 69), and not on the dates specified in the Preliminary Approval Order (Dkt. 352).

a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (6); and persons or entities who purchased the Product for resale; and (7) any persons who timely excluded themselves from the Settlement Class. The following persons timely submitted requests to exclude themselves and shall be excluded from the settlement class: Cindy Wagner, Deborah Dumas, Frank Bologna, Thomas Valentine, Brian Bailey, Zena Mobley, Sarah Hughes, Sylvia Poole, and Carol Thomas.

6. For the purpose of this settlement, the Court hereby finally certifies Plaintiff Anthony Belfiore as Class Representative, and Wolf Popper as Settlement Class Counsel.

7. The Parties complied in all material respects with the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class of the pendency of the litigation; the existence and terms of the Settlement Agreement; their rights to make claims, exclude themselves, or object; and the matters to be decided at the Final Approval Hearing. Further, the Notice Plan satisfied the requirements of the United States and New York Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law.

8. The Court has determined that full opportunity has been given to the members of the Settlement Class to exclude themselves from the settlement, object to the terms of the settlement or to Class Counsel's request for attorneys' fees, costs, and expenses and for payments to the Class Representative, and otherwise participate in the Final Approval Hearing held on July 23, 2020. The Court has considered all submissions and arguments made at the final approval hearing.

9. The Court finds that the settlement is in all respects fair, reasonable, and adequate.

The Court therefore finally approves the settlement for all the reasons set forth in the Motion for Final Approval including, but not limited to, the fact that the Settlement Agreement was the product of informed, arms-length negotiations between competent, able counsel; the record was sufficiently developed and complete through meaningful discovery and motion proceedings to have enabled counsel for the Parties to have adequately evaluated and considered the strengths and weaknesses of their respective positions; the cases involved disputed claims, and these disputes underscore the uncertainty and risks of the outcome in this matter; the settlement provides meaningful remedial and monetary benefits for the disputed claims; and the Parties were represented by highly qualified counsel who, throughout this case, vigorously and adequately represented their respective parties' interests.

10. The settlement is in the best interests of the Settlement Class in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the class claims. The relief provided to the Settlement Class Members under the Settlement Agreement is appropriate as to the individual members of the Settlement Class and to the Settlement Class as a whole. All requirements of statute, rule, and Constitution necessary to effectuate the settlement have been met and satisfied. The Parties shall continue to effectuate the Settlement Agreement in accordance with its terms.

11. P&G is enjoined as follows for two years from the Effective Date, as defined in the Settlement Agreement:

> (a) P&G will maintain its modification of the packaging of the Product to include a statement that "Your satisfaction is guaranteed. For details of our refund program go to our website at https://www.charmin.com/en-us/about-us/flushable-wipes-guarantee." P&G provides details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product;

6

(b) P&G will maintain its modification of the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems";

(c) On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to exclude the statements "septic safe" and "safe for sewer and septic systems."

(d) The Product will maintain its compliance with the May 2018 more stringent INDA GD4 test protocols which (1) decrease the slosh box test duration from 180 minutes to 60 minutes, (2) increase the slosh box text pass-through percentage requirement from 25% to 60%, and (3) decrease the municipal pump test average power increase over baseline from 15% to 5%.

(e) The Product will comply with current and future versions of the INDA Guideline, including the slosh box test, provided P&G is a member of INDA and the organization maintains the same purpose and mission, with a similar membership composition, as on the date of the Settlement Agreement.

12. For avoidance of doubt, the distribution or sales by P&G of residual Product manufactured prior to the implementation of the labeling changes described in paragraph 11; or the distribution or sales by third parties of residual Product manufactured prior to the implementation of the labeling changes described in paragraph 11, shall not constitute a violation of the injunction issued herein.

13. All Valid Claims shall be paid according to the terms of, and by the deadlines set forth, in the Settlement Agreement.

14. By operation of this Final Approval Order and Judgment, Plaintiff on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Action, based

upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Action, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff, on the one hand, and P&G, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

15. By operation of this Final Approval Order and Judgment, Settlement Class Members shall have released and forever discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that were, or could have been, asserted in the Action regarding (i) the flushability or (ii) the safety for sewer and septic of the Product and statements concerning the Product's (i) flushability or (ii) safety for sewer and septic, except that there shall be no release of claims for personal injury or property damage allegedly caused by use of the Product, nor any release of claims for purchases made outside of New York.

16. Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

17. No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or

construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. P&G's agreement not to oppose the entry of this Final Approval Order and Judgment shall not be construed as an admission or concession by P&G that class certification was appropriate in the cases or would be appropriate in any other action. Similarly, neither the Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any weakness or affirmity of any claim asserted in the Action by Plaintiff.

18. For the reasons stated in the separate Order on Class Counsel's application for an award of attorneys' fees, costs, expenses and Class Representative Payment, the following amounts shall be paid by P&G:

a. Fees, costs, and expenses to Class Counsel: $3,200,000.00.

b. Class representative payment to Plaintiff Anthony Belfiore: $10,000.00.

Such amounts shall be paid according to the terms of the Settlement Agreement.

19. This Order shall constitute a final judgment binding the Parties with respect to this

case.

20. Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void, and the Parties shall be returned to their respective positions *ex ante*.

21. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 27, 2020
      Brooklyn, New York