1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - X
3
   ANTHONY BELFIORE, on behalf   :
4  of himself and all others
   situated,                     :    14-CV-4090(PKC)
5
              Plaintiffs,        :
6                                     United States Courthouse
              -against-          :    Brooklyn, New York
7
   THE PROCTER & GAMBLE COMPANY, :
8                                     July 23, 2020
              Defendant.         :    11:00 o'clock a.m.
9
   - - - - - - - - - - - - - - X
10

11        TRANSCRIPT OF MOTION HEARING VIA TELECONFERENCE
            BEFORE THE HONORABLE PAMELA K. CHEN
12              UNITED STATES DISTRICT JUDGE.

13 APPEARANCES:

14 For the Plaintiffs:         WOLF POPPER LLP
                               845 Third Avenue, 12th Floor
15                             New York, NY 10022

16                             BY: MATTHEW INSLEY-PRUITT, ESQ.
                                   CHET B. WALDMAN, ESQ.
17                                 PHILIP BLACK, ESQ.

18
   For the Defendant:          KRAMER LEVIN NAFTALIS
19                                & FRANKEL, LLP
                               1177 Avenue of the Americas
20                             New York, NY 10036

21                             BY:  HAROLD P. WEINBERGER, ESQ.

22 Court Reporter:             Charleane M. Heading
                               225 Cadman Plaza East
23                             Brooklyn, New York
                               (718) 613-2643
24
   Proceedings recorded by mechanical stenography, transcript
25 produced by computer-aided transcription.

CMH      OCR      RMR      CRR      FCRR

2

1        (All present by telephone conference.)

2        THE CLERK:  Civil cause for motion hearing, docket

3    14-CV-4090, Belfiore versus The Procter & Gamble Company.

4    Before asking the parties to state their appearances, I would

5    like to note the following.

6        Persons granted remote access to proceedings are

7    reminded of the general prohibition against photographing,

8    recording and rebroadcasting of court proceedings.  Violation

9    of these prohibitions may result in sanctions including

10   removal of court issued media credentials, restricted entry to

11   future hearings, denial of entry to future hearings or any

12   other sanctions deemed necessary by the Court.

13       Would the parties please state their appearances for

14   the record starting with plaintiff.

15       MR. INSLEY-PRUITT:  Good morning.  This is Matthew

16   Insley-Pruitt from Wolf Popper LLP on behalf of plaintiff

17   Anthony Belfiore.  I'm joined here today by my partner Chet

18   Waldman and associate Philip Black also of my firm.

19       THE COURT:  Good morning, Mr. Pruitt, Mr. Waldman

20   and Mr. Black.

21       MR. WALDMAN:  Good morning, Your Honor.

22       THE COURT:  For the defense?

23       MR. WEINBERGER:  Yes, Your Honor.  Thank you.

24   Harold Weinberger from the firm of Kramer Levin Naftalis &

25   Frankel for the defendant The Procter & Gamble Company.

1          THE COURT:  Good morning to you as well.

2          MR. WEINBERGER:  Thank you, Your Honor.

3          THE COURT:  So as everyone is aware, we are here for

4    a final approval hearing of the settlement that has been

5    reached in this matter.  The way we are going to proceed is it

6    is going to be fairly streamlined in light of the written

7    submissions that I have seen so far and what appears to be a

8    settlement without any objectors although I will confirm that

9    in a moment.

10          I have just one general question I wanted to ask

11   about the terms of the settlement and then I will allow the

12   parties to provide any update or supplementation of their

13   written submissions that may be relevant to the approval of

14   the settlement and then we will talk about the mechanics of

15   payment in light of the fact that there are claims forms still

16   forthcoming.  Then I will give some instruction about the

17   completion of the or recent submission and completion of the

18   proposed final order.

19          So is there anything that either side wants to say

20   before I just ask one general question?

21          Mr. Pruitt?

22          MR. INSLEY-PRUITT:  No, Your Honor.

23          THE COURT:  Okay.  Mr. Weinberger?

24          MR. WEINBERGER:  No, Your Honor.

25          THE COURT:  Okay.  Can everyone hear me?

4

1          Mr. Pruitt.

2          MR. PRUITT:  Yes, Your Honor.

3          THE COURT:  Okay.  Mr. Weinberger?

4          MR. WEINBERGER:  Yes.  Yes.

5          THE COURT:  And the court reporter, can you hear me?

6          THE COURT REPORTER:  Yes, Your Honor.  Thank you.

7          THE COURT:  So my one question I have, obviously the

8   parties have done a very good job of explaining all aspects of

9   the settlement, is can you explain, and I guess we'll start

10  with Mr. Pruitt, the difference in how or, rather, the amount

11  of damages that are being awarded to consumers or purchasers

12  who either have a proof of purchase and don't have a proof of

13  purchase.  Obviously, someone who has a proof of purchase is

14  getting more than someone who does not.  What's the rationale

15  behind that?

16         MR. INSLEY-PRUITT:  Well, Your Honor, this is

17  Matthew.

18         THE COURT:  Mr. Pruitt?

19         MR. INSLEY-PRUITT:  Yes.

20         The rationale is simply that a person who has a

21  proof of claim has the stronger case and were this to proceed

22  to trial, it would have a better case for recovery and there

23  are all sorts of related issues with respect to applicability

24  and other arguments as to why one with a proof of claim has a

25  stronger claim than one who does not.  So we thought that a

5

1    settlement that reflected that difference would more

2    appropriately reflect the different situation of the class

3    members.

4              THE COURT:  Okay.  So the ability to recover is

5    different or the potential ability to recover is different as

6    between those two groups?

7              MR. INSLEY-PRUITT:  Yes, Your Honor.

8              THE COURT:  Okay.  Can I ask you a question?  This

9    is more by way of curiosity.

10             Is there any notion too that it protects against

11   fraudulent claims in some way or someone who's, I guess,

12   inclined to just fraudulently claim they bought it is

13   disincentivized by the fact that the recovery is lower?

14             MR. INSLEY-PRUITT:  Well, that's always a part of

15   the back and forth between the parties when negotiating a

16   settlement with respect to the risk of a fraudulent submission

17   and how to strike the balance between incentivizing people to

18   actually file a claim in the first place and disincentivizing

19   someone to file a fraudulent claim.

20             The other issue you have is as you get more

21   requirements with respect to the claim forms, it's more

22   burdensome, it takes longer and it disincentivizes people.  So

23   one of the things that people discuss is the certification or

24   the requirements that are submitted in the claim form.  We

25   think that this strikes a balance of incentivizing someone to

6

1  submit a claim and not submit a false claim. And,

2  furthermore, the claim administrator has a process of by which

3  they review all the claims and there is a cap on a per

4  household basis. So if somebody goes in there and says I

5  bought a billion packages --

6              THE COURT: Right.

7              MR. INSLEY-PRUITT: -- that will not happen.

8  They're going to put a household cap on per claim --

9              THE COURT: Right, of course.

10             MR. INSLEY-PRUITT: -- to disincentivize fraudulent

11 submissions.

12             THE COURT: Can I ask you a question, Mr. Pruitt.

13 If you're on a speakerphone or using a headset, could you

14 actually just use the handheld receiver?

15             MR. INSLEY-PRUITT: Is that better?

16             THE COURT: Yes, much. Thank you. And the same for

17 everyone.

18             MR. INSLEY-PRUITT: Is that better?

19             THE COURT: Yes. As we use this phone system more

20 and more, it's become clear to me that, to repeat the phrase,

21 you're clearer if you actually use a handset instead of either

22 speakers or most headsets.

23             Okay. Thank you for that explanation, Mr. Pruitt.

24             Did you want to add anything, Mr. Weinberger?

25             MR. WEINBERGER: No, I think Mr. Pruitt has done an

7

1    admirable job explaining the rationale.

2          THE COURT:  Okay.  Now, generally, is there anything

3    to update or supplement?  I imagine maybe there's some more

4    claim forms that have been submitted.

5          So, first, Mr. Pruitt, is there anything that the

6    plaintiffs want to report beyond what is contained in the

7    written submission?

8          MR. INSLEY-PRUITT:  Yes, Your Honor.  This is,

9    again, Matthew Insley-Pruitt.

10         So we got an update from the claim administrator.

11   That is, I believe, as of Tuesday, they received 63,000 claim

12   forms.  If after the process of going through those claim

13   forms all of those were to be valid claims, then there would

14   be approximately $350,000 worth of claims distributed.

15         Now, obviously, this number is going to go up

16   because as you noted, the final date for submitting a claim is

17   August 22nd, but the number also might go down if, as I said

18   before, the claim administrator goes through those claims and

19   finds that some were inappropriate or should not be members of

20   the class.  So we don't really know where we're going to land

21   but the numbers have been going up.

22         THE COURT:  Okay.  That's to be expected.  That's

23   good.  Obviously, your efforts to publicize it have been

24   effective as well as the notice.

25         Okay.  Anything else that I should note?

8

1          MR. INSLEY-PRUITT:  No, Your Honor.

2          THE COURT:  Okay.  Mr. Weinberger, did you want to

3     add anything?

4          MR. WEINBERGER:  No, nothing to add, Your Honor.

5     Thank you.

6          THE COURT:  Okay.  So let me mention as well since I

7     had raised this issue as well that the two recent decisions,

8     Kurtz and Berni, in which the Circuit has ruled that a

9     12(b) -- I'm sorry -- 23(b)(2) class of customers who were

10    prior purchasers could not seek or be awarded injunctive

11    relief even in a settlement context which was true in the

12    Berni case, so I had *sua sponte* raised the question to the

13    parties what effect, if any, that would have on the settlement

14    and the plaintiffs responded that it shouldn't have any effect

15    or impact because this case is distinguishable and has been

16    certified previously by Judge Weinstein as a 23(b)(3) class as

17    well as a 23(b)(2) class, but the parties have stipulated to

18    the dismissal of the appeal with respect to the 23(b)(2) class

19    and I am prepared to rule favorably on that issue as well but

20    I did want to mention that I resolved that and neither side

21    need to address that any further.

22          So I will now turn to my ruling and this is

23    obviously based on everything I have before me in this case

24    including the written submissions, the supplementation just

25    now by Mr. Pruitt.  So bear with me.  I am going to read into

1    the record the ruling.

2         So to start off, the legal standard that applies

3    here is well known.  Approval of a class action settlement in

4    this Circuit has the following legal standard.

5         Under Rule 23(e) of the Federal Rules of Civil

6    Procedure, a settlement of a class action requires approval of

7    the court.  The court may approve the settlement that is

8    binding on the class only if it determines that the settlement

9    is fair, adequate and reasonable and not a product of

10   collusion.  This evaluation requires the court to consider

11   both the settlement's term and the negotiating process leading

12   to settlement.  Presumption of fairness, adequacy and

13   reasonableness may attach to a class settlement reached in

14   arm's-length negotiation between experienced capable counsel

15   after meaningful discovery.

16        That is a quote from Wright versus Stern,

17   553 FedSupp.2d 337, at 343 to 44, a Southern District of

18   New York decision from 2008.

19        In order to determine whether the class action

20   settlement is fair, reasonable and adequate, courts in this

21   Circuit traditionally have considered the following factors

22   commonly referred to as the Grinnell factors:  First, the

23   complexity, expense and likely duration of the litigation;

24   second, the reaction of the class to the settlement; third,

25   the stage of the proceedings and the amount of discovery

1    completed; fourth, the risks of establishing liability; fifth,

2    the risks of establishing damages; sixth, the risk of

3    maintaining a class action through trial; seventh, the ability

4    of defendants to withstand greater judgment; eighth, the range

5    of reasonableness of a settlement fund in light of the best

6    possible recovery; and, ninth, the range of reasonableness of

7    the settlement fund in light of the attendant risks of

8    litigation.

9         And that is, again, a quote from Wright versus

10   Stern, at page 343 which, in turn, cites among other cases

11   City of Detroit versus Grinnell Corp., 494 F.2d 448, at 463,

12   the Second Circuit's decision from 1974 which obviously

13   established the "Grinnell" factors.

14        I will further note that the Grinnell factors

15   substantially overlap with the Rule 23(e)(2) factors, but

16   includes three factors not addressed by Rule 23(e)(2).  A case

17   that explains that is In Re Payment Card Interchange Fee and

18   Merchandise Discovery Antitrust Litigation, 330 F.R.D. 11, at

19   29, footnote 22, which is an Eastern District decision from

20   2019.

21        The weight to be given any particular factor will

22   vary based on the facts and circumstances of the case and

23   that, again, is a proposition cited in Wright versus Stern.

24        Now, applying the Grinnell factors and Rule 23(e)(2)

25   to this case, I find as follows.

11

1          The information presented at today's hearing, the

2    parties' filings and my knowledge in this case lead me to the

3    conclusion that the settlement is fair, reasonable and

4    adequate.  While I cannot yet ascertain the settlement class

5    size due to the fact that, as has been discussed, the claim

6    forms are still being submitted and can be submitted up until

7    August 22, 2020, thus far, based on the representation of

8    Mr. Pruitt which is, in turn, based on information from the

9    settlement administrator, 63,000 claim forms have been

10   submitted as of July 20, 2020 which is, I believe, a Tuesday.

11         The deadline to file exclusions and objections was

12   June 25, 2020, and no class members have objected.  In

13   addition, only nine class members have excluded themselves

14   from the settlement.  This indicates that the vast majority of

15   class members approve of the settlement agreement.

16         In addition, I will note that the settlement as per

17   Mr. Pruitt's statements a moment ago could lead to the payment

18   of claims for monetary awards totaling $350,000.  The

19   information of Mr. Shaffer which is docketed at 359-3 and is

20   contained in paragraphs 13 through 16, and obviously that

21   information had just been supplemented by Mr. Pruitt based on

22   additional information from Mr. Shaffer.

23         The parties have litigated this action since 2014

24   and have appeared more than 30 times before Judge Weinstein

25   and the Magistrate Judges who presided over this matter for

1  oral argument, evidentiary hearings, settlement conferences

2  and status conferences.  The defendant filed a motion to

3  dismiss, docketed as number 17, a motion to deny class

4  certification, docket 59, a renewed motion to dismiss or,

5  alternatively, motion for summary judgment, docket 222, and

6  two motions to decertify the class, dockets 222 and 294.  The

7  parties have engaged in extensive discovery prior to

8  discussing settlement.

9        The settlement discussions were the product of

10  extensive arm's length negotiation between experienced class

11  action attorneys.  Settlement discussions first began in 2015

12  under the supervision of Judge Robert M. Levy and that is

13  noted in the August 12, 2015 minute entry in this case and

14  those discussions were recently renewed with mediation before

15  Judge Steven M. Gold and that was noted in the November 25,

16  2019 minute entry.

17        The settlement provides for a monetary benefit of

18  actual damages that is higher than the maximum afforded to the

19  settlement class members in Pettit versus Procter & Gamble,

20  docketed at 15-CV-2150 in the Northern District of California

21  and in that case, a settlement was approved on March 29, 2019.

22        In addition, per a regression analysis by

23  plaintiff's expert, a grander recovery than might be expected

24  at trial is being achieved via the settlement and that's based

25  on the supplemental declaration of Colin Weir which is docket

1    329 and I'm referring to paragraph 78.

2           The availability of statutory damages which were

3    heavily litigated in this case and remained uncertain would at

4    most allow a maximum recovery of $50 per class member in which

5    case the maximum recovery of $50.20 for settlement class

6    members with proofs of purchase exceed their potential maximum

7    statutory recovery.

8           Procter & Gamble's agreed upon changed labeling

9    practices which extended the injunctive relief granted as part

10   of the Pettit settlement, I believe, for an additional

11   two years are likely to benefit settlement class members and

12   certainly will benefit the public in general.

13          Now, with regard to attorneys' fees, costs and

14   expenses, regardless of the method used to calculate

15   reasonable attorneys' fees, the Goldberger factors ultimately

16   determine the reasonableness of an attorneys' fee award in a

17   class action settlement.  That's a proposition I'm quoting

18   from in Simerlein versus Toyota Motor Corp., number

19   17-CV-1091, reported at 2019 Westlaw 2417404, and that was a

20   quote at page 24 of the decision which is a District of

21   Connecticut decision dated June 10, 2019.

22          The Simerlein case, in turn, cites Walmart Stores

23   Inc. versus Visa USA, Inc., 396 F.3d 96, at 121, a Second

24   Circuit decision from 2005.

25          Now, these factors are, and I quote:  First, the

1   time and labor expended by counsel; second, the magnitude and

2   complexities of the litigation; third, the risk of the

3   litigation; fourth, the quality of the representation; fifth,

4   the requested fee in relation to the settlement; and, sixth,

5   public policy considerations.

6          That is from Goldberger versus Integrated Resources

7   Inc., 209 F.3d 43, at page 50, a Second Circuit decision from

8   2000.

9          In a case where the attorneys' fees are to be paid

10   directly by defendant and, thus, money paid to the attorneys

11   is entirely independent of money awarded to the class, the

12   court's fiduciary rule in overseeing the award is greatly

13   reduced because there is no conflict of interest between

14   attorneys and class members.

15          And that is a quote from Pearlman versus Cablevision

16   Systems Corp., 2019 Westlaw 3974358, at page 3, an Eastern

17   District of New York decision dated August 20, 2019.

18          Here, I find that the requested attorneys' fee is

19   reasonable under the lodestar method and per the Goldberger

20   factors because class counsel requests roughly 44 percent less

21   than the market value of their time because the case was of

22   significant magnitude and complexity and because the

23   procedural history of the case shows the high amount of

24   litigation risk associated with the case as well as a

25   significant expenditure of fees and resources litigating this

1   case to the point of settlement.

2         The Court also grants an award of the plaintiffs'

3   requested litigation expenses of $202,838.27 which represents

4   the litigation expenses and costs and that's per the Mip

5   declaration, docket 358-3, at pages, sorry, at paragraphs 32

6   to 34, and those expenses are ones regularly granted by courts

7   in evaluating similar settlement classes as here and that is a

8   citation to or based on a citation to Pearlman, 2019 Westlaw

9   3974358, at page 7.

10         Regarding the class representative payment that's

11   requested, I'll say the following.  Courts in this Circuit

12   regularly approve service awards ranging from as low as $1,000

13   to as high as $25,000 in consumer class action settlements,

14   generally, however, awards between $1,000 and $10,000 are more

15   typical.

16         That's essentially a quote from McLaughlin versus

17   IDT Energy, number 14-CV-4107, a case before Judge Vitaliano,

18   reported at 2018 Westlaw 364627, at page 6.  That was a

19   decision issued on July 30, 2018 in which Judge Vitaliano

20   collects cases on that proposition.

21         The Court agrees that the $10,000 award to

22   Mr. Belfiore, the representative plaintiff in this case, is

23   within the typical range of class representative awards in

24   that it serves to compensate him for the time and effort he

25   expended in assisting the prosecution of this litigation as

1   well as the risks incurred by coming and continuing as a

2   litigant as well as any other burden sustained by him.

3          I base that finding on the McLaughlin decision as

4   well.  In that part of the decision, McLaughlin quotes Beckman

5   versus T Bank, NA, a decision of the Southern District from

6   2013 reported at 293 F.R.D. 467, at 483.

7          Lastly, I will set forth my ruling regarding the

8   injunctive relief issue that I mentioned a moment ago and that

9   I *sua sponte* raised with the parties shortly before this

10  hearing.

11         On July 8, 2020, the Second Circuit held in Berni

12  versus Varilla, SpA, reported at 2020 Westlaw 3815523, that an

13  equitable exception to Rule 23(b)(2) simply does not exist and

14  courts cannot create one to achieve a policy objective no

15  matter how commendable that objective.  That is because, as

16  many other district courts in this Circuit have already noted,

17  courts cannot permit injunctive relief through class

18  settlement when plaintiff would otherwise lack standing to

19  seek such relief under Article III of the constitution.

20         Where there's no likelihood of future harm, there is

21  no standing to seek an injunction and so no possibility of

22  being certified as a Rule 23(b)(2) class.  As such, the

23  district courts in many cases involving past purchasers of

24  such very products as skin cream, vodka, and satellite radio

25  subscriptions have come to the conclusion that past purchasers

1   cannot be certified as a class under Rule 23(b)(2).

2          As the parties are aware, the facts in Berni were

3   different than here because there, only a 23(b)(2) class was

4   certified even though the class was made up of or at least

5   could have been made up of past purchasers of the product

6   which was pasta in that case.  So there, there was an objector

7   to the settlement who raised this issue and the Circuit made

8   clear that the settlement could not be approved because the

9   class was defective from the outset as a 23(b)(2) only class

10  made up of potential past purchasers who could not benefit

11  from the injunctive relief and thus lack standing.  That is

12  from page 6 of the decision that I just read.

13         Certainly, one interpretation of this holding could

14  be that even plaintiffs in a class certified under both

15  23(b)(3) and 23(b)(2) would lack standing to obtain the

16  injunctive relief portion of a settlement which is why I had

17  asked the parties to address the potential impact of the Berni

18  decision.

19         In supplemental briefing ordered by me, plaintiff

20  explained that the holding at Berni does not apply to the

21  settlement class largely because the settlement in Berni was

22  certified, as I mentioned a moment ago, only under 23(b)(2)

23  and would not have been afforded any monetary damages.

24         Here, in contrast, the settlement class members are

25  properly certified under 23(b)(3) and were certified by

1   Judge Weinstein earlier in the case.  The plaintiff also notes

2   that the settlement class here does not include sub classes or

3   separate definitions based on the Rule 23(b)(2)/Rule 23(b)(3)

4   distinction and that courts, and I quote, "regularly approve

5   settlements that are solely certified pursuant to

6   Rule 23(b)(3) but also include injunctive relief."  I'm

7   quoting from the plaintiffs' letter docketed as 360.

8           The plaintiffs' argument, I believe, does adequately

9   explain why this case is different and why approval of the

10  settlement is not barred by the ruling in Berni of the Second

11  Circuit.

12          The plaintiffs' letter also summarizes the Second

13  Circuit decision in Kurtz as, and I quote from the letter,

14  "sustaining Judge Weinstein's prior decision certifying the

15  class pursuant to 23(b)(3) in the joint opinions" without

16  discussing that the same decision decertified Kurtz's

17  ruling -- I'm sorry -- Kurtz's Rule 23(b)(2) class, and this

18  is from page 2 of the plaintiffs' letter.

19          While it seems as though the settlement class in

20  this case is distinguishable because it did not have separate

21  definitions based on the (b)(2)/(b)(3) distinction, as do the

22  non-settlement classes in Kurtz, it is, to me, Kurtz does not

23  necessarily address the situation that we have here.

24          So because there are no separate class definitions

25  of (b)(2) versus (b)(3) and in sub classes along those lines,

1   for purposes of settlement in this case, I find that to the

2   extent the settlement provides for injunctive relief in

3   addition to monetary damages, it does not run afoul of the

4   Circuit's recent holding in <u>Kurtz</u> or in <u>Berni</u>.

5           By order dated October 25, 2019, Judge Weinstein

6   properly certified a class for monetary damages under

7   Rule 23(b)(3) and the settlement class before me is nearly

8   identical to that class for all relevant purposes.  Here, the

9   settlement also provides for injunctive relief, mainly that

10  the defendant will continue to implement certain changed

11  practices in its product packaging which had previously been

12  agreed to in the <u>Pettit</u> litigation.  A settlement class may be

13  certified solely under 23(b)(3) even if it provides for both

14  monetary and injunctive relief.

15          As I have previously noted in a case before me,

16  <u>Calibuso versus Bank of America Corp.</u>, where injunctive relief

17  is sought in addition to substantial monetary damages, the

18  court may proceed in at least one of three ways:  First,

19  certifying the class under Federal Rule of Civil Procedure or

20  FRCP 23(b)(3) for all proceedings; second, certifying separate

21  FRCP 23(b)(2) and (b)(3) classes addressing equitable relief

22  and damages respectively or, third, certifying the class under

23  23(b)(2) for both equitable and monetary relief but providing

24  all class members with notice and opportunity to opt out.

25          That's a quote from <u>Calibuso</u>, 299 F.R.D.359 and 367,

1    and that's from 2014.  In that decision, I was quoting <u>Sykes</u>

2    <u>versus Mel Harris and Associates, LLC</u>, 285 Federal Reporter

3    Decision 279 and 288 to 89, which is a Southern District

4    decision from 2012 by Judge Denny Chin.

5         In <u>Calibuso</u>, I further noted that, and I quote,

6    "Nothing required the court to separately certify settlement

7    class and sub classes to preserve settlement class members'

8    right to object to the programmatic relief, which is the

9    injunctive relief, while still permitting that opt-out of the

10   monetary relief."  And that's a quote from pages 367 to 68 of

11   <u>Calibuso</u>.  That is, if Rule 23(b)(3) preserves notice and

12   opt-out rights, separate certification of a 23(b)(2) class is

13   not necessary and that's what I ruled in <u>Calibuso</u>.

14        The Second Circuit has previously noted consistent

15   with this finding, I think, that members of a settlement class

16   certified under 23(b)(3), because they're guaranteed mandatory

17   notice, an opt-out right obviates the need for the court to

18   continue to, and I quote from that decision, "delve into the

19   thorny question" of whether 23(b)(2) certification would also

20   apply where 23(b)(3) certification is appropriate.

21        That was the Circuit's discussion in <u>In Re Visa</u>

22   <u>Check/MasterMoney Antitrust Litigation versus Visa</u>, and that's

23   reported at 280 F.3d 124, and that's a quote from 146 to 147.

24   The Second Circuit ruled or issued that ruling in 2001.

25   Notably in that case, the Circuit found that the district

1   court appropriately certified the class under Rule 23(b)(3)

2   where the class had requested both injunctive relief and

3   monetary damages.

4         So in light of all this precedent and even my own

5   prior ruling related to this issue and based on what I have

6   read and heard from the parties today related to this case,

7   especially the fact that the class members have been given

8   full notice and opportunity to opt out with respect to any

9   aspects of the settlement or based on any aspects of the

10  settlement including the injunctive relief, I find it is

11  permissible to certify the 23(b)(3) settlement class in which

12  class members are being afforded both monetary and injunctive

13  relief.

14        So that is my ruling and what we will do now is I am

15  going to ask, this is the last part of what I wanted to

16  accomplish today which is to instruct the parties to fill in

17  all the blanks that can be filled in on the current proposed

18  final approval order and submit that to our chambers or via

19  our chambers e-mail in Word form so that it can be reviewed

20  and finalized.  So there are a number of blanks that have yet

21  to be filled in but the parties have the information to do so

22  and then that will be issued.

23        Then, I guess, the last question I have is about the

24  mechanics then in terms of payment.  What will happen after

25  August 22nd, I think, which is the date on which the last

1  claim form can be submitted?

2          MR. INSLEY-PRUITT:  Your Honor, this is Matt

3  Insley-Pruitt from Wolf Popper.

4          So the claim administrator will review all the

5  claims that have been submitted.  As I said before, they need

6  to go through those claims and make sure that there are no

7  obviously incorrect forms and remove any of those that do not

8  represent class members and also do the process we call

9  householding which I represent that only $36.30 total returned

10 for claim members for persons who do not have proof of

11 purchase and 50.20 for those who do have proof of purchase.

12 So it's just a process of making sure that everything is right

13 and we will be able to submit the correct costs.

14         THE COURT:  Okay.  Good.

15         Is there anything that I failed to address from the

16 perspective of the plaintiff in my ruling just now,

17 Mr. Pruitt?

18         MR. INSLEY-PRUITT:  No, Your Honor.

19         THE COURT:  Okay.  And Mr. Weinberger?

20         MR. WEINBERGER:  Nothing, Your Honor.

21         THE COURT:  Okay.  Is there anything else we need to

22 address at this time?  Mr. Pruitt?

23         MR. INSLEY-PRUITT:  No, Your Honor.

24         THE COURT:  Okay.  Mr. Weinberger?

25         MR. WEINBERGER:  No.  No, Your Honor.

1          THE COURT:  Okay.  Well, that concludes this hearing

2     and I appreciate all the hard work and diligence that went

3     into this matter.  Perhaps timing is everything.  I think this

4     case has managed to get to the finish line whereas the other

5     case has obviously reached a certain stumbling block, but I

6     congratulate you on the settlement which seems to be to

7     achieve at least some measure of compensation as well as

8     programmatic change or some injunctive relief.

9          All right.  So everyone, stay well.  Thank you very

10    much.

11         MR. WEINBERGER:  Thank you, Your Honor.

12         MR. INSLEY-PRUITT:  Thank you, Your Honor.

13         (Matter concluded.)

14

15

16              *     *     *     *     *

17

18

19    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

20

21     /s/ Charleane M. Heading              July 30, 2020

22    _____      _____
          CHARLEANE M. HEADING                   DATE

23

24

25

CMH       OCR       RMR       CRR       FCRR